IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMICA CENTER FOR IMMIGRANT RIGHTS, et al,

Plaintiffs,

vs.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, et al,

Defendants.

Civil Action
No 1: 26-696

Washington, DC
February 27, 2026

4:02 p.m.

TRANSCRIPT OF SCHEDULING HEARING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:

Allyson R. Scher
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043

Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036

Erez R. Reuveni
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043

APPEARANCES CONTINUED ON NEXT PAGE

APPEARANCES CONTINUED

For the Defendant: Christopher Ian Pryby
DOJ-CIV
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Joshua Clem
DOJ-Civ
P.O. Box 868
Ben Franklin Station
Washington, DC 20044

Papu Sandhu
DOJ-Civ
Office of Immigration Litigation
450 5th Street NW
Washington, DC 20001

Court Reporter: Sherry Lindsay
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Room 6710
Washington, DC 20001

P R O C E E D I N G S

THE COURTROOM DEPUTY: Civil case number 26-696, *Amica Center for Immigrant Rights, et al, versus Executive Office for Immigration Review, et al*.

Would counsel please approach the podium, state their name for the record, starting with plaintiff's counsel.

MR. REUVENI: Good afternoon, Your Honor. Erez Reuveni for the plaintiffs and my colleagues, Ally Scher and Suzie Mathur.

THE COURT: All right. Good afternoon to all of you.

MR. SANDHU: Good afternoon, Your Honor. My name is Papu Sandhu on behalf of defendants. And with me today I have Chris Pryby and Josh Clem.

THE COURT: All right. Good afternoon to all of you as well. So thank you for coming in on such short order. But I thought it made sense for us to talk about schedule sooner rather than later, given the time table in this case. I also wanted to just note for the record in this case that I did see that Catherine Carroll is listed as one of the lawyers on the plaintiffs' brief. And just out of an abundance of transparency, I wanted to let you all know that Ms. Carroll and I were colleagues when I was at WilmerHale. I haven't been at the firm for over 11 years now. And I don't remember the last time that I worked with her when I was there. It's obviously sometime before that, but we did work together on various

projects I think over the years and were in common practice groups together at the firm. And I have seen or spoken to her on occasions since then. To my mind, the relationship is not one that gives rise to a conflict or an appearance issue. But I always try and be as transparent about these things as possible. And if anyone has a different view about that, I would just ask that you let me know what you think about that sooner rather than later. But as I said, based on my knowledge of the relationship, I don't see an issue there. And it's similar to, frankly, circumstances that I have had on other occasions in the past.

Have the parties had a chance to confer amongst yourselves about a schedule?

MR. REUVENI: No, not yet, Your Honor.

THE COURT: Do you want me to step off the bench for a minute? I'm happy to just -- you can all get up and tell me what you think about the schedule or I can give you a chance to talk amongst yourselves about it. And if there is agreement, great; if there is not agreement, I can resolve any issues. I just need to make sure you are at the microphone when you are speaking because otherwise it doesn't end up on the record.

MR. SANDHU: We have no objection, Your Honor, to try to work things out.

THE COURT: Okay. So why don't I step off, give you a chance -- the only thing I will ask is in your discussions

amongst yourselves about schedule, be sensitive to the Court's schedule as well and don't put me in a position in which I have to get the last submission or the hearing 15 minutes before you need a decision for me and build in some time for me to get a decision to you as well.

MR. SANDHU: Understood.

THE COURT: Why don't you let the clerk know when you are ready for me to come back out and I will come back out.

MR. SANDHU: Thank you.

(Recess taken at 4:06 p.m.)

THE COURT: All right. What have we come up with?

MR. REUVENI: Thank you, Your Honor. We have a couple proposals, but it occurs to us that we neglected a key data point. We didn't ask you for -- negotiated whether you would like to have a hearing and if so when?

THE COURT: So I do think it probably would be a good idea for me to hear from you all, which I think -- and I take it that you need a decision no later than a week from Monday; is that right?

MR. REUVENI: That's right.

THE COURT: So I think that means we would need to have a hearing on this matter no later than Thursday afternoon or Friday morning.

MR. REUVENI: Okay.

THE COURT: And, you know, that puts me a little bit

under the gun. Obviously, the earlier the hearing, the more likely whatever you tell me at the hearing is going to work its way into my draft, which I am probably going to have to start before the hearing. If it's a Friday hearing, I'm probably going to have make some substantial progress on the draft beforehand. It doesn't mean I can't change it, but if it's earlier, it makes it a little easier for me. But I want to make sure you all have time to brief the issues.

MR. REUVENI: Appreciate that, Your Honor. On the assumption that you would have a hearing on Friday, we do have one proposal that we agreed to and that would be plaintiffs filing their opposition --

THE COURT: You mean defendants?

MR. REUVENI: I'm sorry. Defendants filing their opposition brief on Tuesday.

THE COURT: Okay.

MR. REUVENI: And plaintiffs filing their reply on Thursday.

THE COURT: Okay.

MR. REUVENI: Cognizant that you would be having a hearing on Friday, we want the reply brief to be helpful to you, we would endeavor to file it as early as we could. But if we could have 48 hours --

THE COURT: Let me see what time we have on Friday. I'm trying to bring my calendar up. Let me see here.

(Pause.)

THE COURT: Let's put it for noon for Friday, March 6th. The effective date is the 9th or the 10th?

MR. REUVENI: The 9th.

THE COURT: The 9th is the effective date.

MR. REUVENI: So counsel for government can correct me if I'm wrong, 12:01 a.m. on the 9th I believe is the effective --

THE COURT: So that would mean that you would need an opinion on the 8th; correct?

MR. REUVENI: I think so, yes.

THE COURT: Okay. Is that right?

MR. SANDHU: I think it's the government's view that an opinion on the 9th would be sufficient because of the way that the rule goes into effect. It only applies to immigration judge's decisions issued on March 9th and thereafter. So we think it very unlikely that there would be anybody harmed on March 9th.

THE COURT: Or least on the morning of the 9th, perhaps. Maybe later in the day, some of the decisions I guess could get issued.

MR. SANDHU: Well, under the rule, there would be a 10-day appeal period for the individual noncitizen. And then if we are talking about the summary dismissal procedures, there would be -- you know, once that appeal is filed within 10 days,

it could be filed on day one, but then you would have -- if there were a summary dismissal, it would happen within the next 15 days. So theoretically, I guess, something could happen very, very quickly on day one and the Board summarily dismisses on day two. But it's unlikely from that point of view on day one, being March 9th, that would all happen.

THE COURT: I see what you are saying. I see. So it only applies to appeals from ALJs that are filed on the 9th?

MR. SANDHU: Decisions of -- I'm sorry -- decisions of immigration judges that come out starting on the 9th and then it would be appeals filed thereafter.

THE COURT: I see. And someone could actually then if they wanted to, I suppose, engage in self help and simply wait until the 10th to file their appeal, if they were concerned that they were going to avoid the application on the 9th is that -- I mean, if they wanted to give me time, in other words they are not going to be subject to the rule if they wait on the 10th to file their appeal, for a decision on the 9th would be timely still? Is that right?

MR. SANDHU: They would have 10 days. So if they lose their IJ decision, immigration judge decision on the 9th, they would have 10 days.

THE COURT: Okay. All right. Well, why don't we do this? It's going to be a little tight, but what I'm going to do is I'm going to direct that the defendants' opposition be

filed no later than 4:00 p.m. on Tuesday and that the reply brief be filed no later than 2:00 p.m. on Thursday, which will give me a little bit more time, not a lot, but a little bit more time in the process.

Given the speed with which this is all moving, if anyone cared to give me a preview on anything, I'd be happy to hear it. I have read through the brief and maybe you're not prepared to do that today, which is fine with me as well. But I just want to make sure that I have done everything I can do to make sure I'm up to speed in a timely fashion.

MR. REUVENI: I think we can try and be helpful, as much as we can, Your Honor.

I think that the simplest way and the quick way to rule on this is the notice-and-comment issue. This is a rule that dramatically upends Board of Appeals practice in a way that makes it virtually impossible for the vast majority of individuals to perfect an appeal. That is their right under the statute. And it is, of course, required under the due process clause. They tell us in the rule that this is a foreign affairs function of the United States. I don't see how -- and our papers spell out how immigration proceedings that occur within the United States, hundreds, thousands a week -- are a foreign affairs function. We cite two D.D.C. cases that essentially say that exact thing. They say briefly in the IFR that is a -- might cause undesirable international

consequences -- it's unclear to what -- to their negotiations that they had. This is the same argument they have made in a case you are familiar with, *O.A. v. Trump* from the first Trump administration. It is the same argument they made in a case before Judge Kelly, the *CAIR* case in 2019. This is the same case they made in *East Bay* in the Ninth Circuit and same series of challenges to regulations governing asylum. They have made this argument in case after case of this sort. And it's never carried the day and it shouldn't carry the day here.

They also argued it's just a procedural rule. They don't seem to take that argument too seriously. It's a couple of paragraphs in the federal register. They -- a procedural rule is something that changes the manner one presents themselves to an agency. It's not one that affects substantive outcomes. I don't think there is any real dispute that requiring individuals to file notices of appeal within 10 days and submit and including every, single issue they are going to put in their appeal in that notice of appeal and then having a presumption that all appeals will be dismissed unless a full en bloc Board of Immigration Appeals Decides to issue an appeal, I don't see how one can argue that doesn't change substantive outcomes. That means the vast majority of cases that would have potentially gone up and been corrected are no longer going to be corrected. And on top of that with the waiver rule they have, they are essentially telling the Court of Appeals they

didn't get it in here in time and there is nothing you can do about it. So they are purporting to change even the rights noncitizens have as they litigate petitions for review.

So from our perspective, that's the fastest -- if one is interested in a speedy way, it's the most obvious way -- the quickest way, I should say. There is other problems with the rule, both statutory and arbitrary and capricious arguments.

On the statute, as we lay out in our papers, there are a number of provisions that this IFR interferes with or conflict with or violates, most importantly, is the -- not most -- all of these work together, I should be clear. But there is 8 U.S.C. 1101(a)(47), which requires the Board to make a determination. That is the word that is in the statute of some sort. But what this -- on appeal -- but what this IFR does is essentially direct the Board to set up a mechanism where just appeals are dismissed mechanically on day 10 -- by day 15, I should say. There is no human being under the rule that is required to actually look at the record below and determine that this is a case that should be dismissed or go en banc, which is in stark contrast to the streamlining cases that I expect the government will be putting in their papers for you to rely on from 2001 and 2002, when the Department of Justice amended the appeal rules to allow for single individual judges to summarily affirm cases, so this is light years removed from that.

The INA also requires that a complete record be made, that is 8 U.S.C. 1229(a). There is a subprovision in there. I don't have it handy right at the moment, but it's in our papers. But what this -- so it's obvious why there should be a complete record. Individuals, the Board of Immigration Appeals, Courts of Appeals, they all need access to a record to make their case and to perfect their appeal and to essentially pursue their right to correct errors that the immigration judges have made.

The decision here to automatically dismiss after day 10 is made before the individuals have a chance to even get the record. The vast majority of decisions right now are oral decisions, as our declarations lay out. It is very unclear how one -- how a statute that requires there to be a complete record for purpose of appeal is not being violated when there is no record for individuals to rely on.

THE COURT: Does the statute recognize a right to appeal to the BIA?

MR. REUVENI: So the statute in a few places states that there is a right to an appeal. First it directs the Board of Immigration Appeals to make a determination, although that doesn't directly answer your question.

THE COURT: Right.

MR. REUVENI: 8 U.S.C. 1158(d)(5), which applies to people who have asylum applications --

THE COURT: Right.

MR. REUVENI: -- does, in fact, provide for a right to an appeal -- administrative appeal that goes to the Board.

There is also a provision -- several provisions that refer to the rebuttable presumption of credibility on appeal, both in 8 U.S.C. 1158 and 8 U.S.C. 1229(a). So it doesn't very -- it doesn't clearly say the magic words, there shall be a Board of Immigration Appeals to which everyone may appeal, but the statute doesn't make sense otherwise if there is not a right to appeal based on those provisions that I just mentioned.

There -- the 10-day appeal rule just practically speaking also -- so just 1158 I just mentioned, that applies to asylum folks with asylum applications. But asylum applicants by regulation that the agency didn't consider at all when issuing the rule, have to file both their other claims for relief withholding of removal and CAT removal, which is Convention Against Torture --

THE COURT: Right.

MR. REUVENI: Mandatory -- withholding is a mandatory type of relief, rather than discretionary like asylum. Because those all run together and because the rule doesn't explain or articulate a difference between these types of relief, practically speaking everyone has to file their appeal within 10 days or they risk waiving their withholding and CAT claims.

So, really, the whole thing not just as to asylum seekers, but to everyone who has any sort of claim for relief violates this 30-day rule.

THE COURT: Is there some type of exhaustion requirement in the Courts of Appeals with respect to issues that are raised or not raised before the BIA?

MR. REUVENI: Yes. So that's another part of the statute that this conflicts with. So 8 U.S.C. 1252(d) --

THE COURT: You have got to slow down a little bit for the court reporter.

MR. REUVENI: Apologies, Your Honor.

THE COURT: No worries.

MR. REUVENI: 8 U.S.C. 1252(d) has the exhaustion requirement that you mentioned. And every Court of Appeals that deals with petitions for review has held quite clearly, if you don't raise it to the Board, it's unexhausted and you can't raise it in the Court of Appeals.

But then what this rule does is say, if you don't raise it in your notice of appeal, filed within 10 days, which, again, you have to do without a complete record, without seeing the transcript, without having any idea what exactly happened, because the rule also eliminates immigration judges reviewing and correcting transcripts of oral decisions before an appeal has to happen. So if you don't literally raise the kitchen sink, every conceivable argument, which is not something that

a pro se individual can do, let alone someone represented by counsel effectively in 10 days without a record, you have waived it. And once it's waived, you go to the Court of Appeals -- based on present law, what the Court of Appeals is going to tell you is you have not exhausted, you have waived your claim and we are done here and the case is dismissed. The people who wrote this rule know that.

The talk about efficiency and they talk about moving appeals faster. The goal of this rule is to make people lose their cases. So it's entirely -- it's entirely too clever to say, well, they could do it in 10 days, when they at the same time are making it impossible for them to get a record to do it within 10 days. So that is another provision.

Another provision it violates is 8 U.S.C. 1362 and the companion provision in section 1229(a), which talks about right to counsel. And this is of particular -- this is particularly harmful to our clients who are organizations who are immigration rights organizations that their core business is to assist people going through these proceedings.

Just starting with people who appear before an immigration judge pro se, for example, which is the vast majority of people. In 10 days, they need to find us essentially and we need to find them. And in that same period of time, do all of the things I just described to perfect an appeal to not waive rights. It is significantly more difficult

for everyone involved to do that at all, just by virtue of them being pro se. But to do it in 10 days with no record interferes with a pro se individual's ability to find counsel and therefore their right to counsel. And it interferes with our clients' ability to serve the constituencies that they are designed to serve in way that fundamentally undermines their core business interests.

I think those are the INA provisions. There's one more that we talk about that ties into this, a right to a full and fair hearing. And this -- I'm going to conflate arbitrary and capricious and statute here a little bit, but it's related.

So one thing this rule doesn't talk about, which is one of the reasons why it's in our view, irrational and arbitrary and capricious, failed to consider fundamental aspects of the problem, at the same time that the DOJ is telling the Board of Immigration Appeals through this rule to make things go as fast a humanly possible, review as few cases as possible, clear out the backlog, they are telling immigration judges to deny, deny, deny asylum claims on any ground available, engage in something called pretermission, which is equivalent to a motion to dismiss in federal district court, just dismiss it up front, don't ever get to the merits for any reason. Our declarations walk through examples of this. And then the immigration judges issue snap oral decisions, dismissing without ever getting to the merits. So

while they are telling the Court, the Board of Immigration Appeals to go fast, fast, fast, they are telling immigration judges, create as little a record as possible and deny relief fast, fast, fast.

A rule that is based on alleged efficiency and making the system work better, probably should have considered whether those goals can be effectuated when there is all of these other things that the government is doing to make immigration court proceedings essentially a rubber stamp for removal. And the rule doesn't talk about that at all. There is no discussion. There is not even an acknowledgment about it. There is a perfunctory throw-away line about, yeah, some people may have a harder time raising a claim. But there is going to be very few appeals. They don't tell us how they are going to come up with that number. And just looking at their own data, there are 65,000 case completions a month in the year 2025. That is their data, their website, EIOR website, on the DOJ website. Not all of those are final decisions by an immigration judge. But these are final case completions. Taking that 65,000 a month, that is a huge number of cases where immigration judges are not creating effective records. They are issuing oral decisions and being directed to issue oral decisions. And then they take this rule and say, okay, now figure out what basis you have to appeal within 10 days when there is no record and they have no -- the rule directs them not to correct or make a

record.

THE COURT: So you get your decision from the immigration judge, you have got 10 days to file an appeal with the BIA. In your notice of appeal to the BIA, I take it you have to list the issues you are appealing; is that right?

MR. REUVENI: Under this rule, you have to list every, single possible argument that you will make in your -- if you are -- if you are lucky enough to be allowed to proceed with your appeal. In the prior system, you did not have to do that. You raised the -- identified the ruling that you take issue with and then you have 30 days to appeal and you file that and then you can prepare your case in the normal course.

THE COURT: But this is being -- I guess preliminarily reviewed in a way in which if you don't get an order saying you may proceed, then you -- then it's a summary affirmance of the IJ?

MR. REUVENI: Well, it's not a summary affirmance, it's a summary dismissal of the appeal. They are not affirming anything.

THE COURT: I'm sorry. I guess that makes a difference to me. What I'm trying to figure out is the extent to which that is then tying your hands in the Court of Appeals. And if it's a dismissal of your appeal, are you still -- does the exhaustion rule still apply or do you look at what the issues were you raised before the IJ when you were in the Court

of Appeals? Or would somebody be in a situation in which they have 10 days basically to write a convincing argument to convince the BIA that there actually is some there there. And if they don't get that done or they don't convince the BIA, then they can never raise it in the Court of Appeals or can they -- if it's dismissed under the summary process, can they raise in the Court of Appeals any issue that they could have raised at the BIA, basically side stepping that step of the process?

MR. REUVENI: I understand the question, Your Honor. Our understanding is the former, not the latter. Our understanding is you are essentially -- this rule essentially requires every individual to front load a notice of appeal with what is functionally a full brief, maybe not with the length, but the issues. And if they don't and then the case is dismissed, they waive that issue, because the rule itself says if you don't raise it, you waive it.

And so, look, could the Court of Appeals conceivably look at this and say, hold on, this is crazy, we are going to change our exhaustion rules, sure, they could, but that is not the law right now. So right now under this rule, they haven't exhausted, they can't raise the claims, that's the harm.

THE COURT: I suppose the Court of Appeals might conclude there is some sort of futility exception to exhaustion I suppose. The reason I'm asking those questions is: I'm

starting to also think a little about irreparable injury. It would be irreparable injury to the organizations who are the plaintiffs in this case; right? And I'm just trying to start the process of thinking about what the irreparable injury, if any, would look like in this case. And I imagine something that fundamentally interferes with your ability to represent your clients arguably could if the process was one in which it prevented you from then being able to effectively represent your clients in the Courts of Appeals down the road and perhaps something turning on the fiduciary duty of the lawyer allows the lawyer to, in essence, partially step in issues of the client who is losing the right. But this is an -- you all should be prepared for this. This will be an issue.

MR. REUVENI: Yes.

THE COURT: When we have our hearing, what I will want to talk about is irreparable injury and how it applies in this context.

MR. REUVENI: So just on that to the extent helpful -- you wrote these decisions so you are probably more familiar with them than me.

THE COURT: I wouldn't count on it. I may have forgotten.

MR. REUVENI: Your *RAICES* decision just from a few months ago, last year --

THE COURT: Yes.

MR. REUVENI: And your decision, *Northwest Immigration Rights*, 496 --

THE COURT: I do remember both of those.

MR. REUVENI: From 2020. So one before the *Hippocratic Alliance*, so the Supreme Court case on organizational standing and one after, and we are making in this case very similar organizational-harm type arguments, harms to the core business model of these -- core business, I should say, of the plaintiffs. So as the declarations lay out in extensive detail, this rule will lead to far fewer clients that they can help. Because now perfecting an appeal takes hundreds of -- potentially hundreds of hours as compared to what it was before. Everything now gets pushed into the petition for review process, if you ever get there. Those are far more resource extensive. The grants that many of our plaintiffs get them to work on, administrative appeals, so they have a fundamental financial problem here as well. They are not funded to do -- eventually they might, but they are not funded to do the work that this rule is now going to force them to do.

So they cannot -- they have complete -- their ability to serve the core constituents is completely truncated, altered.

THE COURT: Although I think that some of what you may have been referring to in my other decisions may have been

more focused on standing in irreparable injury and I -- I understand the arguments with respect to standing and how this rule fundamentally effects the business of the organizational plaintiffs in this case. What I'm really more focused on over the next several days is the question of irreparable injury, which is obviously more demanding than standing.

MR. REUVENI: Understood, Your Honor. But I push back a little bit. These are things you discussed in both of the decisions in the context of harm, as well.

THE COURT: Okay.

MR. REUVENI: Granted, standing and harm are not the same thing. But they tend to sound the same way. Harms to core interests, harms to the ability to serve clients, harms to the ability to provide essential services. And I think both of your cases and all of the others that apply this sort of reasoning in this circuit, find harm where an organization's ability to provide essential services is impaired. And that is the word from *League of Voters*, that 2016 D.C. Circuit case that I think you and others have relied on in this context. So it's not just standing, I think it also goes to harm.

If I could go back a bit to arbitrary and capricious. It overlaps with the statutory argument, somewhat. There are all of these different things that they did not consider, but I'd like to just bring the Court's attention to a couple that we identify in your briefs. So one hallmark of unreasoned

decision making is a failure to consider alternatives.

As you may have seen in our papers, there is a couple of decisions on a rule that tried to do similar but less Draconian things in our view in 2020. That's the *Clinic* case that was in front of Judge Leon here. And there is a case *Centro Legal* that was in San Francisco. I want to draw the Court's attention to that one. That's 524 F. Supp. 3d 919.

Apparently at the time, EOIR was trying to do a pre-iteration of what they were doing. They commissioned an audit by Booz Allen Hamilton. And that group then provided a number of recommendations on what EOIR could do to make proceedings more efficient. One in particular is directing immigration judges to do the opposite of what is happening now, have a written decision that everyone can rely on in a systematic, normal fashion when they take an appeal.

This rule doesn't consider that at all. That was also important to the Judge Illston I believe it was in San Francisco, when she found this other rule arbitrary and capricious for similar reasons.

So instead of considering having written decisions, because then there is a record and then the system works more effectively, no one has to ask for an extension because they have to wait until they get the record, what they have done is they have gutted the immigration courts. They have lowered the number of BIA judges significantly. They have fired 150

immigration judges, very experienced career people who know what they are talking about, who are trained who have done this for years. And they have filled in the gaps with temporary immigration judges. Not to suggest anything about these people's character, but they have no training. They have never been immigration judges. They have come in very quickly. Of course, there is going to be mistakes. They are essentially using people's lives as a training ground.

So they come in and they do that and they have a rule that completely cuts off administrative and potentially judicial review. And they don't talk about the interaction of these two distinct events that intersect with each other at all in the rule. And that is a hallmark of unreasoned decision making.

They also -- as we know after the *Regents* case from the Supreme Court, agencies need to consider reliance interests. The rule doesn't do that at all. It just simply says, well, there is no right to a written decision, there is no right to file briefs on a schedule that you might like, which is another change the rule makes. It dramatically changes the briefing schedule if you actually ever get to have an appeal. So there is no reliance issues. That gets it backwards. Once the agency sets up a system and a procedure, the regulated community is entitled to rely on that procedure.

And that's the reliance interest. And they did not

talk about this at all in the rule. They certainly did not talk about how this effects organizations, such as our clients, who work within the administrative court system. And if they say they didn't have to do notice and comment, I have given you our argument on that. But one thing that they were required to do under the RFA, which is something we didn't move on -- but I want to -- the Regulatory Flexibility Act, is it requires the agency, when it does notice and comment, to articulate harms to small entities, which our clients are. Skipping notice and comment, they take the position, we didn't have to do that. We didn't have to do notice and comment. That's their choice. That is a self-inflicted wound. They could have and should have thought about how this affects organizations that the INA gives clearly a seat at the table as a regulated party here.

I think I will stop there on arbitrary and capricious. I understand you want to hear about irreparable harm. I will be prepared to talk more about that.

I really want to close on just the really dishonesty. This rule is just dishonest. It tells you -- it tells the public, we want to be more efficient. We want things to go faster. Everyone likes an appeal decided faster. We want to make the system more efficient. And then they just stick their heads in the sand and ignore reality. They don't look at everything else that the defendants have done to make immigration courts less efficient, less fair, less useful for

those going through them. And that is a fundamental hallmark of arbitrary and capricious decision making. They didn't admit what the problem really is. They didn't identify alternatives. They didn't weigh pro and cons. They simply said, efficiency is what we want and we'll get it at all costs. And what they really mean by that is we want people to lose their cases as quickly as humanly possible so then we can deport them. And that's -- I am -- you don't have to take my word for it. You can just watch the news every day. It's in the rule. They want more removals faster.

Last, we are asking for a 705 stay, so I will briefly talk about that. We think you should set this rule aside across the board. And that's what a 705 stay is for.

THE COURT: Well, a 705 stay is just a stay across the board; right?

MR. REUVENI: Stay across the board. It's the temporary version of a set aside.

THE COURT: I understand.

MR. REUVENI: There is D.C. Circuit precedent now in the *Make the Road* case that says, this is what this 705 stay is. It's a set aside preemptively, temporarily up front, nationwide. It's not limited to the parties.

THE COURT: But I take it you have asked the agency for the 705 stay first before coming to the Court first. Have you done that?

MR. REUVENI: We did actually. When we conferred with defendants before coming to Court, we asked if they would agree to temporarily stay at least until such time as you reach a decision. It shouldn't surprise anyone, they said no.

THE COURT: Okay. I just wanted to make sure you had done that.

MR. REUVENI: Yep.

THE COURT: Is one result of this rule going to be that, perhaps not the D.C. Circuit which doesn't see these cases, but that other circuits around the country are going to end up being overwhelmed because they are not going to have the benefit of BIA review to help narrow and clarify the issues? You know, it feels like maybe a little bit the equivalent of telling the US Supreme Court that we are going to get rid of all the Courts of Appeals and all of the District Court decisions are just going to go directly to you from now on. Is that something that is a concern here as well?

MR. REUVENI: 100 percent. And it was an example we have in our papers and talk about in our declarations.

So because of the way the rule is structured with the waiver requirements and the rush to dismiss cases, we talk about this in the arbitrary and capricious section of the brief. So due process requires there to be something for a Court to review. In the rules, the INA requires there be something. When these cases get to the Courts of Appeal -- and

they will get there by the tens of thousands. There will being nothing to review. So what will happen is the courts will say, oh, if they want to hear the case one way, the way we just discussed, they will say, no exhaustion, you lose. Or if they think there is a fundamental problem with the status quo, they will issue decisions sending it all right back to the agency. And how is that efficient? The rule claims, oh, that is not going to happen. The Courts of Appeal are going to look at this, as they did during the streamlining cases in the early 2000s and say, we have nothing to review. The Supreme Court has said what we are supposed to do and we have have nothing to review under *Ventura, INS versus Ventura*, a 2002 case, you remand to the agency and tell them, how about you give us something we can review?

So this efficient rational is irrational for this reason too, because they are kicking this problem down the road. In three to six months when cases start to go up to the Courts of Appeals judges and the Courts of Appeals judges look at the record and say, there is absolutely nothing here. What is this? I'm not guessing at what the agency was thinking. They will remand it all back to the agency and they will have to do this all over again. That will make the backlog even larger and so the time from initiation of a removal proceeding to a final executable removal order even longer. The rule doesn't talk about any of that and it should have and that also

is arbitrary and capricious.

THE COURT: All right. Well, you did well given the fact that I gave you no warning you were going to be arguing this.

MR. REUVENI: Thank you.

THE COURT: But let me give Mr. Sandhu a similar opportunity if you would like. Not putting you on the spot, but if you would like, I would be happy to hear from you.

MR. SANDHU: We just got these papers last night, so I am not going to be as informed as my counsel on the other side.

THE COURT: Of course.

MR. SANDHU: But I would like to start off by emphasizing the context of what this rule is about. It's a very important rule. The backlog at the Board of Immigration Appeals right now is over 200,000 cases. The Board has taken or I should say EIOR has taken numerous steps to try to address the issue over the last two decades. And they are outlined in the rule. They have -- and they have actually been successful in certain ways. So going back 20 years, they initiated a streamlining procedure that was efficiently processing appeals to the Board of Immigration Appeals. Those issues -- there were many issues that were raised, like the plaintiffs were raising now, in that litigation. And the Courts of Appeals essentially ruled for the government on almost all of those

issues. And so what the Board has done now, it's looked at the growing backlog, the number of immigration cases has increased. Streamlining has been helpful in certain ways, but it's not enough. So the Board has -- or I'm sorry, I keep saying the Board. But the Executive Office of Immigration Review has looked at this problem and carefully considered what steps it can take to further reduce the backlog. And this is the result of that. It is not arbitrary and capricious. It is not haphazard.

They have taken a number of steps over the years to try to solve this issue. One of the arguments I think that the government is going to make in this context is the fact that all of these issues are essentially issues that arise in removal proceedings. So my friend on the other side talked about, you know, possible infringement on the right to counsel or other types of due process issues. But these are the type of issues that are raised every day through removal proceedings and into the Court of Appeals.

And so we believe that the Court here does not have jurisdiction to review many, if not all, of these claims because these claims are precisely the type of claims that can be raised in and adjudicated in removal proceedings and in the Circuit Courts of Appeals. They do so every day on right to counsel, waiver, et cetera. And so I think that's one thing that the government wants to note for the Court at the

beginning.

THE COURT: Although, I take it in the -- just in an individual removal proceeding, it would be difficult to challenge the rule categorically; right? You might be able to challenge --

MR. SANDHU: Your Honor --

THE COURT: You might be able to challenge it --

MR. SANDHU: -- it would be an as-applied challenge, but that's the sort of the statutory framework that congress set up. And we could point the Court to the statutory framework at 8 U.S.C section 1252(b)(9) and 8 U.S.C. section 1252(a)(5) that those provisions provide for exclusive review in the Court of Appeals over questions related to removal orders. And that's exactly what is going on here, because they are claiming that the removal process was insufficient because they didn't have an adequate opportunity to appeal the case administratively.

THE COURT: Would this fall under 1252(e)(3)?

MR. SANDHU: Your Honor, 1252(e)(3), I believe pertains to expedited removal. That is not at issue here. We are talking about normal removal proceedings that go before an immigration judge and then to the Board and then to the Court of Appeals.

THE COURT: Yeah.

MR. SANDHU: Expedited removal -- but one important

point on that, related to that is that we have to remember that all of the individuals get their full trial type of proceedings before immigration judges in immigration court.

THE COURT: Right.

MR. SANDHU: So, for example, one of the arguments that the other side makes is about, again, the right to counsel and how that is being infringed on by this process. But, actually, from the time that an alien is placed into a removal proceeding by the filing of a notice to appear, until the time that they get a final decision, could be months -- usually is months or even years.

So they have -- whether they are pro se or not, have plenty of time -- or I mean, they would be pro se at the beginning. They would have plenty of time to seek and obtain counsel. And there is --

THE COURT: Although they -- for the similar reasons that you identified, it may be challenging to obtain counsel, particularly for somebody who is indigent. But if you don't know if you are going to have your decision next week or a year from now, it's hard to have a lawyer on standby ready to go for you, unless you are wealthy enough to pay somebody to be sitting there ready to go to review your file. Typically I would assume it's the case that you wait until you see what has happened because you don't know when it's going to happen and you don't know what is going to happen.

MR. SANDHU: I don't think that's quite right. Lots of individuals who are in removal procedures are represented in those removal proceedings.

THE COURT: Right.

MR. SANDHU: I guess my point is: The plaintiffs' argument assumes that there is going to be this category -- a large category of individuals who, for some reason, are going to be pro se and then suddenly when the decision is issued, then they are only going to have a very quick amount of time.

THE COURT: I thought the vast majority of people in IJ proceedings were pro se. Is that not right?

MR. SANDHU: I don't believe that's right. I don't know the percentage offhand, but a large portion of them are represented.

THE COURT: What is your answer, if you are prepared to give it today, to the question I was asking about whether -- if someone within the 10-day period of time misses an issue in their more expansive notice of appeal then have to file with the BIA, the BIA, summarily dismisses the appeal, does that bar the individual from raising the issue that was not included in the notice in the Court of Appeals?

MR. SANDHU: Under the exhaustion provision --

THE COURT: Yes.

MR. SANDHU: -- which is not jurisdictional, which the Supreme Court has held it is not jurisdictional, they would

be precluded from raising the issue if they failed to exhaust it. However, if they are arguing that there was some unfairness in the process that caused them to waive the issue, that type of claim is presented, again, through the removal proceedings to the Court of Appeals. And the Court of Appeals can certainly consider that type of claim.

THE COURT: Although I mean, the thing I am just struggling a little bit with that is it does strike me as fairly categorical in nature. There are times in which you deal with exhaustion issues and futility that are very case specific. There was no point in my raising that issue with the administrative agency, because I have a letter from the administrative agency that they already sent me telling me that they disagreed and that I would lose, so I don't raise it. The judges would have to decide whether that had to be exhausted or not, or whether it was futile.

Here, if the argument is structurally this creates a futility, I guess I'm not quite sure why it would be preferable to have that decided 263,000 times by Court of Appeals judges across the country or perhaps have each Court of Appeals have to issue an equivalent of a standing order saying, we just conclude that it's categorically futile in all of these cases versus adjudicating that question in an APA-type litigation.

I mean, it strikes me as -- you know, there -- I certainly understand the rationale and the reasons why most

challenges to removals are funneled to the Court of Appeals and resolved on a case-by-case basis, but where it's a rule that creates a structural hurdle to the people being able to raise issues in the Court of Appeals, why isn't that just the sort of thing that is better to resolve at the front end? And just that way everyone knows what the rules are and it's hugely more efficient than waiting and doing it, you know, probably literally in tens of thousands of cases having to litigate that issue.

MR. SANDHU: Two points on that, Your Honor. First of all, Courts of Appeals can issue categorical decisions too. So once they decide an issue in a certain area of the law, then you know, other cases that arise in that circuit are going to be subject to that rule. But secondly and perhaps maybe more importantly, this is the framework, the statutory scheme that congress set up. We think that, you know, in the Real ID Act in 2005, especially when they made it very clear that there is no district court review of removal orders or anything related to removal, that that's the framework they set up. So it is through an individualized process. And the benefit of --

THE COURT: Go ahead. Let me let you finish. Go ahead.

MR. SANDHU: I was just going to say, the benefit of that is that every case is going to be different and the facts are going to be different.

So really I think even with some of the discussion from my friend on the other side, you are talking about a lot of different factual differences and circumstances that arise from case to case. So the best way to adjudicate that is individually through the removal process where you have concrete facts that can be reviewed by the agency and then the Court of Appeals.

THE COURT: What I was going to ask you is, I assume what your opposing colleagues would say to the questions I have been asking you about is, Judge, you are thinking about this like it's a case where the plaintiff in the case is someone who is in removal proceedings. It's not. These are organizations that are not themselves in removal proceedings. And what they are saying is this rule is interfering with their ability to perform their functions. And there is nothing in any of the channeling provisions of the INA that talk about organizations and situations like this having to bring their cases to the Courts of Appeals. They may win, they may not win in the case. But if they are ever going to raise the case, it's going to be in front of a District Court, because they don't have any basis or right as an organization to go to the Court of Appeals.

MR. SANDHU: Right. And I think that's the way Congress intended. The way that the statute is constructed, they did not intend for organizations to vindicate these rights and to be able to establish this type of precedent with regard

to challenges that affect the removal process. And I think that -- that is very important. And I had another response to your question now, I'm forgetting it.

THE COURT: This is all preliminary, so you will have plenty of time to include it in your brief or let me know later. Anything else you want to raise tonight?

MR. SANDHU: I would just echo the Court's concern about irreparable harm to the organization and we'll have further briefing on that.

THE COURT: Yeah, I would request that both sides focus on that, because in the very brief period of time that I've had to look at this case, that is something that is certainly on my radar that I am certainly thinking about.

MR. SANDHU: Could I just take a moment to ask my colleagues?

THE COURT: Yes, of course.

(Pause.)

MR. SANDHU: Thank you, Your Honor. That is all we have.

THE COURT: Well, thank you.

MR. REUVENI: Can --

THE COURT: If there is anything brief, as I said this is all a preview. But if you want to say something briefly, that is fine with me.

MR. REUVENI: Briefly, Your Honor, I have been told

at times that I don't know when to sit down and be quiet, but I don't think this is one of those instances, I hope.

Two very quick points, because I think this may be helpful to you since we are all trying to get to a decision by March 9th.

This discussion at 1252(a)(5)(B)(9). You have hit it exactly -- the nail on the head from our perspective. We are organizations. We are not individuals in removal proceedings. We are not challenging individuals proceedings. There is no possible mechanism for us to go through those proceedings or present an APA challenge with a record in those proceedings. And you have already done the work on this, Your Honor, in *O.A. v. Trump*. I should add, in that case there were individuals too. And you ruled that even individuals bringing such claims don't have to do so through -- for the administrative exhaustion and petition for review process.

THE COURT: Although wasn't *O.A.* an expedited removal case, at least in part I think it was?

MR. REUVENI: It was partially that, but you, as I recall -- you decided there was jurisdiction under 28 U.S.C. 1331. You said --

THE COURT: Right.

MR. REUVENI: You said that 1252(e)(3) was not at issue there. You certified a class, as I recall, which is not something you can do under 1252(e)(3). And you allowed both

individuals in normal removal proceedings and individuals with expedited removal orders that are subject to 1252(e)(3) potentially and organizations to move forward with their claims for the reasons that you have just been discussing with opposing counsel.

Just one other thing to flag and then I'll sit down. Opposing counsel is not correct that the majority of people are represented by counsel in these proceedings. Two-thirds of them are pro se. That is very much one of the fundamental problems with this rule.

Pro se individuals have 10 days to figure this all out or they are gone and they waived their claims, as counsel just conceded, if I -- I believe I heard him correctly that if they waive those claims, they cannot be raised in the Court of Appeals unless and until the Courts of Appeals decide exhaustion isn't a thing anymore. But that's not something the rule discusses or grapples with.

That's all. Thank you for your time, Your Honor.

THE COURT: Thank you, all. I will wish you all a good weekend, although I suspect you are all going to be, like me, working over the weekend. And if this were my only preliminary injunction or the equivalent, that would make life easier, but it's not. So I will see you all for the argument. And I look forward to reading your briefs. Thank you.

(Proceedings concluded at 5:24 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 1st day of March, 2026.

Sherry Lindsay, RPR
Official Court Reporter

**MR. REUVENI: [40]** 3/7 4/14 5/12 5/20 5/24 6/9 6/14 6/17 6/20 7/4 7/6 7/11 9/11 12/19 12/24 13/2 13/20 14/7 14/11 14/13 18/6 18/17 19/10 20/14 20/18 20/23 21/1 21/4 22/7 22/11 26/16 26/19 27/1 27/7 27/18 29/5 37/21 37/25 38/19 38/23
**MR. SANDHU: [26]** 3/11 4/22 5/6 5/9 7/13 7/22 8/9 8/20 29/9 29/13 31/6 31/8 31/19 31/25 32/5 33/1 33/5 33/12 33/22 33/24 35/10 35/23 36/22 37/7 37/14 37/18
**THE COURT: [67]**
**THE COURTROOM DEPUTY: [1]** 3/2

**1**

**10 [17]** 7/25 8/20 8/22 10/16 11/16 12/11 13/25 14/19 15/2 15/11 15/13 15/22 16/2 17/24 18/3 19/2 39/11
**10-day [3]** 7/23 13/12 33/17
**100 percent [1]** 27/18
**10th [3]** 7/3 8/14 8/18
**11 [1]** 3/23
**1101 [1]** 11/12
**1158 [3]** 12/24 13/6 13/13
**1229 [3]** 12/2 13/6 15/15
**1252 [10]** 14/8 14/13 31/11 31/12 31/18 31/19 38/6 38/23 38/25 39/2
**12:01 a.m [1]** 7/7
**1331 [1]** 38/21
**1362 [1]** 15/14
**15 [3]** 5/3 8/3 11/17
**150 [1]** 23/25
**1st [1]** 40/10

**2**

**20 [1]** 29/20
**200,000 [1]** 29/16
**20001 [2]** 2/10 2/15
**2000s [1]** 28/10
**2001 [2]** 1/17 11/22
**2002 [2]** 11/22 28/12
**20036 [1]** 1/18
**20043 [2]** 1/15 1/21
**20044 [2]** 2/4 2/7
**2005 [1]** 35/17
**2016 [1]** 22/18
**2019 [1]** 10/5
**2020 [2]** 21/4 23/4
**2025 [1]** 17/16
**2026 [2]** 1/6 40/10
**26-696 [2]** 1/4 3/2
**263,000 [1]** 34/19
**27 [1]** 1/6
**28 [1]** 38/20
**2:00 [1]** 9/2

**3**

**30 [1]** 18/11
**30-day [1]** 14/3
**333 [1]** 2/14
**34553 [2]** 1/14 1/20
**3d [1]** 23/7

**4**

**450 [1]** 2/10
**47 [1]** 11/12
**48 [1]** 6/23
**496 [1]** 21/2
**4:00 p.m [1]** 9/1
**4:02 [1]** 1/7
**4:06 [1]** 5/10

**5**

**500 [1]** 1/18
**524 [1]** 23/7
**5:24 [1]** 39/25
**5th [1]** 2/10

**6**

**65,000 [2]** 17/16 17/19
**6710 [1]** 2/14
**696 [2]** 1/4 3/2
**6th [1]** 7/3

**7**

**705 [5]** 26/11 26/13 26/14 26/20 26/24

**8**

**868 [1]** 2/6
**878 [1]** 2/3
**8th [1]** 7/10

**9**

**919 [1]** 23/7
**9th [15]** 7/3 7/4 7/5 7/7 7/14 7/16 7/18 7/19 8/6 8/8 8/10 8/16 8/18 8/21 38/5

**A**

**a.m [1]** 7/7
**ability [8]** 16/3 16/5 20/6 21/21 22/13 22/14 22/17 36/14
**able [5]** 20/8 31/4 31/7 35/3 36/25
**about [45]**
**above [1]** 40/5
**above-entitled [1]** 40/5
**absolutely [1]** 28/19
**abundance [1]** 3/20
**access [1]** 12/6
**acknowledgment [1]** 17/11
**across [4]** 26/13 26/14 26/16 34/20
**Act [2]** 25/7 35/16
**Action [1]** 1/4
**actually [7]** 8/12 11/18 19/3 24/21 27/1 29/19 32/8
**add [1]** 38/13
**address [1]** 29/17
**adequate [1]** 31/16
**adjudicate [1]** 36/4
**adjudicated [1]** 30/22
**adjudicating [1]** 34/23
**administration [1]** 10/4
**administrative [7]** 13/3 21/16 24/10 25/3 34/12 34/13 38/15
**administratively [1]** 31/17
**admit [1]** 26/2
**affairs [2]** 9/20 9/23
**affect [1]** 37/1
**affects [2]** 10/14 25/13
**affirm [1]** 11/24
**affirmance [2]** 18/16 18/17
**affirming [1]** 18/18
**after [4]** 10/8 12/10 21/6 24/15
**afternoon [5]** 3/7 3/10 3/11 3/14 5/22
**again [4]** 14/20 28/22 32/6 34/4
**Against [1]** 13/18
**agencies [1]** 24/16
**agency [12]** 10/14 13/15 24/23 25/8 26/23 28/6 28/13 28/20 28/21 34/12 34/13 36/6
**ago [1]** 20/24
**agree [1]** 27/3
**agreed [1]** 6/11
**agreement [2]** 4/18 4/19
**ahead [2]** 35/21 35/22
**al [4]** 1/3 1/7 3/3 3/4
**alien [1]** 32/8
**ALJs [1]** 8/8
**all [52]**
**alleged [1]** 17/5
**Allen [1]** 23/10
**Alliance [1]** 21/5
**allow [1]** 11/23
**allowed [2]** 18/8 38/25
**allows [1]** 20/10
**Ally [1]** 3/8
**Allyson [1]** 1/13
**almost [1]** 29/25
**alone [1]** 15/1
**already [2]** 34/13 38/12
**also [11]** 3/17 10/10 12/1 13/4 13/13 14/22 20/1 22/20 23/17 24/15 28/25
**altered [1]** 21/23
**alternatives [2]** 23/1 26/3
**although [7]** 12/21 21/24 31/2 32/16 34/7 38/17 39/20
**always [1]** 4/5
**am [5]** 6/3 26/8 29/10 34/7 37/13
**amended [1]** 11/23
**AMERICAN [1]** 1/16
**AMICA [2]** 1/3 3/3
**amongst [3]** 4/12 4/18 5/1
**amount [1]** 33/9
**another [5]** 14/7 15/13 15/14 24/20 37/2
**answer [2]** 12/22 33/15
**any [11]** 4/19 10/15 14/2 14/21 16/19 16/23 19/7 20/5 28/25 36/15 36/20
**anybody [1]** 7/17
**anymore [1]** 39/16
**anyone [3]** 4/6 9/6 27/4
**anything [6]** 9/6 18/19 24/4 35/18 37/6 37/22
**APA [2]** 34/23 38/11
**APA-type [1]** 34/23
**Apologies [1]** 14/11
**Apparently [1]** 23/8
**appeal [42]**
**appealing [1]** 18/5
**appeals [52]**

**A**

**appear [2]** 15/20 32/9
**appearance [1]** 4/4
**APPEARANCES [3]** 1/12 1/23 2/1
**applicants [1]** 13/14
**application [1]** 8/15
**applications [2]** 12/25 13/14
**applied [1]** 31/8
**applies [5]** 7/15 8/8 12/24 13/13 20/16
**apply [2]** 18/24 22/15
**Appreciate [1]** 6/9
**approach [1]** 3/5
**arbitrary [10]** 11/7 16/10 16/14 22/21 23/18 25/15 26/2 27/22 29/1 30/8
**are [98]**
**area [1]** 35/12
**arguably [1]** 20/7
**argue [1]** 10/21
**argued [1]** 10/10
**arguing [2]** 29/3 34/2
**argument [12]** 10/2 10/4 10/8 10/11 14/25 18/7 19/2 22/22 25/5 33/6 34/17 39/23
**arguments [5]** 11/7 21/7 22/2 30/11 32/5
**arise [3]** 30/13 35/13 36/3
**around [1]** 27/10
**articulate [2]** 13/23 25/8
**as [45]**
**as-applied [1]** 31/8
**aside [3]** 26/12 26/17 26/21
**ask [6]** 4/7 4/25 5/14 23/22 36/8 37/14
**asked [2]** 26/23 27/2
**asking [4]** 19/25 26/11 33/16 36/10
**aspects [1]** 16/15
**assist [1]** 15/19
**assume [2]** 32/23 36/8
**assumes [1]** 33/6
**assumption [1]** 6/10
**asylum [8]** 10/7 12/25 13/14 13/14 13/14 13/21 14/1 16/19
**attention [2]** 22/24 23/7
**audit [1]** 23/10
**automatically [1]** 12/10
**available [1]** 16/20
**Avenue [1]** 2/14
**avoid [1]** 8/15
**away [1]** 17/12

**B**

**back [7]** 5/8 5/8 22/8 22/21 28/6 28/21 29/20
**backlog [5]** 16/18 28/22 29/15 30/2 30/7
**backwards [1]** 24/23
**banc [1]** 11/20
**Bankruptcy [1]** 2/13
**bar [1]** 33/19
**based [4]** 4/8 13/10 15/4 17/5
**basically [2]** 19/2 19/8
**basis [3]** 17/23 35/2 36/20
**Bay [1]** 10/6
**be [68]**
**because [20]** 4/21 7/14 13/21 13/22 14/22 19/16 21/11 23/21 23/22 27/11 27/20 28/16 30/21 31/14 31/15 32/24 34/12 36/20 37/11 38/3
**been [10]** 3/22 10/23 21/25 21/25 24/6 29/19 30/3 36/10 37/25 39/4
**before [16]** 1/10 3/25 5/3 6/4 10/5 12/11 14/6 14/23 15/20 18/25 21/4 21/13 26/24 27/2 31/21 32/3
**beforehand [1]** 6/6
**beginning [2]** 31/1 32/14
**behalf [1]** 3/12
**being [11]** 8/6 11/17 12/15 16/2 17/22 18/13 20/8 27/11 28/1 32/7 35/3
**believe [6]** 7/7 23/17 30/19 31/19 33/12 39/13
**below [1]** 11/18
**Ben [2]** 2/4 2/7
**bench [1]** 4/15
**benefit [3]** 27/12 35/20 35/23
**best [1]** 36/4
**better [2]** 17/6 35/5
**between [1]** 13/23
**BIA [11]** 12/18 14/6 18/4 18/4 19/3 19/4 19/8 23/25 27/12 33/19 33/19
**bit [9]** 5/25 9/3 9/3 14/9 16/11 22/8 22/21 27/13 34/8
**bloc [1]** 10/20
**board [22]** 8/4 9/15 10/20 11/12 11/15 12/5 12/20 13/3 13/8 14/16 16/16 17/1 26/13 26/15 26/16 29/15 29/16 29/22 30/1 30/4 30/5 31/22
**Booz [1]** 23/10
**both [8]** 11/7 13/6 13/16 21/3 22/8 22/14 37/10 38/25
**Box [4]** 1/14 1/20 2/3 2/6
**brief [11]** 3/20 6/8 6/15 6/21 9/2 9/7 19/14 27/23 37/5 37/11 37/22
**briefing [2]** 24/21 37/9
**briefly [4]** 9/24 26/11 37/24 37/25
**briefs [3]** 22/25 24/19 39/24
**bring [3]** 6/25 22/24 36/17
**bringing [1]** 38/14
**build [1]** 5/4
**business [5]** 15/18 16/7 21/8 21/8 22/3

**C**

**CAIR [1]** 10/5
**calendar [1]** 6/25
**called [1]** 16/20
**can [27]** 4/16 4/17 4/19 7/6 9/9 9/11 9/12 10/21 11/1 15/1 17/7 18/12 19/5 19/5 19/6 21/11 23/14 26/7 26/9 28/14 30/7 30/21 34/6 35/11 36/6 37/21 38/25
**can't [3]** 6/6 14/16 19/22
**cannot [2]** 21/21 39/14
**capricious [10]** 11/7 16/11 16/14 22/21 23/19 25/16 26/2 27/22 29/1 30/8
**cared [1]** 9/6
**career [1]** 24/1
**carefully [1]** 30/6
**carried [1]** 10/9
**Carroll [2]** 3/19 3/21
**carry [1]** 10/9
**case [43]**
**cases [20]** 9/24 10/22 11/20 11/24 15/10 16/17 17/20 22/15 26/6 27/10 27/21 27/25 28/9 28/17 29/16 30/2 34/22 35/8 35/13 36/17
**CAT [2]** 13/17 13/25
**categorical [2]** 34/9 35/11
**categorically [2]** 31/4 34/22
**category [2]** 33/6 33/7
**Catherine [1]** 3/19
**cause [1]** 9/25
**caused [1]** 34/3
**CENTER [2]** 1/3 3/3
**Centro [1]** 23/6
**certain [3]** 29/20 30/3 35/12
**certainly [5]** 25/1 34/6 34/25 37/13 37/13
**certified [1]** 38/24
**certify [1]** 40/3
**cetera [1]** 30/24
**challenge [5]** 31/4 31/5 31/7 31/8 38/11
**challenges [3]** 10/7 35/1 37/1
**challenging [2]** 32/17 38/9
**chance [4]** 4/12 4/17 4/25 12/11
**change [5]** 6/6 10/21 11/2 19/20 24/20
**changes [2]** 10/13 24/21
**channeling [1]** 36/16
**character [1]** 24/5
**choice [1]** 25/11
**Chris [1]** 3/13
**Christopher [1]** 2/2
**circuit [7]** 10/6 22/16 22/18 26/19 27/9 30/23 35/13
**circuits [1]** 27/10
**circumstances [2]** 4/10 36/3
**cite [1]** 9/23
**CIV [3]** 2/3 2/6 2/9
**Civil [2]** 1/4 3/2
**claim [5]** 14/2 15/6 17/13 34/4 34/6
**claiming [1]** 31/15
**claims [12]** 13/16 13/25 16/19 19/22 28/7 30/20 30/21 30/21 38/14 39/3 39/12 39/14
**clarify [1]** 27/12
**class [1]** 38/24
**clause [1]** 9/19
**clear [3]** 11/11 16/18 35/17
**clearly [3]** 13/7 14/15 25/14
**Clem [2]** 2/5 3/13
**clerk [1]** 5/7
**clever [1]** 15/10
**client [1]** 20/12
**clients [7]** 15/17 20/7 20/9 21/10 22/13 25/2 25/9
**clients' [1]** 16/5
**Clinic [1]** 23/4
**close [1]** 25/18

**C**

**Cognizant [1]** 6/20
**colleagues [4]** 3/8 3/22 36/9 37/15
**COLUMBIA [1]** 1/1
**come [7]** 5/8 5/8 5/11 8/10 17/14 24/6 24/9
**coming [3]** 3/15 26/24 27/2
**comment [5]** 9/14 25/4 25/8 25/10 25/11
**commissioned [1]** 23/9
**common [1]** 4/1
**community [1]** 24/24
**companion [1]** 15/15
**compared [1]** 21/12
**complete [5]** 12/1 12/5 12/14 14/20 21/21
**completely [2]** 21/22 24/10
**completions [2]** 17/16 17/19
**conceded [1]** 39/13
**conceivable [1]** 14/25
**conceivably [1]** 19/18
**concern [2]** 27/17 37/7
**concerned [1]** 8/15
**conclude [2]** 19/24 34/22
**concluded [1]** 39/25
**concrete [1]** 36/6
**confer [1]** 4/12
**conferred [1]** 27/1
**conflate [1]** 16/10
**conflict [2]** 4/4 11/10
**conflicts [1]** 14/8
**congress [3]** 31/9 35/16 36/23
**cons [1]** 26/4
**consequences [1]** 10/1
**consider [7]** 13/15 16/14 22/23 23/1 23/16 24/16 34/6
**considered [2]** 17/6 30/6
**considering [1]** 23/20
**constituencies [1]** 16/5
**constituents [1]** 21/22
**constitutes [1]** 40/4
**Constitution [1]** 2/14
**constructed [1]** 36/23
**context [5]** 20/17 22/9 22/19 29/14 30/12
**CONTINUED [2]** 1/23 2/1
**contrast [1]** 11/20
**Convention [1]** 13/18
**convince [2]** 19/3 19/4
**convincing [1]** 19/2
**core [6]** 15/18 16/7 21/8 21/8 21/22 22/13
**correct [6]** 7/6 7/10 12/8 17/25 39/7 40/4
**corrected [2]** 10/23 10/24
**correcting [1]** 14/23
**correctly [1]** 39/13
**costs [1]** 26/5
**could [17]** 6/22 6/23 7/21 8/1 8/3 8/12 15/11 19/7 19/18 19/20 20/7 22/21 23/11 25/12 31/10 32/10 37/14
**COUNCIL [1]** 1/16
**counsel [17]** 3/5 3/6 7/6 15/2 15/16 16/3 16/4 29/10 30/15 30/24 32/6 32/15 32/17 39/5 39/7 39/8 39/12
**count [1]** 20/21
**country [2]** 27/10 34/20
**couple [4]** 5/13 10/11 22/24 23/2
**course [5]** 9/18 18/12 24/7 29/12 37/16
**court [49]**
**Court's [4]** 5/1 22/24 23/7 37/7
**courts [17]** 2/13 12/6 14/5 20/9 23/24 25/25 27/15 27/25 28/2 28/8 28/18 28/18 29/24 30/23 35/11 36/18 39/15
**crazy [1]** 19/19
**create [1]** 17/3
**creates [2]** 34/17 35/3
**creating [1]** 17/21
**credibility [1]** 13/5
**cuts [1]** 24/10

**D**

**D.C [3]** 22/18 26/19 27/9
**D.D.C [1]** 9/23
**data [3]** 5/14 17/15 17/17
**date [2]** 7/3 7/5
**Dated [1]** 40/10
**day [18]** 7/20 7/23 8/1 8/4 8/5 8/5 10/9 10/9 11/16 11/17 12/10 13/12 14/3 26/9 30/17 30/23 33/17 40/10
**days [18]** 7/25 8/3 8/20 8/22 10/16 13/25 14/19 15/2 15/11 15/13 15/22 16/2 17/24 18/3 18/11 19/2 22/5 39/11
**DC [8]** 1/5 1/15 1/18 1/21 2/4 2/7 2/10 2/15
**deal [1]** 34/10
**deals [1]** 14/15
**decades [1]** 29/18
**decide [3]** 34/15 35/12 39/15
**decided [3]** 25/21 34/19 38/20
**Decides [1]** 10/20
**decision [20]** 5/4 5/5 5/18 8/18 8/21 8/21 12/10 18/2 20/23 21/1 23/1 23/14 24/13 24/18 26/2 27/4 32/10 32/19 33/8 38/4
**decisions [19]** 7/16 7/20 8/9 8/9 12/12 12/13 14/23 16/25 17/18 17/22 17/22 20/19 21/25 22/9 23/3 23/20 27/16 28/6 35/11
**declarations [4]** 12/13 16/23 21/9 27/19
**Defendant [1]** 2/2
**defendants [6]** 1/8 3/12 6/13 6/14 25/24 27/2
**defendants' [1]** 8/25
**demanding [1]** 22/6
**DEMOCRACY [2]** 1/14 1/20
**deny [4]** 16/19 16/19 16/19 17/3
**Department [1]** 11/22
**deport [1]** 26/7
**described [1]** 15/24
**designed [1]** 16/6
**detail [1]** 21/10
**determination [2]** 11/13 12/21
**determine [1]** 11/19
**did [10]** 3/18 3/25 18/9 22/23 24/25 25/1 27/1 28/9 29/2 36/24
**didn't [11]** 5/14 11/1 13/15 25/4 25/6 25/10 25/11 26/2 26/3 26/4 31/16
**difference [2]** 13/23 18/21
**differences [1]** 36/3
**different [5]** 4/6 22/23 35/24 35/25 36/3
**difficult [2]** 15/25 31/3
**direct [2]** 8/25 11/15
**directed [1]** 17/22
**directing [1]** 23/12
**directly [2]** 12/22 27/16
**directs [2]** 12/20 17/25
**disagreed [1]** 34/14
**discretionary [1]** 13/21
**discussed [2]** 22/8 28/4
**discusses [1]** 39/17
**discussing [1]** 39/4
**discussion [3]** 17/10 36/1 38/6
**discussions [1]** 4/25
**dishonest [1]** 25/19
**dishonesty [1]** 25/18
**dismiss [4]** 12/10 16/21 16/22 27/21
**dismissal [4]** 7/24 8/2 18/18 18/23
**dismissed [6]** 10/19 11/16 11/19 15/6 19/6 19/16
**dismisses [2]** 8/4 33/19
**dismissing [1]** 16/25
**dispute [1]** 10/15
**distinct [1]** 24/12
**district [8]** 1/1 1/1 1/11 2/13 16/21 27/15 35/18 36/20
**do [36]** 4/15 5/16 6/10 8/23 8/25 9/8 9/9 11/1 14/20 15/1 15/11 15/12 15/24 16/1 16/2 18/9 18/24 21/3 21/18 21/19 21/20 23/3 23/8 23/11 23/13 24/9 24/17 25/4 25/6 25/10 25/11 28/11 28/22 30/23 38/15 38/25
**does [9]** 11/15 12/17 13/2 14/18 18/23 25/8 30/19 33/19 34/8
**doesn't [14]** 4/21 6/6 10/21 12/22 13/6 13/7 13/9 13/22 16/12 17/10 23/16 24/17 27/9 28/25
**doing [3]** 17/8 23/9 35/7
**DOJ [5]** 2/3 2/6 2/9 16/15 17/17
**DOJ-CIV [3]** 2/3 2/6 2/9
**don't [35]** 3/23 4/9 4/24 5/2 5/7 8/23 9/20 10/11 10/15 10/21 12/3 14/16 14/18 14/24 16/22 17/14 18/14 19/4 19/4 19/15 19/17 24/11 25/23 26/8 32/18 32/24 32/25 33/1 33/12 33/12 34/14 36/20 38/1 38/2 38/15
**done [10]** 9/9 15/6 19/4 23/23 24/2 25/24 26/25 27/6 30/1 38/12
**down [5]** 14/9 20/9 28/16

**D**

**down... [2]** 38/1 39/6
**Draconian [1]** 23/4
**draft [2]** 6/3 6/5
**dramatically [2]** 9/15 24/20
**draw [1]** 23/6
**due [3]** 9/18 27/23 30/16
**during [1]** 28/9
**duty [1]** 20/10

**E**

**each [2]** 24/12 34/20
**earlier [2]** 6/1 6/7
**early [2]** 6/22 28/9
**easier [2]** 6/7 39/23
**East [1]** 10/6
**echo [1]** 37/7
**effect [1]** 7/15
**effective [4]** 7/3 7/5 7/8 17/21
**effectively [3]** 15/2 20/8 23/22
**effects [2]** 22/3 25/2
**effectuated [1]** 17/7
**efficiency [3]** 15/8 17/5 26/4
**efficient [7]** 23/12 25/20 25/22 25/25 28/7 28/15 35/7
**efficiently [1]** 29/21
**EIOR [2]** 17/17 29/17
**eliminates [1]** 14/22
**else [2]** 25/24 37/6
**emphasizing [1]** 29/14
**en [2]** 10/19 11/19
**end [3]** 4/21 27/11 35/5
**endeavor [1]** 6/22
**engage [2]** 8/13 16/20
**enough [3]** 18/8 30/4 32/21
**entirely [2]** 15/10 15/10
**entities [1]** 25/9
**entitled [2]** 24/24 40/5
**EOIR [2]** 23/8 23/11
**equivalent [4]** 16/21 27/13 34/21 39/22
**Erez [2]** 1/19 3/7
**errors [1]** 12/8
**especially [1]** 35/17
**essence [1]** 20/11
**essential [2]** 22/14 22/17
**essentially [11]** 9/24 10/25 11/15 12/7 15/23 17/9 19/12 19/12 24/7 29/25 30/13
**establish [1]** 36/25
**et [5]** 1/3 1/7 3/3 3/4 30/24
**even [8]** 11/2 12/11 17/11 28/22 28/24 32/11 36/1 38/14
**events [1]** 24/12
**eventually [1]** 21/18
**ever [5]** 16/22 16/25 21/14 24/21 36/19
**every [9]** 10/17 14/14 14/25 18/7 19/13 26/9 30/17 30/23 35/24
**everyone [7]** 13/8 13/24 14/2 16/1 23/14 25/21 35/6
**everything [3]** 9/9 21/13 25/24
**exact [1]** 9/24
**exactly [3]** 14/21 31/14 38/7
**example [3]** 15/21 27/18 32/5
**examples [1]** 16/23
**exception [1]** 19/24
**exclusive [1]** 31/12
**executable [1]** 28/24
**EXECUTIVE [3]** 1/6 3/3 30/5
**exhaust [1]** 34/1
**exhausted [3]** 15/5 19/22 34/15
**exhaustion [10]** 14/4 14/13 18/24 19/20 19/24 28/4 33/22 34/10 38/16 39/16
**expansive [1]** 33/18
**expect [1]** 11/21
**expedited [4]** 31/20 31/25 38/17 39/2
**experienced [1]** 24/1
**explain [1]** 13/22
**extension [1]** 23/22
**extensive [2]** 21/10 21/15
**extent [2]** 18/21 20/18

**F**

**fact [3]** 13/2 29/3 30/12
**facts [2]** 35/24 36/6
**factual [1]** 36/3
**failed [2]** 16/14 34/1
**failure [1]** 23/1
**fair [2]** 16/10 25/25
**fairly [1]** 34/9
**fall [1]** 31/18
**familiar [2]** 10/3 20/20
**far [2]** 21/10 21/15
**fashion [2]** 9/10 23/15
**fast [7]** 16/17 17/2 17/2 17/2 17/4 17/4 17/4
**faster [4]** 15/9 25/21 25/21 26/10
**fastest [1]** 11/4
**February [1]** 1/6
**federal [2]** 10/12 16/21
**feels [1]** 27/13
**few [4]** 12/19 16/17 17/13 20/23
**fewer [1]** 21/10
**fiduciary [1]** 20/10
**figure [3]** 17/23 18/21 39/11
**file [11]** 6/22 8/14 8/18 10/16 13/16 13/24 18/3 18/11 24/19 32/22 33/18
**filed [7]** 7/25 8/1 8/8 8/11 9/1 9/2 14/19
**filing [4]** 6/12 6/14 6/17 32/9
**filled [1]** 24/3
**final [4]** 17/18 17/19 28/24 32/10
**financial [1]** 21/17
**find [4]** 15/22 15/23 16/3 22/16
**fine [2]** 9/8 37/24
**finish [1]** 35/21
**fired [1]** 23/25
**firm [2]** 3/23 4/2
**first [5]** 10/3 12/20 26/24 26/24 35/10
**flag [1]** 39/6
**Flexibility [1]** 25/7
**focus [1]** 37/11
**focused [2]** 22/1 22/4
**folks [1]** 13/14
**force [1]** 21/19
**foregoing [1]** 40/4
**foreign [2]** 9/20 9/23
**forgetting [1]** 37/3
**forgotten [1]** 20/22
**former [1]** 19/11
**forward [4]** 1/14 1/20 39/3 39/24
**found [1]** 23/18
**FOUNDATION [2]** 1/14 1/20
**framework [4]** 31/9 31/11 35/15 35/19
**Francisco [2]** 23/6 23/18
**Franklin [2]** 2/4 2/7
**frankly [1]** 4/10
**Friday [6]** 5/23 6/4 6/10 6/21 6/24 7/2
**friend [2]** 30/14 36/2
**front [6]** 16/22 19/13 23/5 26/21 35/5 36/20
**full [4]** 10/19 16/9 19/14 32/2
**function [2]** 9/20 9/23
**functionally [1]** 19/14
**functions [1]** 36/15
**fundamental [5]** 16/14 21/17 26/1 28/5 39/9
**fundamentally [3]** 16/6 20/6 22/3
**funded [2]** 21/18 21/19
**funneled [1]** 35/1
**further [2]** 30/7 37/9
**futile [2]** 34/16 34/22
**futility [3]** 19/24 34/10 34/18

**G**

**gaps [1]** 24/3
**gave [1]** 29/3
**get [22]** 4/16 5/3 5/4 7/21 11/1 12/11 15/12 16/22 18/2 18/14 19/4 21/14 21/16 23/23 24/21 26/5 27/14 27/25 28/1 32/2 32/10 38/4
**gets [2]** 21/13 24/22
**getting [1]** 16/25
**give [8]** 4/17 4/24 8/16 9/3 9/6 28/13 29/6 33/16
**given [4]** 3/17 9/5 25/4 29/2
**gives [2]** 4/4 25/14
**go [15]** 11/19 15/3 16/17 17/2 22/21 25/20 27/16 28/17 31/21 32/20 32/22 35/21 35/21 36/21 38/10
**goal [1]** 15/9
**goals [1]** 17/7
**goes [3]** 7/15 13/3 22/20
**going [45]**
**gone [2]** 10/23 39/12
**good [6]** 3/7 3/10 3/11 3/14 5/16 39/20
**got [3]** 14/9 18/3 29/9
**governing [1]** 10/7
**government [6]** 7/6 11/21 17/8 29/25 30/12 30/25
**government's [1]** 7/13
**Granted [1]** 22/11
**grants [1]** 21/15
**grapples [1]** 39/17

**G**

**great [1]** 4/19
**ground [2]** 16/20 24/8
**group [1]** 23/10
**groups [1]** 4/2
**growing [1]** 30/2
**guess [6]** 7/20 8/3 18/13 18/20 33/5 34/18
**guessing [1]** 28/20
**gun [1]** 6/1
**gutted [1]** 23/24

**H**

**had [7]** 4/10 4/12 10/2 27/5 34/15 37/2 37/12
**hallmark [3]** 22/25 24/13 26/1
**Hamilton [1]** 23/10
**hands [1]** 18/22
**handy [1]** 12/3
**haphazard [1]** 30/9
**happen [8]** 8/2 8/3 8/6 14/24 28/2 28/8 32/24 32/25
**happened [2]** 14/21 32/24
**happening [1]** 23/13
**happy [3]** 4/16 9/6 29/8
**hard [1]** 32/20
**harder [1]** 17/13
**harm [8]** 19/22 21/7 22/9 22/11 22/16 22/20 25/17 37/8
**harmed [1]** 7/17
**harmful [1]** 15/17
**harms [5]** 21/8 22/12 22/13 22/13 25/8
**has [17]** 4/6 13/24 14/2 14/13 14/15 14/24 23/22 28/11 29/16 29/17 30/1 30/2 30/3 30/4 30/5 32/23 33/25
**have [116]**
**haven't [2]** 3/22 19/21
**having [6]** 6/20 10/18 14/21 23/20 35/8 36/17
**head [1]** 38/7
**heads [1]** 25/23
**hear [5]** 5/17 9/7 25/16 28/3 29/8
**heard [1]** 39/13
**hearing [12]** 1/10 5/3 5/15 5/22 6/1 6/2 6/4 6/4 6/10 6/21 16/10 20/15
**held [2]** 14/15 33/25
**help [3]** 8/13 21/11 27/12
**helpful [5]** 6/21 9/11 20/19 30/3 38/4
**her [2]** 3/24 4/2
**here [15]** 6/25 10/9 11/1 12/10 15/6 16/11 21/17 23/5 25/14 27/17 28/19 30/19 31/14 31/20 34/17
**him [1]** 39/13
**Hippocratic [1]** 21/5
**hit [1]** 38/6
**hold [1]** 19/19
**Honor [17]** 3/7 3/11 4/14 4/22 5/12 6/9 9/12 14/11 19/10 22/7 31/6 31/19 35/10 37/18 37/25 38/12 39/18
**HONORABLE [1]** 1/10
**hope [1]** 38/2
**hours [2]** 6/23 21/12
**how [13]** 9/21 9/21 10/21 12/13 12/14 17/14 20/16 22/2 25/2 25/13 28/7 28/13 32/7
**However [1]** 34/2
**huge [1]** 17/20
**hugely [1]** 35/6
**human [1]** 11/17
**humanly [2]** 16/17 26/7
**hundreds [3]** 9/22 21/12 21/12
**hurdle [1]** 35/3

**I**

**I'd [2]** 9/6 22/24
**I'll [1]** 39/6
**I'm [20]** 4/16 6/4 6/14 6/25 7/7 8/9 8/24 8/25 9/10 16/10 18/20 18/21 19/25 19/25 20/3 22/4 28/20 30/4 34/18 37/3
**I've [1]** 37/12
**Ian [1]** 2/2
**ID [1]** 35/16
**idea [2]** 5/17 14/21
**identified [2]** 18/10 32/17
**identify [2]** 22/25 26/3
**IFR [3]** 9/25 11/9 11/14
**ignore [1]** 25/23
**IJ [4]** 8/21 18/16 18/25 33/11
**Illston [1]** 23/17
**imagine [1]** 20/5
**IMMIGRANT [2]** 1/3 3/3
**immigration [39]** 1/7 1/16 2/9 3/4 7/15 8/10 8/21 9/21 10/20 12/5 12/8 12/21 13/8 14/22 15/18 15/21 16/16 16/19 16/24 17/1 17/2 17/8 17/18 17/20 18/3 21/2 23/13 23/24 24/1 24/4 24/6 25/25 29/15 29/22 30/2 30/5 31/22 32/3 32/3
**impaired [1]** 22/17
**important [4]** 23/17 29/15 31/25 37/2
**importantly [2]** 11/10 35/15
**impossible [2]** 9/16 15/12
**INA [5]** 12/1 16/8 25/13 27/24 36/16
**include [1]** 37/5
**included [1]** 33/20
**including [1]** 10/17
**increased [1]** 30/2
**indigent [1]** 32/18
**individual [6]** 7/23 11/23 15/1 19/13 31/3 33/20
**individual's [1]** 16/3
**individualized [1]** 35/20
**individually [1]** 36/5
**individuals [15]** 9/17 10/16 12/5 12/11 12/16 32/2 33/2 33/7 38/8 38/9 38/13 38/14 39/1 39/1 39/11
**inflicted [1]** 25/12
**informed [1]** 29/10
**infringed [1]** 32/7
**infringement [1]** 30/15
**initiated [1]** 29/20
**initiation [1]** 28/23
**injunction [1]** 39/22
**injury [6]** 20/1 20/2 20/4 20/16 22/1 22/5
**INS [1]** 28/12
**instances [1]** 38/2
**instead [1]** 23/20
**insufficient [1]** 31/15
**intend [1]** 36/24
**intended [1]** 36/23
**interaction [1]** 24/11
**interest [1]** 24/25
**interested [1]** 11/5
**interests [3]** 16/7 22/13 24/17
**interferes [4]** 11/9 16/3 16/4 20/6
**interfering [1]** 36/14
**international [1]** 9/25
**intersect [1]** 24/12
**involved [1]** 16/1
**irrational [2]** 16/13 28/15
**irreparable [8]** 20/1 20/2 20/4 20/16 22/1 22/5 25/16 37/8
**is [196]**
**is being [1]** 18/13
**isn't [2]** 35/4 39/16
**issue [25]** 4/4 4/9 9/14 10/17 10/20 16/24 17/22 18/11 19/7 19/16 20/13 28/6 29/18 30/11 31/20 33/17 33/20 34/1 34/3 34/11 34/21 35/9 35/11 35/12 38/24
**issued [3]** 7/16 7/21 33/8
**issues [18]** 4/19 6/8 14/5 18/5 18/25 19/15 20/11 24/22 27/12 29/22 29/23 30/1 30/13 30/13 30/16 30/17 34/10 35/4
**issuing [2]** 13/16 17/21
**it [95]**
**it's [44]**
**iteration [1]** 23/9
**its [1]** 6/2
**itself [1]** 19/16

**J**

**Josh [1]** 3/13
**Joshua [1]** 2/5
**judge [10]** 1/11 8/21 10/5 15/21 17/18 18/3 23/5 23/17 31/22 36/10
**judge's [1]** 7/16
**judges [18]** 8/10 11/23 12/9 14/22 16/19 16/24 17/3 17/20 23/13 23/25 24/1 24/4 24/6 28/18 28/18 32/3 34/15 34/19
**judicial [1]** 24/11
**jurisdiction [2]** 30/20 38/20
**jurisdictional [2]** 33/24 33/25
**just [44]**
**Justice [1]** 11/22

**K**

**keep [1]** 30/4
**Kelly [1]** 10/5
**key [1]** 5/13
**kicking [1]** 28/16
**kitchen [1]** 14/24
**know [20]** 3/21 4/7 5/7 5/25 7/25 15/7 24/1 24/15 27/13

**K**

**know... [11]** 30/15 32/19 32/24 32/25 33/13 34/24 35/7 35/13 35/16 37/5 38/1
**knowledge [1]** 4/8
**knows [1]** 35/6

**L**

**large [2]** 33/7 33/13
**larger [1]** 28/23
**last [6]** 3/23 5/3 20/24 26/11 29/9 29/18
**later [8]** 3/17 4/8 5/18 5/22 7/20 9/1 9/2 37/6
**latter [1]** 19/11
**law [3]** 15/4 19/21 35/12
**lawyer [3]** 20/10 20/11 32/20
**lawyers [1]** 3/19
**lay [3]** 11/8 12/13 21/9
**lead [1]** 21/10
**League [1]** 22/18
**least [3]** 7/19 27/3 38/18
**Legal [1]** 23/6
**length [1]** 19/14
**Leon [1]** 23/5
**less [4]** 23/3 25/25 25/25 25/25
**let [10]** 3/21 4/7 5/7 6/24 6/25 15/1 29/6 35/21 35/21 37/5
**Let's [1]** 7/2
**letter [1]** 34/12
**life [1]** 39/22
**light [1]** 11/24
**like [13]** 5/15 13/21 20/5 22/24 24/19 27/13 29/7 29/8 29/13 29/23 36/11 36/17 39/20
**likely [1]** 6/2
**likes [1]** 25/21
**limited [1]** 26/22
**Lindsay [3]** 2/12 40/3 40/12
**line [1]** 17/12
**list [2]** 18/5 18/6
**listed [1]** 3/19
**literally [2]** 14/24 35/8
**litigate [2]** 11/3 35/8
**litigation [3]** 2/9 29/24 34/23
**little [12]** 5/25 6/7 8/24 9/3 9/3 14/9 16/11 17/3 20/1 22/8 27/13 34/8
**lives [1]** 24/8
**load [1]** 19/13
**longer [2]** 10/23 28/24
**look [10]** 11/18 18/24 19/18 19/19 20/5 25/23 28/8 28/18 37/12 39/24
**looked [2]** 30/1 30/6
**looking [1]** 17/15
**lose [5]** 8/21 15/9 26/6 28/4 34/14
**losing [1]** 20/12
**lot [2]** 9/3 36/2
**Lots [1]** 33/1
**lowered [1]** 23/24
**lucky [1]** 18/8

**M**

**made [9]** 3/16 10/2 10/4 10/6 10/7 12/1 12/9 12/11 35/17
**magic [1]** 13/7
**majority [6]** 9/16 10/22 12/12 15/22 33/10 39/7
**make [22]** 4/20 6/5 6/8 9/9 9/10 11/12 12/7 12/21 13/9 15/9 16/17 17/8 17/25 18/7 23/11 25/22 25/24 26/20 27/5 28/22 30/12 39/22
**makes [5]** 6/7 9/16 18/20 24/20 32/6
**making [6]** 15/12 17/5 21/6 23/1 24/14 26/2
**mandatory [2]** 13/20 13/20
**manner [1]** 10/13
**many [3]** 21/15 29/23 30/20
**March [6]** 7/3 7/16 7/18 8/6 38/5 40/10
**March 6th [1]** 7/3
**March 9th [4]** 7/16 7/18 8/6 38/5
**Mathur [2]** 1/16 3/9
**matter [2]** 5/22 40/5
**may [11]** 13/8 17/12 18/15 20/21 21/25 21/25 23/2 32/17 36/18 36/18 38/3
**maybe [5]** 7/20 9/7 19/14 27/13 35/14
**me [30]** 3/12 4/7 4/15 4/16 5/2 5/4 5/4 5/8 5/17 5/25 6/2 6/7 6/24 6/25 7/7 8/16 9/3 9/6 9/8 18/21 20/20 29/6 34/8 34/13 34/13 34/24 35/21 37/5 37/24 39/21
**mean [8]** 6/6 6/13 7/9 8/16 26/6 32/13 34/7 34/24
**means [2]** 5/21 10/22
**mechanically [1]** 11/16
**mechanism [2]** 11/15 38/10
**mentioned [3]** 13/11 13/13 14/14
**merits [2]** 16/22 16/25
**microphone [1]** 4/20
**might [6]** 9/25 19/23 21/18 24/19 31/4 31/7
**mind [1]** 4/3
**minute [1]** 4/16
**minutes [1]** 5/3
**misses [1]** 33/17
**mistakes [1]** 24/7
**model [1]** 21/8
**moment [2]** 12/3 37/14
**Monday [1]** 5/18
**month [2]** 17/16 17/20
**months [4]** 20/24 28/17 32/10 32/11
**more [19]** 6/1 9/3 9/4 15/25 16/9 20/19 21/15 22/1 22/4 22/6 23/12 23/21 25/17 25/20 25/22 26/10 33/18 35/6 35/14
**morning [2]** 5/23 7/19
**MOSS [1]** 1/10
**most [4]** 11/5 11/10 11/11 34/25
**motion [1]** 16/21
**move [2]** 25/6 39/3
**moving [2]** 9/5 15/8
**Mr [1]** 29/6
**Ms. [1]** 3/21
**Ms. Carroll [1]** 3/21
**much [2]** 9/12 39/9
**my [16]** 3/8 3/11 4/3 4/8 6/3 6/25 21/25 26/8 29/10 30/14 33/5 34/11 36/2 37/13 37/14 39/21

**N**

**N.W [1]** 1/17
**nail [1]** 38/7
**name [2]** 3/6 3/11
**narrow [1]** 27/12
**nationwide [1]** 26/22
**nature [1]** 34/9
**need [9]** 4/20 5/4 5/18 5/21 7/9 12/6 15/22 15/23 24/16
**neglected [1]** 5/13
**negotiated [1]** 5/14
**negotiations [1]** 10/1
**never [3]** 10/8 19/5 24/5
**news [1]** 26/9
**next [4]** 1/23 8/2 22/5 32/19
**night [1]** 29/9
**Ninth [1]** 10/6
**no [26]** 1/4 4/14 4/22 5/18 5/22 9/1 9/2 10/23 11/17 12/16 14/12 16/2 17/10 17/24 17/25 23/22 24/5 24/18 24/19 24/22 27/4 28/4 29/3 34/11 35/18 38/9
**noncitizen [1]** 7/23
**noncitizens [1]** 11/3
**noon [1]** 7/2
**normal [4]** 18/12 23/15 31/21 39/1
**Northwest [1]** 21/1
**not [64]**
**note [2]** 3/18 30/25
**nothing [6]** 11/1 28/2 28/10 28/11 28/19 36/15
**notice [12]** 9/14 10/18 14/19 18/4 19/13 25/4 25/8 25/9 25/11 32/9 33/18 33/21
**notices [1]** 10/16
**now [16]** 3/23 12/12 17/23 19/21 19/21 21/11 21/13 21/19 23/13 26/19 27/16 29/16 29/24 30/1 32/20 37/3
**number [8]** 3/2 11/9 17/15 17/20 23/11 23/25 30/2 30/10
**numerous [1]** 29/17
**NW [2]** 2/10 2/14

**O**

**O.A [3]** 10/3 38/12 38/17
**objection [1]** 4/22
**obtain [2]** 32/14 32/17
**obvious [2]** 11/5 12/4
**obviously [3]** 3/24 6/1 22/6
**occasions [2]** 4/3 4/11
**occur [1]** 9/22
**occurs [1]** 5/13
**off [4]** 4/15 4/24 24/10 29/13
**offhand [1]** 33/13
**OFFICE [4]** 1/6 2/9 3/4 30/5
**Official [3]** 2/13 40/3 40/13
**oh [2]** 28/3 28/7
**okay [9]** 4/24 5/24 6/16 6/19 7/12 8/23 17/23 22/10 27/5
**once [4]** 7/25 15/3 24/23

**O**

**once... [1]** 35/12
**one [31]** 3/19 4/4 6/11 8/1 8/4 8/6 10/13 10/14 10/21 11/4 12/14 16/8 16/12 16/13 20/7 21/4 21/6 22/25 23/7 23/12 23/22 25/5 27/8 28/3 30/11 30/24 31/25 32/5 38/2 39/6 39/9
**only [5]** 4/25 7/15 8/8 33/9 39/21
**opinion [2]** 7/10 7/14
**opportunity [2]** 29/7 31/16
**opposing [3]** 36/9 39/5 39/7
**opposite [1]** 23/13
**opposition [3]** 6/12 6/15 8/25
**oral [5]** 12/12 14/23 16/24 17/21 17/22
**order [4]** 3/15 18/15 28/24 34/21
**orders [3]** 31/14 35/18 39/2
**organization [2]** 36/21 37/8
**organization's [1]** 22/16
**organizational [3]** 21/6 21/7 22/3
**organizational-harm [1]** 21/7
**organizations [10]** 15/17 15/18 20/2 25/2 25/13 36/12 36/16 36/24 38/8 39/3
**other [16]** 4/10 8/16 11/6 13/16 17/7 21/25 23/18 24/12 27/10 29/10 30/14 30/16 32/6 35/13 36/2 39/6
**others [2]** 22/15 22/19
**otherwise [2]** 4/21 13/9
**our [22]** 9/21 11/4 11/8 12/3 12/13 15/17 16/5 16/13 16/23 19/11 19/11 19/20 20/15 21/15 23/2 23/4 25/2 25/5 25/9 27/19 27/19 38/7
**out [13]** 3/20 4/23 5/8 5/8 8/10 9/21 11/8 12/13 16/18 17/23 18/21 21/9 39/12
**outcomes [2]** 10/15 10/22
**outlined [1]** 29/18
**over [9]** 3/23 4/1 22/4 28/22 29/16 29/18 30/10 31/13 39/21
**overlaps [1]** 22/22
**overwhelmed [1]** 27/11
**own [1]** 17/15

**P**

**p.m [5]** 1/7 5/10 9/1 9/2 39/25
**P.O [4]** 1/14 1/20 2/3 2/6
**PAGE [1]** 1/23
**papers [7]** 9/21 11/8 11/21 12/4 23/2 27/19 29/9
**Papu [2]** 2/8 3/12
**paragraphs [1]** 10/12
**part [2]** 14/7 38/18
**partially [2]** 20/11 38/19
**particular [2]** 15/16 23/12
**particularly [2]** 15/17 32/18
**parties [2]** 4/12 26/22
**party [1]** 25/14
**past [1]** 4/11
**Pause [2]** 7/1 37/17
**pay [1]** 32/21
**people [12]** 12/25 15/7 15/9 15/19 15/20 15/22 17/12 24/1 26/6 33/10 35/3 39/7
**people's [2]** 24/5 24/8
**percent [1]** 27/18
**percentage [1]** 33/13
**perfect [3]** 9/17 12/7 15/24
**perfecting [1]** 21/11
**perform [1]** 36/15
**perfunctory [1]** 17/12
**perhaps [5]** 7/20 20/9 27/9 34/20 35/14
**period [4]** 7/23 15/23 33/17 37/11
**perspective [2]** 11/4 38/7
**pertains [1]** 31/20
**petition [2]** 21/14 38/16
**petitions [2]** 11/3 14/15
**placed [1]** 32/8
**places [1]** 12/19
**plaintiff [1]** 36/11
**plaintiff's [1]** 3/6
**plaintiffs [10]** 1/4 1/13 3/8 6/11 6/17 20/3 21/9 21/16 22/4 29/23
**plaintiffs' [2]** 3/20 33/5
**please [1]** 3/5
**plenty [3]** 32/13 32/14 37/5
**Pmb2026 [1]** 1/17
**podium [1]** 3/5
**point [6]** 5/14 8/5 31/10 32/1 33/5 34/11
**points [2]** 35/10 38/3
**portion [1]** 33/13
**position [2]** 5/2 25/10
**possible [8]** 4/6 16/17 16/18 17/3 18/7 26/7 30/15 38/10
**potentially [4]** 10/23 21/12 24/10 39/3
**practically [2]** 13/12 13/24
**practice [2]** 4/1 9/15
**pre [1]** 23/9
**pre-iteration [1]** 23/9
**precedent [2]** 26/19 36/25
**precisely [1]** 30/21
**precluded [1]** 34/1
**preemptively [1]** 26/21
**preferable [1]** 34/18
**preliminarily [1]** 18/14
**preliminary [2]** 37/4 39/22
**prepare [1]** 18/12
**prepared [4]** 9/8 20/13 25/17 33/15
**present [2]** 15/4 38/11
**presented [1]** 34/4
**presents [1]** 10/13
**presumption [2]** 10/19 13/5
**pretermission [1]** 16/20
**prevented [1]** 20/8
**preview [2]** 9/6 37/23
**prior [1]** 18/9
**pro [11]** 15/1 15/21 16/2 16/3 26/4 32/12 32/13 33/8 33/11 39/9 39/11
**probably [6]** 5/16 6/3 6/4 17/6 20/19 35/7
**problem [6]** 16/15 21/17 26/3 28/5 28/16 30/6
**problems [2]** 11/6 39/10
**procedural [2]** 10/10 10/12
**procedure [3]** 24/23 24/24 29/21
**procedures [2]** 7/24 33/2
**proceed [2]** 18/8 18/15
**proceeding [3]** 28/23 31/3 32/9
**proceedings [22]** 9/21 15/19 17/9 23/12 30/14 30/17 30/22 31/21 32/2 33/3 33/11 34/5 36/12 36/13 38/8 38/9 38/10 38/11 39/1 39/8 39/25 40/5
**process [16]** 9/4 9/19 19/6 19/9 20/4 20/7 21/14 27/23 30/16 31/15 32/7 34/3 35/20 36/5 37/1 38/16
**processing [1]** 29/21
**progress [1]** 6/5
**projects [1]** 4/1
**proposal [1]** 6/11
**proposals [1]** 5/13
**provide [4]** 13/2 22/14 22/17 31/12
**provided [1]** 23/10
**provision [5]** 13/4 15/13 15/14 15/15 33/22
**provisions [6]** 11/9 13/4 13/10 16/8 31/12 36/16
**Pryby [2]** 2/2 3/13
**public [1]** 25/20
**purporting [1]** 11/2
**purpose [1]** 12/15
**pursue [1]** 12/8
**push [1]** 22/7
**pushed [1]** 21/13
**put [3]** 5/2 7/2 10/18
**puts [1]** 5/25
**putting [2]** 11/21 29/7

**Q**

**question [6]** 12/22 19/10 22/5 33/16 34/23 37/3
**questions [3]** 19/25 31/13 36/9
**quick [3]** 9/13 33/9 38/3
**quickest [1]** 11/6
**quickly [3]** 8/4 24/6 26/7
**quiet [1]** 38/1
**quite [3]** 14/15 33/1 34/18
**quo [1]** 28/5

**R**

**radar [1]** 37/13
**RAICES [1]** 20/23
**raise [12]** 14/16 14/17 14/19 14/24 19/5 19/7 19/17 19/22 34/14 35/3 36/19 37/6
**raised [9]** 14/6 14/6 18/10 18/25 19/8 29/23 30/17 30/22 39/14
**raising [5]** 17/13 29/24 33/20 34/1 34/11
**RANDOLPH [1]** 1/10
**rather [3]** 3/17 4/8 13/21
**rational [1]** 28/15
**rationale [1]** 34/25
**reach [1]** 27/3
**read [1]** 9/7
**reading [1]** 39/24

**R**

**ready [3]** 5/8 32/20 32/22
**real [2]** 10/15 35/16
**reality [1]** 25/23
**really [7]** 14/1 22/4 25/18 25/18 26/3 26/6 36/1
**reason [4]** 16/23 19/25 28/16 33/7
**reasoning [1]** 22/16
**reasons [5]** 16/13 23/19 32/16 34/25 39/4
**rebuttable [1]** 13/5
**recall [2]** 38/20 38/24
**Recess [1]** 5/10
**recognize [1]** 12/17
**recommendations [1]** 23/11
**record [22]** 3/6 3/18 4/21 11/18 12/1 12/5 12/6 12/12 12/15 12/16 14/20 15/2 15/12 16/2 17/3 17/24 18/1 23/21 23/23 28/19 38/11 40/5
**records [1]** 17/21
**reduce [1]** 30/7
**refer [1]** 13/5
**referring [1]** 21/25
**regard [1]** 36/25
**Regents [1]** 24/15
**register [1]** 10/12
**regulated [2]** 24/24 25/14
**regulation [1]** 13/15
**regulations [1]** 10/7
**Regulatory [1]** 25/7
**related [4]** 16/11 31/13 32/1 35/18
**relationship [2]** 4/3 4/9
**reliance [3]** 24/16 24/22 24/25
**relied [1]** 22/19
**relief [5]** 13/17 13/21 13/23 14/2 17/3
**rely [4]** 11/22 12/16 23/14 24/24
**remand [2]** 28/13 28/21
**remember [3]** 3/23 21/3 32/1
**removal [28]** 13/17 13/17 17/9 28/23 28/24 30/14 30/17 30/22 31/3 31/13 31/15 31/20 31/21 31/25 32/8 33/2 33/3 34/4 35/18 35/19 36/5 36/12 36/13 37/1 38/8 38/17 39/1 39/2
**removals [2]** 26/10 35/1
**removed [1]** 11/24
**reply [3]** 6/17 6/21 9/1
**reporter [5]** 2/12 2/13 14/10 40/3 40/13
**represent [2]** 20/6 20/8
**represented [4]** 15/1 33/2 33/14 39/8
**request [1]** 37/10
**required [3]** 9/18 11/18 25/5
**requirement [2]** 14/5 14/14
**requirements [1]** 27/21
**requires [7]** 11/12 12/1 12/14 19/13 25/7 27/23 27/24
**requiring [1]** 10/16
**resolve [2]** 4/19 35/5
**resolved [1]** 35/2
**resource [1]** 21/15
**respect [2]** 14/5 22/2
**response [1]** 37/2
**result [2]** 27/8 30/7
**Reuveni [2]** 1/19 3/8
**review [19]** 1/7 3/4 11/3 14/15 16/17 21/14 24/11 27/12 27/24 28/2 28/10 28/12 28/14 30/5 30/20 31/12 32/22 35/18 38/16
**reviewed [2]** 18/14 36/6
**reviewing [1]** 14/22
**RFA [1]** 25/6
**rid [1]** 27/14
**right [45]**
**rights [7]** 1/3 3/3 11/2 15/18 15/25 21/2 36/24
**rise [1]** 4/4
**risk [1]** 13/25
**road [3]** 20/9 26/20 28/17
**Room [1]** 2/14
**RPR [1]** 40/12
**rubber [1]** 17/9
**rule [57]**
**ruled [2]** 29/25 38/14
**rules [4]** 11/23 19/20 27/24 35/6
**ruling [1]** 18/10
**run [1]** 13/22
**rush [1]** 27/21

**S**

**said [7]** 4/8 26/4 27/4 28/11 37/22 38/21 38/23
**same [9]** 10/2 10/4 10/5 10/6 15/11 15/23 16/15 22/12 22/12
**San [2]** 23/6 23/17
**sand [1]** 25/23
**Sandhu [3]** 2/8 3/12 29/6
**say [19]** 9/24 9/24 11/6 11/17 13/7 14/18 15/11 17/23 19/19 21/9 25/4 28/2 28/4 28/10 28/19 29/17 35/23 36/9 37/23
**saying [5]** 8/7 18/15 30/4 34/21 36/14
**says [3]** 19/16 24/18 26/20
**schedule [7]** 3/16 4/13 4/17 5/1 5/2 24/19 24/21
**SCHEDULING [1]** 1/10
**scheme [1]** 35/15
**Scher [2]** 1/13 3/8
**se [10]** 15/1 15/21 16/2 16/3 32/12 32/13 33/8 33/11 39/9 39/11
**seat [1]** 25/14
**secondly [1]** 35/14
**section [4]** 15/15 27/22 31/11 31/11
**see [12]** 3/18 4/9 6/24 6/25 8/7 8/7 8/12 9/20 10/21 27/9 32/23 39/23
**seeing [1]** 14/20
**seek [1]** 32/14
**seekers [1]** 14/1
**seem [1]** 10/11
**seen [2]** 4/2 23/2
**self [2]** 8/13 25/12
**self-inflicted [1]** 25/12
**sending [1]** 28/6
**sense [2]** 3/16 13/9
**sensitive [1]** 5/1
**sent [1]** 34/13
**series [1]** 10/6
**seriously [1]** 10/11
**serve [4]** 16/5 16/6 21/22 22/13
**services [2]** 22/14 22/17
**set [7]** 11/15 26/12 26/17 26/21 31/10 35/16 35/19
**sets [1]** 24/23
**several [2]** 13/4 22/5
**shall [1]** 13/7
**she [1]** 23/18
**Sherry [3]** 2/12 40/3 40/12
**short [1]** 3/15
**should [13]** 11/6 11/11 11/17 11/19 12/4 17/6 20/13 21/9 25/12 26/12 28/25 29/17 38/13
**shouldn't [2]** 10/9 27/4
**side [5]** 19/8 29/11 30/14 32/6 36/2
**sides [1]** 37/10
**significantly [2]** 15/25 23/25
**similar [6]** 4/10 21/7 23/3 23/19 29/6 32/16
**simplest [1]** 9/13
**simply [3]** 8/13 24/17 26/4
**since [2]** 4/3 38/4
**single [3]** 10/17 11/23 18/7
**sink [1]** 14/25
**sit [2]** 38/1 39/6
**sitting [1]** 32/22
**situation [1]** 19/1
**situations [1]** 36/17
**six [1]** 28/17
**Skipping [1]** 25/9
**slow [1]** 14/9
**small [1]** 25/9
**snap [1]** 16/24
**so [67]**
**solve [1]** 30/11
**some [12]** 5/4 6/5 7/20 11/14 14/4 17/12 19/3 19/24 21/24 33/7 34/2 36/1
**somebody [3]** 19/1 32/18 32/21
**someone [4]** 8/12 15/1 33/17 36/11
**something [15]** 8/3 10/13 14/25 16/20 20/5 20/10 25/6 27/17 27/23 27/25 28/14 37/12 37/23 38/25 39/16
**sometime [1]** 3/25
**somewhat [1]** 22/22
**sooner [2]** 3/16 4/8
**sorry [4]** 6/14 8/9 18/20 30/4
**sort [7]** 10/8 11/14 14/2 19/24 22/15 31/9 35/4
**sound [1]** 22/12
**speaking [3]** 4/21 13/13 13/24
**specific [1]** 34/11
**speed [2]** 9/5 9/10
**speedy [1]** 11/5
**spell [1]** 9/21
**spoken [1]** 4/2

## S


**spot [1]** 29/7
**stamp [1]** 17/9
**standby [1]** 32/20
**standing [7]** 21/6 22/1 22/2 22/6 22/11 22/20 34/21
**stark [1]** 11/20
**start [4]** 6/3 20/3 28/17 29/13
**starting [4]** 3/6 8/10 15/20 20/1
**state [1]** 3/5
**states [5]** 1/1 1/11 9/20 9/22 12/19
**Station [2]** 2/4 2/7
**status [1]** 28/5
**statute [10]** 9/18 11/8 11/13 12/14 12/17 12/19 13/9 14/8 16/11 36/23
**statutory [5]** 11/7 22/22 31/9 31/10 35/15
**stay [8]** 26/11 26/13 26/14 26/14 26/16 26/20 26/24 27/3
**step [4]** 4/15 4/24 19/8 20/11
**stepping [1]** 19/8
**steps [3]** 29/17 30/6 30/10
**stick [1]** 25/22
**still [3]** 8/19 18/23 18/24
**stop [1]** 25/15
**streamlining [4]** 11/20 28/9 29/21 30/3
**Street [2]** 1/17 2/10
**strike [1]** 34/8
**strikes [1]** 34/24
**structural [1]** 35/3
**structurally [1]** 34/17
**structured [1]** 27/20
**struggling [1]** 34/8
**subject [3]** 8/17 35/14 39/2
**submission [1]** 5/3
**submit [1]** 10/17
**subprovision [1]** 12/2
**substantial [1]** 6/5
**substantive [2]** 10/14 10/21
**successful [1]** 29/19
**such [4]** 3/15 25/2 27/3 38/14
**Suchita [1]** 1/16
**suddenly [1]** 33/8
**sufficient [1]** 7/14
**suggest [1]** 24/4
**Suite [1]** 1/18
**summarily [3]** 8/4 11/24 33/19
**summary [6]** 7/24 8/2 18/15 18/17 18/18 19/6
**Supp [1]** 23/7
**suppose [3]** 8/13 19/23 19/25
**supposed [1]** 28/11
**Supreme [5]** 21/5 24/16 27/14 28/10 33/25
**sure [7]** 4/20 6/8 9/9 9/10 19/20 27/5 34/18
**surprise [1]** 27/4
**suspect [1]** 39/20
**Suzie [1]** 3/9
**system [6]** 17/6 18/9 23/21 24/23 25/3 25/22
**systematic [1]** 23/15


## T


**table [2]** 3/17 25/14
**take [12]** 5/17 10/11 17/23 18/4 18/10 23/15 25/10 26/8 26/23 30/7 31/2 37/14
**taken [4]** 5/10 29/16 29/17 30/10
**takes [1]** 21/11
**Taking [1]** 17/19
**talk [17]** 3/16 4/18 15/8 15/8 16/9 16/12 17/10 20/16 24/11 25/1 25/2 25/17 26/12 27/19 27/21 28/25 36/16
**talked [1]** 30/14
**talking [4]** 7/24 24/2 31/21 36/2
**talks [1]** 15/15
**tell [6]** 4/16 6/2 9/19 15/5 17/14 28/13
**telling [7]** 10/25 16/16 16/18 17/1 17/2 27/14 34/13
**tells [2]** 25/19 25/19
**temporarily [2]** 26/21 27/3
**temporary [2]** 24/3 26/17
**tend [1]** 22/12
**tens [2]** 28/1 35/8
**than [10]** 3/17 4/8 5/18 5/22 9/1 9/2 13/21 20/20 22/6 35/7
**thank [9]** 3/15 5/9 5/12 29/5 37/18 37/20 39/18 39/19 39/24
**that [253]**
**that is [1]** 32/1
**that's [19]** 5/20 11/4 14/7 19/22 23/4 23/7 24/25 25/11 26/8 26/13 30/24 31/9 31/14 33/1 33/12 35/19 36/22 39/16 39/18
**their [35]** 3/5 6/12 6/14 6/17 8/14 8/18 8/21 9/17 10/1 10/18 11/21 12/7 12/7 12/8 13/16 13/24 13/25 15/10 15/18 16/4 16/6 17/15 17/17 17/17 21/21 25/11 25/22 26/6 32/2 33/18 36/14 36/15 36/17 39/3 39/12
**them [13]** 15/12 15/23 16/1 17/25 20/20 21/16 21/19 26/1 26/7 28/13 33/13 34/3 39/9
**themselves [2]** 10/14 36/13
**then [30]** 4/3 7/23 8/1 8/11 8/12 10/18 14/18 16/24 17/22 18/11 18/12 18/15 18/15 18/22 19/5 19/15 20/8 23/10 23/21 23/21 25/22 26/7 31/22 31/22 33/8 33/9 33/18 35/12 36/6 39/6
**theoretically [1]** 8/3
**there [68]**
**There's [1]** 16/8
**thereafter [2]** 7/16 8/11
**therefore [1]** 16/4
**these [23]** 4/5 11/11 13/23 15/19 17/7 17/19 20/19 21/8 22/8 22/23 24/4 24/12 27/9 27/25 29/9 30/13 30/16 30/20 30/21 34/22 36/12 36/24 39/8
**they [142]**
**thing [11]** 4/25 9/24 14/1 16/12 22/12 25/5 30/24 34/7 35/5 39/6 39/16
**things [9]** 4/5 4/23 15/24 16/17 17/8 22/8 22/23 23/4 25/20
**think [31]** 4/1 4/7 4/17 5/16 5/17 5/21 7/11 7/13 7/17 9/11 9/13 10/15 16/8 20/1 21/24 22/14 22/19 22/20 25/15 26/12 28/5 30/11 30/24 33/1 35/16 36/1 36/22 37/1 38/2 38/3 38/18
**thinking [4]** 20/4 28/20 36/10 37/13
**thirds [1]** 39/8
**this [95]**
**those [17]** 13/10 13/22 16/8 17/7 17/18 19/25 21/3 21/14 26/1 29/22 29/25 31/12 33/3 38/2 38/10 38/11 39/14
**thought [3]** 3/16 25/13 33/10
**thousands [3]** 9/22 28/1 35/8
**three [1]** 28/17
**through [11]** 9/7 15/19 16/16 16/23 26/1 30/17 34/4 35/20 36/5 38/10 38/15
**throw [1]** 17/12
**throw-away [1]** 17/12
**Thursday [3]** 5/22 6/18 9/2
**ties [1]** 16/9
**tight [1]** 8/24
**time [25]** 3/17 3/24 5/4 6/8 6/24 8/16 9/3 9/4 11/1 15/12 15/24 16/15 17/13 23/8 27/3 28/23 32/8 32/9 32/13 32/14 33/9 33/17 37/5 37/11 39/18
**timely [2]** 8/19 9/10
**times [3]** 34/9 34/19 38/1
**today [3]** 3/12 9/8 33/16
**together [4]** 3/25 4/2 11/11 13/22
**told [1]** 37/25
**tonight [1]** 37/6
**too [5]** 10/11 15/10 28/16 35/11 38/14
**top [1]** 10/24
**Torture [1]** 13/18
**trained [1]** 24/2
**training [2]** 24/5 24/8
**transcript [3]** 1/10 14/21 40/4
**transcripts [1]** 14/23
**transparency [1]** 3/21
**transparent [1]** 4/5
**trial [1]** 32/2
**tried [1]** 23/3
**true [1]** 40/4
**Trump [3]** 10/3 10/3 38/13
**truncated [1]** 21/22
**try [5]** 4/5 4/22 9/11 29/17 30/11
**trying [5]** 6/25 18/21 20/3 23/8 38/4
**Tuesday [2]** 6/15 9/1
**turning [1]** 20/10
**two [7]** 8/5 9/23 24/12 29/18 35/10 38/3 39/8
**Two-thirds [1]** 39/8

**T**

**tying [1]** 18/22
**type [10]** 13/21 14/4 21/7 30/16 30/21 32/2 34/4 34/6 34/23 36/25
**types [2]** 13/23 30/16
**Typically [1]** 32/22

**U**

**U.S [1]** 2/13
**U.S.C [11]** 11/12 12/2 12/24 13/6 13/6 14/8 14/13 15/14 31/11 31/11 38/20
**unclear [2]** 10/1 12/13
**under [14]** 6/1 7/22 9/17 9/18 11/17 18/6 19/6 19/21 25/6 28/12 31/18 33/22 38/20 38/25
**undermines [1]** 16/6
**understand [5]** 19/10 22/2 25/16 26/18 34/25
**understanding [2]** 19/11 19/12
**Understood [2]** 5/6 22/7
**undesirable [1]** 9/25
**unexhausted [1]** 14/16
**unfairness [1]** 34/3
**UNITED [4]** 1/1 1/11 9/20 9/22
**unless [3]** 10/19 32/21 39/15
**unlikely [2]** 7/17 8/5
**unreasoned [2]** 22/25 24/13
**until [6]** 8/14 23/23 27/3 32/9 32/23 39/15
**up [16]** 4/16 4/21 5/11 6/25 9/10 10/23 11/15 16/22 17/14 24/23 26/21 27/11 28/17 31/10 35/16 35/19
**upends [1]** 9/15
**us [8]** 3/16 5/13 9/19 15/22 17/14 27/14 28/13 38/10
**useful [1]** 25/25
**using [1]** 24/8
**usually [1]** 32/10

**V**

**various [1]** 3/25
**vast [5]** 9/16 10/22 12/12 15/21 33/10
**Ventura [2]** 28/12 28/12
**version [1]** 26/17
**versus [3]** 3/3 28/12 34/23
**very [17]** 7/17 8/4 8/4 12/13 13/7 17/13 21/7 24/1 24/6 29/15 33/9 34/10 35/17 37/2 37/11 38/3 39/9
**view [5]** 4/6 7/13 8/5 16/13 23/4
**vindicate [1]** 36/24
**violated [1]** 12/15
**violates [3]** 11/10 14/2 15/14
**virtually [1]** 9/16
**virtue [1]** 16/1
**Voters [1]** 22/18
**vs [1]** 1/5

**W**

**wait [4]** 8/14 8/17 23/23 32/23
**waiting [1]** 35/7
**waive [5]** 15/25 19/16 19/17 34/3 39/14
**waived [4]** 15/3 15/3 15/5 39/12
**waiver [3]** 10/24 27/21 30/24
**waiving [1]** 13/25
**walk [1]** 16/23
**want [18]** 4/15 6/7 6/21 9/9 20/16 23/6 25/7 25/16 25/18 25/20 25/20 25/21 26/5 26/6 26/10 28/3 37/6 37/23
**wanted [5]** 3/18 3/21 8/13 8/16 27/5
**wants [1]** 30/25
**warning [1]** 29/3
**was [24]** 3/22 3/24 20/7 21/13 23/5 23/6 23/8 23/16 23/17 27/18 28/20 29/21 31/15 33/16 33/20 34/2 34/11 34/16 35/23 36/8 38/18 38/19 38/20 38/23
**Washington [8]** 1/5 1/15 1/18 1/21 2/4 2/7 2/10 2/15
**wasn't [1]** 38/17
**watch [1]** 26/9
**way [18]** 6/3 7/14 9/13 9/13 9/15 11/5 11/5 11/6 16/6 18/14 22/12 27/20 28/3 28/3 35/6 36/4 36/22 36/23
**ways [2]** 29/20 30/3
**we [63]**
**we'll [2]** 26/5 37/8
**wealthy [1]** 32/21
**website [3]** 17/17 17/17 17/17
**week [3]** 5/18 9/23 32/19
**weekend [2]** 39/20 39/21
**weigh [1]** 26/4
**well [16]** 3/15 5/2 5/5 7/22 8/23 9/8 15/11 18/17 21/17 22/9 24/18 26/14 27/17 29/2 29/2 37/20
**were [16]** 3/22 4/1 8/2 8/14 8/15 18/25 18/25 23/9 25/5 29/3 29/23 29/23 29/23 33/11 38/13 39/21
**what [47]**
**whatever [1]** 6/2
**when [23]** 3/22 3/24 4/20 5/7 5/15 11/22 12/15 13/15 15/11 17/7 17/24 18/25 20/15 23/15 23/18 25/8 27/1 27/25 28/17 32/24 33/8 35/17 38/1
**where [6]** 11/16 17/20 22/16 35/2 36/5 36/11
**whether [6]** 5/14 17/6 32/12 33/16 34/15 34/16
**which [30]** 5/2 5/17 6/3 9/2 9/5 9/8 11/12 11/20 12/24 13/8 13/17 14/19 14/25 15/15 15/21 16/12 16/21 18/14 18/22 19/1 20/7 22/6 24/20 25/6 25/9 27/9 33/24 33/24 34/9 38/24
**while [1]** 17/1
**who [16]** 12/25 14/2 15/7 15/17 15/17 15/20 20/2 20/12 24/1 24/2 24/2 25/3 32/18 33/2 33/7 36/11
**whole [1]** 14/1
**why [8]** 4/24 5/7 8/23 12/4 16/13 34/18 34/25 35/4
**will [24]** 4/25 5/8 9/2 10/19 11/21 18/7 20/13 20/15 21/10 25/15 25/17 26/11 28/1 28/1 28/2 28/2 28/4 28/6 28/21 28/21 28/22 37/4 39/19 39/23
**WilmerHale [1]** 3/22
**win [2]** 36/18 36/18
**wish [1]** 39/19
**withholding [3]** 13/17 13/20 13/25
**within [10]** 7/25 8/2 9/22 10/16 13/24 14/19 15/13 17/24 25/3 33/17
**without [5]** 14/20 14/20 14/21 15/2 16/25
**word [3]** 11/13 22/18 26/8
**words [2]** 8/17 13/7
**work [9]** 3/25 4/23 6/2 11/11 17/6 21/16 21/19 25/3 38/12
**worked [1]** 3/24
**working [1]** 39/21
**works [1]** 23/21
**worries [1]** 14/12
**would [45]**
**wouldn't [1]** 20/21
**wound [1]** 25/12
**write [1]** 19/2
**written [3]** 23/14 23/20 24/18
**wrong [1]** 7/7
**wrote [2]** 15/7 20/19

**Y**

**yeah [3]** 17/12 31/24 37/10
**year [3]** 17/16 20/24 32/19
**years [7]** 3/23 4/1 11/24 24/3 29/20 30/10 32/11
**Yep [1]** 27/7
**yes [6]** 7/11 14/7 20/14 20/25 33/23 37/16
**yet [1]** 4/14
**you [155]**
**you're [1]** 9/7
**your [43]**
**yourselves [3]** 4/13 4/18 5/1