IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMICA CENTER FOR IMMIGRANT RIGHTS, et al,

Plaintiffs,

vs.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, et al,

Defendants.

Civil Action
No 1: 26-696

Washington, DC
March 4, 2026

3:03 p.m.

TRANSCRIPT OF DISCOVERY CONFERENCE
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:

Allyson R. Scher
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043

Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036

Erez R. Reuveni
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043

APPEARANCES CONTINUED ON NEXT PAGE

APPEARANCES CONTINUED

For the Plaintiffs:

Mary Georgevich
NATIONAL IMMIGRANT JUSTICE CENTER
111 W Jackson Blvd.
Ste 800
Chicago, IL 60604

Michelle Lapointe
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036

For the Defendants:

Christopher Ian Pryby
DOJ-CIV
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Court Reporter:

Sherry Lindsay
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Room 6710
Washington, DC 20001

P R O C E E D I N G S

THE COURTROOM DEPUTY: We are here on civil case number 26-696, *Amica Center for Immigrant Rights, et al, versus Executive Office for Immigration Review, et al*.

Would counsel please state your name for the record starting with plaintiffs' counsel.

MR. REUVENI: Good morning or good afternoon, Your Honor, Erez Reuveni for plaintiffs.

THE COURT: Good afternoon.

MS. SCHER: Do you want to go through everyone? Ally Scher for plaintiffs.

MS. LAPOINTE: Good afternoon, Your Honor. Michelle Lapointe for plaintiffs.

MS. MATHUR: Good afternoon, Suchi Mathur on behalf of plaintiffs.

MS. GEORGEVICH: Good afternoon. Mary Georgevich for plaintiffs.

THE COURT: All right. Defense.

MR. PRYBY: Good afternoon, Your Honor. Christopher Pryby for the defendants. With me in the room is my colleague, Tyler Becker. He has not yet entered his appearance in the case, but he will be doing so shortly.

THE COURT: All right. Thank you. Welcome to all of you. I thought just given the short schedule in the case here and the defendant's Rule 56(d) motion, it made sense just to

talk now about how best to handle the issues raised. I will say, I don't think in my 11-plus years on the bench I have ever seen discovery taken by the government on standing in an APA case. I'm not saying that it's theoretically out of bounds, but it's something that is new to me and I want to make sure I understand the basis for it and why it's needed here.

Mr. Pryby, let me ask you, how long have you been with the Justice Department?

MR. PRYBY: I started in August of 2023, so I guess about 2 and a half years now.

THE COURT: Ever taken discovery in a -- on jurisdiction in an APA case?

MR. PRYBY: No, Your Honor.

THE COURT: Have any of your colleagues, to your knowledge?

MR. PRYBY: No, Your Honor, not to my knowledge.

THE COURT: So what is different with this case than all of those other cases? Because among other things, in the D.C. Circuit people are required to make a showing with respect to jurisdiction, as well in all of the direct administrative procedure act cases that go directly to the Circuit. And people file declarations there all of the time. And I can't think of a single case where the Circuit has said, we need to actually have fact finding or discovery with respect to these representations. I think there is a question about whether the

representations are sufficient and that certainly is fair game.

And if there were some good faith basis to assert a question whether they were accurate or not, that certainly might be fair game or if they were unduly conclusory in some way -- but I guess I want to make sure I understand what the basis is and why it is that in this case when in no other case that I have ever seen, the Department feels that it needs jurisdictional discovery?

MR. PRYBY: I can't speak to what -- to other cases that I wasn't involved in. But at least in this case, I think what you have recited do appear to be -- some of the representations made do seem either exaggerated or not a fair representation, perhaps, or an accurate representation of what the amount of time actually spent will be. Also there is just -- there is conclusory allegations of they're going to have to spend so much more time doing these -- doing different activities that it doesn't let them go to other -- serve other clients. And then there is also questions about whether the injuries that they are asserting are self-inflicted so that they are not fairly traceable to government action.

If they can continue to provide legal representation to their clients, perhaps not in the same manner, but in a similarly effective way, perhaps by reallocating resources, obtaining different grant monies or fundraising, working with different partners in the law firms, then it would be not

fairly -- the harms they are asserting would not be fairly traceable to the government or to the IFR.

THE COURT: You don't think --

MR. PRYBY: And that's not --

THE COURT: You don't think it would be -- I mean, I understand the distinction between injury for purposes of Article III, which doesn't have to be very much. And injury for purposes of irreparable harm, which has to be a great deal. But if we are just talking about Article III, you don't think that having to reallocate your resources, obtain different grants, different fundraising, shift some of your work to law firms to handle instead of your attorneys, you don't think that's sufficient to satisfy Article III?

MR. PRYBY: Well, Article III standing isn't a low bar. It's rather the -- as *Lujan versus Defenders of Wildlife* puts it, it's not just a pleading requirement. You have to make a showing that is adequate for whatever stage of litigation you are at.

THE COURT: Right.

MR. PRYBY: So it -- the harm and the standard for what harm is recognized is what has been traditionally recognized as a harm or injury in jurisprudence history and tradition. So it is not -- it does not appear to be the case that people having to adjust their behaviors and when they are not -- when they are not directly affected by a regulation.

And we discussed this some more in our opposition. But the having to reallocate and adapt to a new regulatory scheme when you are not the directly regulated party, that typically is not sufficient for Article III standing.

So here, we are attempting to ascertain with this discovery whether these harms are self-inflicted, whether these harms are more or less directly the result of the IFR or some -- and something that can't be mitigated by merely adapting to the regulatory scheme. So --

THE COURT: I'm sorry to interrupt. But why isn't that just a question of legal argument rather than factual development? And I have read your brief. And you're perfectly entitled to and I have to think hard about the -- you are perfectly entitled to argue that where someone can reallocate, shift their approach, that that doesn't constitute Article III standing and I'll have to think hard about that question. But that seems to me like a legal argument rather than a factual argument. I mean, you're right, plaintiffs bear the burden. And if plaintiffs' affidavits or declarations don't meet the burden, they cannot obtain summary judgment. That's completely correct.

The question I think about whether you need discovery goes to the question about whether there is something in the declaration that you think is material where there is some reason to doubt the veracity of what is being said or the basis

for what is being said so there is lack of clarity about it. And I guess it would be helpful for me if you want to just point me to -- if there are particular paragraphs in particular declarations that you think raise concerns, let's try and focus on that. So I have the declarations in front of me here.

MR. PRYBY: Okay. So I will actually point out to a few of these in the motion itself.

THE COURT: Okay.

MR. PRYBY: So first one, I believe I cite is on page 2 of the motion. It's docket 2-5 Mayer-Sallins' declarations, paragraphs 8 and 10, it talks about the hundreds of hours of staff time that can go into one PFR, but that most attorneys work about 25 to 35 hours on a BIA appeal. So that's -- that seems to reflect an upper bound on the amount of time that the PFR can take for an attorney, but it doesn't reflect -- it's apples to oranges comparison here. We are looking at what is first PRF.

THE COURT: Right.

MR. PRYBY: Versus we have an average here for BIA appeals. It could be that there is really complex types of cases of both, but unless we have an average that we can compare, this shift in harm doesn't seem -- it isn't proven by this -- by this declaration, by this assertion in the declaration.

THE COURT: Right. But isn't it reasonably clear --

and I mean, it doesn't matter, I think, whether it's 17 hours or 23 hours or 47 hours. I mean, all that matters for present purposes is that it takes more time to handle a petition for review in one of the courts of appeals than it does in a BIA appeal. And I almost feel like that's something that I can almost take judicial notice of, but I have some support for it. Is there some reason to doubt just the proposition that it does -- I don't think the exact hours matter at all, but it takes substantially more time to handle a petition for review in one of the courts of appeals than it does to handle a BIA appeal. Is there a reason to doubt that proposition?

MR. PRYBY: One second, Your Honor.

THE COURT: Sure, that is fine. Take your time.

MR. PRYBY: Thank you.

I'm not sure that it is beyond doubt that a -- that the average PFR and the average BIA appeal --

THE COURT: Let me ask you the question this way --

MR. PRYBY: Okay.

THE COURT: I could direct that the declarants simply be available for the hearing on Friday and that you could have an opportunity to cross-examine them either by video or in person, if they can be here in person with respect to these issues. It seems improbable to me that if we do that, that you're going to take one of these declarants and you're going to go through the cross-examination and have them say, you

know, now that I think about it, it actually doesn't take as much time to do or -- it doesn't take more time to do a case in the Court of Appeals than it does before the BIA. And now that you have cross-examined me on this, I am no longer convinced. I mean, if you had witnesses of your own you wanted to offer on that, maybe I could see something. But it seems improbable to me. Some of this just strikes me as very obvious and noncontroversial. But even putting that aside, I suppose I could just direct that they be available for you to ask questions to at the hearing. Although, I am pessimistic that it's going to make any difference, because I can't imagine sort of what cross-examination you could ask somebody here where someone would -- a lawyer who has handled these cases is going to say, now that you asked me that question on cross-examination, I no longer stand by what I said in my sworn declaration. I mean, unless there is some basis to question them, I have got some document or some evidence or some reason to think what you are saying is not true here, and then I get that. But if it's just, I want to ask them whether what they have said in the declaration is true, I think I have a pretty good idea what they are going to say.

MR. PRYBY: Well, for one thing, it -- I don't think they actually said in the declaration, maybe at least in that assertion -- maybe I'm misremembering. I don't remember -- I don't take that assertion to mean -- let me actually reread

that declaration.

THE COURT: Sure, that's fine.

MR. PRYBY: 2-5.

THE COURT: Why don't you tell me which paragraph you are looking at so I can read it as well.

MR. PRYBY: Eight and 10.

THE COURT: Okay.

MR. PRYBY: It says PFR is a much more complex endeavor. It -- so the only assertion there is that it's more complex. And because we are at the summary judgment phase, the reasonable inferences have to favor the non-movant, not the movant. So it would be the case and you can reasonably draw the case that even if there is a hundred of -- hundreds of hours of staff time can go into the one PFR and PFRs are more complex, it doesn't necessarily mean that the average type of BIA appeals they receive aren't -- don't take as much time. I just don't see that -- that is not an inference that has to be drawn by the assertions that are made.

THE COURT: So that's fine. And that's an argument you could have made in your opposition brief and maybe you did make it in your opposition brief to summary judgment saying that they haven't carried their burden and it is their burden. And if the declarations are insufficient, then you're right. But I'm still sort of trying to get the question of why you need discovery. And particularly, as I said, given the fact

that I don't think -- I'm pretty sure I have never seen in my 11 years on the bench -- I don't think I have ever heard of any of my colleagues experiencing that. If it's happened, it's got to be extraordinarily unusual and circumstances presumably where there is some reason to doubt the veracity of what the declarant is saying in one of these cases versus we are just curious about this and we want to ask some questions.

MR. PRYBY: The other -- you also mentioned conclusory allegations.

THE COURT: Right.

MR. PRYBY: And here we don't have the basis for their projections, like factual basis for their projections that they are going to have to go to take on more PFRs or going to have to do -- there is a lot of allegations of things that the plaintiffs will have to do. And we want to know the factual basis for those assertions. Because why do they project that? What about the PFR -- not the PFR. I'm sorry.

THE COURT: Well, is that -- I mean, I think that the factual basis for the assertion that it takes more time to handle an appeal or a petition for review in one of the courts of appeals versus handling a matter before the BIA is, I think, pretty obvious to most attorneys. It's not -- you know, I agree with you that the precise number of hours could be subject to debate. But as somebody who is -- during his career filed papers in various courts of appeals around the country, I

know how much time can go into that versus administrative proceedings where I also participated and how much time goes into that. And it just -- it's just different. I mean, the rules are more formal. There is more you need to do in the courts of appeals. You know, by the BIA's own rules, what takes place before the BIA is more abbreviated than what the courts expect before them.

So, again, I'm not -- I don't mean to suggest here that we have any precision about this. But if we are just talking about Article III standing and not irreparable harm, I guess I remain a little bit puzzled about what the basis is in this case, unlike any other administrative law case I've ever had, why the Government needs jurisdictional discovery in this case and why this case is different from all of the others.

MR. PRYBY: I mean, there is also the questions about funding. They are asserting -- suppose that it is the case that some -- suppose for the legal question --

THE COURT: Right.

MR. PRYBY: -- you find that it is that the loss or the grant, if a grant does not provide as many dollars for PFR work as say agency work, suppose you find that that is sufficient as a -- for -- if they can show that, then we also need to be able to explore whether the grants that they have -- maybe I am misstating. I'm trying to formulate this in my head. I'm sorry.

There is -- the injury that is claimed -- one of the injuries that is claimed is loss of finances.

THE COURT: Right.

MR. PRYBY: And we argue in our -- on the legal question that these are indirect -- even if everything they say is true -- these are indirect; these are not sufficient for Article III standing. If you find on the legal question that's false or that -- what they have alleged or asserted is enough for Article III standing, then we also -- we need to be able to explore whether the money that they gain or that they lose can be offset or is offset as a result of the IFR. For example, if they fundraise off of the IFR and they receive more funding to offset the grant money they may have lost.

THE COURT: Right. But that again, I'm perfectly open to your arguing that to me and making that as an argument and saying they haven't carried their burden because it may well be offset and the record doesn't reflect whether they can do these other things. That seems perfectly legitimate to me. But is there a particular declaration or particular declarant here that you're focused on? Is there someone where you think this is one that raises particular questions in your mind?

MR. PRYBY: I think we have pointed out many of the issues in either our motion for jurisdictional discovery or the -- or the opposition to the stay motion. I don't -- unfortunately, I don't have a copy of that opposition with me

at the moment.

THE COURT: Well, I have in front of me your Rule 56(D) motion. And --

MR. PRYBY: Okay.

THE COURT: -- I see there that you refer to the Mayer-Sallins' declaration.

MR. PRYBY: Right. We just discussed that one I believe.

THE COURT: I think that maybe at least in the motion the only one on the plaintiffs' side that you point to -- you point to the defendants' motion -- maybe in defendants' declaration, maybe in that one you are pointing to others, I don't see that there.

But I mean so I guess my question though is that -- is there someone in particular you want to ask questions to?

MR. PRYBY: We would want to ask questions of -- the defendants would want to ask questions of all five plaintiffs, because standing is necessary to show for each of them to have claims.

THE COURT: Yeah. But that is actually not quite correct. Because as long as one plaintiff has standing, that ends the Court's inquiry at that point. The Court doesn't have to find standing as to everybody.

MR. PRYBY: I'm sorry. I misstated. I was trying to say what you just said, Your Honor. That's why we need to be

able to ask all five, because we have to for them to -- we need to be able to have the opportunity to dispute their entitlement or their assertion of standing for each plaintiff.

THE COURT: Right. But that's why I'm pointing back to Rule 56(d) does have a real specificity requirement to it for just this reason. So if you can walk me through and say in this declaration, here is an assertion that plaintiffs are relying upon in trying to say, I established standing in their case, that we think is subject to reasonable dispute where we need to be able to ask some questions of that person about it. And if you can walk me through them and show me those, then we can figure out where to go from there.

But I don't think it's enough to simply say that it's the plaintiffs' burden and they have submitted substantial declarations and you just have a right to ask questions about the declarations.

MR. PRYBY: Okay.

THE COURT: Because if that were the case, every APA case that we have in this court would involve extensive jurisdictional discovery. And as I said, I can't think of a single one where I have ever seen it.

MR. PRYBY: In a typical case that is what would happen though. We would have the right to discovery on -- or defendants would have the right to discovery on those issues.

THE COURT: That's not quite right. In the usual APA

case, it's done on -- typically on the equivalent of summary judgment on the administrative record. It's the equivalent of summary judgment, which means that what your right is under 56(d) is to point the Court to some specific fact that is material to the motion where the Court cannot resolve the motion without providing some opportunity for either discovery or further development of the facts with respect to that particular assertion. I think that's the law.

MR. PRYBY: I see. I think the material fact is that going back to my motion, I think the material facts that are at issue are whether they will -- so the ultimate issue is whether they will be unable to provide the same amount of legal representation or the same legal representation. There is a fact dispute about whether that's true. We -- the government sees the allegation -- the general allegations that they're -- that the IFR will force them to take more PFRs. There is that is -- that is one thing that -- why is -- why are they forced to take more PFRs? Why couldn't they do more immigration court work? Why couldn't they go -- why couldn't they go and find other law firms to take these PFRs?

THE COURT: So if you want -- I completely -- I mean, I have read your brief. And you make that legal argument in your brief. I can certainly decide whether that's true or not. And I don't tink there is a factual dispute that they could pick up the telephone and call law firms and ask law firms to

help out with these cases. I guess the question is just whether as a matter of law that makes a difference for purposes of standing. But I'm perfectly happy to assume that fact. I'm perfectly happy to assume the fact and I -- I think you're right that I would have to, you know, at least accept the possibility for purposes of resolving standing at summary judgment that it's possible that these organizations would shift their focus and say, instead of doing more cases before the courts of appeals and more cases before the BIA, we are going to devote or resources to IJ proceedings. I think that's perfectly fine and I can assume that. So I don't think that is even necessarily a disputed fact for present purposes.

MR. PRYBY: The defendants see these allegations as conclusory and unsupported in the declarations and they see them as material facts. And that is why the defendants are seeking Rule 56 discovery. And under the generous standard that this circuit evaluates these motions, defendants have been sufficiently specific about the material facts that they are seeking and why they are relevant to the --

THE COURT: Can you cite me to any case in which the Court has ever ordered jurisdictional discovery of a organization asserting organizational standing in an APA case?

MR. PRYBY: I cannot.

THE COURT: All right. Well, let me hear from plaintiffs' counsel then.

I'm sorry. Was there anything else, Mr. Pryby, that you wanted to say?

MR. PRYBY: I think, no. I think I have made all of the arguments. So thank you very much.

THE COURT: I will give you a chance. Let me hear from plaintiffs.

MR. REUVENI: Thank you, Your Honor. Erez Reuveni on behalf of the plaintiffs. I think I will start just where you ended, Your Honor.

I would have thought if I were the government that I would have cited at least one case from this jurisdiction in which what they are asking to occur has ever occurred. And they haven't. And to be fair, I took a look too and I didn't find it either.

THE COURT: I was going ask to you. You, I take it, were at the Justice Department yourself for many years?

MR. REUVENI: Yes, Your Honor.

THE COURT: Ever happen in your experience?

MR. REUVENI: No, Your Honor.

THE COURT: Okay.

MR. REUVENI: Not in a bread and butter APA case such as this.

THE COURT: Okay.

MR. REUVENI: Certainly not in this jurisdiction that I'm aware of.

But I think, pivoting from that, plaintiffs' motion leaves out a pretty fundamental requirement under Rule 56(d). Granted, we didn't have a chance to brief it. I'm not asking that you give us a chance to brief it. I'm here ready to tell you essentially what would have been in our opposition. But what they leave out and this is *Convertino*, a D.C. Circuit case 684 F.3d at 99 to 100.

THE COURT: Can say that again more slowly.

MR. REUVENI: I apologize. You have now asked me a few times to slow down. Let me try better.

*Convertino*, 684 F.3d 99 to 100.

THE COURT: Okay.

MR. REUVENI: It's a D.C. Circuit case 2012. And plaintiffs are -- or defendants' counsel I think refer to in their brief. But one of the key pivotal outcome determinative requirements is, "Why those facts are necessary to the litigation."

And then what *Convertino* explains that means is they need to show why this discovery would, "Create a triable issue." That is what we are doing on summary judgment. They need to show what discovery they are seeking is going to create an actual dispute of material facts, such that summary judgment cannot be granted.

So what does that mean here? That means they need to show in this motion that all five of our declarants, for some

reason, require further discovery into what they have averred to and sworn to under penalty of perjury in their declarations.

I think Your Honor really hit this point on the head with your colloquy with opposing counsel. I see only one declaration discussed in their motion, just one. And that's the Mayer-Sallins declaration that you were discussing with my opposing counsel. And they cite paragraphs 8 and 10 there. And they are really just fixated on this petition for review issue. And I point out even there in that declaration, it's strange that they cite paragraphs 8 and 10, but omit paragraph 9 in between those two paragraphs where the declarant clearly explains the basis for their understanding, why a petition for review would require so much more input time and resources.

So I think that alone -- and I should say, that declaration goes on to discuss petitions for review extensively in multiple paragraphs. But that reason alone is enough to deny the motion. They have not identified anything that would be outcome determinative, anything that would present an issue of material fact for purposes of the motion for summary judgment on the notice and comment claim. That's really all there is to it there.

I want to make a few other points though. As you discussed with plaintiffs' -- I'm sorry -- defendants' counsel, they seem to be essentially just making legal arguments and using that as an attempt to bootstrap their way to discovery.

Again, I would have thought they would have identified at least one case in which what they are asking for has occurred. They haven't done that. And so just -- they say, well, this declaration or that declaration is conclusory. Okay. Argue that in your brief. They say the harm to some extent I saw that in our -- or I heard opposing counsel say the word self-inflicted. Okay. Argue that in your brief. They have provided no basis to doubt veracity of our declarants. They have provided no basis to suggest that anything untoward has occurred here or our declarants are operating in bad faith. Our declarants provide careful, detailed explanations for what they have testified to.

And even if defendants are right that somehow some aspects of all five of our declarations, all five of our declarants present issues of material dispute for purposes of summary judgment, I want to walk through a little bit what plaintiffs clearly don't dispute.

I think you have already discussed this some with my opposing counsel. So they do not dispute that it will -- as a matter of just fact and common sense take more time under this rule to represent an individual client in every instance. And that alone is enough.

On the standing point, I just want to -- I'll come back to this in a minute. On the standing point, Your Honor is absolutely correct in your colloquy with opposing counsel,

standing and irreparable harm, not the same at all. And I will point you to your own case from 2019, Natural Resources Defense Council v. United States Environmental Protection Agency 383 F. Supp. 3d at 11. And I quote, "An identifiable trifle is enough for standing."

And that cites Supreme Court decisions and D.C. Circuit decisions. The Supreme Court decision, *SCRAP*, 412 U.S. at 869. The D.C. Circuit says the same, *Chemical Manufacturers Association,* 859 F.2d at 982. Case after case says the same thing in this jurisdiction. What plaintiffs seem -- or defendants seem focused on is just -- their suggestion that they are entitled to qualitatively and quantitatively test every aspect of our declarants' statements for purposes of standing. That is just not what the law is. It is enough to show that we have lost a dollar, as the Supreme Court has famously said in recent decisions. It's enough to show that we serve one less client under the new system compared to the old system.

And they don't dispute at all in their motion that these are things that our clients suffer. They didn't dispute instead of having 30 days to appeal and multiple weeks to present all of the issues relevant in a case, our clients now have 10 days to do that. They don't dispute that our clients are going to have to move resources from many other mission-critical tasks core to the reason for these eight

organizations to exist to focus on this race to file a notice to appeal, with all of the issues in there in ten days. They don't dispute that our client NIJC has had to cancel its pro bono pilot program and change the way it conducts its business core, a business activity central to why it exists because of this. Ultimately, they don't challenge that the rule materially impairs quality and quantity of services the plaintiffs can provide and in the words of Your Honor's decisions and of other decisions both pre and post *Alliance* this impairs and directly interferes with our clients' core business activities.

So I don't think there is really any dispute at all that the defendants cannot show that for each and every single declarant there is some material dispute. That was their burden to identify each and every dispute. It was their burden to tell this Court what they are going to show, what the triable issue of fact is. Because, again, this extraordinary. It's extraordinary under Rule 56(d) to engage in discovery in this posture. What they really want is to delay the resolution of this case. If that -- that is what it seems to me, because they provided no reasonable basis, no citation to law, no reason to proceed in the way that they propose.

I want to just point to two other issues that you have raised, Your Honor. You have suggested -- you have raised the possibility of having a witness on Friday. If that's the

way the Court is inclined to go, we will, of course, endeavor to do the best to comply. I just want to point out though that the -- what plaintiffs -- defendants have raised in their motion and what their declarant says they need to know, these are things that would take hundreds, potentially of hours, for our clients to look into to testify to, to prepare for, particularly if it's a hearing in two days. Which would, of course, just compound the injury they are suffering of having to divert all of the resources to focus on this.

And without the sort of showing that we have -- I have been discussing with the Court, Your Honor, there is just no reason to do that, particularly where plaintiffs have identified one declarant and have not been able, notwithstanding the Court's repeated requests and questions and the opportunity to file a brief on this, have identified any problem with any of the other paragraphs in the Margolin [sic] declaration or any of the other four declarations. So it would be pretty extraordinary in that circumstance to require any declarant to appear on such short notice and prepared to answer the entire sweep of questions that defendants claim they need to address as part of the summary judgment motion. At most, if we were to go down that road, we should proceed in the normal course. They should serve -- we should have an opportunity to object to the scope of what they may be requesting after we see their discovery requests. We proceed with reasonable dispatch,

but having that occur in less than 48 hours in the context of where we are right now in this case, would be prejudicial to our clients and to our case and would be frankly extraordinary where plaintiffs -- I apologize -- where defendants have just identified not a single instance where what they are asking for has ever happened.

THE COURT: So let me ask you a question about the timing issue here. I am operating under the assumption that you needed a decision by midnight on Sunday. And I don't know if that's precisely correct or not, but that certainly is the assumption I have been operating under. And it's not fun for any of us obviously, the parties or the Court, to have to decide an important set of issues this quickly.

And I will say, for the record, that the reason that I raised the question about summary judgment was to try and just find an efficient way to deal with the circumstances that we are all facing where there is a rule where there was not an opportunity for notice and comment, where the government set an effective date and has declined to postpone that effective date and where -- whether it's irreparable or not the damage that is done by the absence of notice and comment becomes a fait accompli if there is not some relief from the Court in some form or another. And perhaps the case gets mooted if the Court decides it in the ordinary course.

So I'm dealing with that we are all dealing with that

as one of the circumstances here. That's a wind up to say, if Sunday at midnight is not a hard deadline, that provides all of us with a little bit more flexibility. I think at the hearing or the status conference on scheduling, counsel for the government said, well, it really ought not be that much of a hard deadline, because the deadline only applies to appeals filed as of that day. And it's in everyone's discretion to decide when they file their appeal. And so you have 10 days to file the appeal, so you can wait and file it. I don't know whether that is accurate or not. I haven't studied the rule carefully enough to know whether there are other ramifications.

I'm just posing my question, am I correct in my assumption that everyone needs a decision by Sunday night at midnight?

MR. REUVENI: Your Honor, it is plaintiffs' position that we need a decision by that time. We dispute the government's representations of what harm might look like. And I just -- several times now, we have proposed to plaintiffs to temporarily stay -- to defendants to temporarily stay this rule to allow some breathing room for these issues to be adjudicated. They have declined. So this is a crisis of their own making. They have issued this rule without notice and comment. They made it effective March 9th. And we here -- we have moved with all deliberate dispatch to present our case and our issues and our arguments in a way that is not just simply a

knee-jerk filing the day the rule came out that would help nobody and be dismissed presumably for failure to demonstrate a reason for relief. But we are here because they have made the decision, not us.

THE COURT: All right. Well, let me give Mr. Pryby a chance to respond.

MR. PRYBY: I think plaintiffs' counsel has -- is mistaken on what the defendants dispute here. The defendants do dispute that the time that is going to be taken in every type of proceeding is necessarily going to increase. The defendants' position is that board proceedings will become much less onerous. That is one of the allegations that I have remembered since our previous discussion. The -- one of the allegations is that the -- they will have to do full briefing in a 10-day period before filing a notice of appeal to the board. That is something that, one, we -- the government disputes the, have to.

And, two, the government disputes that that even makes sense in any -- in the majority of --

THE COURT: Mr. Pryby, let me ask you a question factually about that. I want to make sure I understand.

MR. PRYBY: Okay.

THE COURT: I thought that it was the notice of appeal that the BIA judge reviews and then decides whether to refer to the full BIA to see if a majority of judges on the BIA

think that anything other than summary dismissal is required. So if you don't develop your argument in the notice of appeal, how can the judge make an informed decision and how can the BIA as a whole make an informed decision within a very short period of time to forestall the otherwise automatic summary dismissal?

MR. PRYBY: Well, to take an example, when many petitions for certiorari to the highest courts, not just Supreme Court, but state supreme courts, they don't -- it's not full briefing. And the courts decide those issues on the less than full briefing.

THE COURT: That is true. But I can tell you, having written many in my day, that a certiorari petition is a heck of a lot more than a notice of appeal to the Court of Appeals. Notice of appeal to the Court of Appeals says, you know, I hereby appeal the Court's judgment in this case including the following orders which are subsumed in that judgment, period. A certiorari petition, if there is a lawyer who has written a cert petition in less than 50 or 60 hours, I would like to meet that person.

MR. PRYBY: Certainly. Your Honor, I meant only as an example of why full briefing is not the same -- is not necessary in order for the board to be able to meaningfully decide whether it is worth reviewing a particular issue.

THE COURT: But I'm sorry. But if you're competently and zealously representing the interests of your client and you

actually really do want review in the BIA, I would think that your obligation to your client would be to develop your argument. Because otherwise, it's pretty clear what's going to happen is you're just going to get a summary dismissal; right?

It's going to be the extraordinary case where there is not a summary dismissal and therefore you would have to make a pretty strong showing, a very strong showing, I would think, to clear that really high hurdle. And if you're going to do something in just a few hours, it's going to be kind of hard to imagine you could do that, unless it's an issue which is already extremely well developed.

MR. PRYBY: The board -- I do not think it is necessary that -- to assume that the board is going to only pick issues that are fully briefed on the notice of appeal.

THE COURT: No, I understand.

MR. PRYBY: And the issue could be --

THE COURT: I understand there could be more briefing if the board decides to hear the case. But the point I think the plaintiffs are making is it nonetheless has to be developed. It's not enough to simply say, my clients' due process rights were infringed, period. That's going to go in the trash can. It's going to have to be an argument that persuades somebody that there is a substantial issue there, just like with the cert petition.

MR. PRYBY: So the argument that it will require or

the assertion then that it requires full briefing within 10 days is that -- that strikes -- that is exaggerated. And that is one of the assertions that the government sought discovery on.

THE COURT: That is fine. But you don't need discovery on that. I think you just made your point on that. And I understand your point and I -- I can't imagine someone is going to be able to answer beyond what is in the declaration and what you and I know just as a matter of common sense because no one has ever filed one of those things before the board because it hasn't happened yet. So you are not going to say, tell me how much time you spent on the last one you filed, because they are going to say, I never did one.

MR. PRYBY: Moreover, the -- there is also a factual issue of whether the -- they are going to do that for every client. I mean, the amount of time they put into an average brief to the board, that certainly depends on the complexity of the case. And they even decide whether to accept a representation based on an initial evaluation of the case. So the point is that the time spent in -- it may even make more sense to that -- to those petitioners to go straight to the Court of Appeals rather than even attempt to do a board proceeding at all.

That is the -- that is the point that I guess I'm driving at. So there -- so the dispute of -- the assertion

that plaintiffs' counsel made that we do not -- the government does not dispute that the IFR will cause an increase in time and all agency proceedings, that is what I was trying to show is actually disputed by the defendants.

THE COURT: Okay. Do you want to respond to plaintiffs' assertion that this is being done for purposes of delay in the case?

MR. PRYBY: This is -- we -- defendants have a good faith belief that the -- that the allegations that are made are inaccurate or exaggerated or conclusory.

THE COURT: I just want to give you a chance though to respond if it's inaccurate to the assertion that, whether you have good faith basis or not, that the motivation behind this is for purposes of delay. I just want to give you a chance, because that's a serious accusation. If it's inaccurate, I want to give you a chance to say, no, Judge, that is not the purpose that this is being done for, that was not something we discussed or thought about.

MR. PRYBY: One second, I'm consulting with my colleague right here.

THE COURT: That's fine. Take your time.

(Pause.)

MR. PRYBY: Defendants' motivation is to assert their rights under the Federal Rules of Civil Procedure to test the allegations that are being made for purposes of summary

judgment. The defendants believe that the stay -- that if plaintiffs are entitled to a stay, this Court should adjudicate the stay motion. And then -- and then also --

THE COURT: Just to be clear, I'm not sure if you are reading something that someone is passing you there or --

MR. PRYBY: I have. I am reading something that my colleague passed to me.

THE COURT: Okay.

MR. PRYBY: Because this Court converted the motion to one on summary judgment on short notice, that raised this issue. If -- if the stay motion had been adjudicated and either it would have been that would have gone in the normal course -- but once summary judgment came on the table, defendants wanted to assert their rights to test the allegations of standing. That was -- that is what this motion is about.

THE COURT: No, I understand that. I'm not sure you directly responded, but I won't put you further on the spot.

So let me suggest this: I do recognize that we are moving quickly here. I don't think, frankly, it's unusual or unanticipated under the rules to treat a motion for emergency relief as a motion on the merits where the merits actually are more straightforward than the motion for emergency relief. I think the rules actually contemplate doing that. So I don't think that is particularly unusual here. And I have done it in

a fairly limited extent, just with respect to one narrow issue that is something that under settled precedent, the agency had to actually address and decide in the rule itself already. So it's not something that is coming out of the blue for anybody.

But what I was going to suggest is, I do think that it would be helpful given how quickly this case is moving, if plaintiffs can arrange for Ms. Mayer-Sallins or -- and/or any of the other declarants just to be here at the hearing. And I -- I will say, I'm not convinced that anything has been raised with me where there is any reason to think that there really is a dispute of fact that is material as opposed -- or even a potential for a dispute of fact that is material, as opposed to different legal perspectives with respect to the facts. And perhaps some questions with respect to precision in a world in which I am just not sure the precise number of hours matters. I think comparisons are what matter more generally. And I also think, quite frankly, that even if it's the case that there are some cases that move more efficiently, if there are other cases that move less efficiently, I'm not sure that it's ultimately a balancing process in which you then do a total of the losses and gains and decide whether there is standing. I think if a rule imposes substantial burdens that probably is enough. And I don't think that in the usual standing cases that the D.C. Circuit or this Court then looks at the rule and says, but are there other collateral benefits

to the rule that might offset those costs? But in any event, that's all legal and something we can get to on the law. But given the speed with which this case is moving and just to avoid, quite frankly, any further issues down the road, it would be helpful to have folks available here. And if Mr. Pryby wants to ask some questions at the hearing, I won't have an objection to that. I think that would be fine with me.

Yes, Mr. Pryby.

MR. PRYBY: Your Honor, I just wanted to clarify. I will not be at the hearing. My colleague, Mr. Becker, will be representing the government at that hearing.

THE COURT: Well, then Mr. Becker can ask those questions. That's fine.

All right. Anything else before we adjourn?

MR. REUVENI: Yes, Your Honor. Just a couple of things, housekeeping issues, but also now related to the discussion you just had with Mr. Pryby.

THE COURT: Sure.

MR. REUVENI: So, first, Ms. Mayer-Sallins to my understanding is on maternity leave.

THE COURT: I see.

MR. REUVENI: So to the extent she would be able to participate, we would be able to do that remotely.

THE COURT: I have no objection to that. That's fine. And I should say, first of all, if she can't do it, I

understand. I really am just trying to frankly head off what may be a further dispute in the case if there is a way to do it. If she can't do it, fine. Appearing remotely, I would appreciate it if she could do it. I think that would achieve all of the purposes if she can do that. And I'm also happy to proceed in a way that accommodates her schedule. If starting a little earlier is better for her, that's fine. If she says, I can be there for the first 15 minutes or the last 15 minutes, I'm happy to work with her schedule.

MR. REUVENI: So let me follow up. I am being told by my cocounsel that I have oversold and now I will have to under deliver. It does not appear that she can appear remotely herself. Potentially others could appear remotely. I do want to -- so let me stop there. I have a couple of follow-ups there. But is that -- we are already getting away from who the actual declarant is to someone else from the organization coming in to answer questions. That seems less helpful.

THE COURT: I think if there is someone else who is knowledgable from the organization, that is fine.

MR. REUVENI: Okay. Thank you, Your Honor. I do want to just raise this issue and I'm not doing this so much to push back and resist your instincts here. I understand we are asking you to move very fast, so that's on us a little bit too. We are not trying to be the reason that you can't issue a decision timely, to be clear. But given the discussion we had

earlier about the need for defendants to actually show material issues of fact as to all five declarants, is the expectation that all five declarants would be available for this hearing?

THE COURT: You know, I don't think that's necessary. I mean, as I said before, the plaintiffs -- it's the plaintiffs' burden. So you can think about what you want to do to make sure that you are satisfied that you can carry your burden with respect to standing. And --

MR. REUVENI: Understood.

THE COURT: And as I said -- and so I think if some of the folks can be here, that's good. But I also want to be clear that at least at this point, I view this, frankly, as belt and suspenders. I'm not at all convinced that it's required. But just because we are moving quickly here, I don't want to unnecessarily complicate the case. Everything I'm doing here is trying to simplify things and streamline things, just like EOIR was doing in its interim final rule. We are trying to streamline things, find efficient ways to move forward here. I'm trying to find a way that I can give you a decision in a timely manner. And to the extent that there are issues that we can put aside in the process, I'm all in favor of doing that. But I have not yet by any means concluded this is necessary. I just think that it may avoid further complications as we move forward.

MR. REUVENI: Understood, Your Honor.

And one other clarifying question and perhaps this is a conversation between the parties. But the full -- as I said earlier, the full sweep of what defendants say they need to ask questions about could occupy multiple days of testimony.

THE COURT: That's one of the reasons, frankly, why I think it makes sense to just do this at the hearing instead of going off and taking depositions, because if you do it at the hearing, I can figure out what matters to my decision. I can tell you right now, that I cannot imagine a world in which I am going to need testimony or information with respect to the number of clients each plaintiff has represented since May 9th, 2025 and then it says of each, I think it means in each of the following kinds, all aliens, aliens in proceedings in immigration court, aliens in proceedings before the BIA. I can't imagine I'm going to need projected numbers of clients of each plaintiff. I mean, I think this is all -- frankly if this were just a normal civil litigation in front of me and not an APA case, I would think that that was way more burdensome than necessary and much of that is just not relevant.

So it can't hurt for someone to read through that to know what the government wants to ask about and be prepared. But I don't think this is a case which calls for somebody to start a day-and-a-half-long process of collating all of those numbers from the files within each organization.

But I think if we do this in front of me, I can let

you know very quickly. I will say, move on, this is not helpful or necessary.

MR. REUVENI: Thank you, Your Honor. That is very helpful to know.

I guess one other question on this -- you framed -- you have gone through this and told us what you don't think would be helpful. But to allow plaintiffs to provide you what you need to make a decision in the most efficient manner, is there anything that you would be interested in hearing about?

THE COURT: I don't want to -- I'm still working on the case myself, so I don't want to take a view before -- that is premature before I have had a chance to really think it through myself. I think maybe the conversation we have had here today maybe flags for you at least some of the stuff that defendants think is missing in the case. And you have heard some of my responses or reactions to that. But I think that, to my mind, and you have read my cases, my prior decisions. And the question is whether this is a rule that would significantly effect the business operations of these organizations and require them to operate in a fundamentally different way from the way they operate now. And I think that it's not like the typical *Havens* dispute where it's a question about whether an organization simply objects to the policy that is set forth in the rule and that they are dressing up a policy dispute in the form as effecting the organization in some way.

I think the question here is not whether there is a disagreement of policy, but whether as the organizations that are providing legal assistance to individuals in these and other proceedings, it is going to have a significant effect on how those organizations conduct their affairs. And I think, for example, one of the declarations observes that there are only a couple of lawyers who practice before the Court of Appeals and having to shift from a BIA practice where there may be multiple lawyers who do it, to a Court of Appeals practice may be something that has that type of effect.

And I'm not telling you now what my answer is as to whether that is sufficient or not, but those are the types of questions that I think are relevant versus how many lawyers you have working on BIA cases, how many lawyers you have working on other types of cases, how many clients you have. The question is at a higher level of just in what ways does this affect the way that these organizations actually operate and to the extent that there is any financial impact as well, that's something that is relevant too. But don't hold me to any of this because I'm still working through the standing issues myself.

MR. REUVENI: Thank you, Your Honor.

And I have three other just very brief housekeeping items, but one last point on this. I hate to belabor the point. But I think it would be incredibly helpful to streamline these proceedings in a way that is helpful to the

Court to have something formal directing what is off limits or at least just -- I don't want to be in a position where our declarants have to look at this thing -- and, granted, you have said what you have said. And we can tell them that and we'll share that with them, of course. But it's not the same as an order saying, we don't need to hear about this, don't even bother with this.

THE COURT: Well, let me put it this way. The hearing is scheduled for 2:00 on Friday. And I need to be done with that hearing by no later than 4:00, 4:30. What I would suggest is that probably it is worthwhile for counsel to have some suggestion about how they would like the hearing to proceed. And I think you need to talk about how you want to divide up time, both for argument and for anything else. I am perfectly happy to have the plaintiffs simply say, as to the factual matters relating to standing, they will rely on their submissions and then give the government, if it wants, an opportunity to ask some questions and then a little opportunity for redirect. I'm not anticipating anything here that is going to take even an hour.

I think that the government can ask whatever it has to ask in short order, but I think that it probably makes sense for the parties to have conversation about what fair game is for examination and discussions and also about just allocation of time on the issues, what really matters.

What to my mind is going to be most helpful to hear is the parties' legal arguments, because I think there are some important issues that I need to get my head around and that I'm still working on that I candidly do not yet know the answers to. And having legal argument from the parties on that is what's going to be most helpful to me. If there are some targeted questions that the government wants to ask that really go to the core of standing, as I said, I'm inclined to allow that. But it's simply for purposes of heading off some dispute down the road in the case.

MR. REUVENI: Thank you, Your Honor. May I propose that you order the government to provide those questions? And so if we have an issue with something being beyond the scope or our declarant not being able to prepare or answer that, we can have that fight, if necessary and try to meet and confer further. Again, I -- I totally understand the circumstances we are in here. But it puts us, plaintiffs' counsel, in the proposition of preparing for everything, even though we have assurances that you are not interested in everything. You only want to hear some things. What the government has said they will likely ask questions about is essentially a fishing expedition. I know you have said what you said. I understand --

THE COURT: This will not be a fishing expedition. I will not allow that. Let me ask -- think your request is a

fair one. Let me ask Mr. Pryby what his position is with respect to that.

Can you provide the plaintiff with the targeted topics? I'm not saying you have to provide the questions written out, but just the targeted topics that you think are appropriate?

MR. PRYBY: Yes, I think that would be fine to provide targeted topics.

THE COURT: Make sure they are targeted and not, as I think counsel indicated, a fishing expedition or just sort of general curiosity, but really go to the representations that have been made in the declarations to show that either those representations are inaccurate or misleading in some respect or that there is some evidence to the contrary, that type of thing, so very focused.

And then I'll direct, Mr. Pryby, that you do that by 10:00 a.m. tomorrow morning. No, actually let me make that -- actually why don't I ask that you do that by 7:00 p.m. tonight. And then if the parties have to discuss it, they can do it in the morning. And then if you need to get me back here for another status conference on this, we can do that tomorrow and resolve any issue on this before then. But I really do think this needs to be very targeted and well justified relating to the representations that are made where there is some background to challenge the veracity, accuracy of the material

representations that have been made or if there is some other evidence that is material that would demonstrate a lack of standing, that may be fair game as well. But I will remind the defendants that it's the plaintiffs who have the burden of proof. And if they haven't come forward with something, it's enough for you to simply say, well, they haven't shown something else they need to show. And that's something you are welcome to do in your papers and you're welcome to do in argument, if you want to.

MR. PRYBY: Understood, Your Honor. Thank you.

THE COURT: Okay.

All right. Anything else?

MR. PRYBY: Oh, one question. Which -- what witnesses were being provided by -- would plaintiffs be able to send us that list as well?

THE COURT: I think they probably need to confer and figure out who is going to be able to be present. But I'm not sure it's necessary for your list of questions, but I will ask that plaintiffs' counsel also let you know who is going to be present so you can be prepared as well.

MR. PRYBY: Okay. Thank you.

MR. REUVENI: Thank you. Sorry, Your Honor. I did have -- these are housekeeping issues.

THE COURT: I want to come back one last time to this issue with respect -- I just want to remind you all what's

going to be most helpful to me is hearing your legal arguments on what are some difficult questions. So don't waste your time asking questions that are not really relevant relating to standing or maybe a fishing expedition on standing. Because if you are doing that, you're going to eat into your time to try and really persuade me on some of these important legal questions.

MR. PRYBY: Yes, Your Honor.

MR. REUVENI: Thank you, Your Honor. So before we break, so just to make sure -- video appearances, I know we have reached out to chambers on behalf of some of our attorneys. And to the extent we provide witnesses, those witnesses that can appear in person -- so to be clear, is that an order to that effect or we can proceed?

THE COURT: Any objection?

MR. PRYBY: No, no objection to that.

THE COURT: I will grant that request. So any attorney can appear remotely and any witness can appear remotely, as well. I think that my understanding is lead counsel ought to at least be present for argument, which is just helpful for everyone involved. I won't preclude anyone who is participating by video from addressing a specific issue that comes up.

MR. REUVENI: Thank you, Your Honor. I will be there in person.

Second housekeeping item, we also had a request for a public line, so that our clients or others who are interested can listen to the hearing.

THE COURT: I'm pretty sure we can do that. The only question I have is there was a time at least during COVID where it was hard to open a public line and do the Zoom at the same time. I think we have that capacity now, and if we can, I will do that.

MR. REUVENI: Thank you, Your Honor.

Third housekeeping item, we will likely be asking you for a motion to enlarge pages by 10 pages, same as the government. We had consented to theirs. They consented to ours preemptively given all of the moving pieces. Do you want us to file a motion?

THE COURT: Mr. Pryby is nodding his head. Your motion is granted.

MR. REUVENI: Excellent.

And last -- promise last housekeeping item. For all of the things that we are now discussing in the briefing under your local rule, do you require hand delivery of copies of all of this? Do you want a binder or copies of this delivered to your court?

THE COURT: Well, is there going to be anything other than the briefs at this point? I don't need courtesy copies of the brief. I only really need courtesy copies if you are

talking about a substantial number of exhibits.

MR. REUVENI: Understood, no. I don't anticipate more beyond the briefs.

THE COURT: Okay. That's fine, you -- no courtesy copy is necessary.

MR. REUVENI: Thank you, Your Honor.

THE COURT: All right. Anything else, Mr. Pryby?

MR. PRYBY: No, Your Honor. Thank you.

THE COURT: All right. And you know, just to remind you. I know we have been focusing on summary judgment, you know, the stay is on the table too, so I will want to hear from you all on that issue also as well. So thank you, all. Have a good evening.

MR. PRYBY: Thank you.

(Proceedings concluded at 4:19 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 4th day of March, 2026.

Sherry Lindsay, RPR
Official Court Reporter

**MR. PRYBY: [56]**
**MR. REUVENI: [26]** 3/7 19/7 19/17 19/19 19/21 19/24 20/9 20/13 27/15 35/15 35/19 35/22 36/10 36/20 37/9 37/25 39/3 40/21 42/11 44/22 45/9 45/24 46/9 46/17 47/2 47/6
**MS. GEORGEVICH: [1]** 3/16
**MS. LAPOINTE: [1]** 3/12
**MS. MATHUR: [1]** 3/14
**MS. SCHER: [1]** 3/10
**THE COURT: [80]**
**THE COURTROOM DEPUTY: [1]** 3/2

**1**

**10 [8]** 8/11 11/6 21/7 21/10 23/23 27/8 31/1 46/11
**10-day [1]** 28/15
**100 [2]** 20/7 20/11
**10:00 a.m [1]** 43/17
**11 [2]** 12/2 23/4
**11-plus [1]** 4/2
**111 [1]** 2/3
**15 [2]** 36/8 36/8
**17 [1]** 9/1

**2**

**2-5 [2]** 8/10 11/3
**20001 [1]** 2/17
**2001 [2]** 1/17 2/6
**20036 [2]** 1/18 2/7
**20043 [2]** 1/15 1/21
**20044 [1]** 2/10
**2012 [1]** 20/13
**2019 [1]** 23/2
**2023 [1]** 4/9
**2025 [1]** 38/12
**2026 [2]** 1/6 48/11
**23 [1]** 9/2
**25 [1]** 8/13
**26-696 [2]** 1/4 3/3
**2:00 [1]** 41/9

**3**

**30 [1]** 23/21
**333 [1]** 2/16
**34553 [2]** 1/14 1/20
**35 [1]** 8/13
**383 [1]** 23/3
**3:03 [1]** 1/7
**3d [1]** 23/4

**4**

**412 [1]** 23/7
**47 [1]** 9/2
**48 [1]** 26/1
**4:00 [1]** 41/10
**4:19 [1]** 47/15
**4:30 [1]** 41/10
**4th [1]** 48/11

**5**

**50 [1]** 29/18
**500 [2]** 1/18 2/7
**56 [7]** 3/25 15/3 16/5 17/4 18/16 20/2 24/18

**6**

**60 [1]** 29/18
**60604 [1]** 2/4
**6710 [1]** 2/16
**684 [2]** 20/7 20/11
**696 [2]** 1/4 3/3

**7**

**7:00 p.m [1]** 43/18

**8**

**800 [1]** 2/3
**859 [1]** 23/9
**869 [1]** 23/8
**878 [1]** 2/9

**9**

**982 [1]** 23/9
**99 [2]** 20/7 20/11
**9th [2]** 27/23 38/11

**A**

**a.m [1]** 43/17
**abbreviated [1]** 13/6
**able [13]** 13/23 14/9 16/1 16/2 16/10 25/13 29/22 31/8 35/22 35/23 42/14 44/14 44/17
**able to [1]** 16/2
**about [41]** 4/1 4/10 4/25 5/18 6/9 7/13 7/16 7/22 7/23 8/1 8/11 8/13 10/1 12/7 12/17 13/9 13/10 13/11 13/15 16/10 16/15 17/14 18/18 26/7 26/15 28/21 32/18 33/16 37/1 37/6 38/4 38/21 39/9 39/23 41/6 41/12 41/13 41/23 41/24 42/21 47/1
**above [1]** 48/6
**above-entitled [1]** 48/6
**absence [1]** 26/21
**absolutely [1]** 22/25
**accept [2]** 18/5 31/18
**accommodates [1]** 36/6
**accompli [1]** 26/22
**accuracy [1]** 43/25
**accurate [3]** 5/3 5/13 27/10
**accusation [1]** 32/15
**achieve [1]** 36/4
**act [1]** 4/21
**action [2]** 1/4 5/20
**activities [2]** 5/17 24/11
**activity [1]** 24/5
**actual [2]** 20/22 36/16
**actually [16]** 4/24 5/14 8/6 10/1 10/23 10/25 15/20 30/1 32/4 33/22 33/24 34/3 37/1 40/17 43/17 43/18
**adapt [1]** 7/2
**adapting [1]** 7/9
**address [2]** 25/21 34/3
**addressing [1]** 45/22
**adequate [1]** 6/17
**adjourn [1]** 35/14
**adjudicate [1]** 33/2
**adjudicated [2]** 27/21 33/11
**adjust [1]** 6/24
**administrative [4]** 4/20 13/1 13/12 17/2
**affairs [1]** 40/5
**affect [1]** 40/16
**affected [1]** 6/23
**affidavits [1]** 7/19
**after [2]** 23/9 25/24
**afternoon [6]** 3/7 3/9 3/12 3/14 3/16 3/19
**again [6]** 13/8 14/14 20/8 22/1 24/17 42/16
**agency [4]** 13/21 23/3 32/3 34/2
**agree [1]** 12/23
**al [4]** 1/3 1/7 3/3 3/4
**aliens [3]** 38/13 38/13 38/14
**all [50]**
**allegation [1]** 17/15
**allegations [10]** 5/15 12/9 12/14 17/15 18/13 28/12 28/14 32/9 32/25 33/15
**alleged [1]** 14/8
**Alliance [1]** 24/9
**allocation [1]** 41/24
**allow [4]** 27/20 39/7 42/8 42/25
**Ally [1]** 3/10
**Allyson [1]** 1/13
**almost [2]** 9/5 9/6
**alone [3]** 21/14 21/16 22/22
**already [4]** 22/18 30/11 34/3 36/15
**also [17]** 5/14 5/18 12/8 13/2 13/15 13/22 14/9 31/14 33/3 34/17 35/16 36/5 37/11 41/24 44/19 46/1 47/12
**Although [1]** 10/10
**am [11]** 10/4 10/10 13/24 26/8 27/12 33/6 34/15 36/1 36/10 38/9 41/14
**AMERICAN [2]** 1/16 2/5
**AMICA [2]** 1/3 3/3
**among [1]** 4/18
**amount [4]** 5/14 8/14 17/12 31/16
**another [2]** 26/23 43/21
**answer [5]** 25/19 31/8 36/17 40/11 42/14
**answers [1]** 42/4
**anticipate [1]** 47/2
**anticipating [1]** 41/19
**any [24]** 4/14 10/11 12/2 13/9 13/12 18/20 24/12 25/15 25/16 25/17 25/18 26/12 28/19 34/7 34/10 35/1 35/4 37/22 40/18 40/19 43/22 45/15 45/17 45/18
**anybody [1]** 34/4
**anyone [1]** 45/21
**anything [13]** 19/1 21/17 21/18 22/9 29/1 34/9 35/14 39/9 41/14 41/19 44/12 46/23 47/7
**APA [7]** 4/3 4/12 16/18 16/25 18/22 19/21 38/18
**apologize [2]** 20/9 26/4
**appeal [16]** 8/13 9/5 9/11 9/16 12/20 23/21 24/2 27/8 27/9 28/15 28/24 29/2 29/13 29/14 29/15 30/14
**appeals [15]** 8/20 9/4 9/10 10/3 11/16 12/21 12/25 13/5 18/9 27/6 29/13 29/14 31/22

**A**

**appeals... [2]** 40/8 40/9
**appear [9]** 5/11 6/23 25/19 36/12 36/12 36/13 45/13 45/18 45/18
**appearance [1]** 3/21
**appearances [4]** 1/12 1/23 2/1 45/10
**Appearing [1]** 36/3
**apples [1]** 8/16
**applies [1]** 27/6
**appreciate [1]** 36/4
**approach [1]** 7/15
**appropriate [1]** 43/6
**are [108]**
**aren't [1]** 11/16
**argue [4]** 7/14 14/4 22/4 22/7
**arguing [1]** 14/15
**argument [14]** 7/11 7/17 7/18 11/19 14/15 17/22 29/2 30/3 30/22 30/25 41/14 42/5 44/9 45/20
**arguments [5]** 19/4 21/24 27/25 42/2 45/1
**around [2]** 12/25 42/3
**arrange [1]** 34/7
**Article [9]** 6/7 6/9 6/13 6/14 7/4 7/15 13/10 14/7 14/9
**as [55]**
**ascertain [1]** 7/5
**aside [2]** 10/8 37/21
**ask [29]** 4/7 9/17 10/9 10/12 10/19 12/7 15/15 15/16 15/17 16/1 16/10 16/15 17/25 19/15 26/7 28/20 35/6 35/12 38/3 38/21 41/18 41/21 41/22 42/7 42/21 42/25 43/1 43/18 44/18
**asked [2]** 10/14 20/9
**asking [7]** 19/12 20/3 22/2 26/5 36/23 45/3 46/10
**aspect [1]** 23/13
**aspects [1]** 22/14
**assert [3]** 5/2 32/23 33/14
**asserted [1]** 14/8
**asserting [4]** 5/19 6/1 13/16 18/22
**assertion [12]** 8/23 10/24 10/25 11/9 12/19 16/3 16/7 17/8 31/1 31/25 32/6 32/12
**assertions [3]** 11/18 12/16 31/3
**assistance [1]** 40/3
**Association [1]** 23/9
**assume [4]** 18/3 18/4 18/11 30/13
**assumption [3]** 26/8 26/11 27/13
**assurances [1]** 42/19
**attempt [2]** 21/25 31/22
**attempting [1]** 7/5
**attorney [2]** 8/15 45/18
**attorneys [4]** 6/12 8/12 12/22 45/12
**August [1]** 4/9
**automatic [1]** 29/5
**available [4]** 9/20 10/9 35/5 37/3
**Avenue [1]** 2/16
**average [6]** 8/19 8/21 9/16 9/16 11/15 31/16
**averred [1]** 21/1
**avoid [2]** 35/4 37/23
**aware [1]** 19/25
**away [1]** 36/15

**B**

**back [6]** 16/4 17/10 22/24 36/22 43/20 44/24
**background [1]** 43/25
**bad [1]** 22/10
**balancing [1]** 34/20
**Bankruptcy [1]** 2/15
**bar [1]** 6/15
**based [1]** 31/19
**basis [15]** 4/6 5/2 5/6 7/25 10/16 12/11 12/12 12/16 12/19 13/11 21/12 22/8 22/9 24/21 32/13
**be [90]**
**bear [1]** 7/18
**because [25]** 4/18 10/11 11/10 12/16 14/16 15/18 15/21 16/1 16/18 24/5 24/17 24/20 27/6 28/3 30/3 31/10 31/11 31/13 32/15 33/9 37/14 38/7 40/19 42/2 45/4
**Becker [3]** 3/21 35/10 35/12
**become [1]** 28/11
**becomes [1]** 26/21
**been [13]** 4/7 6/21 18/17 20/5 25/11 25/13 26/11 33/11 33/12 34/9 43/12 44/1 47/10
**before [17]** 1/10 10/3 12/21 13/6 13/7 18/8 18/9 28/15 31/10 35/14 37/5 38/14 39/11 39/12 40/7 43/22 45/9
**behalf [3]** 3/14 19/8 45/11
**behaviors [1]** 6/24
**behind [1]** 32/13
**being [9]** 7/25 8/1 32/6 32/17 32/25 36/10 42/13 42/14 44/14
**belabor [1]** 40/23
**belief [1]** 32/9
**believe [3]** 8/9 15/8 33/1
**belt [1]** 37/13
**Ben [1]** 2/10
**bench [2]** 4/2 12/2
**benefits [1]** 34/25
**best [2]** 4/1 25/2
**better [2]** 20/10 36/7
**between [3]** 6/6 21/11 38/2
**beyond [4]** 9/15 31/8 42/13 47/3
**BIA [18]** 8/13 8/19 9/4 9/10 9/16 10/3 11/16 12/21 13/6 18/9 28/24 28/25 28/25 29/3 30/1 38/14 40/8 40/14
**BIA's [1]** 13/5
**binder [1]** 46/21
**bit [4]** 13/11 22/16 27/3 36/23
**blue [1]** 34/4
**Blvd [1]** 2/3
**board [9]** 28/11 28/16 29/22 30/12 30/13 30/18 31/11 31/17 31/22
**bono [1]** 24/4
**bootstrap [1]** 21/25
**both [3]** 8/21 24/9 41/14
**bother [1]** 41/7
**bound [1]** 8/14
**bounds [1]** 4/4
**Box [3]** 1/14 1/20 2/9
**bread [1]** 19/21
**break [1]** 45/10
**breathing [1]** 27/20
**brief [14]** 7/12 11/20 11/21 17/22 17/23 20/3 20/4 20/15 22/5 22/7 25/15 31/17 40/22 46/25
**briefed [1]** 30/14
**briefing [7]** 28/14 29/9 29/10 29/21 30/17 31/1 46/19
**briefs [2]** 46/24 47/3
**burden [11]** 7/18 7/20 11/22 11/22 14/16 16/14 24/15 24/15 37/6 37/8 44/4
**burdens [1]** 34/22
**burdensome [1]** 38/18
**business [4]** 24/4 24/5 24/11 39/19
**butter [1]** 19/21

**C**

**call [1]** 17/25
**calls [1]** 38/22
**came [2]** 28/1 33/13
**can [55]**
**can't [11]** 4/22 5/9 7/8 10/11 16/20 31/7 35/25 36/3 36/24 38/15 38/20
**cancel [1]** 24/3
**candidly [1]** 42/4
**cannot [6]** 7/20 17/5 18/23 20/23 24/13 38/9
**capacity [1]** 46/7
**career [1]** 12/24
**careful [1]** 22/11
**carefully [1]** 27/11
**carried [2]** 11/22 14/16
**carry [1]** 37/7
**case [56]**
**cases [15]** 4/18 4/21 5/9 8/21 10/13 12/6 18/1 18/8 18/9 34/18 34/19 34/24 39/17 40/14 40/15
**cause [1]** 32/2
**CENTER [3]** 1/3 2/2 3/3
**central [1]** 24/5
**cert [2]** 29/18 30/24
**certainly [7]** 5/1 5/3 17/23 19/24 26/10 29/20 31/17
**certify [1]** 48/4
**certiorari [3]** 29/7 29/12 29/17
**challenge [2]** 24/6 43/25
**chambers [1]** 45/11
**chance [8]** 19/5 20/3 20/4 28/6 32/11 32/15 32/16 39/12
**change [1]** 24/4
**Chemical [1]** 23/8
**Chicago [1]** 2/4
**Christopher [2]** 2/8 3/19
**circuit [9]** 4/19 4/21 4/23 18/17 20/6 20/13 23/7 23/8 34/24

C

circumstance [1] 25/18
circumstances [4] 12/4 26/16 27/1 42/16
citation [1] 24/21
cite [4] 8/9 18/20 21/7 21/10
cited [1] 19/11
cites [1] 23/6
CIV [1] 2/9
civil [4] 1/4 3/2 32/24 38/17
claim [2] 21/20 25/20
claimed [2] 14/1 14/2
claims [1] 15/19
clarify [1] 35/9
clarifying [1] 38/1
clarity [1] 8/1
clear [7] 8/25 30/3 30/8 33/4 36/25 37/12 45/13
clearly [2] 21/11 22/17
client [6] 22/21 23/17 24/3 29/25 30/2 31/16
clients [11] 5/18 5/22 23/20 23/22 23/23 25/6 26/3 38/11 38/15 40/15 46/2
clients' [2] 24/10 30/20
cocounsel [1] 36/11
collateral [1] 34/25
collating [1] 38/23
colleague [4] 3/20 32/20 33/7 35/10
colleagues [2] 4/14 12/3
colloquy [2] 21/4 22/25
COLUMBIA [1] 1/1
come [3] 22/23 44/5 44/24
comes [1] 45/23
coming [2] 34/4 36/17
comment [4] 21/20 26/18 26/21 27/23
common [2] 22/20 31/9
compare [1] 8/22
compared [1] 23/17
comparison [1] 8/16
comparisons [1] 34/16
competently [1] 29/24
completely [2] 7/20 17/21
complex [4] 8/20 11/8 11/10 11/15
complexity [1] 31/17
complicate [1] 37/15
complications [1] 37/24
comply [1] 25/2
compound [1] 25/8
concerns [1] 8/4
concluded [2] 37/22 47/15
conclusory [6] 5/4 5/15 12/9 18/14 22/4 32/10
conduct [1] 40/5
conducts [1] 24/4
confer [2] 42/15 44/16
conference [3] 1/10 27/4 43/21
consented [2] 46/12 46/12
constitute [1] 7/15
constitutes [1] 48/5
Constitution [1] 2/16
consulting [1] 32/19
contemplate [1] 33/24
context [1] 26/1
continue [1] 9/21
CONTINUED [2] 1/23 2/1
contrary [1] 43/14
conversation [3] 38/2 39/13 41/23
converted [1] 33/9
Convertino [3] 20/6 20/11 20/18
convinced [3] 10/4 34/9 37/13
copies [4] 46/20 46/21 46/24 46/25
copy [2] 14/25 47/5
core [4] 23/25 24/5 24/10 42/8
correct [6] 7/21 15/21 22/25 26/10 27/12 48/5
costs [1] 35/1
could [15] 8/20 9/19 9/20 10/6 10/9 10/12 11/20 12/23 17/24 30/10 30/16 30/17 36/4 36/13 38/4
couldn't [3] 17/18 17/19 17/19
COUNCIL [3] 1/16 2/5 23/3
counsel [18] 3/5 3/6 18/25 20/14 21/4 21/7 21/23 22/6 22/19 22/25 27/4 28/7 32/1 41/11 42/17 43/10 44/19 45/20
country [1] 12/25
couple [3] 35/15 36/14 40/7
course [6] 25/1 25/8 25/23 26/24 33/13 41/5
court [33] 1/1 2/14 2/15 10/3 15/22 16/19 17/4 17/5 17/18 18/21 23/6 23/7 23/15 24/16 25/1 25/11 26/12 26/22 26/23 29/8 29/13 29/14 31/22 33/2 33/9 34/24 38/14 40/7 40/9 41/1 46/22 48/4 48/14
Court's [3] 15/22 25/14 29/15
courtesy [3] 46/24 46/25 47/4
courts [11] 2/15 9/4 9/10 12/20 12/25 13/5 13/7 18/9 29/7 29/8 29/9
COVID [1] 46/5
create [2] 20/19 20/21
crisis [1] 27/21
critical [1] 23/25
cross [5] 9/21 9/25 10/4 10/12 10/15
cross-examination [3] 9/25 10/12 10/15
cross-examine [1] 9/21
cross-examined [1] 10/4
curiosity [1] 43/11
curious [1] 12/7

D

D.C [6] 4/19 20/6 20/13 23/6 23/8 34/24
damage [1] 26/20
date [2] 26/19 26/19
Dated [1] 48/11
day [6] 27/7 28/1 28/15 29/12 38/23 48/11
day-and-a-half-long [1] 38/23
days [7] 23/21 23/23 24/2 25/7 27/8 31/2 38/4
DC [7] 1/5 1/15 1/18 1/21 2/7 2/10 2/17
deadline [3] 27/2 27/6 27/6
deal [2] 6/8 26/16
dealing [2] 26/25 26/25
debate [1] 12/24
decide [8] 17/23 26/13 27/8 29/9 29/23 31/18 34/3 34/21
decides [3] 26/24 28/24 30/18
decision [11] 23/7 26/9 27/13 27/16 28/4 29/3 29/4 36/25 37/20 38/8 39/8
decisions [6] 23/6 23/7 23/16 24/9 24/9 39/17
declarant [9] 12/6 14/19 21/11 24/14 25/4 25/13 25/19 36/16 42/14
declarants [11] 9/19 9/24 20/25 22/8 22/10 22/11 22/15 34/8 37/2 37/3 41/3
declarants' [1] 23/13
declaration [19] 7/24 8/23 8/24 10/16 10/20 10/23 11/1 14/19 15/6 15/12 16/7 21/5 21/6 21/9 21/15 22/4 22/4 25/17 31/8
declarations [14] 4/22 7/19 8/4 8/5 8/10 11/23 16/15 16/16 18/14 21/2 22/14 25/17 40/6 43/12
declined [2] 26/19 27/21
defendant's [1] 3/25
defendants [25] 1/8 2/8 3/20 15/17 16/24 18/13 18/15 18/17 22/13 23/11 24/13 25/3 25/20 26/4 27/19 28/8 28/8 32/4 32/8 33/1 33/14 37/1 38/3 39/15 44/4
defendants' [6] 15/11 15/11 20/14 21/23 28/11 32/23
Defenders [1] 6/15
Defense [2] 3/18 23/2
delay [3] 24/19 32/7 32/14
deliberate [1] 27/24
deliver [1] 36/12
delivered [1] 46/21
delivery [1] 46/20
DEMOCRACY [2] 1/14 1/20
demonstrate [2] 28/2 44/2
deny [1] 21/17
Department [3] 4/8 5/7 19/16
depends [1] 31/17
depositions [1] 38/7
detailed [1] 22/11
determinative [2] 20/15 21/18
develop [2] 29/2 30/2
developed [2] 30/11 30/20
development [2] 7/12 17/7
devote [1] 18/10
did [3] 11/20 31/13 44/22
didn't [3] 19/13 20/3 23/20
difference [2] 10/11 18/2
different [10] 4/17 5/16 5/24 5/25 6/10 6/11 13/3

## D


**different... [3]** 13/14 34/13 39/21
**difficult [1]** 45/2
**direct [4]** 4/20 9/19 10/9 43/16
**directing [1]** 41/1
**directly [6]** 4/21 6/25 7/3 7/7 24/10 33/18
**disagreement [1]** 40/2
**discovery [24]** 1/10 4/3 4/11 4/24 5/8 7/6 7/22 11/25 13/13 14/23 16/20 16/23 16/24 17/6 18/16 18/21 20/19 20/21 21/1 21/25 24/18 25/25 31/3 31/6
**discretion [1]** 27/7
**discuss [2]** 21/15 43/19
**discussed [6]** 7/1 15/7 21/5 21/23 22/18 32/18
**discussing [3]** 21/6 25/11 46/19
**discussion [3]** 28/13 35/17 36/25
**discussions [1]** 41/24
**dismissal [4]** 29/1 29/5 30/4 30/6
**dismissed [1]** 28/2
**dispatch [2]** 25/25 27/24
**dispute [26]** 16/2 16/9 17/14 17/24 20/22 22/15 22/17 22/19 23/19 23/20 23/23 24/3 24/12 24/14 24/15 27/16 28/8 28/9 31/25 32/2 34/11 34/12 36/2 39/22 39/25 42/9
**disputed [2]** 18/12 32/4
**disputes [2]** 28/17 28/18
**distinction [1]** 6/6
**DISTRICT [4]** 1/1 1/1 1/11 2/15
**divert [1]** 25/9
**divide [1]** 41/14
**do [56]**
**docket [1]** 8/10
**document [1]** 10/17
**does [11]** 6/23 9/4 9/8 9/10 10/3 13/20 16/5 20/24 32/2 36/12 40/16
**doesn't [11]** 5/17 6/7 7/15 8/15 8/22 9/1 10/1 10/2 11/15 14/17 15/22
**doing [11]** 3/22 5/16 5/16 18/8 20/20 33/24 36/21 37/16 37/17 37/22 45/5
**DOJ [1]** 2/9
**DOJ-CIV [1]** 2/9
**dollar [1]** 23/15
**dollars [1]** 13/20
**don't [51]**
**done [7]** 17/1 22/3 26/21 32/6 32/17 33/25 41/9
**doubt [6]** 7/25 9/7 9/11 9/15 12/5 22/8
**down [4]** 20/10 25/22 35/4 42/10
**draw [1]** 11/12
**drawn [1]** 11/18
**dressing [1]** 39/24
**driving [1]** 31/25
**due [1]** 30/20
**during [2]** 12/24 46/5


## E


**each [9]** 15/18 16/3 24/13 24/15 38/11 38/12 38/12 38/16 38/24
**earlier [3]** 36/7 37/1 38/3
**eat [1]** 45/5
**effect [4]** 39/19 40/4 40/10 45/14
**effecting [1]** 39/25
**effective [4]** 5/23 26/19 26/19 27/23
**efficient [3]** 26/16 37/18 39/8
**efficiently [2]** 34/18 34/19
**eight [2]** 11/6 23/25
**either [7]** 5/12 9/21 14/23 17/6 19/14 33/12 43/12
**else [8]** 19/1 35/14 36/16 36/18 41/14 44/7 44/12 47/7
**emergency [2]** 33/21 33/23
**endeavor [2]** 11/9 25/1
**ended [1]** 19/9
**ends [1]** 15/22
**engage [1]** 24/18
**enlarge [1]** 46/11
**enough [11]** 14/8 16/13 21/16 22/22 23/4 23/14 23/16 27/11 30/20 34/23 44/6
**entered [1]** 3/21
**entire [1]** 25/20
**entitled [5]** 7/13 7/14 23/12 33/2 48/6
**entitlement [1]** 16/2
**Environmental [1]** 23/3
**EOIR [1]** 37/17
**equivalent [2]** 17/1 17/2
**Erez [3]** 1/19 3/8 19/7
**essentially [3]** 20/5 21/24 42/21
**established [1]** 16/8
**et [4]** 1/3 1/7 3/3 3/4
**evaluates [1]** 18/17
**evaluation [1]** 31/19
**even [15]** 10/8 11/13 14/5 18/12 21/9 22/13 28/18 31/18 31/20 31/22 34/12 34/17 41/6 41/20 42/18
**evening [1]** 47/13
**event [1]** 35/1
**ever [11]** 4/2 4/11 5/7 12/2 13/12 16/21 18/21 19/12 19/18 26/6 31/10
**every [7]** 16/18 22/21 23/13 24/13 24/15 28/9 31/15
**everybody [1]** 15/23
**everyone [3]** 3/10 27/13 45/21
**everyone's [1]** 27/7
**everything [4]** 14/5 37/15 42/18 42/19
**evidence [3]** 10/17 43/14 44/2
**exact [1]** 9/8
**exaggerated [3]** 5/12 31/2 32/10
**examination [4]** 9/25 10/12 10/15 41/24
**examine [1]** 9/21
**examined [1]** 10/4
**example [4]** 14/11 29/6 29/21 40/6
**Excellent [1]** 46/17
**EXECUTIVE [2]** 1/6 3/4
**exhibits [1]** 47/1
**exist [1]** 24/1
**exists [1]** 24/5
**expect [1]** 13/7
**expectation [1]** 37/2
**expedition [4]** 42/22 42/24 43/10 45/4
**experience [1]** 19/18
**experiencing [1]** 12/3
**explains [2]** 20/18 21/12
**explanations [1]** 22/11
**explore [2]** 13/23 14/10
**extensive [1]** 16/19
**extensively [1]** 21/15
**extent [6]** 22/5 34/1 35/22 37/20 40/17 45/12
**extraordinarily [1]** 12/4
**extraordinary [5]** 24/17 24/18 25/18 26/3 30/5
**extremely [1]** 30/11


## F


**F.2d [1]** 23/9
**F.3d [2]** 20/7 20/11
**facing [1]** 26/17
**fact [14]** 4/24 11/25 17/4 17/9 17/14 18/3 18/4 18/12 21/19 22/20 24/17 34/11 34/12 37/2
**facts [7]** 17/7 17/10 18/15 18/18 20/16 20/22 34/14
**factual [8]** 7/11 7/17 12/12 12/16 12/19 17/24 31/14 41/16
**factually [1]** 28/21
**failure [1]** 28/2
**fair [7]** 5/1 5/4 5/12 19/13 41/23 43/1 44/3
**fairly [4]** 5/20 6/1 6/1 34/1
**fait [1]** 26/21
**faith [4]** 5/2 22/10 32/9 32/13
**false [1]** 14/8
**famously [1]** 23/16
**fast [1]** 36/23
**favor [2]** 11/11 37/21
**Federal [1]** 32/24
**feel [1]** 9/5
**feels [1]** 5/7
**few [4]** 8/7 20/10 21/22 30/9
**fight [1]** 42/15
**figure [3]** 16/12 38/8 44/17
**file [7]** 4/22 24/1 25/15 27/8 27/9 27/9 46/14
**filed [4]** 12/25 27/7 31/10 31/12
**files [1]** 38/24
**filing [2]** 28/1 28/15
**final [1]** 37/17
**finances [1]** 14/2
**financial [1]** 40/18
**find [9]** 13/19 13/21 14/7 15/23 17/19 19/14 26/16 37/18 37/19

**F**

**finding [1]** 4/24
**fine [14]** 9/13 11/2 11/19 18/11 31/5 32/21 35/7 35/13 35/25 36/3 36/7 36/19 43/7 47/4
**firms [5]** 5/25 6/12 17/20 17/25 17/25
**first [5]** 8/9 8/17 35/19 35/25 36/8
**fishing [4]** 42/21 42/24 43/10 45/4
**five [7]** 15/17 16/1 20/25 22/14 22/14 37/2 37/3
**fixated [1]** 21/8
**flags [1]** 39/14
**flexibility [1]** 27/3
**focus [4]** 8/4 18/8 24/1 25/9
**focused [3]** 14/20 23/11 43/15
**focusing [1]** 47/10
**folks [2]** 35/5 37/11
**follow [2]** 36/10 36/14
**follow-ups [1]** 36/14
**following [2]** 29/16 38/13
**force [1]** 17/16
**forced [1]** 17/17
**foregoing [1]** 48/5
**forestall [1]** 29/5
**form [2]** 26/23 39/25
**formal [2]** 13/4 41/1
**formulate [1]** 13/24
**forth [1]** 39/24
**forward [5]** 1/14 1/20 37/19 37/24 44/5
**FOUNDATION [2]** 1/14 1/20
**four [1]** 25/17
**framed [1]** 39/5
**Franklin [1]** 2/10
**frankly [8]** 26/3 33/20 34/17 35/4 36/1 37/12 38/5 38/16
**Friday [3]** 9/20 24/25 41/9
**front [4]** 8/5 15/2 38/17 38/25
**full [8]** 28/14 28/25 29/9 29/10 29/21 31/1 38/2 38/3
**fully [1]** 30/14
**fun [1]** 26/11
**fundamental [1]** 20/2
**fundamentally [1]** 39/20
**funding [2]** 13/16 14/12
**fundraise [1]** 14/12
**fundraising [2]** 5/24 6/11
**further [7]** 17/7 21/1 33/18 35/4 36/2 37/23 42/16

**G**

**gain [1]** 14/10
**gains [1]** 34/21
**game [4]** 5/1 5/4 41/23 44/3
**general [2]** 17/15 43/11
**generally [1]** 34/16
**generous [1]** 18/16
**Georgevich [2]** 2/2 3/16
**get [6]** 10/18 11/24 30/4 35/2 42/3 43/20
**gets [1]** 26/23
**getting [1]** 36/15
**give [8]** 19/5 20/4 28/5 32/11 32/14 32/16 37/19 41/17
**given [6]** 3/24 11/25 34/6 35/3 36/25 46/13
**go [17]** 3/10 4/21 5/17 8/12 9/25 11/14 12/13 13/1 16/12 17/19 17/19 25/1 25/22 30/21 31/21 42/8 43/11
**goes [3]** 7/23 13/2 21/15
**going [41]** 5/15 9/24 9/24 10/11 10/13 10/21 12/13 12/13 17/10 18/10 19/15 20/21 23/24 24/16 28/9 28/10 30/3 30/4 30/5 30/8 30/9 30/13 30/21 30/22 31/8 31/11 31/13 31/15 34/5 38/7 38/10 38/15 40/4 41/19 42/1 42/6 44/17 44/19 45/1 45/5 46/23
**gone [2]** 33/12 39/6
**good [13]** 3/7 3/7 3/9 3/12 3/14 3/16 3/19 5/2 10/21 32/8 32/13 37/11 47/13
**got [2]** 10/17 12/3
**government [20]** 4/3 5/20 6/2 13/13 17/14 19/10 26/18 27/5 28/16 28/18 31/3 32/1 35/11 38/21 41/17 41/21 42/7 42/12 42/20 46/12
**government's [1]** 27/17
**grant [5]** 5/24 13/20 13/20 14/13 45/17
**granted [4]** 20/3 20/23 41/3 46/16
**grants [2]** 6/11 13/23
**great [1]** 6/8
**guess [8]** 4/9 5/5 8/2 13/11 15/14 18/1 31/24 39/5

**H**

**had [11]** 10/5 13/13 24/3 33/11 34/2 35/17 36/25 39/12 39/13 46/1 46/12
**half [2]** 4/10 38/23
**hand [1]** 46/20
**handle [6]** 4/1 6/12 9/3 9/9 9/10 12/20
**handled [1]** 10/13
**handling [1]** 12/21
**happen [3]** 16/23 19/18 30/4
**happened [3]** 12/3 26/6 31/11
**happy [5]** 18/3 18/4 36/5 36/9 41/15
**hard [6]** 7/13 7/16 27/2 27/6 30/9 46/6
**harm [9]** 6/8 6/20 6/21 6/22 8/22 13/10 22/5 23/1 27/17
**harms [3]** 6/1 7/6 7/7
**has [24]** 3/21 4/23 6/8 6/21 10/13 11/17 15/21 18/21 19/12 22/2 22/9 23/15 24/3 26/6 26/19 28/7 29/17 30/19 31/10 34/9 38/11 40/10 41/21 42/20
**hasn't [1]** 31/11
**hate [1]** 40/23
**have [137]**
**haven't [7]** 11/22 14/16 19/13 22/3 27/10 44/5 44/6
**Havens [1]** 39/22
**having [10]** 6/10 6/24 7/2 23/21 24/25 25/9 26/1 29/11 40/8 42/5
**he [2]** 3/21 3/22
**head [5]** 13/25 21/3 36/1 42/3 46/15
**heading [1]** 42/9
**hear [7]** 18/24 19/5 30/18 41/6 42/1 42/20 47/11
**heard [3]** 12/2 22/6 39/15
**hearing [17]** 9/20 10/10 25/7 27/3 34/8 35/6 35/10 35/11 37/3 38/6 38/8 39/9 41/9 41/10 41/12 45/1 46/3
**heck [1]** 29/12
**help [2]** 18/1 28/1
**helpful [13]** 8/2 34/6 35/5 36/17 39/2 39/4 39/7 40/24 40/25 42/1 42/6 45/1 45/21
**her [3]** 36/6 36/7 36/9
**here [37]** 3/2 3/24 4/6 7/5 8/5 8/16 8/19 9/22 10/12 10/18 12/11 13/8 14/20 16/7 20/4 20/24 22/10 26/8 27/1 27/23 28/3 28/8 32/20 33/20 33/25 34/8 35/5 36/22 37/11 37/14 37/16 37/19 39/14 40/1 41/19 42/17 43/20
**hereby [1]** 29/15
**herself [1]** 36/13
**high [1]** 30/8
**higher [1]** 40/16
**highest [1]** 29/7
**his [4]** 3/21 12/24 43/1 46/15
**history [1]** 6/22
**hit [1]** 21/3
**hold [1]** 40/19
**Honor [32]** 3/8 3/12 3/19 4/13 4/16 9/12 15/25 19/7 19/9 19/17 19/19 21/3 22/24 24/24 25/11 27/15 29/20 35/9 35/15 36/20 37/25 39/3 40/21 42/11 44/10 44/22 45/8 45/9 45/24 46/9 47/6 47/8
**Honor's [1]** 24/8
**HONORABLE [1]** 1/10
**hour [1]** 41/20
**hours [13]** 8/11 8/13 9/1 9/2 9/2 9/8 11/14 12/23 25/6 26/1 29/18 30/9 34/15
**housekeeping [6]** 35/16 40/22 44/23 46/1 46/10 46/18
**how [14]** 4/1 4/7 13/1 13/2 29/3 29/3 31/12 34/6 40/5 40/13 40/14 40/15 41/12 41/13
**hundred [1]** 11/13
**hundreds [3]** 8/11 11/13 25/5
**hurdle [1]** 30/8
**hurt [1]** 38/20

**I**

**I'll [3]** 7/16 22/23 43/16
**I'm [46]** 4/4 7/10 9/15 10/24 11/24 12/1 12/17 13/8 13/24 13/25 14/14 15/24 16/4 18/3 18/3 19/1 19/25 20/3 20/4 21/23 26/25 27/12 29/24 31/24 32/19 33/4 33/17 34/9 34/19 36/5 36/9 36/21 37/13

## I

**I'm... [13]** 37/15 37/19 37/21 38/15 39/10 40/11 40/20 41/19 42/3 42/8 43/4 44/17 46/4
**I've [1]** 13/12
**Ian [1]** 2/8
**idea [1]** 10/21
**identifiable [1]** 23/4
**identified [5]** 21/17 22/1 25/13 25/15 26/5
**identify [1]** 24/15
**IFR [6]** 6/2 7/7 14/11 14/12 17/16 32/2
**III [9]** 6/7 6/9 6/13 6/14 7/4 7/15 13/10 14/7 14/9
**IJ [1]** 18/10
**IL [1]** 2/4
**imagine [5]** 10/11 30/10 31/7 38/9 38/15
**IMMIGRANT [3]** 1/3 2/2 3/3
**immigration [6]** 1/7 1/16 2/5 3/4 17/18 38/14
**impact [1]** 40/18
**impairs [2]** 24/7 24/10
**important [3]** 26/13 42/3 45/6
**imposes [1]** 34/22
**improbable [2]** 9/23 10/6
**inaccurate [4]** 32/10 32/12 32/16 43/13
**inclined [2]** 25/1 42/8
**including [1]** 29/15
**increase [2]** 28/10 32/2
**incredibly [1]** 40/24
**indicated [1]** 43/10
**indirect [2]** 14/5 14/6
**individual [1]** 22/21
**individuals [1]** 40/3
**inference [1]** 11/17
**inferences [1]** 11/11
**inflicted [3]** 5/19 7/6 22/7
**information [1]** 38/10
**informed [2]** 29/3 29/4
**infringed [1]** 30/21
**initial [1]** 31/19
**injuries [2]** 5/19 14/2
**injury [5]** 6/6 6/7 6/22 14/1 25/8
**input [1]** 21/13
**inquiry [1]** 15/22
**instance [2]** 22/21 26/5
**instead [4]** 6/12 18/8 23/21 38/6
**instincts [1]** 36/22
**insufficient [1]** 11/23
**interested [3]** 39/9 42/19 46/2
**interests [1]** 29/25
**interferes [1]** 24/10
**interim [1]** 37/17
**interrupt [1]** 7/10
**involve [1]** 16/19
**involved [2]** 5/10 45/21
**irreparable [4]** 6/8 13/10 23/1 26/20
**is [229]**
**isn't [4]** 6/14 7/10 8/22 8/25
**issue [21]** 17/11 17/11 20/20 21/9 21/18 24/17 26/8 29/23 30/10 30/16 30/23 31/15 33/11 34/1 36/21 36/24 42/13 43/22 44/25 45/22 47/12
**issued [1]** 27/22
**issues [21]** 4/1 9/23 14/23 16/24 22/15 23/22 24/2 24/23 26/13 27/20 27/25 29/9 30/14 35/4 35/16 37/2 37/21 40/20 41/25 42/3 44/23
**it [102]**
**it's [50]**
**item [3]** 46/1 46/10 46/18
**items [1]** 40/23
**its [3]** 24/3 24/4 37/17
**itself [2]** 8/7 34/3

## J

**Jackson [1]** 2/3
**jerk [1]** 28/1
**judge [4]** 1/11 28/24 29/3 32/16
**judges [1]** 28/25
**judgment [18]** 7/20 11/10 11/21 17/2 17/3 18/7 20/20 20/22 21/20 22/16 25/21 26/15 29/15 29/16 33/1 33/10 33/13 47/10
**judicial [1]** 9/6
**jurisdiction [5]** 4/12 4/20 19/11 19/24 23/10
**jurisdictional [5]** 5/8 13/13 14/23 16/20 18/21
**jurisprudence [1]** 6/22
**just [73]**
**JUSTICE [3]** 2/2 4/8 19/16
**justified [1]** 43/23

## K

**key [1]** 20/15
**kind [1]** 30/9
**kinds [1]** 38/13
**knee [1]** 28/1
**knee-jerk [1]** 28/1
**know [23]** 10/1 12/15 12/22 13/1 13/5 18/5 25/4 26/9 27/9 27/11 29/14 31/9 37/4 38/21 39/1 39/4 42/4 42/22 44/19 45/10 47/9 47/10 47/11
**knowledgable [1]** 36/19
**knowledge [2]** 4/15 4/16

## L

**lack [2]** 8/1 44/2
**Lapointe [2]** 2/5 3/13
**last [6]** 31/12 36/8 40/23 44/24 46/18 46/18
**later [1]** 41/10
**law [11]** 5/25 6/11 13/12 17/8 17/20 17/25 17/25 18/2 23/14 24/21 35/2
**lawyer [2]** 10/13 29/17
**lawyers [4]** 40/7 40/9 40/13 40/14
**lead [1]** 45/19
**least [11]** 5/10 10/23 15/9 18/5 19/11 22/1 37/12 39/14 41/2 45/20 46/5
**leave [2]** 20/6 35/20
**leaves [1]** 20/2
**legal [17]** 5/21 7/11 7/17 13/17 14/4 14/7 17/12 17/13 17/22 21/24 34/13 35/2 40/3 42/2 42/5 45/1 45/6
**legitimate [1]** 14/18
**less [8]** 7/7 23/17 26/1 28/12 29/9 29/18 34/19 36/17
**let [19]** 4/7 5/17 9/17 10/25 18/24 19/5 20/10 26/7 28/5 28/20 33/19 36/10 36/14 38/25 41/8 42/25 43/1 43/17 44/19
**let's [1]** 8/4
**level [1]** 40/16
**like [9]** 7/17 9/5 12/12 27/17 29/18 30/24 37/17 39/22 41/12
**likely [2]** 42/21 46/10
**limited [1]** 34/1
**limits [1]** 41/1
**Lindsay [3]** 2/14 48/4 48/13
**line [2]** 46/2 46/6
**list [2]** 44/15 44/18
**listen [1]** 46/3
**litigation [3]** 6/18 20/17 38/17
**little [6]** 13/11 22/16 27/3 36/7 36/23 41/18
**local [1]** 46/20
**long [3]** 4/7 15/21 38/23
**longer [2]** 10/4 10/15
**look [4]** 19/13 25/6 27/17 41/3
**looking [2]** 8/16 11/5
**looks [1]** 34/24
**lose [1]** 14/10
**loss [2]** 13/19 14/2
**losses [1]** 34/21
**lost [2]** 14/13 23/15
**lot [2]** 12/14 29/13
**low [1]** 6/14
**Lujan [1]** 6/15

## M

**made [14]** 3/25 5/12 11/18 11/20 19/3 27/23 28/3 31/6 32/1 32/9 32/25 43/12 43/24 44/1
**majority [2]** 28/19 28/25
**make [18]** 4/5 4/19 5/5 6/17 10/11 11/21 17/22 21/22 28/21 29/3 29/4 30/6 31/20 37/7 39/8 43/9 43/17 45/10
**makes [4]** 18/2 28/19 38/6 41/22
**making [4]** 14/15 21/24 27/22 30/19
**manner [3]** 5/22 37/20 39/8
**Manufacturers [1]** 23/8
**many [9]** 13/20 14/22 19/16 23/24 29/6 29/12 40/13 40/14 40/15
**March [3]** 1/6 27/23 48/11
**Margolin [1]** 25/16
**Mary [2]** 2/2 3/16
**material [15]** 7/24 17/5 17/9 17/10 18/15 18/18 20/22 21/19 22/15 24/14 34/11 34/12 37/1 43/25 44/2

**M**

**materially [1]** 24/7
**maternity [1]** 35/20
**Mathur [2]** 1/16 3/14
**matter [8]** 9/1 9/8 12/21 18/2 22/20 31/9 34/16 48/6
**matters [5]** 9/2 34/16 38/8 41/16 41/25
**may [11]** 14/13 14/16 25/24 31/20 36/2 37/23 38/11 40/8 40/10 42/11 44/3
**May 9th [1]** 38/11
**maybe [11]** 10/6 10/23 10/24 11/20 13/24 15/9 15/11 15/12 39/13 39/14 45/4
**Mayer [5]** 8/10 15/6 21/6 34/7 35/19
**Mayer-Sallins [1]** 21/6
**Mayer-Sallins' [2]** 8/10 15/6
**me [49]**
**mean [18]** 6/5 7/18 9/1 9/2 10/5 10/16 10/25 11/15 12/18 13/3 13/8 13/15 15/14 17/21 20/24 31/16 37/5 38/16
**meaningfully [1]** 29/22
**means [5]** 17/3 20/18 20/24 37/22 38/12
**meant [1]** 29/20
**meet [3]** 7/19 29/18 42/15
**mentioned [1]** 12/8
**merely [1]** 7/8
**merits [2]** 33/22 33/22
**Michelle [2]** 2/5 3/12
**midnight [3]** 26/9 27/2 27/14
**might [3]** 5/4 27/17 35/1
**mind [3]** 14/21 39/17 42/1
**minute [1]** 22/24
**minutes [2]** 36/8 36/8
**misleading [1]** 43/13
**misremembering [1]** 10/24
**missing [1]** 39/15
**mission [1]** 23/25
**mission-critical [1]** 23/25
**misstated [1]** 15/24
**misstating [1]** 13/24
**mistaken [1]** 28/8
**mitigated [1]** 7/8
**moment [1]** 15/1
**money [2]** 14/10 14/13
**monies [1]** 5/24
**mooted [1]** 26/23
**more [32]** 5/16 7/1 7/7 9/3 9/9 10/2 11/8 11/9 11/14 12/13 12/19 13/4 13/4 13/6 14/12 17/16 17/18 17/18 18/8 18/9 20/8 21/13 22/20 27/3 29/13 30/17 31/20 33/23 34/16 34/18 38/18 47/3
**Moreover [1]** 31/14
**morning [3]** 3/7 43/17 43/20
**MOSS [1]** 1/10
**most [7]** 8/12 12/22 25/21 39/8 42/1 42/6 45/1
**motion [29]** 3/25 8/7 8/10 14/23 14/24 15/3 15/9 15/11 17/5 17/6 17/10 20/1 20/25 21/5 21/17 21/19 23/19 25/4 25/21 33/3 33/9 33/11 33/15 33/21 33/22 33/23 46/11
46/14 46/16
**motions [1]** 18/17
**motivation [2]** 32/13 32/23
**movant [2]** 11/11 11/12
**move [7]** 23/24 34/18 34/19 36/23 37/18 37/24 39/1
**moved [1]** 27/24
**moving [5]** 33/20 34/6 35/3 37/14 46/13
**Mr [5]** 28/5 28/20 43/1 43/16 47/7
**Mr. [8]** 4/7 19/1 35/6 35/8 35/10 35/12 35/17 46/15
**Mr. Becker [2]** 35/10 35/12
**Mr. Pryby [6]** 4/7 19/1 35/6 35/8 35/17 46/15
**Ms. [2]** 34/7 35/19
**Ms. Mayer-Sallins [2]** 34/7 35/19
**much [14]** 5/16 6/7 10/2 11/8 11/16 13/1 13/2 19/4 21/13 27/5 28/11 31/12 36/21 38/19
**multiple [4]** 21/16 23/21 38/4 40/9
**my [29]** 3/20 4/2 4/16 10/15 12/1 12/3 13/24 15/14 17/10 21/6 22/18 27/12 27/12 29/12 30/20 32/19 33/6 35/10 35/19 36/11 38/8 39/16 39/17 39/17 39/17 40/11 42/1 42/3 45/19
**myself [3]** 39/11 39/13 40/20

**N**

**N.W [2]** 1/17 2/6
**name [1]** 3/5
**narrow [1]** 34/1
**NATIONAL [1]** 2/2
**Natural [1]** 23/2
**necessarily [3]** 11/15 18/12 28/10
**necessary [11]** 15/18 20/16 29/22 30/13 37/4 37/23 38/19 39/2 42/15 44/18 47/5
**need [30]** 4/23 7/22 11/25 13/4 13/23 14/9 15/25 16/1 16/10 20/19 20/21 20/24 25/4 25/20 27/16 31/5 37/1 38/3 38/10 38/15 39/8 41/6 41/9 41/13 42/3 43/20 44/7 44/16 46/24 46/25
**needed [2]** 4/6 26/9
**needs [4]** 5/7 13/13 27/13 43/23
**never [2]** 12/1 31/13
**new [3]** 4/5 7/2 23/17
**NEXT [1]** 1/23
**night [1]** 27/13
**NIJC [1]** 24/3
**no [26]** 1/4 4/13 4/16 5/6 10/4 10/15 19/3 19/19 22/8 22/9 24/21 24/21 24/21 25/12 30/15 31/10 32/16 33/17 35/24 41/10 43/17 45/16 45/16 47/2 47/4 47/8
**nobody [1]** 28/2
**nodding [1]** 46/15
**non [1]** 11/11
**non-movant [1]** 11/11
**noncontroversial [1]** 10/8
**nonetheless [1]** 30/19
**normal [3]** 25/22 33/12 38/17
**not [92]**
**notice [14]** 9/6 21/20 24/1 25/19 26/18 26/21 27/22 28/15 28/23 29/2 29/13 29/14 30/14 33/10
**notwithstanding [1]** 25/14
**now [16]** 4/1 4/10 10/1 10/3 10/14 20/9 23/22 26/2 27/18 35/16 36/11 38/9 39/21 40/11 46/7 46/19
**number [5]** 3/3 12/23 34/15 38/11 47/1
**numbers [2]** 38/15 38/24
**NW [1]** 2/16

**O**

**object [1]** 25/24
**objection [4]** 35/7 35/24 45/15 45/16
**objects [1]** 39/23
**obligation [1]** 30/2
**observes [1]** 40/6
**obtain [2]** 6/10 7/20
**obtaining [1]** 5/24
**obvious [2]** 10/7 12/22
**obviously [1]** 26/12
**occupy [1]** 38/4
**occur [2]** 19/12 26/1
**occurred [3]** 19/12 22/2 22/10
**off [5]** 14/12 36/1 38/7 41/1 42/9
**offer [1]** 10/5
**OFFICE [2]** 1/6 3/4
**Official [3]** 2/15 48/4 48/14
**offset [5]** 14/11 14/11 14/13 14/17 35/1
**Oh [1]** 44/13
**Okay [18]** 8/6 8/8 9/18 11/7 15/4 16/17 19/20 19/23 20/12 22/4 22/7 28/22 32/5 33/8 36/20 44/11 44/21 47/4
**old [1]** 23/17
**omit [1]** 21/10
**once [1]** 33/13
**one [45]** 8/9 8/12 9/4 9/10 9/12 9/24 10/22 11/14 12/6 12/20 14/1 14/21 15/7 15/10 15/12 15/21 16/21 17/17 19/11 20/15 21/4 21/5 22/2 23/17 25/13 27/1 28/12 28/13 28/16 31/3 31/10 31/10 31/12 31/13 32/19 33/10 34/1 38/1 38/5 39/5 40/6 40/23 43/1 44/13 44/24
**onerous [1]** 28/12
**only [10]** 11/9 15/10 21/4 27/6 29/20 30/13 40/7 42/19 46/4 46/25
**open [2]** 14/15 46/6
**operate [3]** 39/20 39/21 40/17
**operating [3]** 22/10 26/8 26/11
**operations [1]** 39/19
**opportunity [8]** 9/21 16/2 17/6 25/15 25/23 26/18 41/18 41/18
**opposed [2]** 34/11 34/13

O


**opposing [5]** 21/4 21/7 22/6 22/19 22/25
**opposition [6]** 7/1 11/20 11/21 14/24 14/25 20/5
**oranges [1]** 8/16
**order [5]** 29/22 41/6 41/22 42/12 45/14
**ordered [1]** 18/21
**orders [1]** 29/16
**ordinary [1]** 26/24
**organization [6]** 18/22 36/16 36/19 38/24 39/23 39/25
**organizational [1]** 18/22
**organizations [6]** 18/7 24/1 39/20 40/2 40/5 40/17
**other [28]** 4/18 4/18 5/6 5/9 5/17 5/17 12/8 13/12 14/18 17/20 21/22 23/24 24/9 24/23 25/16 25/17 27/11 29/1 34/8 34/19 34/25 38/1 39/5 40/4 40/15 40/22 44/1 46/23
**others [4]** 13/14 15/12 36/13 46/2
**otherwise [2]** 29/5 30/3
**ought [2]** 27/5 45/20
**our [28]** 7/1 14/4 14/23 20/5 20/25 22/6 22/8 22/10 22/11 22/14 22/14 23/13 23/20 23/22 23/23 24/3 24/10 25/6 26/3 26/3 27/24 27/25 27/25 28/13 41/2 42/14 45/11 46/2
**ours [1]** 46/13
**out [15]** 4/4 8/6 14/22 16/12 18/1 20/2 20/6 21/9 25/2 28/1 34/4 38/8 43/5 44/17 45/11
**outcome [2]** 20/15 21/18
**oversold [1]** 36/11
**own [4]** 10/5 13/5 23/2 27/22


P


**p.m [3]** 1/7 43/18 47/15
**P.O [3]** 1/14 1/20 2/9
**page [2]** 1/23 8/9
**pages [2]** 46/11 46/11
**papers [2]** 12/25 44/8
**paragraph [2]** 11/4 21/10
**paragraphs [7]** 8/3 8/11 21/7 21/10 21/11 21/16 25/16
**part [1]** 25/21
**participate [1]** 35/23
**participated [1]** 13/2
**participating [1]** 45/22
**particular [8]** 8/3 8/3 14/19 14/19 14/21 15/15 17/8 29/23
**particularly [4]** 11/25 25/7 25/12 33/25
**parties [5]** 26/12 38/2 41/23 42/5 43/19
**parties' [1]** 42/2
**partners [1]** 5/25
**party [1]** 7/3
**passed [1]** 33/7
**passing [1]** 33/5
**Pause [1]** 32/22
**penalty [1]** 21/2
**people [3]** 4/19 4/22 6/24
**perfectly [8]** 7/12 7/14 14/14 14/18 18/3 18/4 18/11 41/15
**perhaps [6]** 5/13 5/22 5/23 26/23 34/14 38/1
**period [4]** 28/15 29/4 29/16 30/21
**perjury [1]** 21/2
**person [6]** 9/22 9/22 16/10 29/19 45/13 45/25
**perspectives [1]** 34/13
**persuade [1]** 45/6
**persuades [1]** 30/23
**pessimistic [1]** 10/10
**petition [9]** 9/3 9/9 12/20 21/8 21/12 29/12 29/17 29/18 30/24
**petitioners [1]** 31/21
**petitions [2]** 21/15 29/7
**PFR [8]** 8/12 8/15 9/16 11/8 11/14 12/17 12/17 13/20
**PFRs [5]** 11/14 12/13 17/16 17/18 17/20
**phase [1]** 11/10
**pick [2]** 17/25 30/14
**pieces [1]** 46/13
**pilot [1]** 24/4
**pivotal [1]** 20/15
**pivoting [1]** 20/1
**place [1]** 13/6
**plaintiff [5]** 15/21 16/3 38/11 38/16 43/3
**plaintiffs [30]** 1/4 1/13 2/2 3/8 3/11 3/13 3/15 3/17 7/18 12/15 15/17 16/7 19/6 19/8 20/14 22/17 23/10 24/8 25/3 25/12 26/4 27/18 30/19 33/2 34/7 37/5 39/7 41/15 44/4 44/14
**plaintiffs' [14]** 3/6 7/19 15/10 16/14 18/25 20/1 21/23 27/15 28/7 32/1 32/6 37/6 42/17 44/19
**pleading [1]** 6/16
**please [1]** 3/5
**plus [1]** 4/2
**Pmb2026 [2]** 1/17 2/6
**point [22]** 8/3 8/6 15/10 15/11 15/22 17/4 21/3 21/9 22/23 22/24 23/2 24/23 25/2 30/18 31/6 31/7 31/20 31/24 37/12 40/23 40/24 46/24
**pointed [1]** 14/22
**pointing [2]** 15/12 16/4
**points [1]** 21/22
**policy [3]** 39/23 39/24 40/2
**posing [1]** 27/12
**position [4]** 27/15 28/11 41/2 43/1
**possibility [2]** 18/6 24/25
**possible [1]** 18/7
**post [1]** 24/9
**postpone [1]** 26/19
**posture [1]** 24/19
**potential [1]** 34/12
**potentially [2]** 25/5 36/13
**practice [3]** 40/7 40/8 40/9
**pre [1]** 24/9
**precedent [1]** 34/2
**precise [2]** 12/23 34/15
**precisely [1]** 26/10
**precision [2]** 13/9 34/14
**preclude [1]** 45/21
**preemptively [1]** 46/13
**prejudicial [1]** 26/2
**premature [1]** 39/12
**prepare [2]** 25/6 42/14
**prepared [3]** 25/19 38/21 44/20
**preparing [1]** 42/18
**present [9]** 9/2 18/12 21/18 22/15 23/22 27/24 44/17 44/20 45/20
**presumably [2]** 12/4 28/2
**pretty [8]** 10/20 12/1 12/22 20/2 25/18 30/3 30/7 46/4
**previous [1]** 28/13
**PRF [1]** 8/17
**prior [1]** 39/17
**pro [1]** 24/3
**probably [4]** 34/23 41/11 41/22 44/16
**problem [1]** 25/16
**procedure [2]** 4/21 32/24
**proceed [6]** 24/22 25/22 25/25 36/6 41/13 45/14
**proceeding [2]** 28/10 31/23
**proceedings [10]** 13/2 18/10 28/11 32/3 38/13 38/14 40/4 40/25 47/15 48/6
**process [4]** 30/21 34/20 37/21 38/23
**program [1]** 24/4
**project [1]** 12/17
**projected [1]** 38/15
**projections [2]** 12/12 12/12
**promise [1]** 46/18
**proof [1]** 44/5
**propose [2]** 24/22 42/11
**proposed [1]** 27/18
**proposition [3]** 9/7 9/11 42/18
**Protection [1]** 23/3
**proven [1]** 8/22
**provide [11]** 5/21 13/20 17/12 22/11 24/8 39/7 42/12 43/3 43/4 43/8 45/12
**provided [4]** 22/8 22/9 24/21 44/14
**provides [1]** 27/2
**providing [2]** 17/6 40/3
**Pryby [13]** 2/8 3/20 4/7 19/1 28/5 28/20 35/6 35/8 35/17 43/1 43/16 46/15 47/7
**public [2]** 46/2 46/6
**purpose [1]** 32/17
**purposes [14]** 6/6 6/8 9/3 18/2 18/6 18/12 21/19 22/15 23/13 32/6 32/14 32/25 36/5 42/9
**push [1]** 36/22
**put [4]** 31/16 33/18 37/21 41/8
**puts [2]** 6/16 42/17
**putting [1]** 10/8
**puzzled [1]** 13/11


Q


**qualitatively [1]** 23/12
**quality [1]** 24/7
**quantitatively [1]** 23/12

**Q**

**quantity [1]** 24/7
**question [27]** 4/25 5/3 7/11 7/16 7/22 7/23 9/17 10/14 10/16 11/24 13/17 14/5 14/7 15/14 18/1 26/7 26/15 27/12 28/20 38/1 39/5 39/18 39/22 40/1 40/15 44/13 46/5
**questions [27]** 5/18 10/10 12/7 13/15 14/21 15/15 15/16 15/17 16/10 16/15 25/14 25/20 34/14 35/6 35/13 36/17 38/4 40/13 41/18 42/7 42/12 42/21 43/4 44/18 45/2 45/3 45/7
**quickly [5]** 26/13 33/20 34/6 37/14 39/1
**quite [4]** 15/20 16/25 34/17 35/4
**quote [1]** 23/4

**R**

**race [1]** 24/1
**raise [2]** 8/4 36/21
**raised [7]** 4/1 24/24 24/24 25/3 26/15 33/10 34/10
**raises [1]** 14/21
**ramifications [1]** 27/11
**RANDOLPH [1]** 1/10
**rather [4]** 6/15 7/11 7/17 31/22
**reached [1]** 45/11
**reactions [1]** 39/16
**read [5]** 7/12 11/5 17/22 38/20 39/17
**reading [2]** 33/5 33/6
**ready [1]** 20/4
**real [1]** 16/5
**reallocate [3]** 6/10 7/2 7/14
**reallocating [1]** 5/23
**really [19]** 8/20 21/3 21/8 21/20 24/12 24/19 27/5 30/1 30/8 34/11 36/1 39/12 41/25 42/7 43/11 43/22 45/3 45/6 46/25
**reason [15]** 7/25 9/7 9/11 10/17 12/5 16/6 21/1 21/16 23/25 24/22 25/12 26/14 28/3 34/10 36/24
**reasonable [4]** 11/11 16/9 24/21 25/25
**reasonably [2]** 8/25 11/12
**reasons [1]** 38/5
**receive [2]** 11/16 14/12
**recent [1]** 23/16
**recited [1]** 5/11
**recognize [1]** 33/19
**recognized [2]** 6/21 6/22
**record [5]** 3/5 14/17 17/2 26/14 48/6
**redirect [1]** 41/19
**refer [3]** 15/5 20/14 28/25
**reflect [3]** 8/14 8/15 14/17
**regulated [1]** 7/3
**regulation [1]** 6/25
**regulatory [2]** 7/2 7/9
**related [1]** 35/16
**relating [3]** 41/16 43/23 45/3
**relevant [6]** 18/19 23/22 38/19 40/15 40/19 45/3
**relief [4]** 26/22 28/3 33/22 33/23
**rely [1]** 41/16
**relying [1]** 16/8
**remain [1]** 13/11
**remember [1]** 10/24
**remembered [1]** 28/13
**remind [3]** 44/3 44/25 47/9
**remotely [6]** 35/23 36/3 36/12 36/13 45/18 45/19
**repeated [1]** 25/14
**Reporter [4]** 2/14 2/15 48/4 48/14
**represent [1]** 22/21
**representation [6]** 5/13 5/13 5/21 17/13 17/13 31/19
**representations [8]** 4/25 5/1 5/12 27/17 43/11 43/13 43/24 44/1
**represented [1]** 38/11
**representing [2]** 29/25 35/11
**request [3]** 42/25 45/17 46/1
**requesting [1]** 25/24
**requests [2]** 25/14 25/25
**require [6]** 21/1 21/13 25/18 30/25 39/20 46/20
**required [3]** 4/19 29/1 37/14
**requirement [3]** 6/16 16/5 20/2
**requirements [1]** 20/16
**requires [1]** 31/1
**reread [1]** 10/25
**resist [1]** 36/22
**resolution [1]** 24/19
**resolve [2]** 17/5 43/22
**resolving [1]** 18/6
**resources [7]** 5/23 6/10 18/10 21/13 23/2 23/24 25/9
**respect [12]** 4/19 4/24 9/22 17/7 34/1 34/13 34/14 37/8 38/10 43/2 43/13 44/25
**respond [3]** 28/6 32/5 32/12
**responded [1]** 33/18
**responses [1]** 39/16
**result [2]** 7/7 14/11
**Reuveni [3]** 1/19 3/8 19/7
**review [9]** 1/7 3/4 9/4 9/9 12/20 21/8 21/13 21/15 30/1
**reviewing [1]** 29/23
**reviews [1]** 28/24
**right [30]** 3/18 3/23 6/19 7/18 8/18 8/25 11/23 12/10 13/18 14/3 14/14 15/7 16/4 16/15 16/23 16/24 16/25 17/3 18/5 18/24 22/13 26/2 28/5 30/4 32/20 35/14 38/9 44/12 47/7 47/9
**rights [5]** 1/3 3/3 30/21 32/24 33/14
**road [3]** 25/22 35/4 42/10
**room [3]** 2/16 3/20 27/20
**RPR [1]** 48/13
**rule [21]** 3/25 15/2 16/5 18/16 20/2 22/21 24/6 24/18 26/17 27/10 27/19 27/22 28/1 34/3 34/22 34/25 35/1 37/17 39/18 39/24 46/20
**rules [5]** 13/4 13/5 32/24 33/21 33/24

**S**

**said [20]** 4/23 7/25 8/1 10/15 10/20 10/23 11/25 15/25 16/20 23/16 27/5 37/5 37/10 38/2 41/4 41/4 42/8 42/20 42/22 42/22
**Sallins [3]** 21/6 34/7 35/19
**Sallins' [2]** 8/10 15/6
**same [10]** 5/22 17/12 17/13 23/1 23/8 23/9 29/21 41/5 46/6 46/11
**satisfied [1]** 37/7
**satisfy [1]** 6/13
**saw [1]** 22/5
**say [29]** 4/2 9/25 10/14 10/21 13/21 14/5 15/25 16/6 16/8 16/13 18/8 19/2 20/8 21/14 22/3 22/5 22/6 26/14 27/1 30/20 31/12 31/13 32/16 34/9 35/25 38/3 39/1 41/15 44/6
**saying [7]** 4/4 10/18 11/21 12/6 14/16 41/6 43/4
**says [8]** 11/8 23/8 23/9 25/4 29/14 34/25 36/7 38/12
**schedule [3]** 3/24 36/6 36/9
**scheduled [1]** 41/9
**scheduling [1]** 27/4
**scheme [2]** 7/2 7/9
**Scher [2]** 1/13 3/11
**scope [2]** 25/24 42/13
**SCRAP [1]** 23/7
**second [3]** 9/12 32/19 46/1
**see [11]** 10/6 11/17 15/5 15/13 17/9 18/13 18/14 21/4 25/24 28/25 35/21
**seeking [3]** 18/16 18/19 20/21
**seem [5]** 5/12 8/22 21/24 23/10 23/11
**seems [7]** 7/17 8/14 9/23 10/6 14/18 24/20 36/17
**seen [4]** 4/3 5/7 12/1 16/21
**sees [1]** 17/15
**self [3]** 5/19 7/6 22/7
**self-inflicted [3]** 5/19 7/6 22/7
**send [1]** 44/15
**sense [7]** 3/25 22/20 28/19 31/9 31/21 38/6 41/22
**serious [1]** 32/15
**serve [3]** 5/17 23/17 25/23
**services [1]** 24/7
**set [3]** 26/13 26/18 39/24
**settled [1]** 34/2
**several [1]** 27/18
**share [1]** 41/5
**she [7]** 35/22 35/25 36/3 36/4 36/5 36/7 36/12
**Sherry [3]** 2/14 48/4 48/13
**shift [5]** 6/11 7/15 8/22 18/8 40/8
**short [5]** 3/24 25/19 29/4 33/10 41/22
**shortly [1]** 3/22
**should [6]** 21/14 25/22 25/23 25/23 33/2 35/25
**show [14]** 13/22 15/18 16/11

**S**

**show... [11]** 20/19 20/21 20/25 23/15 23/16 24/13 24/16 32/3 37/1 43/12 44/7
**showing [5]** 4/19 6/17 25/10 30/7 30/7
**shown [1]** 44/6
**sic [1]** 25/16
**side [1]** 15/10
**significant [1]** 40/4
**significantly [1]** 39/19
**similarly [1]** 5/23
**simplify [1]** 37/16
**simply [8]** 9/19 16/13 27/25 30/20 39/23 41/15 42/9 44/6
**since [2]** 28/13 38/11
**single [4]** 4/23 16/21 24/13 26/5
**slow [1]** 20/10
**slowly [1]** 20/8
**so [67]**
**some [48]** 5/2 5/4 5/11 6/11 7/1 7/8 7/24 9/6 9/7 10/7 10/16 10/17 10/17 10/17 12/5 12/7 13/17 16/10 17/4 17/6 20/25 22/5 22/13 22/18 24/14 26/22 26/22 27/20 34/14 34/18 35/6 37/10 39/14 39/16 39/25 41/12 41/18 42/2 42/6 42/9 42/20 43/13 43/14 43/24 44/1 45/2 45/6 45/11
**somebody [4]** 10/12 12/24 30/23 38/22
**somehow [1]** 22/13
**someone [9]** 7/14 10/13 14/20 15/15 31/7 33/5 36/16 36/18 38/20
**something [20]** 4/5 7/8 7/23 9/5 10/6 28/16 30/9 32/18 33/5 33/6 34/2 34/4 35/2 40/10 40/18 41/1 42/13 44/5 44/7 44/7
**sorry [8]** 7/10 12/17 13/25 15/24 19/1 21/23 29/24 44/22
**sort [4]** 10/11 11/24 25/10 43/10
**sought [1]** 31/3
**speak [1]** 5/9
**specific [3]** 17/4 18/18 45/22
**specificity [1]** 16/5
**speed [1]** 35/3
**spend [1]** 5/16
**spent [3]** 5/14 31/12 31/20
**spot [1]** 33/18
**staff [2]** 8/12 11/14
**stage [1]** 6/17
**stand [1]** 10/15
**standard [2]** 6/20 18/16
**standing [30]** 4/3 6/14 7/4 7/16 13/10 14/7 14/9 15/18 15/21 15/23 16/3 16/8 18/3 18/6 18/22 22/23 22/24 23/1 23/5 23/14 33/15 34/22 34/24 37/8 40/20 41/16 42/8 44/3 45/4 45/4
**start [2]** 19/8 38/23
**started [1]** 4/9
**starting [2]** 3/6 36/6
**state [2]** 3/5 29/8
**statements [1]** 23/13
**STATES [3]** 1/1 1/11 23/3
**Station [1]** 2/10
**status [2]** 27/4 43/21
**stay [8]** 14/24 27/19 27/19 33/1 33/2 33/3 33/11 47/11
**Ste [1]** 2/3
**still [4]** 11/24 39/10 40/20 42/4
**stop [1]** 36/14
**straight [1]** 31/21
**straightforward [1]** 33/23
**strange [1]** 21/10
**streamline [3]** 37/16 37/18 40/25
**Street [2]** 1/17 2/6
**strikes [2]** 10/7 31/2
**strong [2]** 30/7 30/7
**studied [1]** 27/10
**stuff [1]** 39/14
**subject [2]** 12/24 16/9
**submissions [1]** 41/17
**submitted [1]** 16/14
**substantial [4]** 16/14 30/23 34/22 47/1
**substantially [1]** 9/9
**subsumed [1]** 29/16
**such [3]** 19/21 20/22 25/19
**Suchi [1]** 3/14
**Suchita [1]** 1/16
**suffer [1]** 23/20
**suffering [1]** 25/8
**sufficient [6]** 5/1 6/13 7/4 13/22 14/6 40/12
**sufficiently [1]** 18/18
**suggest [5]** 13/8 22/9 33/19 34/5 41/11
**suggested [1]** 24/24
**suggestion [2]** 23/11 41/12
**Suite [2]** 1/18 2/7
**summary [20]** 7/20 11/10 11/21 17/1 17/3 18/6 20/20 20/22 21/19 22/16 25/21 26/15 29/1 29/5 30/4 30/6 32/25 33/10 33/13 47/10
**Sunday [3]** 26/9 27/2 27/13
**Supp [1]** 23/4
**support [1]** 9/6
**suppose [4]** 10/8 13/16 13/17 13/21
**supreme [5]** 23/6 23/7 23/15 29/8 29/8
**sure [17]** 4/5 5/5 9/13 9/15 11/2 12/1 28/21 33/4 33/17 34/15 34/19 35/18 37/7 43/9 44/18 45/10 46/4
**suspenders [1]** 37/13
**sweep [2]** 25/20 38/3
**sworn [2]** 10/15 21/2
**system [2]** 23/17 23/18

**T**

**table [2]** 33/13 47/11
**take [19]** 8/15 9/6 9/13 9/24 10/1 10/2 10/25 11/16 12/13 17/16 17/18 17/20 19/15 22/20 25/5 29/6 32/21 39/11 41/20
**taken [3]** 4/3 4/11 28/9
**takes [4]** 9/3 9/9 12/19 13/6
**taking [1]** 38/7
**talk [2]** 4/1 41/13
**talking [3]** 6/9 13/10 47/1
**talks [1]** 8/11
**targeted [6]** 42/7 43/3 43/5 43/8 43/9 43/23
**tasks [1]** 23/25
**telephone [1]** 17/25
**tell [7]** 11/4 20/4 24/16 29/11 31/12 38/9 41/4
**telling [1]** 40/11
**temporarily [2]** 27/19 27/19
**ten [1]** 24/2
**test [3]** 23/12 32/24 33/14
**testified [1]** 22/12
**testify [1]** 25/6
**testimony [2]** 38/4 38/10
**than [17]** 4/17 7/11 7/17 9/4 9/10 10/3 13/6 26/1 29/1 29/10 29/13 29/18 31/22 33/23 38/18 41/10 46/24
**thank [18]** 3/23 9/14 19/4 19/7 36/20 39/3 40/21 42/11 44/10 44/21 44/22 45/9 45/24 46/9 47/6 47/8 47/12 47/14
**that [403]**
**that's [35]** 6/4 6/13 7/20 8/13 9/5 11/2 11/19 11/19 14/7 15/25 16/4 16/25 17/8 17/14 17/23 18/10 21/5 21/20 24/25 26/10 27/1 30/21 32/15 32/21 35/2 35/13 35/24 36/7 36/23 37/4 37/11 38/5 40/18 44/7 47/4
**their [30]** 5/22 6/24 7/15 11/22 11/22 12/12 12/12 14/16 16/2 16/3 16/8 18/8 20/15 21/2 21/5 21/12 21/25 23/11 23/19 24/14 24/15 25/3 25/4 25/25 27/8 27/21 32/23 33/14 40/5 41/16
**theirs [1]** 46/12
**them [14]** 5/17 9/21 9/25 10/17 10/19 13/7 15/18 16/1 16/11 17/16 18/15 39/20 41/4 41/5
**then [23]** 5/18 5/25 10/18 11/23 13/22 14/9 16/11 18/25 20/18 28/24 31/1 33/3 33/3 34/20 34/24 35/12 38/12 41/17 41/18 43/16 43/19 43/20 43/22
**theoretically [1]** 4/4
**there [76]**
**therefore [1]** 30/6
**these [28]** 4/24 5/16 7/6 7/6 8/7 9/22 9/24 10/13 12/6 14/5 14/6 14/6 14/18 17/20 18/1 18/7 18/13 18/17 23/20 23/25 25/5 27/20 39/19 40/3 40/17 40/25 44/23 45/6
**these are [1]** 25/5
**they [103]**
**they're [2]** 5/15 17/15
**thing [5]** 10/22 17/17 23/10 41/3 43/15
**things [12]** 4/18 12/14 14/18 23/20 25/5 31/10 35/16 37/16 37/16 37/18 42/20 46/19

**T**

**think [96]**
**Third [1]** 46/10
**this [95]**
**those [17]** 4/18 12/16 16/11 16/24 20/16 21/11 29/9 31/10 31/21 35/1 35/12 38/23 40/5 40/12 42/12 43/12 45/12
**though [6]** 15/14 16/23 21/22 25/2 32/11 42/18
**thought [5]** 3/24 19/10 22/1 28/23 32/18
**three [1]** 40/22
**through [9]** 3/10 9/25 16/6 16/11 22/16 38/20 39/6 39/13 40/20
**time [32]** 4/22 5/14 5/16 8/12 8/14 9/3 9/9 9/13 10/2 10/2 11/14 11/16 12/19 13/1 13/2 21/13 22/20 27/16 28/9 29/5 31/12 31/16 31/20 32/2 32/21 41/14 41/25 44/24 45/2 45/5 46/5 46/7
**timely [2]** 36/25 37/20
**times [2]** 20/10 27/18
**timing [1]** 26/8
**tink [1]** 17/24
**today [1]** 39/14
**told [2]** 36/10 39/6
**tomorrow [2]** 43/17 43/21
**tonight [1]** 43/18
**too [4]** 19/13 36/23 40/19 47/11
**took [1]** 19/13
**topics [3]** 43/4 43/5 43/8
**total [1]** 34/21
**totally [1]** 42/16
**traceable [2]** 5/20 6/2
**tradition [1]** 6/23
**traditionally [1]** 6/21
**transcript [2]** 1/10 48/5
**trash [1]** 30/22
**treat [1]** 33/21
**triable [2]** 20/19 24/17
**trifle [1]** 23/4
**true [7]** 10/18 10/20 14/6 17/14 17/23 29/11 48/5
**try [5]** 8/4 20/10 26/15 42/15 45/5
**trying [10]** 11/24 13/24 15/24 16/8 32/3 36/1 36/24 37/16 37/18 37/19
**two [4]** 21/11 24/23 25/7 28/18
**Tyler [1]** 3/21
**type [4]** 11/15 28/10 40/10 43/14
**types [3]** 8/20 40/12 40/15
**typical [2]** 16/22 39/22
**typically [2]** 7/3 17/1

**U**

**U.S [2]** 2/15 23/7
**ultimate [1]** 17/11
**ultimately [2]** 24/6 34/20
**unable [1]** 17/12
**unanticipated [1]** 33/21
**under [14]** 17/3 18/16 20/2 21/2 22/20 23/17 24/18 26/8 26/11 32/24 33/21 34/2 36/12 46/19
**understand [12]** 4/6 5/5 6/6 28/21 30/15 30/17 31/7 33/17 36/1 36/22 42/16 42/23
**understanding [3]** 21/12 35/20 45/19
**Understood [4]** 37/9 37/25 44/10 47/2
**unduly [1]** 5/4
**unfortunately [1]** 14/25
**UNITED [3]** 1/1 1/11 23/3
**unless [3]** 8/21 10/16 30/10
**unlike [1]** 13/12
**unnecessarily [1]** 37/15
**unsupported [1]** 18/14
**untoward [1]** 22/9
**unusual [3]** 12/4 33/20 33/25
**up [6]** 17/25 27/1 36/10 39/24 41/14 45/23
**upon [1]** 16/8
**upper [1]** 8/14
**ups [1]** 36/14
**us [9]** 20/4 26/12 27/3 28/4 36/23 39/6 42/17 44/15 46/14
**using [1]** 21/25
**usual [2]** 16/25 34/23

**V**

**various [1]** 12/25
**veracity [4]** 7/25 12/5 22/8 43/25
**versus [7]** 3/3 6/15 8/19 12/6 12/21 13/1 40/13
**very [11]** 6/7 10/7 19/4 29/4 30/7 36/23 39/1 39/3 40/22 43/15 43/23
**video [3]** 9/21 45/10 45/22
**view [2]** 37/12 39/11
**vs [1]** 1/5

**W**

**wait [1]** 27/9
**walk [3]** 16/6 16/11 22/16
**want [39]** 3/10 4/5 5/5 8/2 10/19 12/7 12/15 15/15 15/16 15/17 17/21 21/22 22/16 22/23 24/19 24/23 25/2 28/21 30/1 32/5 32/11 32/14 32/16 36/13 36/21 37/6 37/11 37/15 39/10 39/11 41/2 41/13 42/20 44/9 44/24 44/25 46/13 46/21 47/11
**wanted [4]** 10/5 19/2 33/14 35/9
**wants [4]** 35/6 38/21 41/17 42/7
**was [16]** 15/24 19/1 19/15 24/14 24/15 26/15 26/17 28/23 32/3 32/17 33/15 34/5 37/17 38/18 46/5 46/6
**Washington [7]** 1/5 1/15 1/18 1/21 2/7 2/10 2/17
**wasn't [1]** 5/10
**waste [1]** 45/2
**way [19]** 5/5 5/23 9/17 21/25 24/4 24/22 25/1 26/16 27/25 36/2 36/6 37/19 38/18 39/21 39/21 39/25 40/17 40/25 41/8
**ways [2]** 37/18 40/16
**we [91]**
**we'll [1]** 41/4
**weeks [1]** 23/21
**welcome [3]** 3/23 44/8 44/8
**well [24]** 4/20 6/14 10/22 11/5 12/18 14/17 15/2 18/24 22/3 27/5 28/5 29/6 30/11 35/12 40/18 41/8 43/23 44/3 44/6 44/15 44/20 45/19 46/23 47/12
**were [11]** 5/2 5/3 5/4 16/18 19/10 19/16 21/6 25/22 30/21 38/17 44/14
**what [73]**
**what's [3]** 30/3 42/6 44/25
**whatever [2]** 6/17 41/21
**when [6]** 5/6 6/24 6/25 7/2 27/8 29/6
**where [30]** 4/23 7/14 7/24 10/12 12/5 13/2 14/20 16/9 16/12 16/21 17/5 19/8 21/11 25/12 26/2 26/4 26/4 26/5 26/17 26/17 26/18 26/20 30/5 33/22 34/10 39/22 40/8 41/2 43/24 46/5
**whether [31]** 4/25 5/3 5/18 7/6 7/6 7/22 7/23 9/1 10/19 13/23 14/10 14/17 17/11 17/11 17/14 17/23 18/2 26/20 27/10 27/11 28/24 29/23 31/15 31/18 32/12 34/21 39/18 39/23 40/1 40/2 40/12
**which [17]** 6/7 6/8 11/4 17/3 18/20 19/12 22/2 25/7 29/16 30/10 34/15 34/20 35/3 38/9 38/22 44/13 45/20
**who [12]** 10/13 12/24 29/17 36/15 36/18 40/7 40/9 44/4 44/17 44/19 45/22 46/2
**whole [1]** 29/4
**why [24]** 4/6 5/6 7/10 11/4 11/24 12/16 13/13 13/14 15/25 16/4 17/17 17/17 17/18 17/19 17/19 18/15 18/19 20/16 20/19 21/12 24/5 29/21 38/5 43/18
**Wildlife [1]** 6/15
**will [34]** 3/22 4/1 5/14 8/6 12/15 17/11 17/12 17/16 19/5 19/8 22/19 23/1 25/1 26/14 28/11 28/14 30/25 32/2 34/9 35/10 35/10 36/11 39/1 41/16 42/21 42/24 42/25 44/3 44/18 45/17 45/24 46/7 46/10 47/11
**wind [1]** 27/1
**within [3]** 29/4 31/1 38/24
**without [3]** 17/6 25/10 27/22
**witness [2]** 24/25 45/18
**witnesses [4]** 10/5 44/14 45/12 45/13
**won't [3]** 33/18 35/6 45/21
**word [1]** 22/6
**words [1]** 24/8
**work [6]** 6/11 8/13 13/21 13/21 17/19 36/9
**working [6]** 5/24 39/10 40/14 40/14 40/20 42/4
**world [2]** 34/15 38/9
**worth [1]** 29/23
**worthwhile [1]** 41/11

**W**

**would [55]**
**written [3]** 29/12 29/17 43/5

**Y**

**Yeah [1]** 15/20
**years [4]** 4/2 4/10 12/2 19/16
**Yes [5]** 19/17 35/8 35/15 43/7 45/8
**yet [4]** 3/21 31/11 37/22 42/4
**you [172]**
**you're [12]** 7/12 7/18 9/24 9/24 11/23 14/20 18/4 29/24 30/4 30/8 44/8 45/5
**your [75]**
**yourself [1]** 19/16

**Z**

**zealously [1]** 29/25
**Zoom [1]** 46/6