IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMICA CENTER FOR IMMIGRANT RIGHTS, et al,

Plaintiffs,

vs.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, et al,

Defendants.

Civil Action No 1: 26-696

Washington, DC
March 6, 2026

2:05 p.m.

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:

Allyson R. Scher
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043

Suchita Mathur
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036

Erez R. Reuveni
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043

APPEARANCES CONTINUED ON NEXT PAGE

APPEARANCES CONTINUED

For the Plaintiffs:

Mary Georgevich
NATIONAL IMMIGRANT JUSTICE CENTER
111 W Jackson Blvd.
Ste 800
Chicago, IL 60604

Michelle Lapointe
AMERICAN IMMIGRATION COUNCIL
Pmb2026
2001 L Street N.W.
Suite 500
Washington, DC 20036

For the Defendant:

Tyler J. Becker
U.S. DEPARTMENT OF JUSTICE
Office of the Assistant Attorney General, Civil Division
950 Pennsylvania Ave NW
Rm. 3632
Washington, DC 20530

Court Reporter:

Sherry Lindsay
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Room 6710
Washington, DC 20001

TABLE OF CONTENTS

WITNESSES

Laura St. John

Cross-examination by Mr. Becker 6

Redirect examination by Ms. Mathur 13

P R O C E E D I N G S

THE COURTROOM DEPUTY: Civil case number 26-696, *Amica Center for Immigrant Rights, et al, versus Executive Office for Immigration Review, et al*.

Would counsel please approach the podium, state their name for the record starting with plaintiffs' counsel.

MR. REUVENI: Good afternoon, Your Honor. Erez Reuveni for Democracy Forward on behalf of the plaintiffs. I will let my cocounsel also if that's all right --

THE COURT: Okay. Good afternoon to you. Thank you.

MS. SCHER: Hello. Ally Scher on behalf of the plaintiffs.

THE COURT: All right. Good afternoon.

MS. CARROLL: Good afternoon. Catherine Carroll from Democracy Forward on behalf of the plaintiffs.

THE COURT: Good afternoon.

MS. MATHUR: Good afternoon, Your Honor. Suchita Mathur on behalf of the plaintiffs.

THE COURT: Okay. And anyone on the video want to introduce themselves? You don't have to.

MS. LAPOINTE: Sure. Good afternoon. Hi. Good afternoon, Your Honor, Michelle Lapointe on behalf of the plaintiffs.

THE COURT: All right. Good afternoon.

MS. GEORGEVICH: Good afternoon, Your Honor. Mary

Georgevich for the plaintiffs.

THE COURT: Good afternoon.

MR. BECKER: Tyler Becker, counsel to the Assistant Attorney General for the civil division at the Department of Justice on behalf of the United States.

THE COURT: All right. Good afternoon to you as well. I understand that you all have a plan as to how you would like to use your time this afternoon?

MR. REUVENI: Yes, Your Honor. So the parties have agreed and if it's agreeable to the court, we would have Ms. St. Cloud provide testimony first with the government having 15 minutes and then plaintiffs having 15 minutes and, of course, questions from Your Honor. And then proceeding to argument, 40 minutes a side, not saying -- it will take up to 40 minutes.

THE COURT: That sounds fine with me. I'm happy to proceed that way.

MR. BECKER: Thank you, Your Honor.

THE COURT: Do you want to call the witness?

MS. MATHUR: Sure, Your Honor. So we -- Suchi Mathur on behalf of plaintiffs. Laura St. John is available to testify as to the contents of her declaration as they might be relevant to standing. She works at the Florence Immigrant Refugee Human Rights Project. As we discussed we are happy to let the government do the cross first. If you would like me to

ask her some introductory questions, I'm happy to.

THE COURT: I'm happy to treat the declaration as her direct and then we can do cross and redirect.

MS. MATHUR: Thank you.

THE COURT: All right. Mr. Becker.

MR. BECKER: Thank you, Your Honor. And thank you, Ms. St. John, for your willingness to discuss this with us this afternoon on a Friday, late Friday afternoon, although depending where you are it may --

THE COURT: So I suppose we probably should start by swearing the witness.

THE COURTROOM DEPUTY: Yes, Your Honor. Ms. St. John, would you please raise your right hand.

LAURA ST. JOHN, sworn.

THE WITNESS: I do.

THE COURTROOM DEPUTY: Thank you.

THE COURT: All right. Thank you.

CROSS-EXAMINATION

BY MR. BECKER:

Q. Good afternoon, Ms. St. John. Thank you for joining us here today. Since we have -- already assuming that your -- that your affidavit that you submitted is your direct, I'm just going to jump right in. I believe you received some questions and topics. Did you receive those from counsel?

A. You're referring to the declaration at 25-1?

Q. No. I'm referring to the questions and topics that the government submitted to your counsel as well as --

THE COURT: I think this maybe if I have it right, this is docket 29, is that defendants' notice of hearing topics. Is that what you're referring to?

MR. BECKER: Yes, that's correct, Your Honor.

THE COURT: Okay.

THE WITNESS: Yes. I believe I did receive that. Thank you.

BY MR. BECKER:

Q. Okay. The government is going to keep mostly to that -- to that as well as to the related paragraphs from your declaration. I just want to start by asking just whether your organization created any formal projections about the impact of the IFR on your organization?

A. Can I ask for clarification about what you mean by formal projections?

Q. Yes. Did your organization create any sort of documents beyond what was -- beyond what is in your declaration?

A. No, we did not. We relied on our experience of over 30-plus years of providing legal services to people who are detained in Arizona and my experience of 17-plus years.

Q. Understood. I want to direct you to paragraphs 21 to 22 of your declaration. And those paragraphs deal with your experience with BIA appeals. So as I understand it, your

organization does two things. It both places BIA appeals with outside counsel as well as provides pro bono support to these appeals; is that correct, for aliens proceeding pro bono?

A. So we actually do three things with regards to BIA appeals. We directly represent individuals in their BIA appeal in-house. We place cases with external pro bono counsel and we provide people with pro se counseling on how to navigate the BIA appeal process for those who do not have counsel.

Q. Understood. So last year your declaration states that you were involved in 12 BIA appeal cases. Is that the total amount that you were involved in or am I misunderstanding?

A. So our data tracking does not allow us to parse out representation easily between BIA appeal and representation before the immigration court. So my representation is that we directly represented dozens of cases before the BIA. And that was based on staff self-reporting to me.

Q. Okay. So is it correct -- your declaration is correct that it's 12 such cases in 2025?

A. It was more than 12. Again, the dozens is more than 12, but a minimum of at least 12.

Q. Understood. Do you know approximately -- I realize you may not have an exact number -- and, again, this case moved very fast so totally understood -- about how many of those appeals involved cases where you picked up the appeal and the individual alien was not represented during immigration

proceedings?

A. I -- no, I do not have a way to parse that out. I also wanted to provide -- those numbers that I provided were from 2024. So I did my best to try to get updated numbers for 2025. And, again, the data tracking is difficult. But -- so this is an underreporting, but minimally last year in 2025, we represented 42 cases before the BIA.

Q. Okay. Understood. And 42 cases. And that involves both things that you self-represented and that you were able to maybe like farm out to law firms or have somebody do this or this is self-representation?

A. That is representation in-house at the Florence Project.

Q. Okay. You don't have a number on the number of people that were pro se in the immigration court and then you picked up just on appeal?

A. Unfortunately, no. There is not a great way to parse that information out without going in depth into case notes.

Q. Understood. Have you read the IFR, the Interim Final Rule?

A. I have.

Q. Okay. And as to the Interim Final Rule, what preparations is your organization engaging in to actually -- to adjust your systems or your projects given the Interim Final Rule, if anything?

A. Sure. So we have begun initial preparation for if this

rule should go into effect. And what that has looked like so far is a review of what additional training our staff will need, specifically very particularly in regards to PFR practice petitions for review to the Court of Appeals. And when I say petitions for review, I am also including in that all of the motions practice that goes into place early on in the process, along with the filing of the petition for review itself. So the motion to proceed in forma pauperis, the form for affidavit in support for the motion for IFP, as well as stay practice.

Essentially, the vast majority of our staff practice primarily before the agency and the immigration court or the BIA and do not have extensive practice before the Ninth Circuit Court of Appeals, which is our Court of Appeals here in Arizona. And so we are going to need to do significant training for all of our staff about how to engage in a petition for review and motions practice and how to advise and counsel people who are going through that process as we anticipate more people will pass through to the Court of Appeals process under the current rule.

Q. And I have a couple of quick questions based on that. Did you state that -- do you have any staff -- do you have lawyers on your staff who would be doing this kind of work who have never practiced before the Ninth Circuit before? I think in some places, you said that there were -- the Ninth Circuit or Court of Appeals that there were some times you say that your

organization kind of does both, they also sometimes represent aliens in the Court of Appeals, so I was just hoping you could clarify that.

A. Absolutely. So we do have some staff members who have practiced before the Court of Appeals, including our two appellate attorneys whose primary practice is before the Court of Appeals in the Ninth Circuit. Beyond that, we have maybe a handful of attorneys like myself who have practiced before the Court of Appeals and are admitted to the Court of Appeals. But the vast majority of our attorneys have no practice before the Court of Appeals and are not admitted at this time to the Ninth Circuit.

Q. Understood. And as to those two appellate attorneys you mentioned, are those your appellate attorneys both for the BIA and the Court of Appeals or is that -- is there a different distinction, is that a distinction only for Federal Court of Appeals?

A. Our appellate attorneys practice as part of our advocacy team. And their primary practice is before the Federal Court of Appeals. They do of course occasionally take on related BIA matters, if their case is remanded for instance or if a motion to reopen is also necessary before the BIA. But their primary practice is before the Federal Court of Appeals and not before the agency.

THE COURT: Apologies. Let me just jump in here. I

just wanted to ask one clarifying question. Am I right in understanding that the premise of your testimony that the rule will shift a lot of your agencies' or groups' work to the Court of Appeals from the BIA is a premise of that, in fact, you currently or in the past have had some success before the BIA, either in just obtaining reversals from the immigration judge or at least remands to the immigration judge in manners that redress what you perceive to be at least a substantial problem in a case?

THE WITNESS: Yes, that's absolutely the case. We have had -- you know, not every case wins, but we do certainly get a number of cases that have remanded from the BIA, sometimes multiple remands from the BIA in one case. And as I think I mention in my declaration, I can remember at least one time where we had six remands from the BIA to the same immigration judge in one month. So we certainly have had success before the BIA in some cases.

BY MR. BECKER:

Q. Understood. I also just wanted to ask about, were any of those cases recent? Were they last year or in the past couple of years?

A. Cases where we got remands from the BIA?

Q. Yes.

A. Yes, I believe that we have had remands in the last couple of years, absolutely.

Q. And your declaration doesn't list these cases; correct?
A. No, I did not try to gather -- again that is not information that we can easily write a report on, so I did not try to gather a comprehensive list of all of the cases we have had remands on.
Q. Understood. I think I just have one more question as to funding. Sometimes as a result of this, I think you were also alleging that your organization may lose some funding as a result of this. And I just wanted to ask you whether you made any -- your organization made any projections about that or has attempted -- I mean maybe even since your declaration given the rule's effective date is on Monday to try to replace that funding if you are concerned about losing it?
A. So in terms of formal projections on funding loss, no, we did not have the ability or time to calculate any kind of formal dollar amount this would mean. I do think a useful example of the type of funding loss that I am referring to though is actually our subcontract for the federally funded National Qualified Representative Program, the NQRP. That is a contract in which we have a flat-rate agreement with the prime contractor, which means that we take -- we are paid a certain amount per the number of open cases that we have at the beginning of a fiscal year, plus the number of new cases we are able to take on per the agreement in the upcoming fiscal year. And under the NQRP, cases that are before the BIA are

considered open cases. And any work done on that appeal process is part of our open case number that is accounted for in the flat rate contract.

However, if a case is at the Court of Appeals at the Ninth Circuit, that case is no longer considered an open case under the NQRP and we would not be paid or have that taken into consideration as part of our overall case numbers for that contract. So if that's helpful to understand of the concerns.

Q. Understood. As to your work before -- as to the open case do cases before immigration judges also count as open cases or as -- are they something else?

A. Cases before the -- before the agency, so immigration judges or before the BIA both constitute open cases.

MR. BECKER: Understood. Your Honor, I think that's all I have.

THE COURT: All right. Ms. Mathur.

MS. MATHUR: Thank you, Your Honor. And I'll be brief.

REDIRECT EXAMINATION

BY MS. MATHUR:

Q. So, Ms. St. John, in your declaration, you describe four programs within FIRP. Could you briefly describe as your role as the local director how the IFR will impact those four programs?

A. Absolutely. So the first two programs are the children's

legal program and the adult legal program. I'm going to talk about them together, because the impact is very similar in the sense that, with this IFR, one of the major concerns that we have as an organization is the way in which the shortened timelines are going to result in our staff needing to do much more robust work in the notice of appeal window in much less time and the difficulty that we will have, for instance, if a case comes to our attention for the first time, when that person is on appeal, we may not be able to even go through the process that is necessary to competently counsel a client or even enter a representation before that 10-day notice of appeal window has passed.

Additionally, in our adult program, we provide robust pro se support services to those who don't have counsel who are detained. And any sort of -- there is a difficult corollary that happens here. Because if we are unable to represent as many people because the amount of work that needs to be done in those 10 days is so much that we'll have to reduce our capacity to represent other people, which creates an additional burden on our pro se team. Because the pro se team's job is to try to provide orientation and counsel to people who don't have an attorney. And that is where I get very concerned about burn-out becoming a major issue for our pro se cohort.

Then we also have our advocacy team, which as I said is where our appellate attorneys are currently housed. And what I

can foresee happening here, because many of our clients who have cases before the IJ, the immigration judge, who disagree with that decision want to have some form of review. And with the current procedures that are being proposed in this rule, I think the reality is that people can see that they are not going to get a meaningful type of review from the Board of Immigration Appeals. So it is clear that there is a presumption against them. So at that point, because there is no meaningful review, people are going to want to pursue an appeal or a petition for review to the Ninth Circuit to have some judge somewhere look at their case and decide whether or not there was a mistake made.

That is going to create a significant increase in demand for filing petitions for review, all of the associated motions and representation at that level. So that is also going to impact our appellate team.

And then finally I wanted to raise our social services team, which while it might seem a little bit different, again, people can see when the deck is stacked against them and when they are not getting a fair shake in the immigration court or in the proceedings. And that can lead people to have a real sense of desperation. And I have seen people who when they are faced with that sense of desperation who end up having significant mental health issues that come up in detention and suicide and our social services team is the primary team that

goes and meets with people who are experiencing suicidal ideation and trying to support those clients to protect their health and well-being, really. And so, again, that's a team that will also be impacted by this rule. Because as people become more desperate, more mental health concerns can arise, more issues of suicidality can arise in detention.

Q. Thank you. So you spoke earlier about the success you have had at the board or that the Florence Project has had at the board in obtaining remands. It is the loss of that -- the possible loss of that success rate, is that the only reason you foresee additional PFR work being necessary?

A. No. Again, I mean, I -- as I said, I think one of the key things here is that our clients, those who want to appeal, want to have somebody else review their case. And so there is -- I believe there is going to be a significant desire for people to have that meaningful review, which will result because it didn't happen before the board, they never -- nobody ever looked at the case, there was no transcripts, there was no briefing. If you never got any of that, people are going to go ahead and file the petitions for review and want to have a judge actually look at their case. And so, again, that's going to create significant new and, you know, different work for our organization in terms of federal court practice and the level and skill and the writing that is required to practice before the Ninth Circuit Court of Appeals.

MS. MATHUR: Thank you, Ms. St. John. I don't think we have anything further.

THE COURT: I have a couple of follow-up questions. It's actually helpful for me to have in front of me a practitioner before the BIA.

One question I had is today, what does a notice of appeal look like? How much is in the notice of appeal and how do you compare that to what is going to have to go into the notice of appeal under the Interim Final Rule?

THE WITNESS: Absolutely. So I think they actually just changed the notice of appeal form to be from a three-page form to a six-page form. As far as I can tell, the changes are not particularly substantive. I think it was to make it able to be done online more easily.

So essentially a notice of appeal right now entails, you need to mark when the decision was, whether it was a final decision, things like that. And then there is a box that you fill out that says, what are your issues on appeal? And you also mark a box about whether you would like briefing and potential oral argument. But in the box about issues of appeal, you need to present your basic issues. But one of the things that we routinely do as a practice is reserve the right to raise additional arguments upon receipt of the transcript. Because, obviously, it can be very difficult to prepare a full list of the issues of a case when you haven't seen the

transcript of everything that transpired in a hearing or across a series of hearings. And so you can do sort of a basic outline of what you think the main issues are and then reserve the right to raise additional arguments in your brief and then more obviously fulsomely present the arguments in the briefing process. But --

THE COURT: Is that analogous to the statement of issues you might file in the Court of Appeals in federal court litigation just when you are initiating the appeal or is it more substantial than that?

THE WITNESS: I would say it's analogous to that or even perhaps less substantial than that.

THE COURT: And then another question --

THE WITNESS: And --

THE COURT: Another question I had --

You finish then I have another question, but you finish.

THE WITNESS: I was going to say that under the rule given that there will no longer be an opportunity for briefing in the vast majority of cases, you know, what we are preparing for at the Florence Project is a practice in which we need to do something that looks much more like a full appellate brief in the notice of appeal process, that we would need to first off fully and competently raise the issues that are necessary because exhaustion is an issue at the Court of Appeals, which

just takes much more time in terms of reviewing the audio recordings. Because, again, there will not be transcripts available at this point. And that we would want to include aspects of the legal argument as opposed to just noting errors that occurred that we would need to include some level of the citation and the argument that would be required to explain why this error requires remand or reversal.

THE COURT: And the other question I had is, do you have some sense under the Interim Final Rule how a transcript is ever going to be prepared and available for the Court of Appeals for the Court of Appeal's review, because in the vast majority of cases it sounds like there is never going to be a transcript that is ever prepared?

THE WITNESS: This was actually a question that I think I raised in my declaration. It is not clear to me if or when a transcript will ever be prepared for the review by the Court of Appeals. I'm not sure whose responsibility that will be or if it will ever happen. Because it wasn't what was before the agency, I suppose. The transcript itself wasn't before the agency, so --

THE COURT: And just one last question, but it may call for a narrative, which is -- and anyone can object -- but the narrative is, can you describe for all of us what you envision or understand the process will be under the Interim Final Rule from a practical perspective just as a practitioner,

you have -- you may or may not be representing someone before the immigration judge, you know, what happens if you are representing somebody? What happens if you are not representing them already, what happens? What are all of the steps that need to take place within the 10-day window?

THE WITNESS: Okay. Yes. So I think I'll start with the case that is represented before the IJ, because that is in some ways your best-case scenario. Even in the best-case scenario, let's say you had your individual final hearing and the judge has issued a decision that is against your client. You would need to confer with your client and typically you would want to give them a little bit of time to sit with a decision about whether they want to appeal or not. But you would need to confer with your client about whether or not they want to appeal. You would need to, again, obtain a copy of the audio recordings of the case and the decision, if the decision was issued orally, which is a pretty common practice in detained dockets. You would have to listen through that information to try to start doing the issue spotting, assuming your client wants to appeal.

THE COURT: How do you get the audio?

THE WITNESS: So if you are already representing the individual, it is available through the electronic case management system, the ECAS. If you are not representing the individual, then what you would need to do is request a copy of

the audio from the Court directly, which is a process that typically takes one to three days to receive the audio recording on CD usually. And then so you have to sit there and listen to the hearings and, you know, kind of be taking notes on what is going on and what the issues were. In my experience, listening to a hearing you oftentimes have to go backwards and kind of recatch things. You are listening multiple times to catch all of the issues. So you would need to be doing that.

You would also need to do a visit with your client prior to filing to -- in our case, all of our clients have no monetary way to pay for the appellate filing fee. So we need to go back and get a wet ink signature on a declaration for support of why they need the fee waiver. So that takes a follow-up visit as well. And then, again, you would have to prepare the notice of appeal in the way that I was describing previously. That is a pretty heightened level of specificity and clarity. So that is your best-case scenario. And then you would be able to e-file it because you are the attorney of record. So that is your best-case scenario.

The second scenario is where we learn about somebody who we are going to represent but we didn't represent below so -- or we would like to represent, we want to consider for representation, because that's -- (Audio cuts out)

THE COURT: We lost you just for a second. --

THE WITNESS: Oh, so I was going into the second scenario, which is where a person is reaching out to us who we did not represent before the immigration court below and we are considering for representation before --

(Audio cuts out.)

THE COURT: Unfortunately, we lost you there again for a bit.

THE WITNESS: Huh. (Audio cuts out.)

THE COURTROOM DEPUTY: We --

THE WITNESS: Can you hear me now? No?

THE COURTROOM DEPUTY: We can't.

THE WITNESS: No.

Of all of the things.

THE COURTROOM DEPUTY: We can hear you now.

THE WITNESS: Okay. Fingers crossed it stays.

I came into the office to try to avoid this problem, but we shall see.

So I was starting to describe the process that happens where an individual we did not represent before the immigration court below is seeking representation before the Board of Immigration Appeals. And in that situation, a person first needs to contact our office and ask for help. So that might happen exactly the day that a decision was issued or it could happen a day or two after. Regardless of when we receive the communication from somebody, we need 24 hours advanced

notice in order to schedule a legal visit with somebody in detention.

So at that point, we would go meet with somebody, learn about what happened in their case, do a basic intake and legal screening about their appeal. And we would then get their consent and signature to obtain records regarding what happened in their case, including those audio recordings I was speaking about earlier, and make that request. Again, that is one to three days before we would obtain the audio recordings to assess what happened in a case.

If we are able upon that review, we decide we are able to represent the individual, we could enter our E-27, which is the notice of entry of appearance before the Board of Immigration Appeals and do our retainer and all of those things.

I'm sorry. I skipped a test which is that we also have to do a conflicts check, which usually takes a bit of time, usually about a day or so.

So, again, and then we would have to do the actual process of preparing the notice of appeal and the fee waiver and all of those things. And then if we are entered as counsel, we would be able to e-file that.

The next scenario is the scenario of somebody who we are not able to represent or we are not able to make that decision in a time frame that is allotted.

And so for somebody who is pro se and trying to file an appeal to the -- a notice of appeal to the BIA, what this looks like is again that typically they will get their decision from the immigration judge and they will reach out to us asking for support or help to understand what their next steps are supposed to be. And so we would, again, schedule a visit. At this point we are looking at needing to schedule most of these visits as urgent visits, which is going to likely require some resource changes at our office, just given the timelines.

So we would schedule this as an urgent visit. And we would work with the person, meet with the person to learn what happened in their case as best as they can report. It may require us, again, obtaining permission to review the records and the audio recordings to help them understand what the immigration judge's decision was, particularly again if it's an oral decision. Oftentimes if it's a written decision we oftentimes have to help translate the decision to the individual, because if a written decision was served only by mail, there is no translated copy that is ever given to the detained, pro se individual. And so we have to translate what has happened in that decision to help them understand what they may be able to appeal or not appeal.

And then we would be needing to work with the person to explain the process of actually getting their appeal in. And as I went into detail in my declaration, people who are

detained do not have access to the internet or to the e-filing system that the rule relies upon.

They still rely on the mail. And mail in the detention facilities is very slow. And so our normal advice to people even with the 30-day window is that they need to be putting their notice of appeal into the mail no later than a full week before it is due if they want to have chance of it being received in a timely way at the Board of Immigration Appeals.

We also occasionally are able to help send using specialized like rapid mail or courier services for people who are not going to meet that deadline. But in the 10-day window that is conceived of in this rule that's going to become a major issue and possibly a major cost that Florence Project would need to try to take on to make sure that people don't lose their appellate rights simply by virtue of the mail delays in the facility and in the BIA's mail room.

I don't know if I touched on everything you were hoping I would explain, but that is sort of the gist of what it would look like.

THE COURT: That's helpful.

It is my understanding from your declaration I think that you hope to or perhaps have at this point submitted comments to EOIR with respect to the rule. Have you submitted those already at this point? Are they in the administrative

record or not at this point?

THE WITNESS: We have not yet submitted our comments. The agency did extend the comment deadline, the comment period to April 8th, so we were taking advantage of that time to try to make our comments as robust as possible.

THE COURT: Okay. And is the type of information you provided us the type of information you intend to include in the comments?

THE WITNESS: Absolutely, yes.

THE COURT: Any follow up from anyone else?

MS. MATHUR: No, Your Honor.

MR. BECKER: No, Your Honor.

THE COURT: Okay. Well, you are excused as a witness. You are welcome to stay and listen if you would like, but you are excused as a witness. Thank you very much.

THE WITNESS: Thank you.

THE COURT: All right. I guess we are on to argument at this point, Mr. Reuveni.

MR. REUVENI: Thank you, Your Honor.

Thank you, Ms. St. John.

May it please the court, Erez Reuveni on behalf of the plaintiffs.

Your Honor, this rule -- I don't think there is any dispute as to what it does. We have submitted five declarations that go through in extensive detail how difficult

it will be for individuals and for the organizations who service them, regardless if they have counsel or not, but essentially for pro se individuals who are detained to perfect an appeal within 10 days to navigate this new draconian efficiency-based system. I would have expected the government, if it felt differently, that perhaps there is something missing from our declarations or we have misstated how the rule functions and how essentially awful it is in terms of what is present now versus what will come to effect this Monday. I would have expected someone, an immigration judge maybe, to have submitted a declaration or someone within the government who can tell this Court, no, Your Honor, the things that plaintiffs are telling you will happen, the things that plaintiffs are telling you they will have to do to protect the rights of their current clients to ensure to the best of their ability and ethically they can serve new clients in this new environment, they are just wrong.

And I am stunned, frankly, to not have seen any of that in the papers. I have seen, frankly -- what I saw was an argument not about why we are wrong on the merits and why the Court should disregard our declarants, but that efficiency at all cost is what the BIA and the government wants. And, yes, people will not be able to potentially make their cases, despite the fact that currently they could and that's unfortunate.

That is the best the government gives to defending the conceded, unrebutted, terrible things that will happen to thousands of people starting Monday.

So I'd like to start with standing. I think -- I don't think we need to spend too much time here. I feel that you have everything you need to decide the standing issues. We have five declarations that go through in careful, specific detail the various harms that will befall the five organizations from all aspects of the rule.

And as he discussed before, Your Honor, you have written -- this isn't a blank slate for you or for many judges in this Court, even after Supreme Court precedent. I refer to your *RAICES* case, which I believe is very similar. What we have to show is a perceptible impairment in some attendant expenditure or loss of resources and that what the government has done interferes with our client's core business activities.

And just from the colloquy you have just now had with Ms. St. John, I think it's readily apparent just going through the testimony or the highlights, they have had to engage in extensive mitigation measures, which itself is a harm sufficient to bestow injury. And they have had to prepare for having to shift the vast bulk of their practice to petitions for review, which as our declarants have indicated, requires hundreds of hours compared to 20 or 30 or so hours to perfect. So right away the practice is shifting in a way that will

require spending far more time for each organization on far fewer clients and therefore undermining the core purposes for these groups to exist.

It also, as you heard from Ms. St. John and in our declarations, threatens their funding streams, because they are funded specifically by the number of clients they serve in the administrative process. And once they get to the petition for review process, they will not be paid. As the declarations go into again in extensive detail unrebutted, they will have to shift resources from many other important programs and simply be unable to do their work as well as they have before for as many people as they have before.

I can go through a lot more on this. It's laid out in the declarations. Again, I think it is unrebutted. I would point Your Honor to your decision in the *Northwest Immigrant Rights* case where you said for purpose of a preliminary relief motion unrebutted declarations are taken as true in this posture. I know that might not be true to the extent you are considering summary judgment on the notice and comment claim. But to the extent we are talking about the 705 stay, the lack of any response from the government means the Court takes our declaration as true. The government hasn't provided any reason for you not to do that. There is no suggestion that our declarants have no experience or lack -- are not making these declarations in good faith or are not telling the truth.

I can move on from standing unless you have questions about standing. But I would simply -- before I do that, I am going to walk through one of the declarations to add on to what Ms. St. John has already told you. And I will give you direct cites to the declaration to the extent that is helpful, though many of these are cited in the brief, both in reply and on the opening brief, so using Florence Immigrant Rights and Refugee Project as an example to harms. As Ms. St. John says in paragraph 55, this will materially impair quantity and quality of the work that her organization can provide. She walks through that in many pages and many paragraphs.

The vast majority of people she attests to at paragraph 9 who go through the immigration court system are pro se. She cites the statistic of 69 to 86 percent. I would like to flag the Court's attention to that number, because you heard from government counsel -- not current counsel but prior counsel at an earlier hearing that in the government's view the majority of people at immigration proceedings have counsel. That is simply not true. And that is part of -- we'll get to this. Part of why this rule is irrational, that it doesn't consider the fact that fully two-thirds of people that go through the immigration court system don't have lawyers. And many of those people who don't have lawyers are also detained. And you heard some of the problems that that raises from Ms. St. John.

In paragraphs 20 and 82 she discusses they have just two PFR attorneys and will have to completely revise the way they do business to expand that PFR practice.

It will be, as she explained and as she also lays out in her declaration, it will be very difficult if not impossible for a pro se individual to file within 10 days in a way that does not waive their claims. That requires so much more work up front for each individual case.

THE COURT: When you say pro se individuals, are you talking about individuals who will be counseled by one of those organizations?

MR. REUVENI: I'm talking about somebody who was pro se before the immigration courts and they become counseled by one of these organizations as we are talking about the harm right now. Thank you, Your Honor.

THE COURT: Okay. Is there evidence in the record that that does, in fact, occur where there are people who are pro se before the IJ who then these organizations are representing?

MR. REUVENI: I'm sorry. Can you ask the question again?

THE COURT: Can you point me to where in the declarations there is discussion of the organizations picking up cases that were pro se before the immigration judge but where the organizations are actually providing direct advocacy

on their behalf in the BIA?

MR. REUVENI: Yeah, of course. Just sticking with Ms. St. John's declaration, I refer the Court to paragraphs 31 through 38.

THE COURT: Thirty-one to 38 you said?

MR. REUVENI: Yeah. That is a discussion of many things including the pro se process, but paragraph 38 specifically, discusses how they would navigate a case. There is the discussion of the ECAS system and how that is not available to individuals who are detained. It discusses what this does to the pro bono program which -- at paragraph 53 which is how they also provide counsel to pro se individuals.

THE COURT: I guess my question was a little bit different. My question was -- and I think perhaps Ms. St. John testified to this, although I guess we could also clarify whether she did, in fact -- I think she did say that the Florence Project actually does pick up cases at the BIA level that were pro se before the immigration judge. That was my question just is whether the organization --

MR. REUVENI: Understood, Your Honor.

THE COURT: -- would do that.

MR. REUVENI: So the Florence Immigration Rights Project -- Immigrant Rights and Refugee Project certainly does that. You heard her testimony. I don't have a citation right at hand, but I'm happy to give that to you.

The Brown declaration paragraph 23 and the Coop declaration a paragraph 15. So that is HIAS and NIJC.

THE COURT: Maybe I can just have Ms. St. John confirm that, if she wouldn't mind.

MS. ST. JOHN: Yes, I can confirm that we take on the BIA appeals for representation for people who are not represented below at the immigration court level.

THE COURT: Okay. Thank you.

MR. REUVENI: So there really is no dispute as to injury under the cases that Your Honor has ruled on before, both before and after this Supreme Court's decision in 2024 in the *Alliance* matter. I only saw two responses from the government and they make these arguments both as to standing and as to irreparable harm. They are different but similar. They say the injuries are self-inflicted. I think you heard from Ms. St. John and you have seen in the declarations how that is not the case.

Our plaintiffs all have existing clients with whom they have undertaken attorney-client relationships and they likewise have existing contractual obligations to represent pro se individuals in removal proceedings. We have citations to that effect on our reply brief at page 4. They have to do this. This is not a self-inflicted choice. This is not doing something because they feel like doing it. This is what they do. They have commitments, both attorney-client relationships

and contractual relationships. This is not something they can just not do.

The idea that this is self-inflicted is risible.

They also say this is speculative. I don't really see how that is correct. But as you see -- you heard from Ms. St. John, you see from our declarations, what I would have expected if the government thought it was truly speculative is for them to submit some sort of paper under sworn affidavit of some sort explaining why the things our declarants are saying are going to happen are not going to happen. We don't have that here, so the Court should take our declarations --

THE COURT: I probably should let Mr. Becker speak for himself in this regard, but I think what you might hear from the government is most people lose their cases before the BIA. And this just lets people get to the Court of Appeals faster anyway, so how is that an injury? I think that may be their position, if you want to respond. But I'll let Mr. Becker expand upon that or clarify that.

MR. REUVENI: So that's an interesting point. And to the extent it's relevant, it would be relevant for an individual, I think more so than an organization. The harms to our organizations are not the appeal process goes lightning quick and they get to a court that they would prefer to be in front of. The injury to our organizations is the massive amount of new additional, challenging work under very limited

timetables to even have a chance of perfecting the notice of appeal in a way that doesn't waive claims. And then once the BIA dismisses, as it will in the vast majority of cases because that's the entire point of this rule, going -- raising a petition for review on behalf of some limited subset of clients that they have the resources to help. That's the injury. The injury is not that -- the injury is not -- this is not an injury because someone gets to the petition for review process faster.

And I would actually say both for an individual and an organization helping individuals that's not, in fact -- getting to the Federal Courts of Appeals faster when you waived all of your claims is not remotely helpful to the individual seeking to navigate this Byzantine process.

THE COURT: I have to say, I'm going to have questions for Mr. Becker about this as well -- this is jumping, I apologize -- but jumping to a different area. I'm a little unsure and frankly I think the lawyers are a little unsure because I think they have said different things to me at different times on this issue. But it's unclear to me whether it's the government's position that if an issue is not raised in a notice of appeal and if the BIA then summarily dismisses, does that preclude the affected individual from raising the issue in the board of appeals or is it the BIA's position or EOIR's position that -- I think the rule says at one point in

time the decision of the immigration judge is to treat it as the decision. And basically you just cross the BIA out of the process and it's almost as though you were taking a direct appeal from the immigration judge. You can raise in the Court of Appeals any issue that you could have raised in a direct appeal. And, again, this may be a question for Mr. Becker. But I think that when counsel first appeared in the case for the government, they said it would be a waiver and then there was an exhaustion requirement and you couldn't raise it. I don't know if that's still the government's position. Perhaps if it's not, Mr. Becker, when he gets up can clarify that.

MR. REUVENI: Yes, certainly look forward to hearing Mr. Becker's answer to that. But our position is that absolutely there is an exhaustion problem to answer your question in a couple of ways --

THE COURT: Okay.

MR. REUVENI: Because there is a couple of steps to it. So let's say someone who does not include every single possible argument in their notice of appeal on day ten and they get it in on day ten. The rule says, the board takes a look and as I think this is -- no one is disputing this, the vast majority of cases will then dismiss. What the rule changes is -- it has this new addition of waiver. If it's not raised in the four corners of the notice of appeal, it is waived. And then they -- that is separate from dismissing the case and

potentially adopting the IJ decision below. Think of it if it didn't have the adoption issue, if it simply was a summary affirmance, for example, if you didn't raise it and then the Court adopts the decision below, you can't go to the Court of Appeals and raise the thing that you didn't raise to the board, even though the board summarily affirmed. In this respect, it's not any different. The dismissal or the affirmance is not really relevant. What's relevant is there is a waiver rule.

And now I would love to stand here before you and hear Mr. Becker tell you, no, no, no, that's completely wrong. When these cases by the hundreds of thousands get to the courts of appeal, the government lawyer is not going to be in front of the courts of appeal and say, no, no, they can raise these arguments. I'd love to hear that. They are not going to tell you that. That can't tell you that, because that's not what this rule does. And that would also give away 300,000 new cases a year.

What is going to happen is various litigants are going to try to get around the exhaustion issue by arguing the system is fundamentally unfair. Maybe some courts depending on the panel composition will say, yeah, we agree, we remand, do it all over again. Others will say, no, you didn't raise it, this is fine, you didn't exhaust, claims are waived. I can't stand here and predict how many, but I don't think it's an exaggeration to say we are talking about tens of thousands

cases that will have this exhaustion problem. So that is a fundamental problem. It is something the Court or the IFR did not consider and engage with at all. There is a perfunctory footnote at the end, I think it's footnote 20, if not 20, 22 where they just say, hypothetically this could happen, but it's fine. That is not reasoned decision making, especially when we hear from the various declarants explaining in painful detail what will happen in this discussion we are just having now.

So the rule, from an outsider's perspective, not understanding the thought process of the rule makers seems designed to make sure the vast majority of people navigating this system, especially pro se individuals, fail to perfect their notice of appeal in way that preserves their rights.

Jumping back -- so I said what I said about standing. Just talk very quickly about jurisdiction. The government appears to have conceded that you have jurisdiction. I think that's wise given that you have already said organizations have jurisdiction in this context as have many other judges in this jurisdiction. So we don't need to belabor the point. What they do, however -- is it is unclear to me what type of argument, if they are making a preclusion argument or a block implied claim argument. They are making -- they are calling it a zone of interest argument. But this, again, is an argument that you and many other judges in this court and across the country have rejected. The idea that organizations don't have

the requisite skin in the game under the INA -- I have never seen a court adopt the argument. Between as you know from *O.A.* and *RAICES*, there are multiple provisions within the INA that specifically and explicitly speak to organizations and give them a seat at the table for purpose of zone of interest analysis.

THE COURT: Yeah. There were some old 1990s D.C. Circuit cases that gestured in that direction at least, but that is all before *Lexmark* and before the Supreme Court clarified zone of interest standing and what zone of interest standing means. I think zone of interest perhaps had greater legs back in the nineties.

MR. REUVENI: That's right. I think, one, that is the simplest answer; but, two, those cases are -- those cases involved -- they arise out of cases that were *McNary* that involved front desking and the 1986 amendments to the INA. And so this legalization essentially that happened in 1986 through that IRCA was the name of the bill. And they are unique and limited to that particular statute. That -- 1252 didn't exist at that time. So those cases don't say anything about 1252 and whether 1252 forecloses an organization from bringing a facial challenge to a regulation that impacts their very ability to exist as an organization.

Moving on from that, I will go to notice and comment. I understand the Court has a particular interest in that given

the various prior hearings we have had.

Starting with the procedural rule. The rule itself spans two paragraphs on this. I don't know that the rule takes this argument seriously. The government spends a little bit more on it in their brief, but ultimately says the same thing as the rule. These are rules of convenience for the board. These are simply rules about how litigants present themselves to the Court or to the agency. Nothing could be further from the reality of what these rules do.

They -- so this makes an appeal, again, in all but the most extraordinary of cases impossible. It affects in the words of the most recent and relevant D.C. Circuit case -- it's the *AFL-CIO* case we cite in our papers from 2023. It alters the right or interests of the parties. And I will walk through what those rights and interests are in a moment. But first I think we have to since this impacts not just this argument but our merits arguments, the government tells you there is no right to an appeal and therefore there is no right to any of this.

THE COURT: I think what they actually say in the rule is that it is clear whether there is a right to appeal is the way they put it in the rule itself.

MR. REUVENI: That's why we have a notice and comment proceeding. If it's not clear, let's hear from everyone and clarify it.

THE COURT: Right.

MR. REUVENI: But we'll get to that. We think it's clear. The INA in no less than seven different places talks about an appeal and in several places a right to an appeal. So, for example, the right to counsel provision 13 -- 8 U.S.C. 1362 in any appeal proceedings, dot, dot, dot, from any removal proceedings, you have a right to counsel.

1158 in multiple places refers to what happens on appeal. 1229(a) requires the immigration judge to inform noncitizens going through the process should they get a removal order of their "Right to an appeal."

And all of that -- all of that is before in 1996 when the congress amended the INA to specifically reference by name the Board of Immigration Appeals in 8 U.S.C. 1101(a)(47) and to require -- say the final order of removal when the Board of Immigration Appeals does one of two things, it either issues a determination, which as we argue in our brief, that means more than just rubber stamp a piece of paper, you determine something about removability. And then also in that provision it refers to time to seek review. So that implies the Board of Immigration Appeals is going to be reviewing something.

And then I think that has to be read with the other provision added in 1996, 8 U.S.C. 1252(d). That is the exhaustion provision which refers to you must raise your claims first in any manner before the agency where you have as of

right is the words, as of right. And if you don't do that, that is when you have exhausted. And I think we refer to this case in our briefs. It's the *Santos* case from the Supreme Court just recently. I think it's the *Santos* case. It tells you what an appeal as of right means, the agency has no discretion not to hear the appeal. And that is quoted in our papers. So take that all together, it seems pretty clear that congress understood there to be this thing called a Board of Immigration Appeals. The government says -- and they cite cases from before. If the Attorney General wanted to, he or she could have never set up the board. That is before 1996. I think you have to read that provision as congress understanding there is a board. And without the board, this exhaustion requirement that they also added makes no sense. In a sense they have ratified what the Attorney General has chosen to do. I don't think today the Attorney General can say, just kidding, we are going to eliminate the Board of Immigration Appeals given the way the statute is presently written. We have what is clearly a right. We have the right to counsel in that appeal. We have the right to the appeal.

So telling us that this is just a procedural, which, of course, is about housekeeping matters, how an individual presents themself to the agency really just doesn't track the reality of the statute at all.

THE COURT: So I get your point on this with respect

to many of the provisions of the rule. But I have to say, I find the government's argument that under *AFL-CIO* I am required to do this on provision-by-provision basis. That argument has some appeal to me where -- or putting it differently, I don't know why it's wrong. And if that's the case, aren't some of these provisions not intertwined? So there is a lot that just goes into what is necessary to actually get your case in front of the BIA. And I get that that's all intertwined. There is some pieces of it where the BIA has decided, yes, we are actually going to hear your appeal and we are going to have simultaneous briefing. It's kind of hard for me to say -- see how I can conclude that a rule from an agency saying that briefing should be simultaneous where it already is for detained cases and to say, well, we are going to make it simultaneous now for non-detained cases, to say that that rule so trenches on the interests or rights of parties in those proceedings in a way that although nominally procedural, it really is substantive. Even a rule that says there is a presumption against reply briefs, it's only if the board authorizes the reply brief.

I probably have had cases, although I tend to invite more briefing than perhaps most, but there certainly are plenty of judges and plenty of types of motions where you don't get to file a reply brief. You file a motion and an opposition and that's it. I don't think anyone would say that those types of

rules, unless there was something that really was never responded to and you know raised due process issues, I wouldn't think that that trenches on the rights of the parties to do that.

Clearly, changing references to noncitizens to aliens, you don't even challenge that. I think there are a couple of other provisions you don't even challenge on the grounds that they really are not substantive in nature. So I guess to my mind what I am wrestling with is whether if I agree with you on the notice and comment more generally, I then need to go through and as the D.C. Circuit did in *AFL-CIO* and say, well, these are all bundled together and part of the same whole. And they do substantially impede on whether you call it a right or an interest in appeal. And, in fact, I think in some cases there is a way to think they are outcome determinative. You may have an appeal but you lose it automatically. But otherwise I am less convinced about. That's a long question.

MR. REUVENI: I understand. Let me answer it in a number of ways. First, we addressed this on our reply brief, page 14.

THE COURT: I saw that.

MR. REUVENI: And to expand on that, so, first, it's a good question. I think you would be doing the government's work for them because they didn't present this this way at all

in their papers. They didn't identify which specific provisions are or are not procedural. They didn't walk through the way the *AFL-CIO* majority panel walked through it. I expect I will hear that from them when they come up.

THE COURT: Right.

MR. REUVENI: They didn't put it in their briefs.

THE COURT: They did in their opposition brief, which is the only brief they really had a chance to file at this point. And we are moving on a fairly expedited basis here. And it may be -- you may be right it's not terribly developed. But it is your burden at least to the extent I'm on summary judgment to convince me that I really need to grant you relief.

MR. REUVENI: I have a couple of other arguments. That's not my only one.

THE COURT: Fair enough.

MR. REUVENI: I think most fundamentally, if you look at the severability analysis under the courts -- *AFL-CIO* doesn't cite it, but I will concede they went procedure by procedure or provision by provision.

THE COURT: Right.

MR. REUVENI: The question is, could this rule function sensibly without the provisions that are found unlawful. There is an antecedent part of that, does the government want it to do so? They say that in the regulation every single time. That is fine. We are not disputing they

would like it to proceed on its own. That's what they say in the rule. Our position is it cannot, in fact, satisfy that it could function sensibly without the set aside provisions test.

And the reason for that -- there is a few. One, the entirety of the rule functions as a cohesive whole on the theory that efficiency at all costs -- efficiency. The rationale for the whole thing is efficiency. And they explain it at page 5,270 of the rule, 91 Federal Register 5,270 that the entire thing is premised on making it function more efficiently. But the key thing to make this in their view more efficient is the two things that we have been discussing, the 30 to 10-day change and the waiver change, which will lead the vast, vast, vast majority of cases never getting to the board.

So that's what makes it more efficient. That is baked into the whole scaffolding of the thing. And so you take that away, not presuming how you are going to rule, but for the sake of this argument, let's say those two things are off the table, what's left is simultaneous briefing, deadlines for deciding cases within 90 and 180 days.

THE COURT: Which is actually in the rule already. That is in the regulations already. I think the change that is made is that where that provision is violated by the board member who is assigned the matter, what happens? And I think the change is that now the chair of the board or the vice chair then has to decide the case in 14 days. Whereas previously

there were rules where you could get an extension and other types of remedies that were available, but I think the 90 and 180 days is in existing regulations.

MR. REUVENI: That may be right, Your Honor. I think the innovation is 14 days and then if that doesn't happen, then it goes to the Attorney General.

THE COURT: Right.

MR. REUVENI: And of course --

THE COURT: I'm sure the Attorney General would be happy to get these cases.

MR. REUVENI: I'm sure she would enjoy them, yes. The chair and the vice chair and, of course, the Attorney General are political actors whereas in theory the immigration judges and other participants in the entire EOIR infrastructure are not.

THE COURT: Although congress did assign the responsibility to the Attorney General and the Attorney General actually has appellate review authority over the BIA. And so the Attorney General can set aside any BIA decision.

MR. REUVENI: That's true. There is a process for that. It's not an issue but, yes, that's right.

So to get to your point though or your question, none of the things that we just discussed, simultaneous briefing, no extensions under any circumstances --

THE COURT: Right.

MR. REUVENI: And really it's no extensions under any circumstances. Because the rule cites 1229(a)(E) which refers to individuals, not to the attorneys. So God forbid an attorney handling a case has a parent who dies or a child who is deadly ill, that is not a basis for an extension.

Just putting that out there into the record.

So let's say the first two parts that we have been discussing fall away so we have hundreds of thousands of cases again. And the rule doesn't tell us how it's actually efficient in the circumstance to have simultaneous briefing, to have no extensions, to have mandatory deadlines by which they have to finish deciding cases by. And, in fact, I think a number of declarants speak to this -- or maybe it's just in our brief, I apologize. Let me correct myself.

Under this rule, the chair and the vice chair will have to decide the newest cases immediately because they have got the 14-day deadline and that leaves the backlog of millions of cases still languishing, so not efficient.

THE COURT: Do you think -- I see what you are saying, because this only applies to the new -- even that provision only applies to the cases that are noticed after the effective date.

MR. REUVENI: Correct. So our position really is -- while the government would like you to carve up the rule into little discrete pieces in the way that the *AFL-CIO* case could

do because there were actually discrete, self-contained provisions at issue, nothing here is self-contained. Everything depends on everything else for the efficiency rationale. Once you take away the floor that holds up the building, the whole building has to fall.

Moving on from that, Your Honor, to the foreign affairs function. I don't think the government spent much time on this and I'm happy to not spend much time on this either. I think it's enough to say that no case that I'm aware of where this argument has been presented -- I'm familiar with many of the cases in which it has been presented has accepted this argument. It proves far too much. Any single regulation, policy, rule that should go through notice and comment that touches on the subject of noncitizens is now suddenly a matter of foreign affairs because the United States Government or whatever the government may be, wishes to negotiate with other countries so that they take back their noncitizens, I think is that what -- their nationals is what I understand the argument to be.

Judge Kelly, twice in this court, the Ninth Circuit in three different cases, all confusingly called *East Bay*, but different cases, I assure you. Judge Tigar in the District Court version of that case -- no court has ever adopted this argument, because if it did then every single immigration action is, in fact, exempt from notice and comment.

THE COURT: It was interesting to me actually the principle case I think the government cites is Judge Kelly's decision in *E.B.* and applying his standard I think they lose on this issue. Because he is pretty clear that it's not that expansive. That is the first case they actually cite in the rule.

MR. REUVENI: I do find that interesting, Your Honor. And I think the government makes one point that I think is worth addressing here. They tell you that the test that Judge Kelly applied in both of those cases is not the correct test. They tell you that the test comes from legislative history. It doesn't matter if it came from legislative history. The D.C. Circuit in the *Humana* case interpreted that term to the extent that -- and the term appears multiple times in the statute including for foreign affairs. I don't see any argument in the government's brief why that term should have different meanings depending on which provision of 553 it appears in. That would be contrary to very elementary principles of statutory construction. So that is the law in the D.C. Circuit at least. So under that law, they lose.

Moving on from there, Your Honor, to the statute. Let me pause there. Since I know part of what the Court was interested in is that notice-and-comment issue specifically. Are there any further questions on that?

THE COURT: Well, I have one question about if I am

either entirely convinced by you or partially convinced by you on this argument and conclude that there is standing and jurisdiction and all of the other issues, what do I do procedurally? Should -- if I reach that point, should I enter partial final judgment under Rule 54(b) and vacate to the extent that I conclude that there is a problem and remand to the agency and then hold the remainder of the case in abeyance while the agency then decides what to do about the comments that it receives and whether it -- after receiving and evaluating the comments it wants to stick to what it's done? I am interested procedurally in what you think the right steps would be if I were to agree with you on this issue.

MR. REUVENI: Certainly, Your Honor. So just answering this not because we want just the Court to rule on this one issue, but if that's the way the Court goes --

THE COURT: I understand you want to win on everything. That's the way most people feel.

MR. REUVENI: But if this is the way to get an order before the effective date of the rule, if that's the way the Court is leaning then I think what you have just described is exactly right for a number of reasons. You would issue a partial summary judgment. You would vacate the rule based on the failure of notice and comment. And this assumes in the entirety not -- not just some of it, but not the other. The same thing would happen --

THE COURT: Do you really think that I would -- there is any circumstances in which I should vacate the entirety of the rule? I should vacate the rule to the extent it says that the regulation is amended to replace the word or the phrase noncitizen with alien?

MR. REUVENI: If you find in our favor in full on the notice and comment claim, yes, you have got to vacate, we believe, the whole rule.

THE COURT: I'm not sure I follow that.

MR. REUVENI: I think you are asking me the severability question again.

THE COURT: Yeah, I am.

MR. REUVENI: I think I can give up what the point you just discussed. We don't raise it in our brief. We don't argue it.

THE COURT: Right.

MR. REUVENI: So we didn't raise it. We are not asking for it.

THE COURT: Okay.

MR. REUVENI: I guess what you would do to accept the premise of the question is vacate it other than as to that specific provision.

THE COURT: Okay.

MR. REUVENI: But once you do that, you vacate it, you send it back to the agency. Conveniently for all of us,

the agency extended notice and comment time so people can actually -- our plaintiffs, many other interested parties and organizations and entities can comment and hopefully the final rule will take those comments into consideration and we'll have a -- I don't want to be naive -- a better rule and maybe we don't have to sue again; right? I don't know. But at least the notice and comment process happens that is supposed to happen. This case gets held in abeyance. And then once the rule is issued, if there is something for us that we still feel harms our plaintiffs, we'll be back in front of you and proposing how to proceed. But there is no -- that's the narrowest way to do it. I think it's the most efficient way to do it. And then we'll be back here after April 8th. That is one month from now, so there is not -- the government -- if the government really wants this rule to be in place in a way that doesn't suffer this notice and comment infirmity then they will do notice and comment and we'll be back here defending this argument or litigating this issue on the merits.

THE COURT: Okay.

MR. REUVENI: We, of course, think you have everything you need to decide all of the other issues as well on the 705 stay.

THE COURT: Yeah. But that's just interim anyway though.

MR. REUVENI: That would be interim. So we can

envision a world, assuming the luxury of time, of course, your time, everyone's time, so I want to be cognizant of that where you stay the rest of the rule. You stay the whole rule, but you wouldn't need to do that if you find for us on the notice and comment in the way we have just discussed.

So now to focus on the other points. The statute, arbitrary and capricious and the equities issues. Some of this is going to sound in the same source of arguments I have made on the procedural right point. But a few things this rule is in direct conflict with -- and exceeds the authority of the agency under -- starting with the right to counsel, 8 U.S.C. 1362. And I read that to the Court before. I think it's worth reading part of it again, right to counsel in any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings. Not just the board, by the way, the Attorney General, any process he or she sets up. But here that's the board.

And we cite these cases in our brief, but this doesn't just mean as the government suggests in its papers that you have -- maybe you get an attorney, maybe you don't. They even go so far as to say, you don't have a right to an attorney in -- for the board. It's just an immigration court. I think the statute that I just read puts that argument to bed. You have to have a reasonable and fair amount of time, as the cases

we cite point, to find this counsel, to work with counsel and counsel has to be able to actually present a case on your behalf. So all of the things we just talked about, the 10-day notice of appeal issue, the waiver issues, how fast -- the absence of a record before anyone has to perfect this process, particularly for pro se detained individuals. There is just the fact it takes perhaps the whole 10 days to mail something. And on that, we don't cite this in our brief, unfortunately, but -- I do want to point the Court to the fact that in 1996, the agency changed the appeal deadline from 10 days to 30 days in a rulemaking that was done with notice and comment, by the way. Because the Ninth Circuit had found back then in 1994, before any internet or digital anything, that 10 days to mail something from Hawaii to the immigration court in California, violated due process, because they had no control over that 10-day window.

And I think that same argument holds here, especially for those that are detained who have no control over the mail, have no ability to control whether and how they talk to their counsel. I want to give you that cite so if you give me one moment. The regulation I'm talking about is 61 F.R. 18,903. That's a 1996 BIA rule making where the agency thought it was necessary to have 30 days, not 10 days for an appeal. And the case is *Gonzalez-Julio v. INS,* 34 F.3d at 820, Ninth Circuit, 1994. And that is cited in the rule as the reason for why they

are changing it to 30 days.

It doesn't apply entirely here, but for pro se individuals, particularly detained pro se individuals, same exact issue.

So we go through our declarations. The declarants lay out precisely how and we have talked about this before. It's the same standing and same harm arguments as to why this interferes with our ability to represent individuals. We talked about 1101(a)(47), so, again, the determination by the Board of Immigration Appeals, the review of such order by the Board of Immigration Appeals. This clearly conflicts with that because in the vast majority of cases there will be no review of such order and there will be no determination. And we know that, because the rule sets up a process where after 10 days the appeal is automatically dismissed as a default unless the full en banc court does something. So they have to take some sort of action. And if they don't, it's dismissed, no one ever looks at the thing, no nobody, no BIA judge, no one. I would love to hear that's not correct, but it's not in the rule and that's the point.

And we can't rely on statements plaintiffs make -- I'm sorry -- defendants make in their briefs when we are talking about thousands and thousands of people whose very livelihood is at stake. So on top of that, we have 1229a(b)(4)(C), the complete record issue, which we have talked

about a bit. So there is no record before they have to make this life-or-death NOA document, file it with the Court, as Ms. St. John outlined and all of the other declarations, the process for doing what needs to be done to ensure no waiver is very, very resource intensive and will require plaintiffs to represent fewer individuals. They will have to pick and choose between people they can represent here, which is its own sort of harm. I have not seen the government's brief really explain when this record will be presented. You had asked a question earlier. It's my understanding that the government's position, is that the record will appear at some point before a court of appeals decides a petition for review months or years down the road, which, of course, is inconsistent with the judicial review provisions which require the individual raising the petition for review to provide -- the record has to be provided as part of the petition for review. That is 8 U.S.C. 1252(b), so that is another provision this violates. Then, of course, all of the provisions where we said there is a right to an appeal, talking about rebuttable presumptions of credibility on appeal, things that happen if there is a frivolous appeal, administrative remedies available as to the individual as of right on appeal, those are all cited in our brief. I won't read through them again. But they appear at 1158, 1229a, 1252 1362, all of those are 8 U.S.C.

And here, I refer the Court to the amicus brief that

was filed on behalf of former members of the board or immigration judges. And I'm going to quote here. This appears at page -- in pages 17 and 20 of their brief, not disputed by the government. "By our estimates every board member would need to consider two to three cases per hour every working hour" exclusive of any other duty in perpetuity for this rule to work the way they envision it working. And that's clearly not what is going to be -- that is not going to happen, because then -- the Board of Immigration Appeals will cease to function, which, again, seems to be the point. So those are the statutory arguments we have.

I'd also raise just very briefly a due process point that is incorporated into the statute, another thing the rule does not consider. So these statutes have to be interpreted to some extent co-extensively with the due process rights of individuals. The government, at least earlier, told you that, well, these are individual rights that follow individuals through petitions for review, that may well be as to an individual challenging their individual removal order through the petition for review process. But that's different than our argument, which is they failed to consider at all the due process implications of their rule as part of their rulemaking.

And with that, I'll just pivot over to arbitrary and capricious, which that argument is a part of. So there are a number of -- a key number of fatal flaws with this rule under

the arbitrary and capricious analysis. First, not to repeat what I just said, but failure to consider the impact on noncitizens and their counsel and the counsels' ability to present themselves. I think as to our plaintiffs in particular, they didn't consider at all the impact on organizations in this rule, not just our plaintiffs, but all organizations, all immigrant services organizations that work in the immigration removal detention defense space, not a single mention of any of that. Of course, that is why your clients and many other similarly situated organizations want to be able to participate in notice and comment. Because their ability to engage in their core business activities are fundamentally at risk from this rule. So, obviously, this is why we have notice and comment. Obviously we would like to submit comments and have the agency hear them. The rule doesn't engage with any of that, none of it. It should have been obvious to the agency that it needed to address this point.

And had they taken comments before they issued the rule, they would have received comments alerting them to this issue. Point the Court again to footnote 16 and footnote 20 in the text of the rule. This is the sole analysis I have seen in that acknowledging that the 10-day appeal deadline and the waiver issue and the many changes may, is the word in the footnote, impact noncitizens' ability to retain counsel for a

notice of appeal.

But without really any explanation as to how they get here, they then tell us the population will be relatively small, quote/unquote, that is at issue here. And the benefits, presumably of efficiency, outweigh the potential impact. What the rule doesn't tell you is what the potential impact is, literally hundreds of thousands of people will not be able to make their claims. And this is something the rule doesn't engage with at all, but it's just the facts, this is a reality.

Once the board dismisses a case, an appeal under this rule, the stay of the removal order that applies automatically, to every appeal under 8 C.F.R. 1003.6 is gone. And then it's a race to the airport versus a race to the courthouse. And the rule here doesn't engage at all with this issue. And Ms. St. John talked about it in her testimony and it's in the declaration. Filing a stay motion along with a PFR, along with the other papers to start a petition for review process, far more resource intensive. Until the stay motion is granted, it's not automatic, they can remove this individual. And I think I should have mentioned this fact earlier. There was some discussion about how often cases at the board get reversed. We have in our declaration from one of our plaintiffs Brooklyn Defenders, over half of their cases result in a reversal or a remand. Obviously, that's a sample size of their case list, but this is not a trivial number when you look

at the larger number of hundreds of thousands of people that go through immigration court every year.

They didn't consider any of this. I just find it shocking when we are talking about matters of life and death, when we are talking about people with asylum claims, with withholding claims, with torture claims under the convention against torture. When -- and again the government does not dispute this, when we have immigration judges engaging in what is called pretermission at the direction of the highest levels of the Department of Justice, that is essentially dismissing sua sponte cases up front before the merits can ever be adjudicated, doing this by the hundreds if not thousands of cases. Then the appeal, through this new rule, will not have any record of the merits at all in that scenario.

Because the IJ also in a way presumptively also dismissed the proceeding by not deciding the merits and simply saying, no, I'm just dismissing the case. And you now will be removed to a third country before anyone can do anything about it. This is one of the several interconnected issues that this rule doesn't engage with at all.

And we cite the *Portland Cement* case in our papers. Just reading the quote here, "An agency must acknowledge and account for a changed regulatory posture the agency creates, especially when the change impacts a contemporaneous and closely-related rulemaking." I would submit our argument is

it's not just specific rule makings, it's other policy actions the government is taking. So if on the one hand the government is directing immigration judges through various board decisions, policies, unwritten guidance, telling them to deny asylum at all costs, giving them board decisions to dismiss anything up front for any kind of technicality. They are doing that on the one hand, then on the other hand they are giving the public a rule that says, well, no review of that and then off to the airport, to potential persecution or worse, I would have expected the rule to at least acknowledge the possibility, address it and give some sort of rational explanation for why that is not a concern. It's a deep concern to the plaintiffs and the people they serve.

Another issue is the data this rule uses. So -- and I saw the government's brief on this telling us the data is not exact, so we are sorry if there's mistakes. That's essentially what they are telling us. The IFR says, there were only 132 sustained appeals during the relevant time period. A comment that is now publically available and we cite in our brief and attached as an exhibit says that data is all wrong. The people doing that comment are former immigration judges and members of the Board of Immigration Appeals. I would hope I would expect them to know what they are talking about. The number is actually 450. Those numbers may not seem huge, but that is a 265 percent mistake in the numbers. I didn't see a good

explanation for that in the brief. And that sort of mistake and not telling us how they derive their data and then saying, well, that's fine our data isn't perfect. There are many other parts of that data that weren't considered. That is no way to make this sort of life and death decision for so many tens of thousands in what they concede is faulty data.

We have talked about this before, with you, Your Honor, as well, the PFR issue, the PFR mess, I think it was your hypothetical. Why would the government want to have to litigate this 266,000 times instead of once? We would agree with that. The rule utterly fails to grapple with what this would do to the Court of Appeals. The Court of Appeals is not a plaintiff in this case, but this is something that they should have grappled with. Because it doesn't just affect the Court of Appeals, it affects the litigants that are before you, it affects the individuals that go through the system. Not a single discussion of that.

Last, on arbitrary and capricious, we raised this in our briefs. I'm curious to hear what the government has to say in response myself. But you go in your first year in office as an administration and you fire all of the immigration judges, all of the ones that have experience and have done this for years and have knowledge and expertise. And then you say, there is not enough people to move the system quickly. There is not enough immigration judges. There is insufficient staff

at EOIR to move things quickly. They -- another thing -- there used to be 24 Board of Immigration Appeals, now it's 15. I didn't really see a good explanation for why that is the case. But you essentially make it impossible for the agency to do its job then you come out with this rule that will result in instant dismissals of the vast majority of cases. I would have expected to see some discussion about the immigration judge issue and potentially the alternative, maybe hire more immigration judges or expanding the Board of Immigration Appeals.

I would have expect them to address their own report that they commissioned the last time they tried to reform the immigration appeal process. It's a Booz Allen Hamilton audit that is referenced in the *El Centro* case we cite in our brief, that proposes among other things that a way to make things more efficient is not to have oral decisions, which require all of the process and resources that our declarants have attested to and just have a written decision. What this rule does is make it impossible for the immigration judge to correct the transcript before it goes up on appeal. Who does that help, when two, three years later the Ninth Circuit or some other Court of Appeals says there is not enough here for us to review and sends it back down. So for all of those reasons, we think this rule is arbitrary and capricious and should be set aside on that ground as well.

I will focus briefly on irreparable harm and remedy. I think a lot of arguments on this are going to be similar --

THE COURT: I want to make sure that we are leaving enough time to hear from Mr. Becker as well. So why don't I give you another 3 minutes, then I think we should take a short break and then I want to make sure I can hear from Mr. Becker too.

MR. REUVENI: Yes, Your Honor. I appreciate it. I apologize if I went long.

THE COURT: No. No. I just have to make sure everyone has a chance to be heard, that's all.

MR. REUVENI: Understood. So the arguments for irreparable harm, I mean you are familiar with them from your prior cases a well. Does the rule perceptibly impair our clients programs? Does it "interfere with the ability" of legal service providers to provide essential services? That is your *Northwest* case 496 F.Supp. 3d at 79 to 80. That's Judge Mehta's clinic case from 2021, 513 F. Supp. 3d at 175. And for all of the reasons we have already discussed going through the declarations, which you have heard from Ms. St. John is the rule irreparably harms our clients. It fundamentally interferes with their ability to provide the essential services that they exist to provide. Already they have had to cancel core programs like the pro bono program the NIJC has. They have funding -- an existential crisis in that if they have to

shift everything in a petition for review, they are not getting the deliverables for the funding -- the grants and funding that they have. At heart, it just means they have to do far more work with far fewer resources to serve far fewer people and far more high stakes scenarios. And this is -- this is the League of -- Women's League or Voter's League, I believe is the case from 2016 that says, that's enough for irreparable harm. That is your case in the *Northwest Immigrant Rights Project*. That's a number of other cases we cite in our briefs. I won't belabor the point given the similarity between harm and standing.

Last, on remedy, I think this is an easy one if we are doing the 705 stay. We have controlling circuit precedent. We have the decision from the D.C. Circuit Court of Appeals, granted in a stay posture. But in the *Make the Road* case -- so what that means is two things: One, a 705 stay is not just to the parties. It's like a temporary vacatur, as the Court said. It's to everybody. As the Court said, two -- 8 U.S.C. 1252(f) has no bearing here, as that Court said, as the Fifth Circuit has said, as the Ninth Circuit has said, because a temporary stay like a vacatur is not an injunction 1252(f). It doesn't enjoin or restrain in the way that that statute is understood.

And last they make the argument that even if that's the case under post *Casa*, equitable principles, you have to narrow the relief as to the parties. Again, *Make the Road* rejects that. And as to the vacatur argument with respect to

summary judgment, you reject that. And we cite that case as does the seminal case, *National Mining* from the D.C. Circuit. So I think there is -- if we win on the merits, there is no argument as to whether relief should be limited to the parties.

THE COURT: I have to say as I am just thinking about this out loud here it does seem that if you were to apply *Casa* in this context it would have a really perverse effect, because you have immigration judges who have to engage in -- board members who have to engage in sort of Herculean tasks to be able to remove as many notices of appeal as they possibly can, except for your clients. And for your clients, they have to give them more time and do more. And so it then shifts the resources of the board members towards handling your clients and then the result of that is that other people have less of an opportunity to be heard.

MR. REUVENI: Well, that's -- I have to be careful here because I think that my clients would like to some extent that result, but my clients would also think that is fundamentally unfair and wrong.

THE COURT: I understand. Okay. All right.

MR. REUVENI: With no further questions, thank you, Your Honor. I know I took up a lot of time. I would appreciate a very brief opportunity to respond if there is time.

THE COURT: Okay. All right. Fair enough. Why

don't we go ahead and just take a short break and come back at 10 minutes to 4:00 and try and finish up by 4:30, if we can. Okay.

(Recess taken at 3:39 p.m.)

THE COURT: All right. Mr. Becker, your turn.

MR. BECKER: Good afternoon, Your Honor. And thank you for you and your clerk's work in considering this case on such an expedited basis. I just wanted to start with what I think some of counsel's arguments get at that I think is important to clarify. In the prior two years ending, I think, in October of last -- of 2025, the BIA had approximately 55,000 appeals. And even plaintiffs concede that only at most, 450 of those were actually sustained or remanded or --

THE COURT: No, I don't think that's -- maybe I should ask the question. That was not what I understood. I thought those were cases in which the appellant prevailed, not cases -- did not necessarily include case where there were remands to the IJ for further fact finding or further information.

MR. BECKER: Yes, Your Honor. I think the point here is that there are -- there are a very small number of cases where there are affirmative BIA decisions that are actually providing significant relief. Some --

THE COURT: But a remand could be really essential to -- in fact, on remand you may win on the remand or it may be

really important to your case to get something remanded.

MR. BECKER: Yes, sir. Sometimes in this context aliens will seek like a different form of relief that they are entitled to. There are different reasons for them that --

THE COURT: Right.

MR. BECKER: -- have nothing to do with necessarily the merits of the case. I think the point here -- the larger point the government is trying to get at is that this rule does make significant changes to the BIA, but it does so because there is a long backlog, a 200,000 case backlog and -- occurring at the BIA and more by the day as a result of the various things this rule tries to improve upon.

THE COURT: Was your figure 55,000 appeals per year?

MR. BECKER: No. I believe that was around two years. It is not quite two years the way we did the statistics.

THE COURT: But the backlog is 250,000 cases?

MR. BECKER: Correct, Your Honor. So it keeps adding on. And the government is trying to create a way and the Executive Office of Immigration Review specifically to actually to weed thought meritorious cases and get them to the court of appeals faster.

I want to talk about three buckets of things. I want to start with the procedural rules exception and touch on standing and irreparable harm and then on the other merits

issues, whether that's arbitrary and capricious or any of the other things.

First, on the procedural rules issue, I think that this is a little -- I don't know whether we are considering this on a stay or on the 705 or whether we are considering it on summary judgment. But I think that the procedural rules exception to the APA does allow -- does allow these rules to be able to be put in place. The government maintains they are all procedural, but we will go through some buckets of those that I think will help the Court and things that the government cares about.

So I think the first bucket of rules that I think is clearly procedural is the simultaneous briefing and 20-day deadline rules. I think the D.C. Circuit in the *AFL-CIO* case has some very good language on whether the deadline is so short as to foreclose effective opportunity to make one's case. And I don't think that the 20-day deadline or the simultaneous briefing issue really gets to that at all. I mean, it is true that among detained aliens there is currently a 21-day simultaneous briefing schedule. So this is something that we think is clearly procedural and was allowed to be implemented without notice and comment.

THE COURT: If I agree with you on that and some of the other procedural rules, but I agree with plaintiff on others, is -- and I reach summary judgment and decide it on

summary judgment, is the right remedy for me then to enter summary judgment in part, vacate in part and remand to the agency to continue with its notice and comment process with respect to the portions that I conclude don't fall within the procedural exception?

MR. BECKER: Your Honor, I think that there what would -- so given that I think this hearing is only considering a partial summary judgment on the procedural rules issue.

THE COURT: Right.

MR. BECKER: I think that would result in not a final judgment, but a sort of partial ruling. I think we probably need to be back here to adjudicate the merits of some of the APA claims.

THE COURT: But wouldn't --

MR. BECKER: -- and things that aren't procedural.

THE COURT: But wouldn't you want me under the circumstances then to enter a partial final judgment under Rule 54(b) so that you can either take an interlocutory appeal or proceed with the rulemaking and you're not just left hanging in limbo?

MR. BECKER: Well, Your Honor, I think there is a couple of different things that you could consider. And one of them is also to rule on plaintiffs' 705 stay motion.

THE COURT: Right.

MR. BECKER: And to potentially to deny that motion

with respect to -- to grant it with respect to what you think actually doesn't qualify and to deny it with respect to what you think they haven't met their burden on as to the procedural rules issue. I think what plaintiffs would say is you then need to consider the APA issues for things that were properly procedural or were procedural rules, so they didn't have to go through notice and comment. I think that then they have other arguments. I think that is what the *AFL-CIO* case does. I think it goes to the APA -- I know that's a little different because there was a lot more time.

THE COURT: What is your view though about entering partial final judgment under Rule 54(b), if I do conclude that plaintiffs are able to prevail on some portion of their case?

MR. BECKER: Your Honor, the government would prefer to have something -- a final judgment in the case, so --

THE COURT: But even if it's a partial final judgment so you could appeal if you wanted to?

MR. BECKER: The government would prefer that to not having a final -- any sort of filing at all, which I think under a partial summary judgment could actually be the result.

THE COURT: Okay.

MR. BECKER: Because the -- and, obviously, the government would not, you know, certainly have to apply those things. I'm sorry. The government would be following that order but it's a little different because it wouldn't be -- it

wouldn't even be an appealable order necessarily.

THE COURT: I apologize. I cut you off because you were running through the portions of the rules that you think are clearly procedural in nature. And I think you had simultaneous briefing and the 20-day schedule.

MR. BECKER: Yes. Another one is -- this roughly corresponds, by the way, to the Part IV.8.E of the rule. I think in Part IV of the preamble, I should say. Part IV.D deals with forwarding the record. So one of the issues currently is that there is this period where even after there is a transcript, the immigration judge can go back and change what is in the transcript to correct issues. And I mean, those can be substantive things after the appellant has -- after the alien has appealed. And we think this issue of whether the immigration judge has -- gets to do that is also clearly procedural. It's something that doesn't affect subsequent rights of the parties. It's an internal efficiency thing where the board is actually -- where there is a lot of time that is -- that this causes and lot of complexity for immigration judges to have to spend their time going back and reviewing those when now EOIR has very good technology that allows much easier transcription and allows an ECAS system for those particular -- for the audio recordings to appear for counsel, so --

THE COURT: Can you refer me to the section number

that you are thinking about on the transcript?

It's presumably part 1,003 -- is .1 or .3?

MR. BECKER: I think it's 5273, forwarding the record on appeal.

THE COURT: One second here.

I'm actually looking in the rules themselves. I think 5273, you are talking about the explanation.

MR. BECKER: Understood.

THE COURT: I want to know where in the rule itself or the actual amendment to the regulation.

MR. BECKER: I'm sorry, Your Honor.

THE COURT: It's all right. Take your time.

MR. BECKER: I believe it is 100.3.5, 1003.5, but it has to do with eliminating various portions.

THE COURT: I'll tell you what, rather than having you use all of your time on this, maybe when you get back to the office you can send an email to the chambers email copying opposing counsel with a citation.

MR. BECKER: Yes, Your Honor. We can -- we can do that. I believe it's a portion that's just removing part of the regulation, so I'm sorry that I don't have that --

THE COURT: No worries.

MR. BECKER: -- that right now.

And all -- there is other things in the rule that I think are -- I think you already mentioned, changing noncitizen

to alien and things like that, that I don't think are -- that I think are not -- I don't even think plaintiffs really challenge so I don't think we need to get into that. I think that the other -- so then there is some other issues. I think the plaintiffs mostly focus on making the board's jurisdiction discretionary and on reducing the time to file a notice of appeal.

And those -- I think on the note reducing time to file a notice of appeal, that is where I think plaintiffs are arguing presumably, because I don't think plaintiffs really go through in their motion and go through the different aspects of the rule and what they are really considering as procedural or not. I think they even argue here that the entire rule is procedural or is procedural and that should be a sufficient determination.

The reducing the time to file a notice -- to notice of appeal to 10 days from 30 days is also something that is -- the courts generally have the ability to change their deadlines. And I think that here, the question under D.C. Circuit precedent is whether that time allotted is just so short to foreclose effective opportunity to make one's case. And I think that -- that's from the *AFL-CIO* case at 57 F.4th 1045. So I think plaintiffs would need to meet that exception in order to be able to -- in order to be able to win on that issue. And I think there is some other language in precedent,

including from the *Epic* case that it matters whether the timing is -- substantively affects regulated parties to a degree sufficient to implicate the policy interest animating notice and comment rulemaking.

Going down and changing the deadline to be able to file notices of appeal in order to make this process quicker, we think is something that the agency for efficiency reasons given the backlog that the agency has is something that is appropriate as --

THE COURT: How does that help with the backlog?

MR. BECKER: Your Honor, the -- reducing the amount of time that this -- that these -- so what is going on currently is that we have -- there is so many appeals that are left to be decided and I think that I may have misspoke on that. It won't help with the backlog, I think this gets to the larger efficiency reasons that are going on with the board. So I think it makes parties have to decide whether to appeal or not and whether to -- and --

THE COURT: But in our immigration system in which people are here oftentimes for many years while these proceedings play out is the difference between 10 or 30 days material in any respect in terms of actually getting people out of the country?

MR. BECKER: Well, Your Honor, I think that if the issue is where it's material or not, between 10 -- between 10

and 30 days, if it doesn't really matter to aliens whether it's --

THE COURT: I think their point is that it matters because when you put all of the pieces together here, it says you have got 10 days not only to file something that says notice of appeal, which would not be terribly problematic, but to actually explain what the deficiencies are in a decision that you have just gotten from an IJ that has not yet been transcribed. You have 10 days to meet with the client, interview the client, review the transcript and then figure out what issues you want to raise and then set it forth with sufficient detail and analysis that when the single member of the BIA who picks it up, looks at it and says, oh, this isn't a garden-variety appeal. This is one that actually has some merit, I think maybe I should consider referring this one to the whole board for the whole board to decide whether to hear the case. I think their point is when you do it in that fashion it makes it virtually impossible to prepare what you need to prepare.

And I think I may have said this to one of your colleagues. I don't know if you were here on the line for it. Imagine a world in which, you know, you're told from the day that the D.C. Circuit renders its decision, you have got 10 days not just to file, you know, a notice of appeal but to file a cert petition that is going to convince the Justice on the

Supreme Court that this is a case that they ought to take within their discretionary review. And not only that, some of those cases you are actually going to have to go out and find the client or the client is going to have to find you to do it. I think most people would say that is just not possible. I understand this is not a cert petition, but it's more than just a statement of issues. And this actually, by the way, brings me to the point of the questions I wanted to ask you about, which I hope you are prepared for because I told you I wanted to ask you about this, which is there, in fact, an exhaustion problem here if you fail to include something during the 10-day window in the notice of appeal, are you then precluded from ever raising that issue in the Court of Appeals?

MR. BECKER: Your Honor, so I think that is probably going to be a circuit-dependent issue is part of the problem with giving the government's current position on that. Because if you have raised -- there is -- various circuits have more -- excused some of these requirements where if you have raised them before the immigration judge. This is also going to matter whether you have a BIA -- whether you actually -- your appeal petition, whatever you want to call it, is granted by the BIA or not. At that point, it would be, if you didn't raise an issue in your statement of issues, it would be waived before the BIA.

THE COURT: But what if it's just what would be the

overwhelming majority of the cases in which it's just a summary denial, and if it's a summary denial and it's not in your notice of appeal, can you raise it in the Court of Appeals?

MR. BECKER: The government's position on that is that the immigration judge's decision then becomes the final decision at that point. So the question is whether you --

THE COURT: So I want to make sure we are clear on this because I may put this in my opinion and it will bind the Department of Justice.

MR. BECKER: Okay.

THE COURT: It is the position of the Department of Justice that there will not be an exhaustion limitation based on what is in your notice of appeal so long as the BIA summarily dismisses the appeal and that you can then raise in the Court of Appeals any issue that you could have raised on essentially direct appeal from the IJ without any limitation at all based on your failure to include that information or that claim or argument in your notice of appeal?

MR. BECKER: Your Honor, I don't want to -- think we want to take a definite position on that, because I think that other circuits that -- I think that the circuits may -- no matter what the Justice Department's position is, may have different views on what that would be the case. Now, generally --

THE COURT: But --

MR. BECKER: -- if you raise a position, an issue before an immigration judge, that is something that is preserved.

THE COURT: But will it be the Department of Justice's position in the Court of Appeals that people are entitled to raise anything that they raised before the immigration judge regardless of what was in their notice of appeal?

MR. BECKER: Your Honor, I think that there may be circuits that may require you to actually have the -- to actually raise that issue as an issue in your -- and, again, you are not required to create a cert petition of every single issue. You are required to state the main points of what your appeal was. And I think that --

THE COURT: I want to make sure -- are you telling me though that the Department of Justice will only take that -- will not take that position and will resist it, but some judges might force it upon them?

MR. BECKER: Your Honor, what we think is that the -- and -- is that some of the circuits would probably excuse exhaustion in that kind of case. And as a result --

THE COURT: So that's a different -- I'm sorry. That's a different point. That is -- I think that's the same as plaintiffs' position. I want to make sure I understand the difference of views. I think that's plaintiffs' position as I

understand it, which is that they may need on a case-by-case basis to argue to the Court of Appeals that their failure to exhaust should be excused because -- based on the equities of a particular case, but the presumption is that there is an exhaustion requirement and they would have to convince the Court of Appeals to excuse it based on the particular circumstances. And that sounds to me like you are agreeing with that now. But if that's not the Justice Department's position, I want to make sure I understand that.

MR. BECKER: Yes, I think that plaintiffs would -- if plaintiffs raise an entirely new issue that wasn't in their statement at appeal at all, yes, I think they may need to do that depending on the circuit on -- on an as-needed basis. However, I also think that what -- the way that the rule actually sets this up and -- is that the immigration judge's decision becomes the final decision. So I think there is some issue about whether a Court would consider that the final decision which again I don't think we --

THE COURT: Maybe it is that your answer is that the Department of Justice doesn't have a position on this yet, which is fine if that's your --

MR. BECKER: Yes, I think that is correct, Your Honor. We don't have a position on this, because I think that no matter what our position is, there are some circuits that may consider -- that may consider this differently.

THE COURT: But that's a different point. I guess my point though is that, I am trying to figure out what the Department meant or what EOIR meant in the Interim Final Rule or whether it thought about this issue at all. And you might say to me, EOIR intended this rule to be one in which there is no exhaustion requirement in the Court of Appeals in any case in which the BIA summarily dismisses. That's one possibility. Possibility two is, no, there is still an exhaustion requirement in every case, but there may be equitable principles that would apply in such a manner that the court of appeals would not hold someone to that in a particular case. And I suppose option three is, I don't know yet. This is something that the Department is going to have to debate and think about and I'm not authorized to take a position on this yet because I don't know the answer.

MR. BECKER: I think -- I think, Your Honor, based on the way you're asking this, I think it's probably two and tree, so I'll probably rely mostly on three. I don't think we have a position on that yet. I think that the -- I think that one of the reasons for that is that some of the -- is that the appeal as of right of issue in the statute and whether you have to exhaust, it would -- this is changing the process to a discretionary appeal system. So it would seem that if you -- if would seem that many circuits with their exhaustion requirements would say that raising it before the immigration

judge was sufficient to put even the board and to put everyone on notice -- the Department on notice that you were raising the issue.

THE COURT: So going back to the procedural rule exception. Why isn't at least that piece of the rule something for which notice and comment rulemaking is required? It seems to me it's a pretty fundamental change that does affect people's interests and likely affects their rights as well, but certainly affects their interests to say you used to have an appeal as of right to the BIA, you now have discretionary -- a discretionary appeal, but you don't have an appeal as of right anymore.

MR. BECKER: Your Honor, the Department thinks that this is something that just gets at how you present your views to the agency, which under the procedural rules exception is something that is allowed to not go through notice and comment before being implemented. Of course, it changes through time through notice and comment.

THE COURT: I don't want to spend too much time on this, but it does strike me as fundamentally different to have an agency say, we are going to consider your arguments on the merits versus we are not going to consider your arguments on the merits presumptively, although we might an occasion.

MR. BECKER: Your Honor, the agency is considering plaintiffs' arguments at the immigration judge stage.

THE COURT: Yeah.

MR. BECKER: And then there is no requirement in the statute for there to be a board of immigration appeals. I think the plaintiffs cite there is one provision of the INA that even includes a mention of a Board of Immigration Appeals, where it says a determination by the Board of Immigration Appeals affirming such an immigration judge's order, it becomes the final order of removal. It's in the definitions section at it 8 U.S.C. 1101(a)(47).

And that -- you know, I think that a lot of our arguments are that even the Department could just get rid of the Board of Immigration Appeals, which we do think we can. There is a lot of statutes that we use in the immigration context that say that INS will do something and now it's DHS, so --

THE COURT: That is a little different. That was first done by statute. And, two, that was pretty significant. And, three, it's just different from this case.

But the -- I mean, imagine a world in which the D.C. Circuit announces, by the way, I want to file an appeal of whatever I have done here and the D.C. Circuit says, you know, we have amended our internal procedural rules. D.C. Circuit is no longer allowing appeals as of right, but you can file a petition for discretionary review. People would say, the D.C. Circuit can't just like amend its standing order or procedural

rules and say you can no longer bring an appeal as of right. That is a pretty fundamental change.

MR. BECKER: Your Honor, courts of appeals would have a different statutory issue here. Here, the statutory -- the procedures are all given to the discretion of the Attorney General.

THE COURT: My point is it is just fundamental though.

MR. BECKER: Understood, Your Honor. I think the test as to that is whether the time allotted is so short as to foreclose effective opportunity to make one's case or that it's substantively -- it's affecting some sort of -- it's basically -- it's substantively affecting some sort of substantive right or some sort of right you have. And we don't think there is any particular right to have a particular decision by the Board of Immigration Appeals, all the statute, the INA says at all is there is a determination.

THE COURT: I don't know whether you are right or wrong about that. That is an issue I haven't studied yet in depth enough to know whether the statute embodies an appellate right or not. But I have read I think virtually every case from the D.C. Circuit on the procedural rule exception. And virtually every one of those cases uses the same articulation and the question is whether it trenches upon a right or interest. It doesn't say, a statutory right or constitutional

right or even a right, it says or interest. And it is changing the regulations in a way that does seem to me affects a fundamental interest.

MR. BECKER: Understood, Your Honor. I think that our argument on this is that here on -- for many years, the Board of Immigration Appeals had this huge backlog of cases. And there is just no sort of statutory -- there is no statutory right to this particular type of appeal in the Board of Immigration Appeals. It is a change from one procedure to another. But we think that is something that is given to the discretion of the Attorney General. And there are cases going back to *Vermont Yankee* for example that are talking -- that talk through how courts are not supposed to graft some sort of procedural requirements --

THE COURT: I haven't gone back to look at *Vermont Yankee* but I would guess that the rule at issue there was a notice and comment rule. And the Supreme Court was simply saying courts ought not micromanage how agencies --

MR. BECKER: Yes, Your Honor. I think I am merging our arbitrary and capricious and our arguments on arbitrary and capricious and on the procedural rules exception. But I think the -- so I think that we have talked about the system.

And I want to talk about the 10-day issue.

THE COURT: Sure.

MR. BECKER: Because I think that it was actually

very helpful to have a witness here to talk through what actually is the statement of issues. And it's the same statement of issues that is currently filed in the -- in the BIA.

THE COURT: That's not what I heard her say at all.

MR. BECKER: Your Honor, that is what the website has that you would submit your statement of issues that, as she said, was a less -- was even lesser than a statement of issues in the Court of Appeals. I think that what counsel was saying was -- or I'm sorry -- what the witness was saying was she was talking -- Ms. St. John was talking about whether they would need to or feel the need to file an entire cert brief, like a cert brief to the BIA to be able to get their appeal noticed and I -- that gets to some of our standing arguments which are that some of these harms are entirely self-inflicted. I mean, you can choose to file a longer piece of document.

THE COURT: You don't want to commit malpractice; right?

I mean, these are lawyers who have a fiduciary obligation to their clients. And you can't say to the lawyers, you know, you have the right to not adequately represent your client. That's fine.

MR. BECKER: Well, Your Honor, here the issue is that there are many cases at the Board of Immigration Appeals that are the same type of case that has been decided a lot of times

under standards that they would not reverse and that there is well-established law on. It could be something like a political persecution in China or something like that. And the immigration judge has come up with a decision. And really that's all the board needs to know about is what the issues were as to that particular issue. And having the -- they will have the opinion. They will have audio opinion. And they will also have the statement of issues. And a lot of times, because the issues are the same as many other cases, it will be relatively easy to figure out whether this is a case that just raises one of the same issues that has already been decided.

THE COURT: Isn't the discussion that we are having here and we have been having this afternoon sort of just evidence as to why notice-and-comment rulemaking is essential and that who knows what the answers are to some of these questions? You probably don't know. I probably don't know. And that's why you want to give people an opportunity who actually are experienced and affected to submit comments so the agency can consider those comments and then can provide reasoned responses. They may say, you know, we received 400 comments that all said X, Y and Z. And we have considered those comments. And here is why we are not persuaded. That is the way notice and comment is supposed to work.

MR. BECKER: Well, Your Honor, if I can defend instituting an interim final rule as opposed to a final rule

and taking comments. And the comment deadline has been extended. EOIR is considering comments from even plaintiffs here.

THE COURT: Right.

MR. BECKER: And I think one of the things that also gets -- and this gets to plaintiffs' standing as well is when the system is instituted, there is a lot of speculation about what the Board of Immigration Appeals will do in these cases.

THE COURT: Right.

MR. BECKER: And given the change through discretionary systems, it may be actually that a lot of cases that plaintiffs are mentioning that are meritorious or would be remanded or where a plaintiff wants -- or where an alien wants to raise another withholding issue that those will simply be accepted for appeal. There is another world where -- there is a world where the BIA is taking a lot of appeals. There is also a world where there is not discretion. There is a lot of discretion given to the BIA to decide how to do this. And the department has given a long now -- a longer notice and comment period for people to make comments about this. And I think having an Interim Final Rule is something that would be helpful -- the Department views as helpful to figure out how this system -- this system could work and could work better before issuing its final rule.

THE COURT: Can I ask, have you had a chance to read

the amicus brief that was submitted by the 60 or so former immigration judges?

MR. BECKER: I think I referred to it mostly on the numbers issue. But beyond that, I can't say I have -- I think I was reviewing mostly plaintiffs' log.

THE COURT: Let me ask you this: They say -- and this describes things that are just purely procedural in nature and I want to make sure you don't disagree with this. But they say that during the 10 calendar days set by the rule in order for a party to get permission to appeal from the board, the following things need to occur: The clerk's office has to docket the appeal, identify any technical errors in the E-26 including placement of fees, assign the matter to an attorney who then has to review the case including the record, and then communicate the proposed decision of the board member who has to decide whether to put it before the en banc panel which then has to consider, deliberate and vote on whether to allow briefing.

Anything incorrect about that?

MR. BECKER: No, there is nothing incorrect.

THE COURT: What about when Ms. St. John testified about or explained to us what the process was -- this is the process after the notice of appeal is filed. She described the process before the notice of appeal was filed. Any disagreement of anything she described?

MR. BECKER: Your Honor, I think that what Ms. St. John was describing was two different types of issues. One of them was as to already -- as to pro se detained aliens.

THE COURT: Correct.

MR. BECKER: And I think she did talk a little bit about what it would be with a current client and obviously 10 days is less than 30 days, but if the person is already represented in immigration court, this is a separate thing. I will say the Department has thought about this and would be willing to stay the rule as to pro se detained aliens as a result of the case. So if that's given the -- given those -- given some considerations, it's a relatively small portion of the -- that would be affected by this as well.

So I just wanted to bring that out there. I don't really disagree with any of the things that she said. I think maybe, you know, they would be able to streamline, you know, going two times to see the individual to get signatures and stuff like that. Overall, I think -- I mean, I don't think that we have any sort of factual evidence to rebut that at this point.

THE COURT: Okay. A lot of it is just procedural or process. I want to make sure that I'm not missing something about the process.

MR. BECKER: No, Your Honor. I don't believe anything she said was -- I saw was inaccurate.

THE COURT: Okay. I appreciate that. Thank you.

So I want to make sure you get a chance to also touch on -- I think you wanted to do standing and there was a third topic.

MR. BECKER: Yes, Your Honor. If we could just move there. So I think a lot of plaintiffs' standing arguments come down to sort of speculation about what is going to happen with the rule. I think I mentioned one of them, how it's sort of speculative what even the immigration -- Board of Immigration Appeals will do, whether -- the kind of meritorious cases that plaintiffs' declarations discuss that would be -- that would be usually -- that the Board of Immigration Appeals would have ruled in favor of clients before, whether those things are something that is going to have to go to the Court of Appeals now to be able get -- to get adequate relief. I think that a lot of the arguments that plaintiffs make deal with issues that are -- that just -- that really without -- with organizational issues that are either things that won't really be known until after the rule goes into effect or things that are -- that organizations are choosing to do, like I mentioned before, like deciding to file an entire cert-petition-like brief with the Board of Immigration Appeals. And these kind of speculative standing arguments, I think especially on a summary judgment stage, are just -- they need to cite specific facts in the record and not conclusory allegations from an affidavit. A lot

of record here on standing only includes a lot of allegations about what will happen and how things will go once the rule goes into effect, not really -- not really demonstrating any sort of likelihood.

I think Ms. St. John mentioned that they have had for the first time -- I did not see this in the declaration -- they have some meritorious cases that they took at the BIA. Maybe that came from that -- with people that were not represented during immigration proceedings.

And, again, like at this point, in the case if we are considering summary judgment, I think that some of these -- this speculation about -- or there is just a lot of speculation about what would happen with these cases instead. And I just don't know that that can be known at this point. I don't think there is a strong law of lawyer standing to be able to contest all of these things that may -- I mean plaintiffs here didn't bring an associational standing case on behalf of their members. This case is not on behalf of any alien. It's on behalf of organizations. And I think that they should have to meet those -- that burden as to organizational standing. And I think that a lot of their arguments including on the -- whether they are going to have to change their systems or whether they are going to have to get new funding leave a lot to be desired. Some of the arguments are that they get more funding if they represent more people in immigration proceedings. They would

be able to represent more aliens in IJ proceedings, for example, overall in terms of time --

THE COURT: I could be wrong. My recollection was it wasn't the number of people you were representing, it was the amount of time that you were before the IJ or BIA, but not just getting paid per person. Maybe I'll have to go back and look at the transcript.

MR. BECKER: No, Your Honor. What I understand is it was by person. I think that what they were saying was that potentially, although it seemed like speculation to me, that if a case is before the BIA for a longer period of time, it stays as an active case in their system, so they can say they are representing one more person. If the BIA is sitting on a case for two years, you don't have to do a lot of work on it but you still get some sort of funding.

THE COURT: On a theory that it is done on a per-person basis every year so you count up the number of people that year?

MR. BECKER: That is kind of how I understood it, but you can correct me --

THE COURT: I will have to go back and look at it more carefully.

MR. BECKER: -- if I'm wrong about that, I think which would make sense.

The other thing I wanted to say on the standing

argument is that the idea that -- the idea that there is some sort of financial injury, there is just nothing, no facts in the record on this basis to the organizations. Normally at the stage of summary judgment, you would see that -- some estimations. And I think that the -- some numerical estimations and the like. And I think that given the case has moved fast, it is -- this is just insufficient at this stage to find standing on that basis, at least as to the financial injury claim.

On the other -- of the other issues that we have raised, I want to -- I think a lot of them -- I think there are two primary issues and then some secondary ones that plaintiffs raise on the -- on their arbitrary and capricious and some of their other contrary to law claims. One of them comes down to the fact of whether the right to counsel is implicated here by having a shorter proceeding and in having a shorter appeal deadline and having a discretionary appeal system. And I agree that the right -- that there is this -- you know, the plaintiffs do have the ability to have counsel. I don't think anyone is arguing about that. But I think what plaintiffs want to do is engraft this meaningful requirement onto it that they have some sort of meaningful right to -- that aliens have some sort of right to an appeal in the BIA. I think that requires looking at the only place in the statute that says what the -- that says the -- where the Board of Immigration Appeal even

exists. And I think that that place which we already talked about 8 U.S.C. 1101 makes clear that there is -- that all that plaintiffs have is some sort of ability to appeal or a determination -- or get a determination and then their order of removal becomes final. I don't think this says anything about what that determination might be, whether it needs to be on the merits. I think a past BIA practice suggests that it does not because there are summary dismissals already. We concede that those are -- some of those are for technical issues and the like. It still results in final issues of removal and ultimately things that the plaintiffs could -- or I'm sorry -- the aliens could appeal to a court of appeals.

And I think that it's important to just look at whether the statute as I think Your Honor appropriately said is a statute that is giving the Attorney General a lot of discretion in terms of how to decide these cases. And I think that in grafting additional requirements on top of that is what plaintiffs are trying to do in many of their arguments. And I just don't think that is supported by the text of the actual INA, where especially where all that is really required by the Board of Immigration Appeals is a determination that results in -- a determination on appeal and that results in a final order of deportation.

I can briefly address other arguments. Plaintiffs mentioned due process a couple of times. I don't think they

have raised a due process argument in their brief. I just wanted to mention that.

Oh, plaintiffs also raise an argument that there has been sweeping changes in immigration court practice. I just don't think that is true. The Department has hired more immigration, has temporary immigration judges currently. The idea I think that we didn't consider some of these issues just is not, I think, correct. I think the brief -- or I'm sorry, the rule itself goes through and --

THE COURT: Why were the experienced immigration judges fired?

MR. BECKER: Yes, Your Honor, that is correct --

THE COURT: Why?

MR. BECKER: -- there were immigration judges fired. I believe the Department's reason for that were Article II, so there were not any sort of necessary reasons for it that were given.

THE COURT: It seems to me it does go to the arbitrary and capricious analysis if the folks with experience are fired, inexperienced people are hired on a temporary or part-time basis and then the agency says, well, we have a backlog we can't deal with --

MR. BECKER: Your Honor, the agency --

THE COURT: I don't understand that.

MR. BECKER: The agency is relying -- so I think we

are mixing up two things, immigration judges and the Board of Immigration Appeals.

THE COURT: No, I understand.

MR. BECKER: I think the Board of Immigration Appeals has been reduced in numbers because what was happening as a result of having so many immigration judges was that it was hard with the en banc procedures. For example there were splits, especially if there were recused or something like that -- there were splits where there was an even number of immigration judges. So that was one of the reasons -- this is an entirely separate thing that happened earlier in the administration where there was -- it reduced. I think it is an entirely separate agency action that was reduced from 28 to 15. So I think that the reason for that actually did have to do with the inefficiencies of the system. And that it was actually having more immigration judges was leading to less productivity for whatever reason. I know that there is an immigration judge brief that talks about --

THE COURT: How many en bancs are there a year?

MR. BECKER: I don't know that off the top of my head. I think the issue was though that I remember is it was related to like even voting for en banc procedures because of the equal divisions so --

And, Your Honor, I think the rule also does consider the impacts of the courts of appeals. I think the rule

specifically recognizes that this system will result in getting to a Court of Appeals quicker. I think the rule is talking more -- is considering that more in respect to that it -- currently the procedures take so long to get to the Court of Appeals because of the lengthy BIA process. And I think the rule does consider that issue. I wasn't really certain on plaintiffs' argument as to what more the rule needed to do in that respect.

I think -- as to plaintiffs' arguments about the failure to consider the impact of the rule on noncitizens and their counsel, I think a lot of these arguments relate to whether these detained or pro se detained aliens and people that want to get immigration -- want to get representation on -- for a BIA appeal when they weren't represented before, I think the Department has long -- I think plaintiffs are mostly complaining about the Department's explanation as opposed to whether the Department failed to consider this issue. And I think there is a long footnote that goes into this, footnote 16 in the rule itself. And I think that I don't really have anything more to say on that, because I think the Department did consider the issue.

And with that, I don't think -- I think that we have addressed most of the arbitrary and capricious arguments that I thought were worth addressing here beyond -- and otherwise we stand on our briefs.

THE COURT: All right. I appreciate that. Anything else you want to add?

MR. BECKER: No, Your Honor. Well, I think the one thing we'd add is I think the procedural issue I think it's important that the Court goes through and considers all of the different things. We'll submit the particular citation that you requested as soon as possible.

THE COURT: I appreciate that. Okay. Thanks.

How about --

MR. REUVENI: I promise to be brief.

THE COURT: Five minutes max?

MR. REUVENI: I don't think it will be that.

THE COURT: Perfect. You'll make friends with everyone in the back of the courtroom.

MR. REUVENI: Thank you, Your Honor.

A few clarifying points and then one more thing on the procedural rules, so first, the conversation you were having with counsel about exhaustion whereas they raise the -- the IJ's decision is adopted when there is a dismissal, that doesn't make any sense. That would leave out the arguments that you would make to the board. And the government is going to come back say you failed to raise this in your notice of appeal, it doesn't appear before the immigration judge, how could it, you didn't have the decision, you didn't have any of the issues to raise because a decision hadn't happened yet.

That is not how exhaustion would work in the circumstance. I think the government not being able to tell you what their position is is telling on that point.

On the point of whether there is a discretionary appeal or as of right, the statute says as of right repeatedly. Right to an appeal as of right. There is no such thing as a discretionary appeal. That is why this entire thing about taking the case only if the en banc court finds extraordinary circumstances warranting it is contrary to statute.

THE COURT: You have a right to appeal in at least certain asylum cases. Is it beyond the context of those asylum cases where you actually have a right to appeal under the statute?

MR. REUVENI: 1229(a)(C) IJ shall inform every single person whether it's asylum or not of the right to appeal. And then, of course, 1101(a)(47) coming in at 1996, a right to determination on that appeal.

THE COURT: Okay.

MR. REUVENI: So, yes, I think there is a right. It's not discretionary. That is a fundamental problem.

On en banc, I just want to correct something I heard in the conversation. It's not whether there is some merit. It's really an extraordinary standard. En banc is very rarely granted. The declarations talk about it. It's 8 C.F.R. 1003.1(a)(5). The majority of the Court has to determine if

it's of particular importance. Nothing requires them to determine anything is of particular importance. There is no standard. This is not on the record, but just based on my experience, I would expect en banc to be granted seldomly if ever under this rule.

I heard opposing counsel say something about treating -- let's have no notice and comment for a little period of time, almost like there is a pilot program to see how the rule functions, then we can see if it's bad or not. That is now how the APA works. That is not how notice and comment works. If they wanted to do a pilot program, maybe that's what they should have done in a much more narrow and targeted way.

Last on the procedural issue. So I'm glad you brought up the point about right or interest, because I think we have been focused a lot about right, but there is also interests here. I think that goes to some of the items that my opposing counsel thinks are procedural. So take the 2020 simultaneous briefing schedule and put that together with the no extensions under any circumstances, period, full stop for attorneys, only if the noncitizen has some grave disaster befall them. So what about the fiduciary interest of those attorneys? So this is not simply procedural in the sense that it's about presenting views to the Court and making it more streamlined. If one of these attorneys has a life-or-death situation, they cannot present their clients' interest into the

board under that schedule.

THE COURT: I kind of doubt that your clients have standing to present that claim, because that is pretty speculative. It is saying that maybe one of the attorneys who works for our organization is going to have a brief due tomorrow and is going to get hit by a truck tonight and is going to be in the hospital and not able to file the brief, therefore he is going to breach his or her fiduciary duty. And that does seem pretty speculative.

MR. REUVENI: I take the point, but I do think when we talk about interest, there is also just the interest of being able to present the appeal. I will refer the Court to page 19 of the amicus starting at the top where these immigration judges and former board members explain what happens after the board actually deigns to take an appeal after the en banc process. It talks through the 20-day deadlines. It talks through all of the things that happen and the need for an extension, extraordinary circumstances. "In our experience it is impossible and we use that word literally for the board to provide any meaningful review of a case on this schedule."

So it's really not necessarily -- speculative, perhaps in the individual case. But here we have dozens of former employees of the Department of Justice Executive Office of Immigration Review saying in their experience this is not feasible. That's another reason why this is procedural rule on

those two issues.

And that last point counsel was looking -- my opposing counsel I believe was looking for 1003.5. That actually says what that says is the IJ cannot -- doesn't forward the record unless and until the en banc court takes -- votes to take the case. So there is no record. Nobody has access to any record. And that to us doesn't seem procedural at all, because that is -- that goes directly to the substantive rights of an individual to make their case and the notice of appeal before they waive their claims.

One other thing, I'm very sorry -- the Rule 56(d) motion that is pending --

THE COURT: I'm sorry. I want to go back to --

MR. REUVENI: Yes.

THE COURT: I understand the amicus brief when it says, No one at the board will be able to view and analyze appellate issue on this timeline. I don't think they are talking about when the briefs are submitted, because that wouldn't make any sense. Because it's talking about what the board members can do. So I think it must be really referring back to the paragraph beforehand, which talks about all of the things that you have to do to decide even whether to take the case.

Once you take the case, then there is 20 days from the scheduling order to file your briefs. And then the board

has 90 or 180 days to actually render a decision. So how is that self-evidently impossible? I understand the difficulty with the initial stage of do we take it or not? But once you decide to take a case, I don't really understand why this schedule is utterly unworkable.

MR. REUVENI: I wouldn't say it is utterly unworkable. I would say it trenches on the interests, particularly reliance interests of the individuals that have made their business operations contingent on the system functioning in the way it has now for decades. So when we think of rights or interests -- and I'm speaking here only to your point, what happens after they take the appeal?

THE COURT: Right.

MR. REUVENI: They are going to fundamentally have to undo the way they do business and redo the way they do business and change everything about how they do business. And that I think is an interest that is covered in the rights and interest standard under the cases.

So my last point, with -- if the Court will indulge me. You have a pending Rule 56(d) motion. And our position is, of course, that any one of our declarants is enough to demonstrate standing for purpose of a summary judgment motion. You have the testimony from the witness.

THE COURT: I'll glad you raised that. And I'm -- you're welcome to address anything else on it. I guess what I

am inclined to say is I have actually acted on that and that I have granted in part and denied in part the motion. And I have granted the motion to the extent that I did direct that a witness be available here to be examined. And the government narrowed the scope of the inquiry that it wanted to make by serving supplemental notice with respect to the issues it wanted to raise. I don't think that otherwise, I am convinced that the need for discovery is justified in this case, given the showing or non-showing that the government has made, the fact that most of the issues they are raising are legal issues rather than factual issues that need to be explored. And the fact that they have had a chance now to examine one of the declarants on those factual issues and in doing that has not revealed any inconsistency or any reason to doubt that testimony or a declaration which to my mind also puts to rest the question about whether there is any reason to doubt the veracity of the declaration submitted by others.

MR. REUVENI: That is well taken and understood. I had not -- I will confess, I had not understood you, Your Honor, to be formally granting in any way the Rule 56(d) motion. What I understood was you had asked that we present a witness to avoid any Rule 56(d) issues and we have done that. And I think what is appropriate is for that motion to be denied because they have failed to make a showing now that they need anything further.

THE COURT: Why does that matter whether I say that either it's partially moot now because of what has happened or say that it's granted in part -- I don't know that anything turns on it. I don't have a strong view one way or the other. I'm happy to say it's denied in part for failure to make an adequate showing and denied as to the remainder of it as moot because, in fact, the witness was presented and the government had an opportunity to examine the witness.

MR. REUVENI: That is what we ask.

THE COURT: I'm not sure why that matters but --

MR. REUVENI: That is what I think.

THE COURT: Any objection to framing it in that manner, Mr. Becker?

MR. BECKER: Your Honor, the government obviously has preserved that we -- the full motion should be granted, but we do -- opposing counsel and I spoke and we would prefer the Court issue a ruling on it, like you have I think.

THE COURT: I think I have now and I will reflect that in the minute entry.

MR. REUVENI: Thank you, Your Honor, for your time this afternoon.

MR. BECKER: Thank you, Your Honor.

THE COURT: Okay. Thank you. Have a nice weekend, everybody. It's my turn now. So I'm going to do my very, very best to get you an opinion by midnight on Sunday night, so

thank you.

(Proceedings concluded at 4:49 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 8th day of March, 2026.

Sherry Lindsay, RPR
Official Court Reporter

**BY MR. BECKER: [3]** 6/19 7/10 12/18
**BY MS. MATHUR: [1]** 14/20
**MR. BECKER: [70]** 5/3 5/18 6/6 7/6 14/14 27/12 69/6 69/20 70/2 70/6 70/14 70/18 72/6 72/10 72/15 72/21 72/25 73/14 73/18 73/22 74/6 75/3 75/8 75/11 75/13 75/19 75/23 77/11 77/24 79/14 80/4 80/10 80/19 81/1 81/9 81/19 82/10 82/22 83/16 84/13 84/24 85/2 86/3 86/9 87/4 87/19 87/25 88/6 88/23 89/24 90/5 90/10 91/3 91/20 92/1 92/5 92/24 93/5 95/8 95/19 95/23 98/12 98/14 98/23 98/25 99/4 99/20 101/3 108/14 108/22
**MR. REUVENI: [56]** 4/7 5/9 27/19 32/12 32/20 33/2 33/6 33/20 33/22 34/9 35/19 37/12 37/17 40/13 41/23 42/2 45/19 45/23 46/6 46/13 46/16 46/21 48/4 48/8 48/11 48/20 49/1 49/23 51/7 52/13 52/18 53/6 53/10 53/13 53/17 53/20 53/24 54/20 54/25 66/8 66/12 68/16 68/21 101/10 101/12 101/15 102/14 102/19 104/10 105/14 106/6 106/14 107/18 108/9 108/11 108/20
**MS. CARROLL: [1]** 4/14
**MS. GEORGEVICH: [1]** 4/25
**MS. LAPOINTE: [1]** 4/21
**MS. MATHUR: [6]** 4/17 5/20 6/4 14/17 18/1 27/11
**MS. SCHER: [1]** 4/11
**MS. ST. JOHN: [1]** 34/5
**THE COURT: [150]**
**THE COURTROOM DEPUTY: [6]** 4/2 6/12 6/16 23/9 23/11 23/14
**THE WITNESS: [18]** 6/15 7/8 12/10 18/10 19/11 19/14 19/18 20/14 21/6 21/22 23/1 23/8 23/10 23/12 23/15 27/2 27/9 27/16

**.**

**.1 [1]** 75/2
**.3 [1]** 75/2

**1**

**1,003 [1]** 75/2
**10 [18]** 15/18 28/4 32/6 56/7 56/10 56/13 56/23 57/14 69/2 76/17 77/21 77/25 77/25 78/5 78/9 78/23 91/9 92/6
**10-day [9]** 15/11 21/5 26/12 47/12 56/3 56/16 60/23 79/11 87/23
**100.3.5 [1]** 75/13
**1003.1 [1]** 102/25
**1003.5 [2]** 75/13 105/3
**1003.6 [1]** 61/12
**1045 [1]** 76/23
**1101 [5]** 42/14 57/9 85/9 97/2 102/16
**111 [1]** 2/4
**1158 [2]** 42/8 58/23
**12 [5]** 8/10 8/18 8/19 8/19 8/20
**1229 [3]** 42/9 49/2 102/14
**1229a [2]** 57/25 58/23
**1252 [8]** 40/19 40/20 40/21 42/23 58/16 58/23 67/17 67/20
**13 [2]** 3/5 42/5
**132 [1]** 63/17
**1362 [3]** 42/6 55/12 58/24
**14 [3]** 45/21 47/25 48/5
**14-day [1]** 49/17
**15 [5]** 5/12 5/12 34/2 65/2 99/13
**16 [2]** 60/21 100/18
**17 [1]** 59/3
**17-plus [1]** 7/22
**175 [1]** 66/18
**18,903 [1]** 56/21
**180 [3]** 47/19 48/3 106/1
**19 [1]** 104/13
**1986 [2]** 40/16 40/17
**1990s [1]** 40/7
**1994 [2]** 56/12 56/25
**1996 [6]** 42/12 42/23 43/11 56/9 56/22 102/16

**2**

**20 [7]** 29/24 32/1 39/4 39/4 59/3 60/21 105/24
**20-day [4]** 71/13 71/17 74/5 104/16
**200,000 [1]** 70/10
**20001 [1]** 2/17
**2001 [2]** 1/17 2/7
**20036 [2]** 1/18 2/8
**20043 [2]** 1/15 1/21
**2016 [1]** 67/7
**2020 [1]** 103/17
**2021 [1]** 66/18
**2023 [1]** 41/13
**2024 [2]** 9/4 34/11
**2025 [4]** 8/18 9/4 9/6 69/11
**2026 [2]** 1/6 109/15
**20530 [1]** 2/13
**21 [1]** 7/23
**21-day [1]** 71/19
**22 [2]** 7/23 39/4
**23 [1]** 34/1
**24 [2]** 23/25 65/2
**25-1 [1]** 6/25
**250,000 [1]** 70/17
**26 [1]** 91/12
**26-696 [2]** 1/4 4/2
**265 percent [1]** 63/25
**266,000 [1]** 64/10
**27 [1]** 24/12
**28 [1]** 99/13
**29 [1]** 7/4
**2:05 [1]** 1/7

**3**

**30 [9]** 29/24 47/12 56/10 56/23 57/1 76/17 77/21 78/1 92/7
**30-day [1]** 26/5
**30-plus [1]** 7/21
**300,000 [1]** 38/16
**31 [1]** 33/3
**333 [1]** 2/16
**34 [1]** 56/24
**34553 [2]** 1/14 1/20
**3632 [1]** 2/13
**38 [3]** 33/4 33/5 33/7
**3:39 [1]** 69/4
**3d [2]** 66/17 66/18

**4**

**40 [2]** 5/14 5/15
**400 [1]** 89/20
**42 [2]** 9/7 9/8
**450 [2]** 63/24 69/12
**47 [4]** 42/14 57/9 85/9 102/16
**496 [1]** 66/17
**4:00 [1]** 69/2
**4:30 [1]** 69/2
**4:49 [1]** 109/2

**5**

**5,270 [2]** 47/8 47/8
**500 [2]** 1/18 2/8
**513 [1]** 66/18
**5273 [2]** 75/3 75/7
**53 [1]** 33/11
**54 [3]** 52/5 72/18 73/12
**55 [1]** 31/9
**55,000 [2]** 69/11 70/13
**553 [1]** 51/17
**56 [4]** 105/11 106/20 107/20 107/22
**57 [1]** 76/22

**6**

**60 [1]** 91/1
**60604 [1]** 2/5
**61 [1]** 56/21
**6710 [1]** 2/16
**69 [1]** 31/14
**696 [2]** 1/4 4/2

**7**

**705 [6]** 30/20 54/22 67/12 67/15 71/5 72/23
**79 [1]** 66/17

**8**

**8 C.F.R [1]** 102/24
**80 [1]** 66/17
**800 [1]** 2/4
**82 [1]** 32/1
**820 [1]** 56/24
**86 [1]** 31/14
**8th [3]** 27/4 54/13 109/15

**9**

**90 [3]** 47/19 48/2 106/1
**91 [1]** 47/8
**950 [1]** 2/12

**A**

**abeyance [2]** 52/7 54/8
**ability [13]** 13/15 28/16 40/22 56/19 57/8 60/3 60/12 60/25 66/15 66/22 76/18 96/19 97/3
**able [31]** 9/9 13/24 15/9 18/13 22/19 24/11 24/12

**A**


**able... [24]** 24/22 24/24 24/24 25/22 26/10 28/23 56/2 60/11 61/7 68/10 71/8 73/13 76/24 76/24 77/5 88/13 92/16 93/15 94/15 95/1 102/2 104/7 104/12 105/16
**about [102]** 7/14 7/16 8/23 10/15 12/19 13/10 13/13 15/2 15/22 17/7 18/19 18/20 21/13 21/14 22/21 24/4 24/5 24/8 24/18 28/20 30/20 31/2 32/10 32/12 32/14 36/16 38/25 39/14 39/15 40/20 41/7 42/4 42/19 43/22 45/17 51/25 52/8 56/3 56/21 57/6 57/9 57/23 58/1 58/19 61/15 61/21 62/4 62/5 62/18 63/23 64/7 65/7 68/5 70/23 71/11 73/11 75/1 75/7 79/8 79/10 82/17 83/4 83/14 86/19 87/22 87/23 88/11 89/5 90/7 90/20 91/19 91/21 91/22 92/6 92/9 92/23 93/7 94/2 94/12 94/13 95/23 96/20 97/2 97/5 99/18 100/9 100/16 101/9 101/18 102/7 102/24 103/6 103/14 103/15 103/21 103/23 104/11 105/18 105/19 105/21 106/16 107/16
**above [1]** 109/10
**above-entitled [1]** 109/10
**absence [1]** 56/5
**absolutely [7]** 11/4 12/10 12/25 14/25 18/10 27/9 37/14
**accept [1]** 53/20
**accepted [2]** 50/11 90/15
**access [2]** 26/1 105/7
**account [1]** 62/23
**accounted [1]** 14/2
**acknowledge [2]** 62/22 63/10
**acknowledging [1]** 60/23
**across [2]** 19/1 39/24
**acted [1]** 107/1
**action [4]** 1/4 50/25 57/17 99/13
**actions [1]** 63/1
**active [1]** 95/12
**activities [2]** 29/16 60/12
**actors [1]** 48/13
**actual [3]** 24/19 75/10 97/19
**actually [50]** 8/4 9/22 13/18 17/21 18/4 18/10 20/14 25/24 32/25 33/17 36/10 41/20 44/7 44/10 47/20 48/18 49/9 50/1 51/1 51/5 54/2 56/2 63/24 69/13 69/22 70/20 73/2 73/20 74/18 75/6 77/22 78/7 78/14 79/3 79/7 79/20 81/10 81/11 82/15 87/25 88/2 89/18 90/11 99/14 99/16 102/12 104/15 105/4 106/1 107/1
**add [3]** 31/3 101/2 101/4
**added [2]** 42/23 43/14
**adding [1]** 70/18
**addition [1]** 37/23
**additional [7]** 10/2 15/19 17/11 18/23 19/4 35/25 97/17
**Additionally [1]** 15/13
**address [5]** 60/17 63/11 65/11 97/24 106/25
**addressed [2]** 45/20 100/23
**addressing [2]** 51/9 100/24
**adequate [2]** 93/15 108/6
**adequately [1]** 88/21
**adjudicate [1]** 72/12
**adjudicated [1]** 62/12
**adjust [1]** 9/22
**administration [2]** 64/21 99/12
**administrative [3]** 26/25 30/7 58/21
**admitted [2]** 11/9 11/11
**adopt [1]** 40/2
**adopted [2]** 50/23 101/19
**adopting [1]** 38/1
**adoption [1]** 38/2
**adopts [1]** 38/4
**adult [2]** 15/1 15/13
**advanced [1]** 23/25
**advantage [1]** 27/4
**advice [1]** 26/4
**advise [1]** 10/16
**advocacy [3]** 11/18 15/24 32/25
**affairs [3]** 50/7 50/15 51/15
**affect [3]** 64/14 74/16 84/7
**affected [3]** 36/23 89/18 92/13
**affecting [2]** 86/12 86/13
**affects [7]** 41/11 64/15 64/16 77/2 84/8 84/9 87/2
**affidavit [4]** 6/22 10/8 35/8 93/25
**affirmance [2]** 38/3 38/7
**affirmative [1]** 69/22
**affirmed [1]** 38/6
**affirming [1]** 85/7
**AFL [9]** 41/13 44/2 45/11 46/3 46/17 49/25 71/14 73/8 76/22
**AFL-CIO [9]** 41/13 44/2 45/11 46/3 46/17 49/25 71/14 73/8 76/22
**after [15]** 23/24 29/12 34/11 49/21 52/9 54/13 57/14 74/10 74/13 74/13 91/23 93/19 104/15 104/15 106/12
**afternoon [19]** 4/7 4/10 4/13 4/14 4/16 4/17 4/21 4/22 4/24 4/25 5/2 5/6 5/8 6/8 6/8 6/20 69/6 89/13 108/21
**again [38]** 8/19 8/22 9/5 13/2 16/18 17/3 17/12 17/21 20/2 21/15 22/15 23/6 24/8 24/19 25/3 25/6 25/13 25/15 30/9 30/14 32/21 37/6 38/22 39/23 41/10 49/9 53/11 54/6 55/13 57/9 58/23 59/10 60/21 62/7 67/24 81/11 82/18 94/10
**against [5]** 16/8 16/19 21/10 44/19 62/7
**agencies [1]** 87/18
**agencies' [1]** 12/3
**agency [34]** 10/11 11/24 14/12 20/19 20/20 27/3 41/8 42/25 43/5 43/23 44/12 52/7 52/8 53/25 54/1 55/11 56/10 56/22 60/15 60/17 62/22 62/23 65/4 72/3 77/7 77/8 84/15 84/21 84/24 89/19 98/21 98/23 98/25 99/13
**agree [7]** 38/21 45/9 52/12 64/10 71/23 71/24 96/17
**agreeable [1]** 5/10
**agreed [1]** 5/10
**agreeing [1]** 82/7
**agreement [2]** 13/20 13/24
**ahead [2]** 17/20 69/1
**airport [2]** 61/13 63/9
**al [4]** 1/3 1/7 4/3 4/4
**alerting [1]** 60/20
**alien [6]** 8/25 53/5 74/14 76/1 90/13 94/18
**aliens [12]** 8/3 11/2 45/6 70/3 71/19 78/1 92/3 92/10 95/1 96/22 97/12 100/12
**all [89]** 4/9 4/13 4/24 5/6 5/7 6/5 6/17 10/5 10/15 13/4 14/15 14/16 16/14 20/23 21/4 22/8 22/11 23/13 24/14 24/21 27/17 28/22 29/9 34/18 36/13 38/22 39/3 40/9 41/10 42/12 42/12 43/7 43/24 44/8 45/12 45/25 47/6 50/21 52/3 53/25 54/21 56/3 58/3 58/18 58/22 58/24 59/21 60/5 60/6 60/7 61/9 61/14 62/14 62/20 63/5 63/20 64/21 64/22 65/16 65/23 66/11 66/19 68/20 68/25 69/5 71/8 71/18 73/19 75/12 75/16 75/24 78/4 80/17 82/12 83/4 86/5 86/16 86/17 88/5 89/5 89/21 94/16 97/2 97/20 101/1 101/5 104/17 105/8 105/21
**allegations [2]** 93/25 94/1
**alleging [1]** 13/8
**Allen [1]** 65/13
**Alliance [1]** 34/12
**allotted [3]** 24/25 76/20 86/10
**allow [4]** 8/12 71/7 71/7 91/17
**allowed [2]** 71/21 84/16
**allowing [1]** 85/23
**allows [2]** 74/21 74/22
**Ally [1]** 4/11
**Allyson [1]** 1/13
**almost [2]** 37/3 103/8
**along [3]** 10/7 61/16 61/16
**already [17]** 6/21 21/4 21/22 26/25 31/4 39/17 44/13 47/20 47/21 66/19 66/23 75/25 89/11 92/3 92/7 97/1 97/8
**also [42]** 4/9 9/2 10/5 11/1 11/22 12/19 13/7 14/10 15/24 16/15 17/4 18/19 22/10 24/16 26/10 30/4 31/23 32/4 33/12 33/15 35/4 38/16 42/19 43/14 59/12 62/15 62/15 68/18 72/23 74/15 76/17 79/19 82/14 89/8 90/5 90/17 93/2 98/3 99/24 103/15 104/11 107/15
**alternative [1]** 65/8
**alters [1]** 41/13
**although [7]** 6/8 33/15 44/17 44/21 48/16 84/23 95/10
**am [17]** 8/11 10/5 12/1 13/17

## A


**am... [13]** 28/18 31/2 44/2 45/9 45/17 51/25 52/11 53/12 68/5 83/2 87/19 107/1 107/7
**amend [1]** 85/25
**amended [3]** 42/13 53/4 85/22
**amendment [1]** 75/10
**amendments [1]** 40/16
**AMERICAN [2]** 1/16 2/6
**AMICA [2]** 1/3 4/3
**amicus [4]** 58/25 91/1 104/13 105/15
**among [2]** 65/15 71/19
**amount [8]** 8/10 13/16 13/22 15/17 35/25 55/25 77/11 95/5
**analogous [2]** 19/7 19/11
**analysis [6]** 40/6 46/17 60/1 60/22 78/12 98/19
**analyze [1]** 105/16
**animating [1]** 77/3
**announces [1]** 85/20
**another [13]** 19/13 19/15 19/16 58/17 59/13 63/14 65/1 66/5 74/6 87/10 90/14 90/15 104/25
**answer [6]** 37/13 37/14 40/14 45/19 82/19 83/15
**answering [1]** 52/14
**answers [1]** 89/15
**antecedent [1]** 46/23
**anticipate [1]** 10/17
**any [67]** 7/14 7/18 10/21 12/19 13/10 13/10 13/15 14/1 15/15 17/19 27/10 27/23 28/18 30/21 30/22 37/5 38/7 41/18 42/6 42/6 42/25 48/19 48/24 49/1 50/12 51/15 51/24 53/2 55/13 55/14 55/15 55/17 56/13 59/6 60/9 60/16 61/2 62/3 62/14 63/6 71/1 73/19 77/22 80/15 80/16 83/6 86/15 91/12 91/24 92/15 92/19 94/3 94/18 98/16 101/20 101/24 103/19 104/20 105/7 105/19 106/21 107/14 107/14 107/16 107/20 107/22 108/12
**anymore [1]** 84/12
**anyone [7]** 4/19 20/22 27/10 44/25 56/5 62/18 96/20
**anything [17]** 9/24 18/2 40/20 56/13 62/18 63/6 81/6 91/19 91/25 92/25 97/5 100/20 101/1 103/2 106/25 107/25 108/3
**anyway [2]** 35/16 54/23
**APA [5]** 71/7 72/13 73/5 73/9 103/10
**Apologies [1]** 11/25
**apologize [4]** 36/17 49/14 66/9 74/2
**apparent [1]** 29/18
**appeal [132]**
**Appeal's [1]** 20/11
**appealable [1]** 74/1
**appealed [1]** 74/14
**appeals [91]** 7/25 8/1 8/3 8/5 8/24 10/4 10/13 10/13 10/18 10/25 11/2 11/5 11/7 11/9 11/9 11/11 11/15 11/17 11/20 11/23 12/4 14/4 16/7 17/25 19/8 19/25 20/11 20/17 23/21 24/14 26/9 34/6 35/15 36/12 36/24 37/5 38/5 42/14 42/16 42/21 43/9 43/17 57/10 57/11 58/12 59/9 63/18 63/22 64/12 64/12 64/15 65/2 65/10 65/22 67/13 69/12 70/13 70/22 77/13 79/13 80/3 80/15 81/5 82/2 82/6 83/6 83/11 85/3 85/5 85/7 85/12 85/23 86/3 86/16 87/6 87/9 88/9 88/24 90/8 90/16 93/10 93/12 93/14 93/22 97/12 97/21 99/2 99/4 99/25 100/2 100/5
**appear [4]** 58/11 58/23 74/23 101/23
**appearance [1]** 24/13
**APPEARANCES [3]** 1/12 1/23 2/1
**appeared [1]** 37/7
**appears [4]** 39/16 51/14 51/17 59/2
**appellant [2]** 69/16 74/13
**appellate [12]** 11/6 11/13 11/14 11/18 15/25 16/16 19/22 22/12 26/16 48/18 86/20 105/17
**applied [1]** 51/10
**applies [3]** 49/20 49/21 61/11
**apply [4]** 57/2 68/6 73/23 83/10
**applying [1]** 51/3
**appreciate [5]** 66/8 68/23 93/1 101/1 101/8
**approach [1]** 4/5
**appropriate [2]** 77/9 107/23
**appropriately [1]** 97/14
**approximately [2]** 8/21 69/11
**April [2]** 27/4 54/13
**April 8th [2]** 27/4 54/13
**arbitrary [11]** 55/7 59/23 60/1 64/18 65/24 71/1 87/20 87/20 96/13 98/19 100/23
**are [226]**
**area [1]** 36/17
**aren't [2]** 44/5 72/15
**argue [4]** 42/17 53/15 76/13 82/2
**arguing [3]** 38/19 76/10 96/20
**argument [39]** 5/14 18/20 20/4 20/6 27/17 28/20 37/19 39/21 39/21 39/22 39/23 39/23 40/2 41/4 41/16 44/2 44/3 47/17 50/10 50/12 50/18 50/24 51/15 52/2 54/18 55/24 56/17 59/21 59/24 62/25 67/22 67/25 68/4 80/18 87/5 96/1 98/1 98/3 100/7
**arguments [31]** 18/23 19/4 19/5 34/13 38/14 41/17 46/13 55/8 57/7 59/11 66/2 66/12 69/9 73/8 84/21 84/22 84/25 85/11 87/20 88/14 93/6 93/16 93/23 94/21 94/24 97/18 97/24 100/9 100/11 100/23 101/20
**arise [3]** 17/5 17/6 40/15
**Arizona [2]** 7/22 10/14
**around [2]** 38/19 70/14
**Article [1]** 98/15
**articulation [1]** 86/23
**as [168]**
**as-needed [1]** 82/13
**aside [3]** 47/3 48/19 65/24
**ask [13]** 6/1 7/16 12/1 12/19 13/9 23/22 32/20 69/15 79/8 79/10 90/25 91/6 108/9
**asked [2]** 58/9 107/21
**asking [5]** 7/13 25/4 53/10 53/18 83/17
**aspects [3]** 20/4 29/9 76/11
**assess [1]** 24/10
**assign [2]** 48/16 91/13
**assigned [1]** 47/23
**Assistant [2]** 2/11 5/3
**associated [1]** 16/14
**associational [1]** 94/17
**assumes [1]** 52/23
**assuming [3]** 6/21 21/19 55/1
**assure [1]** 50/22
**asylum [5]** 62/5 63/5 102/11 102/11 102/15
**attached [1]** 63/20
**attempted [1]** 13/11
**attendant [1]** 29/14
**attention [2]** 15/8 31/15
**attested [1]** 65/17
**attests [1]** 31/12
**attorney [24]** 2/11 5/4 15/22 22/19 34/19 34/25 43/10 43/15 43/16 48/6 48/9 48/12 48/17 48/17 48/19 49/4 55/15 55/16 55/21 55/22 86/5 87/11 91/13 97/15
**attorney-client [2]** 34/19 34/25
**attorneys [13]** 11/6 11/8 11/10 11/13 11/14 11/18 15/25 32/2 49/3 103/20 103/22 103/24 104/4
**audio [13]** 20/1 21/16 21/21 22/1 22/2 22/24 23/5 23/8 24/7 24/9 25/14 74/23 89/7
**audit [1]** 65/13
**authority [2]** 48/18 55/10
**authorized [1]** 83/14
**authorizes [1]** 44/20
**automatic [1]** 61/19
**automatically [3]** 45/17 57/15 61/11
**available [9]** 5/21 20/3 20/10 21/23 33/10 48/2 58/21 63/19 107/4
**Ave [1]** 2/12
**Avenue [1]** 2/16
**avoid [2]** 23/16 107/22
**aware [1]** 50/9
**away [5]** 29/25 38/16 47/16 49/8 50/4
**awful [1]** 28/8


## B


**back [24]** 22/13 39/14 40/12 50/17 53/25 54/10 54/13 54/17 56/12 65/23 69/1 72/12 74/11 74/20 75/16 84/4 87/12 87/15 95/6 95/21 101/14

**B**

**back... [3]** 101/22 105/13 105/21
**backlog [9]** 49/17 70/10 70/10 70/17 77/8 77/10 77/15 87/6 98/22
**backwards [1]** 22/7
**bad [1]** 103/9
**baked [1]** 47/15
**banc [10]** 57/16 91/16 99/7 99/22 102/8 102/21 102/23 103/4 104/16 105/5
**bancs [1]** 99/19
**Bankruptcy [1]** 2/15
**based [10]** 8/16 10/20 28/5 52/22 80/12 80/17 82/3 82/6 83/16 103/3
**basic [3]** 18/21 19/2 24/4
**basically [2]** 37/2 86/13
**basis [10]** 44/3 46/9 49/5 69/8 82/2 82/13 95/17 96/3 96/8 98/21
**Bay [1]** 50/21
**be [150]**
**bearing [1]** 67/18
**because [75]** 15/2 15/16 15/17 15/20 16/1 16/8 17/4 17/16 18/24 19/25 20/2 20/11 20/18 21/7 22/19 22/24 25/18 30/5 31/15 34/24 36/3 36/8 36/19 37/17 38/15 45/25 49/2 49/16 49/20 50/1 50/15 50/24 51/4 52/14 56/12 56/15 57/12 57/14 59/8 60/11 62/15 64/14 67/19 68/7 68/17 70/9 73/10 73/22 73/25 74/2 76/10 78/4 79/9 79/16 80/8 80/20 82/3 82/23 83/15 87/25 89/8 97/8 99/5 99/22 100/5 100/20 101/25 103/14 104/3 105/8 105/18 105/19 107/24 108/2 108/7
**Becker [14]** 2/10 3/4 5/3 6/5 35/12 35/18 36/16 37/6 37/11 38/10 66/4 66/6 69/5 108/13
**Becker's [1]** 37/13
**become [3]** 17/5 26/13 32/13
**becomes [4]** 80/5 82/16 85/7 97/5
**becoming [1]** 15/23
**bed [1]** 55/24
**been [13]** 47/11 49/7 50/10 50/11 60/17 78/8 88/25 89/11 89/13 90/1 98/4 99/5 103/15
**befall [2]** 29/8 103/21
**before [89]** 1/10 8/14 8/15 9/7 10/11 10/12 10/23 10/23 11/5 11/6 11/8 11/10 11/19 11/22 11/23 11/23 12/5 12/17 13/25 14/9 14/10 14/12 14/12 14/13 15/11 16/2 17/17 17/24 18/5 20/19 20/20 21/1 21/7 23/3 23/4 23/19 23/20 24/9 24/13 26/7 29/10 30/11 30/12 31/2 32/13 32/18 32/24 33/18 34/10 34/11 35/14 38/9 40/9 40/9 42/12 42/25 43/10 43/11 52/19 55/12 55/14 55/15 56/5 56/13 57/6 58/1 58/11 60/19 62/11 62/18 64/7 64/15 65/20 79/19 79/24 81/2 81/6 83/25 84/17 90/24 91/16 91/24 93/13 93/20 95/5 95/11 100/14 101/23 105/10
**beforehand [1]** 105/21
**beginning [1]** 13/23
**begun [1]** 9/25
**behalf [15]** 4/8 4/11 4/15 4/18 4/22 5/5 5/21 27/21 33/1 36/5 56/3 59/1 94/17 94/18 94/19
**being [7]** 16/4 17/3 17/11 26/8 84/17 102/2 104/12
**belabor [2]** 39/19 67/9
**believe [13]** 6/23 7/8 12/24 17/15 29/13 53/8 67/6 70/14 75/13 75/20 92/24 98/15 105/3
**below [6]** 22/22 23/3 23/20 34/7 38/1 38/4
**benefits [1]** 61/4
**best [9]** 9/4 21/8 21/8 22/18 22/20 25/12 28/15 29/1 108/25
**best-case [4]** 21/8 21/8 22/18 22/20
**bestow [1]** 29/21
**better [2]** 54/5 90/23
**between [7]** 8/13 40/2 58/7 67/10 77/21 77/25 77/25
**beyond [6]** 7/19 7/19 11/7 91/4 100/24 102/11
**BIA [61]** 7/25 8/1 8/4 8/5 8/8 8/10 8/13 8/15 9/7 10/12 11/14 11/20 11/22 12/4 12/5 12/12 12/13 12/15 12/17 12/22 13/25 14/13 18/5 25/2 28/22 33/1 33/17 34/6 35/15 36/3 36/22 37/2 44/8 44/9 48/18 48/19 56/22 57/18 69/11 69/22 70/9 70/11 78/13 79/20 79/22 79/24 80/13 83/7 84/10 88/4 88/13 90/16 90/18 94/7 95/5 95/11 95/13 96/23 97/7 100/5 100/14
**BIA's [2]** 26/17 36/24
**bill [1]** 40/18
**bind [1]** 80/8
**bit [8]** 16/18 21/12 23/7 24/17 33/13 41/4 58/1 92/5
**blank [1]** 29/11
**block [1]** 39/21
**Blvd [1]** 2/4
**board [73]** 16/6 17/8 17/9 17/17 23/21 24/13 26/8 36/24 37/20 38/5 38/6 41/6 42/14 42/15 42/20 43/8 43/11 43/13 43/13 43/17 44/19 47/13 47/22 47/24 55/16 55/18 55/23 57/10 57/11 59/1 59/4 59/9 61/10 61/21 63/3 63/5 63/22 65/2 65/9 68/8 68/13 74/18 77/16 78/16 78/16 84/1 85/3 85/5 85/6 85/12 86/16 87/6 87/8 88/24 89/5 90/8 91/10 91/15 93/9 93/12 93/22 96/25 97/21 99/1 99/4 101/21 104/1 104/14 104/15 104/19 105/16 105/20 105/25
**board's [1]** 76/5
**bono [3]** 8/2 8/5 8/6 33/11 66/24
**Booz [1]** 65/13
**both [11]** 8/1 9/8 11/1 11/14 14/13 31/6 34/11 34/13 34/25 36/10 51/10
**box [5]** 1/14 1/20 18/17 18/19 18/20
**breach [1]** 104/8
**break [2]** 66/6 69/1
**brief [38]** 14/18 19/4 19/22 31/6 31/7 34/22 41/5 42/17 44/20 44/24 45/20 46/7 46/8 49/14 51/16 53/14 55/19 56/8 58/8 58/22 58/25 59/3 63/15 63/19 64/1 65/14 68/23 88/12 88/13 91/1 93/21 98/1 98/8 99/18 101/10 104/5 104/7 105/15
**briefing [16]** 17/19 18/19 19/5 19/19 44/11 44/13 44/22 47/18 48/23 49/10 71/13 71/18 71/20 74/5 91/18 103/18
**briefly [4]** 14/22 59/12 66/1 97/24
**briefs [9]** 43/3 44/19 46/6 57/22 64/19 67/9 100/25 105/18 105/25
**bring [3]** 86/1 92/14 94/17
**bringing [1]** 40/21
**brings [1]** 79/7
**Brooklyn [1]** 61/23
**brought [1]** 103/14
**Brown [1]** 34/1
**bucket [1]** 71/12
**buckets [2]** 70/23 71/9
**building [2]** 50/5 50/5
**bulk [1]** 29/22
**bundled [1]** 45/12
**burden [4]** 15/19 46/11 73/3 94/20
**burn [1]** 15/23
**burn-out [1]** 15/23
**business [7]** 29/16 32/3 60/12 106/9 106/15 106/15 106/16
**Byzantine [1]** 36/14

**C**

**C.F.R [2]** 61/12 102/24
**calculate [1]** 13/15
**calendar [1]** 91/9
**California [1]** 56/14
**call [4]** 5/19 20/22 45/13 79/21
**called [3]** 43/8 50/21 62/9
**calling [1]** 39/22
**came [3]** 23/16 51/12 94/8
**can [68]** 6/3 7/16 12/14 13/3 16/1 16/5 16/19 16/21 17/5 17/6 18/12 18/24 19/2 20/22 20/23 23/10 23/14 25/12 28/12 28/16 30/13 31/1 31/10 32/20 32/22 34/3 34/5 35/1 37/4 37/11 38/13 43/16 44/12 48/19 53/13 54/1 54/3 54/25 58/7 61/19 62/11 62/18 66/6 68/10 69/2 72/18 74/11 74/13

C

**can... [20]** 74/25 75/17 75/19 75/19 80/3 80/14 85/12 85/23 86/1 88/16 89/19 89/19 89/24 90/25 94/14 95/12 95/20 97/24 103/9 105/20
**can't [9]** 23/11 38/4 38/15 38/23 57/21 85/25 88/20 91/4 98/22
**cancel [1]** 66/23
**cannot [3]** 47/2 103/25 105/4
**capacity [1]** 15/18
**capricious [11]** 55/7 59/24 60/1 64/18 65/24 71/1 87/20 87/21 96/13 98/19 100/23
**careful [2]** 29/7 68/16
**carefully [1]** 95/22
**cares [1]** 71/10
**Carroll [1]** 4/14
**carve [1]** 49/24
**Casa [2]** 67/23 68/6
**case [119]**
**cases [89]** 8/6 8/10 8/15 8/18 8/24 9/7 9/8 12/12 12/17 12/20 12/22 13/1 13/4 13/22 13/23 13/25 14/1 14/10 14/10 14/12 14/13 16/2 19/20 20/12 28/23 32/24 33/17 34/10 35/14 36/3 37/22 38/11 38/17 39/1 40/8 40/14 40/14 40/15 40/20 41/11 43/10 44/14 44/15 44/21 45/15 47/13 47/19 48/10 49/8 49/12 49/16 49/18 49/21 50/11 50/21 50/22 51/10 55/19 55/25 57/12 59/5 61/21 61/23 62/11 62/13 65/6 66/14 67/9 69/16 69/17 69/21 70/17 70/21 79/3 80/1 86/23 87/6 87/11 88/24 89/9 90/8 90/11 93/10 94/7 94/13 97/16 102/11 102/12 106/18
**catch [1]** 22/8
**Catherine [1]** 4/14
**causes [1]** 74/19
**CD [1]** 22/3
**cease [1]** 59/9
**Cement [1]** 62/21
**CENTER [3]** 1/3 2/3 4/3
**Centro [1]** 65/14
**cert [6]** 78/25 79/6 81/12 88/12 88/13 93/21
**cert-petition-like [1]** 93/21
**certain [3]** 13/21 100/6 102/11
**certainly [8]** 12/11 12/16 33/23 37/12 44/22 52/13 73/23 84/9
**certify [1]** 109/8
**chair [6]** 47/24 47/24 48/12 48/12 49/15 49/15
**challenge [4]** 40/22 45/6 45/7 76/2
**challenging [2]** 35/25 59/19
**chambers [1]** 75/17
**chance [7]** 26/7 36/1 46/8 66/11 90/25 93/2 107/12
**change [13]** 47/12 47/12 47/21 47/24 62/24 74/11 76/18 84/7 86/2 87/9 90/10 94/22 106/18
**changed [3]** 18/11 56/10 62/23
**changes [7]** 18/12 25/9 37/22 60/24 70/9 84/17 98/4
**changing [6]** 45/5 57/1 75/25 77/5 83/22 87/1
**check [1]** 24/17
**Chicago [1]** 2/5
**child [1]** 49/4
**children's [1]** 14/25
**China [1]** 89/3
**choice [1]** 34/23
**choose [2]** 58/6 88/16
**choosing [1]** 93/20
**chosen [1]** 43/15
**CIO [9]** 41/13 44/2 45/11 46/3 46/17 49/25 71/14 73/8 76/22
**circuit [32]** 10/12 10/23 10/24 11/7 11/12 14/5 16/10 17/25 40/8 41/12 45/11 50/20 51/13 51/19 56/12 56/24 65/21 67/12 67/13 67/18 67/19 68/2 71/14 76/20 78/23 79/15 82/13 85/20 85/21 85/22 85/25 86/22
**circuit-dependent [1]** 79/15
**circuits [7]** 79/17 80/21 80/21 81/10 81/20 82/24 83/24
**circumstance [2]** 49/10 102/1
**circumstances [8]** 48/24 49/2 53/2 72/17 82/7 102/9 103/19 104/18
**citation [4]** 20/6 33/24 75/18 101/6
**citations [1]** 34/21
**cite [15]** 41/13 43/9 46/18 51/5 55/19 56/1 56/8 56/20 62/21 63/19 65/14 67/9 68/1 85/4 93/24
**cited [3]** 31/6 56/25 58/22
**cites [4]** 31/5 31/14 49/2 51/2
**civil [4]** 1/4 2/12 4/2 5/4
**claim [6]** 30/19 39/22 53/7 80/18 96/9 104/3
**claims [12]** 32/7 36/2 36/13 38/23 42/24 61/8 62/5 62/6 62/6 72/13 96/14 105/10
**clarification [1]** 7/16
**clarified [1]** 40/10
**clarify [6]** 11/3 33/15 35/18 37/11 41/25 69/10
**clarifying [2]** 12/1 101/16
**clarity [1]** 22/18
**clear [9]** 16/7 20/15 41/21 41/24 42/3 43/7 51/4 80/7 97/2
**clearly [8]** 43/19 45/5 57/11 59/7 71/13 71/21 74/4 74/15
**clerk's [2]** 69/7 91/11
**client [14]** 15/10 21/10 21/11 21/14 21/20 22/10 34/19 34/25 78/9 78/10 79/4 79/4 88/22 92/6
**client's [1]** 29/16
**clients [21]** 16/1 17/2 17/13 22/11 28/15 28/16 30/2 30/6 34/18 36/5 60/10 66/15 66/21 68/11 68/11 68/13 68/17 68/18 88/20 93/13 104/2
**clients' [1]** 103/25
**clinic [1]** 66/18
**closely [1]** 62/25
**closely-related [1]** 62/25
**Cloud [1]** 5/11
**co [1]** 59/15
**co-extensively [1]** 59/15
**cocounsel [1]** 4/9
**cognizant [1]** 55/2
**cohesive [1]** 47/5
**cohort [1]** 15/23
**colleagues [1]** 78/21
**colloquy [1]** 29/17
**COLUMBIA [1]** 1/1
**come [8]** 16/24 28/9 46/4 65/5 69/1 89/4 93/6 101/22
**comes [3]** 15/8 51/11 96/14
**coming [1]** 102/16
**comment [36]** 27/3 27/3 30/19 40/24 41/23 45/10 50/13 50/25 51/23 52/23 53/7 54/1 54/3 54/7 54/16 54/17 55/5 56/11 60/11 60/14 63/18 63/21 71/22 72/3 73/7 77/4 84/6 84/16 84/18 87/17 89/14 89/23 90/1 90/19 103/7 103/10
**comments [17]** 26/24 27/2 27/5 27/8 52/8 52/10 54/4 60/15 60/19 60/20 89/18 89/19 89/21 89/22 90/1 90/2 90/20
**commissioned [1]** 65/12
**commit [1]** 88/17
**commitments [1]** 34/25
**common [1]** 21/17
**communicate [1]** 91/15
**communication [1]** 23/25
**compare [1]** 18/8
**compared [1]** 29/24
**competently [2]** 15/10 19/24
**complaining [1]** 100/16
**complete [1]** 57/25
**completely [2]** 32/2 38/10
**complexity [1]** 74/19
**composition [1]** 38/21
**comprehensive [1]** 13/4
**concede [4]** 46/18 64/6 69/12 97/8
**conceded [2]** 29/2 39/16
**conceived [1]** 26/13
**concern [2]** 63/12 63/12
**concerned [2]** 13/13 15/22
**concerns [3]** 14/8 15/3 17/5
**conclude [5]** 44/12 52/2 52/6 72/4 73/12
**concluded [1]** 109/2
**conclusory [1]** 93/25
**confer [2]** 21/11 21/14
**confess [1]** 107/19
**confirm [2]** 34/4 34/5
**conflict [1]** 55/10
**conflicts [2]** 24/17 57/11
**confusingly [1]** 50/21
**congress [4]** 42/13 43/8 43/12 48/16

**C**

**consent [1]** 24/6
**consider [25]** 22/23 31/21 39/3 59/5 59/14 59/21 60/2 60/5 62/3 72/22 73/5 78/15 82/17 82/25 82/25 84/21 84/22 89/19 91/17 98/7 99/24 100/6 100/10 100/17 100/21
**consideration [2]** 14/7 54/4
**considerations [1]** 92/12
**considered [4]** 14/1 14/5 64/4 89/21
**considering [11]** 23/4 30/19 69/7 71/4 71/5 72/7 76/12 84/24 90/2 94/11 100/3
**considers [1]** 101/5
**constitute [1]** 14/13
**constitutes [1]** 109/9
**Constitution [1]** 2/16
**constitutional [1]** 86/25
**construction [1]** 51/19
**contact [1]** 23/22
**contained [2]** 50/1 50/2
**contemporaneous [1]** 62/24
**contents [2]** 3/1 5/22
**contest [1]** 94/15
**context [5]** 39/18 68/7 70/2 85/14 102/11
**contingent [1]** 106/9
**continue [1]** 72/3
**CONTINUED [2]** 1/23 2/1
**contract [3]** 13/20 14/3 14/8
**contractor [1]** 13/21
**contractual [2]** 34/20 35/1
**contrary [3]** 51/18 96/14 102/9
**control [3]** 56/15 56/18 56/19
**controlling [1]** 67/12
**convenience [1]** 41/6
**Conveniently [1]** 53/25
**convention [1]** 62/6
**conversation [2]** 101/17 102/22
**convince [3]** 46/12 78/25 82/5
**convinced [4]** 45/17 52/1 52/1 107/7
**Coop [1]** 34/1
**copy [3]** 21/15 21/25 25/19
**copying [1]** 75/17
**core [4]** 29/16 30/2 60/12 66/24
**corners [1]** 37/24
**corollary [1]** 15/15
**correct [20]** 7/6 8/3 8/17 8/17 13/1 35/5 49/14 49/23 51/10 57/19 65/19 70/18 74/12 82/22 92/4 95/20 98/8 98/12 102/21 109/9
**corresponds [1]** 74/7
**cost [2]** 26/14 28/22
**costs [2]** 47/6 63/5
**could [28]** 11/2 14/22 23/24 24/12 28/24 33/15 37/5 39/5 41/8 43/11 46/21 47/3 48/1 49/25 69/24 72/22 73/17 73/20 80/15 85/11 89/2 90/23 90/23 93/5 95/3 97/11 97/12 101/24
**couldn't [1]** 37/9
**COUNCIL [2]** 1/16 2/6
**counsel [43]** 4/5 4/6 5/3 6/24 7/2 8/2 8/6 8/8 10/16 15/10 15/14 15/21 24/22 28/2 31/16 31/16 31/17 31/18 33/12 37/7 42/5 42/7 43/19 55/11 55/13 56/1 56/1 56/2 56/20 60/3 60/25 74/23 75/18 88/9 96/15 96/19 100/11 101/18 103/6 103/17 105/2 105/3 108/16
**counsel's [1]** 69/9
**counseled [2]** 32/10 32/13
**counseling [1]** 8/7
**counsels' [1]** 60/3
**count [2]** 14/10 95/17
**countries [1]** 50/17
**country [3]** 39/25 62/18 77/23
**couple [10]** 10/20 12/20 12/24 18/3 37/15 37/17 45/7 46/13 72/22 97/25
**courier [1]** 26/11
**course [14]** 5/13 11/20 33/2 43/22 48/8 48/12 54/20 55/1 58/13 58/17 60/9 84/17 102/16 106/21
**court [114]**
**Court's [2]** 31/15 34/11
**courthouse [1]** 61/13
**courtroom [1]** 101/14
**courts [12]** 2/15 32/13 36/12 38/11 38/13 38/20 46/17 76/18 86/3 87/13 87/18 99/25
**covered [1]** 106/17
**create [5]** 7/18 16/13 17/22 70/19 81/12
**created [1]** 7/14
**creates [2]** 15/19 62/23
**credibility [1]** 58/19
**crisis [1]** 66/25
**cross [5]** 3/4 5/25 6/3 6/18 37/2
**Cross-examination [2]** 3/4 6/18
**crossed [1]** 23/15
**curious [1]** 64/19
**current [6]** 10/19 16/4 28/15 31/16 79/16 92/6
**currently [9]** 12/5 15/25 28/24 71/19 74/10 77/13 88/3 98/6 100/4
**cut [1]** 74/2
**cuts [3]** 22/24 23/5 23/8

**D**

**D.C [15]** 40/7 41/12 45/11 51/12 51/19 67/13 68/2 71/14 76/19 78/23 85/19 85/21 85/22 85/24 86/22
**data [9]** 8/12 9/5 63/14 63/15 63/20 64/2 64/3 64/4 64/6
**date [3]** 13/12 49/22 52/19
**Dated [1]** 109/15
**day [24]** 15/11 21/5 23/23 23/24 24/18 26/5 26/12 37/19 37/20 47/12 49/17 56/3 56/16 60/23 70/11 71/13 71/17 71/19 74/5 78/22 79/11 87/23 104/16 109/15
**days [29]** 15/18 22/2 24/9 28/4 32/6 47/19 47/25 48/3 48/5 56/7 56/10 56/10 56/13 56/23 56/23 57/1 57/14 76/17 76/17 77/21 78/1 78/5 78/9 78/24 91/9 92/7 92/7 105/24 106/1
**DC [7]** 1/5 1/15 1/18 1/21 2/8 2/13 2/17
**deadline [11]** 26/12 27/3 49/17 56/10 60/23 71/14 71/15 71/17 77/5 90/1 96/17
**deadlines [4]** 47/18 49/11 76/19 104/16
**deadly [1]** 49/5
**deal [3]** 7/24 93/16 98/22
**deals [1]** 74/9
**death [4]** 58/2 62/4 64/5 103/24
**debate [1]** 83/13
**decades [1]** 106/10
**decide [14]** 16/11 24/11 29/6 47/25 49/16 54/21 71/25 77/17 78/16 90/18 91/16 97/16 105/22 106/4
**decided [4]** 44/9 77/14 88/25 89/11
**decides [2]** 52/8 58/12
**deciding [4]** 47/19 49/12 62/16 93/21
**decision [42]** 16/3 18/16 18/17 21/10 21/13 21/16 21/16 23/23 24/25 25/3 25/15 25/16 25/16 25/17 25/18 25/21 30/15 34/11 37/1 37/2 38/1 38/4 39/6 48/19 51/3 64/5 65/18 67/13 78/7 78/23 80/5 80/6 82/16 82/16 82/18 86/16 89/4 91/15 101/19 101/24 101/25 106/1
**decisions [4]** 63/4 63/5 65/16 69/22
**deck [1]** 16/19
**declarants [10]** 28/21 29/23 30/24 35/9 39/7 49/13 57/5 65/17 106/21 107/13
**declaration [28]** 5/22 6/2 6/25 7/13 7/19 7/24 8/9 8/17 12/14 13/1 13/11 14/21 20/15 22/13 25/25 26/22 28/11 30/22 31/5 32/5 33/3 34/1 34/2 61/16 61/22 94/6 107/15 107/17
**declarations [18]** 27/25 28/7 29/7 30/5 30/8 30/14 30/17 30/25 31/3 32/23 34/16 35/6 35/11 57/5 58/3 66/20 93/11 102/24
**deep [1]** 63/12
**default [1]** 57/15
**defend [1]** 89/24
**Defendant [1]** 2/10
**defendants [2]** 1/8 57/22
**defendants' [1]** 7/4
**Defenders [1]** 61/23
**defending [2]** 29/1 54/17
**defense [1]** 60/8

**D**


**deficiencies [1]** 78/7
**definite [1]** 80/20
**definitions [1]** 85/8
**degree [1]** 77/2
**deigns [1]** 104/15
**delays [1]** 26/16
**deliberate [1]** 91/17
**deliverables [1]** 67/2
**demand [1]** 16/13
**DEMOCRACY [4]** 1/14 1/20 4/8 4/15
**demonstrate [1]** 106/22
**demonstrating [1]** 94/3
**denial [2]** 80/2 80/2
**denied [4]** 107/2 107/23 108/5 108/6
**deny [3]** 63/4 72/25 73/2
**department [21]** 2/11 5/4 62/10 80/9 80/11 81/4 81/16 82/20 83/3 83/13 84/2 84/13 85/11 90/19 90/22 92/9 98/5 100/15 100/17 100/20 104/23
**Department's [4]** 80/22 82/8 98/15 100/16
**dependent [1]** 79/15
**depending [4]** 6/9 38/20 51/17 82/13
**depends [1]** 50/3
**deportation [1]** 97/23
**depth [2]** 9/17 86/20
**derive [1]** 64/2
**describe [4]** 14/21 14/22 20/23 23/18
**described [3]** 52/20 91/23 91/25
**describes [1]** 91/7
**describing [2]** 22/16 92/2
**designed [1]** 39/11
**desire [1]** 17/15
**desired [1]** 94/23
**desking [1]** 40/16
**desperate [1]** 17/5
**desperation [2]** 16/22 16/23
**despite [1]** 28/24
**detail [6]** 25/25 27/25 29/8 30/9 39/7 78/12
**detained [18]** 7/22 15/15 21/18 25/20 26/1 28/3 31/23 33/10 44/14 44/15 56/6 56/18 57/3 71/19 92/3 92/10 100/12 100/12
**detention [5]** 16/24 17/6 24/2 26/4 60/8
**determination [12]** 42/17 57/9 57/13 76/15 85/6 86/17 97/4 97/4 97/6 97/21 97/22 102/17
**determinative [1]** 45/16
**determine [3]** 42/18 102/25 103/2
**developed [1]** 46/10
**DHS [1]** 85/14
**did [26]** 6/24 7/8 7/18 7/20 9/4 10/20 13/2 13/3 13/15 23/3 23/19 27/3 33/16 33/16 39/2 45/11 46/7 48/16 50/24 69/17 70/15 92/5 94/6 99/14 100/21 107/3
**didn't [23]** 17/17 22/22 38/2 38/3 38/5 38/22 38/23 40/19 45/25 46/1 46/2 46/6 53/17 60/5 62/3 63/25 65/3 73/6 79/22 94/16 98/7 101/24 101/24
**dies [1]** 49/4
**difference [2]** 77/21 81/25
**different [30]** 11/15 16/18 17/22 33/14 34/14 36/17 36/19 36/20 38/7 42/3 50/21 50/22 51/16 59/20 70/3 70/4 72/22 73/9 73/25 76/11 80/23 81/22 81/23 83/1 84/20 85/16 85/18 86/4 92/2 101/6
**differently [3]** 28/6 44/4 82/25
**difficult [5]** 9/5 15/15 18/24 27/25 32/5
**difficulty [2]** 15/7 106/2
**digital [1]** 56/13
**direct [10]** 6/3 6/22 7/23 31/4 32/25 37/3 37/5 55/10 80/16 107/3
**directing [1]** 63/3
**direction [2]** 40/8 62/9
**directly [4]** 8/5 8/15 22/1 105/8
**director [1]** 14/23
**disagree [3]** 16/2 91/8 92/15
**disagreement [1]** 91/25
**disaster [1]** 103/20
**discovery [1]** 107/8
**discrete [2]** 49/25 50/1
**discretion [6]** 43/6 86/5 87/11 90/17 90/18 97/16
**discretionary [11]** 76/6 79/2 83/23 84/10 84/11 85/24 90/11 96/17 102/4 102/7 102/20
**discuss [2]** 6/7 93/11
**discussed [6]** 5/24 29/10 48/23 53/14 55/5 66/19
**discusses [3]** 32/1 33/8 33/10
**discussing [2]** 47/11 49/8
**discussion [8]** 32/23 33/6 33/9 39/8 61/21 64/17 65/7 89/12
**dismiss [2]** 37/22 63/5
**dismissal [2]** 38/7 101/19
**dismissals [2]** 65/6 97/8
**dismissed [3]** 57/15 57/17 62/16
**dismisses [5]** 36/3 36/22 61/10 80/14 83/7
**dismissing [3]** 37/25 62/10 62/17
**dispute [3]** 27/24 34/9 62/8
**disputed [1]** 59/3
**disputing [2]** 37/21 46/25
**disregard [1]** 28/21
**distinction [2]** 11/16 11/16
**DISTRICT [5]** 1/1 1/1 1/11 2/15 50/22
**division [2]** 2/12 5/4
**divisions [1]** 99/23
**do [100]** 5/19 5/25 6/3 6/15 8/4 8/8 8/21 9/2 9/10 10/12 10/14 10/21 10/21 11/4 11/20 12/11 13/16 14/10 15/5 18/8 18/22 19/2 19/22 20/8 21/21 21/25 22/10 24/4 24/14 24/17 24/19 26/1 28/14 30/11 30/23 31/2 32/3 33/21 34/22 34/25 35/2 38/21 39/20 41/9 43/1 43/15 44/3 45/3 45/13 46/24 49/19 50/1 51/7 52/3 52/3 52/8 53/1 53/20 53/24 54/12 54/13 54/17 55/4 56/9 62/18 64/12 65/4 67/3 68/12 70/6 73/12 74/15 75/14 75/19 78/17 79/4 82/12 85/12 85/14 90/8 90/18 93/3 93/10 93/20 95/14 96/19 96/21 97/18 99/14 100/7 103/11 104/10 105/20 105/22 106/3 106/15 106/15 106/16 108/16 108/24
**docket [2]** 7/4 91/12
**dockets [1]** 21/18
**document [2]** 58/2 88/16
**documents [1]** 7/18
**does [39]** 8/1 8/12 11/1 18/6 27/24 32/7 32/17 33/11 33/17 33/23 36/23 37/18 38/16 42/16 46/23 57/16 59/14 62/7 65/18 65/20 66/14 66/15 68/2 68/6 70/8 70/9 71/7 71/7 73/8 77/10 84/7 84/20 87/2 97/7 98/18 99/24 100/6 104/9 108/1
**doesn't [27]** 13/1 31/20 36/2 43/23 46/18 48/5 49/9 51/12 54/16 55/20 57/2 60/16 61/6 61/8 61/14 62/20 64/14 67/20 73/2 74/16 78/1 82/20 86/25 101/20 101/23 105/4 105/7
**doing [12]** 10/22 21/19 22/9 34/23 34/24 45/24 58/4 62/12 63/6 63/21 67/12 107/13
**dollar [1]** 13/16
**don't [85]** 4/20 9/13 15/14 15/21 18/1 26/15 26/18 27/23 29/5 31/22 31/23 33/24 35/4 35/10 37/10 38/24 39/19 39/25 40/20 41/3 43/1 43/16 44/4 44/23 44/25 45/6 45/7 50/7 51/15 53/14 53/14 54/5 54/6 54/6 55/21 55/22 56/8 57/17 66/4 69/1 69/14 71/4 71/17 72/4 75/21 76/1 76/2 76/3 76/10 78/21 80/19 82/18 82/23 83/12 83/15 83/18 84/11 84/19 86/14 86/18 88/17 89/16 89/16 91/8 92/14 92/18 92/24 94/14 94/14 95/14 96/19 97/5 97/19 97/25 98/5 98/24 99/20 100/19 100/22 101/12 105/17 106/4 107/7 108/3 108/4
**done [13]** 14/1 15/17 18/14 29/16 52/10 56/11 58/4 64/22 85/17 85/21 95/16 103/12 107/22
**dot [3]** 42/6 42/6 42/6
**doubt [3]** 104/2 107/14 107/16
**down [5]** 58/12 65/23 77/5 93/7 96/14
**dozens [3]** 8/15 8/19 104/22

**D**

**draconian [1]** 28/4
**due [9]** 26/7 45/2 56/15 59/12 59/15 59/21 97/25 98/1 104/5
**during [5]** 8/25 63/18 79/11 91/9 94/9
**duty [2]** 59/6 104/8

**E**

**E-26 [1]** 91/12
**E-27 [1]** 24/12
**e-file [2]** 22/19 24/22
**e-filing [1]** 26/1
**E.B [1]** 51/3
**each [2]** 30/1 32/8
**earlier [7]** 17/7 24/8 31/17 58/10 59/16 61/20 99/11
**early [1]** 10/6
**easier [1]** 74/22
**easily [3]** 8/13 13/3 18/14
**East [1]** 50/21
**easy [2]** 67/11 89/10
**ECAS [3]** 21/24 33/9 74/22
**effect [6]** 10/1 28/9 34/22 68/7 93/19 94/3
**effective [6]** 13/12 49/22 52/19 71/16 76/21 86/11
**efficiency [10]** 28/5 28/21 47/6 47/6 47/7 50/3 61/5 74/17 77/7 77/16
**efficiency-based [1]** 28/5
**efficient [6]** 47/11 47/14 49/10 49/18 54/12 65/16
**efficiently [1]** 47/10
**either [7]** 12/6 42/16 50/8 52/1 72/18 93/18 108/2
**El [1]** 65/14
**electronic [1]** 21/23
**elementary [1]** 51/18
**eliminate [1]** 43/17
**eliminating [1]** 75/14
**else [6]** 14/11 17/14 27/10 50/3 101/2 106/25
**email [2]** 75/17 75/17
**embodies [1]** 86/20
**employees [1]** 104/23
**en [11]** 57/16 91/16 99/7 99/19 99/22 102/8 102/21 102/23 103/4 104/16 105/5
**end [2]** 16/23 39/4
**ending [1]** 69/10
**engage [10]** 10/15 29/19 39/3 60/12 60/16 61/9 61/14 62/20 68/8 68/9
**engaging [2]** 9/22 62/8
**engraft [1]** 96/21
**enjoin [1]** 67/21
**enjoy [1]** 48/11
**enough [10]** 46/15 50/9 64/24 64/25 65/22 66/4 67/7 68/25 86/20 106/21
**ensure [2]** 28/15 58/4
**entails [1]** 18/15
**enter [5]** 15/11 24/12 52/4 72/1 72/17
**entered [1]** 24/21
**entering [1]** 73/11
**entire [7]** 36/4 47/9 48/14 76/13 88/12 93/21 102/7
**entirely [6]** 52/1 57/2 82/11 88/15 99/11 99/13
**entirety [3]** 47/5 52/24 53/2
**entities [1]** 54/3
**entitled [3]** 70/4 81/6 109/10
**entry [2]** 24/13 108/19
**environment [1]** 28/17
**envision [3]** 20/24 55/1 59/7
**EOIR [7]** 26/24 48/14 65/1 74/21 83/3 83/5 90/2
**EOIR's [1]** 36/25
**Epic [1]** 77/1
**equal [1]** 99/23
**equitable [2]** 67/23 83/9
**equities [2]** 55/7 82/3
**Erez [3]** 1/19 4/7 27/21
**error [1]** 20/7
**errors [2]** 20/4 91/12
**especially [7]** 39/6 39/12 56/17 62/24 93/23 97/20 99/8
**essential [4]** 66/16 66/22 69/24 89/14
**essentially [9]** 10/10 18/15 28/3 28/8 40/17 62/10 63/16 65/4 80/16
**established [1]** 89/2
**estimates [1]** 59/4
**estimations [2]** 96/5 96/6
**et [4]** 1/3 1/7 4/3 4/4
**ethically [1]** 28/16
**evaluating [1]** 52/10
**even [32]** 13/11 15/9 15/11 19/12 21/8 26/5 29/12 36/1 38/6 44/18 45/6 45/7 49/20 55/22 67/22 69/12 73/16 74/1 74/10 76/2 76/13 84/1 85/5 85/11 87/1 88/8 90/2 93/9 96/25 99/9 99/22 105/22
**ever [11]** 17/17 20/10 20/13 20/16 20/18 25/19 50/23 57/17 62/11 79/13 103/5
**every [14]** 12/11 37/18 46/25 50/24 59/4 59/5 61/12 62/2 81/12 83/9 86/21 86/23 95/17 102/14
**everybody [2]** 67/17 108/24
**everyone [4]** 41/24 66/11 84/1 101/14
**everyone's [1]** 55/2
**everything [9]** 19/1 26/18 29/6 50/3 50/3 52/17 54/21 67/1 106/16
**evidence [3]** 32/16 89/14 92/19
**evidently [1]** 106/2
**exact [3]** 8/22 57/4 63/16
**exactly [2]** 23/23 52/21
**exaggeration [1]** 38/25
**examination [4]** 3/4 3/5 6/18 14/19
**examine [2]** 107/12 108/8
**examined [1]** 107/4
**example [7]** 13/17 31/8 38/3 42/5 87/12 95/2 99/7
**exceeds [1]** 55/10
**except [1]** 68/11
**exception [8]** 70/24 71/7 72/5 76/23 84/5 84/15 86/22 87/21
**exclusive [1]** 59/6
**excuse [2]** 81/20 82/6
**excused [4]** 27/13 27/15 79/18 82/3
**EXECUTIVE [4]** 1/6 4/3 70/20 104/23
**exempt [1]** 50/25
**exhaust [3]** 38/23 82/3 83/22
**exhausted [1]** 43/2
**exhaustion [16]** 19/25 37/9 37/14 38/19 39/1 42/24 43/13 79/10 80/12 81/21 82/5 83/6 83/8 83/24 101/18 102/1
**exhibit [1]** 63/20
**exist [4]** 30/3 40/19 40/23 66/23
**existential [1]** 66/25
**existing [3]** 34/18 34/20 48/3
**exists [1]** 97/1
**expand [3]** 32/3 35/18 45/23
**expanding [1]** 65/9
**expansive [1]** 51/5
**expect [4]** 46/3 63/22 65/11 103/4
**expected [5]** 28/5 28/10 35/7 63/10 65/7
**expedited [2]** 46/9 69/8
**expenditure [1]** 29/15
**experience [10]** 7/20 7/22 7/25 22/6 30/24 64/22 98/19 103/4 104/18 104/24
**experienced [2]** 89/18 98/10
**experiencing [1]** 17/1
**expertise [1]** 64/23
**explain [7]** 20/6 25/24 26/19 47/7 58/8 78/7 104/14
**explained [2]** 32/4 91/22
**explaining [2]** 35/9 39/7
**explanation [6]** 61/2 63/11 64/1 65/3 75/7 100/16
**explicitly [1]** 40/4
**explored [1]** 107/11
**extend [1]** 27/3
**extended [2]** 54/1 90/2
**extension [3]** 48/1 49/5 104/18
**extensions [4]** 48/24 49/1 49/11 103/19
**extensive [4]** 10/12 27/25 29/20 30/9
**extensively [1]** 59/15
**extent [11]** 30/18 30/20 31/5 35/20 46/11 51/13 52/6 53/3 59/15 68/17 107/3
**external [1]** 8/6
**extraordinary [4]** 41/11 102/8 102/23 104/18

**F**

**F.3d [1]** 56/24
**F.4th [1]** 76/22
**F.R [1]** 56/21
**F.Supp [1]** 66/17
**faced [1]** 16/23
**facial [1]** 40/21
**facilities [1]** 26/4
**facility [1]** 26/17
**fact [20]** 12/4 28/24 31/21

## F


**fact... [17]** 32/17 33/16 36/11 45/14 47/2 49/12 50/25 56/7 56/9 61/20 69/18 69/25 79/10 96/15 107/10 107/12 108/7
**facts [3]** 61/9 93/24 96/2
**factual [3]** 92/19 107/11 107/13
**fail [2]** 39/12 79/11
**failed [4]** 59/21 100/17 101/22 107/24
**fails [1]** 64/11
**failure [6]** 52/23 60/2 80/17 82/2 100/10 108/5
**fair [4]** 16/20 46/15 55/25 68/25
**fairly [1]** 46/9
**faith [1]** 30/25
**fall [3]** 49/8 50/5 72/4
**familiar [2]** 50/10 66/13
**far [11]** 10/2 18/12 30/1 30/1 50/12 55/22 61/17 67/3 67/4 67/4 67/4
**farm [1]** 9/10
**fashion [1]** 78/18
**fast [3]** 8/23 56/4 96/7
**faster [4]** 35/16 36/9 36/12 70/22
**fatal [1]** 59/25
**faulty [1]** 64/6
**favor [2]** 53/6 93/13
**feasible [1]** 104/25
**federal [7]** 11/16 11/19 11/23 17/23 19/8 36/12 47/8
**federally [1]** 13/18
**fee [3]** 22/12 22/14 24/20
**feel [5]** 29/5 34/24 52/17 54/9 88/12
**fees [1]** 91/13
**felt [1]** 28/6
**few [3]** 47/4 55/9 101/16
**fewer [4]** 30/2 58/6 67/4 67/4
**fiduciary [3]** 88/19 103/21 104/8
**Fifth [1]** 67/18
**figure [5]** 70/13 78/10 83/2 89/10 90/22
**file [24]** 17/20 19/8 22/19 24/22 25/1 32/6 44/24 44/24 46/8 58/2 76/6 76/9 76/16 77/6 78/5 78/24 78/24 85/20 85/23 88/12 88/16 93/21 104/7 105/25
**filed [4]** 59/1 88/3 91/23 91/24
**filing [7]** 10/7 16/14 22/11 22/12 26/1 61/16 73/19
**fill [1]** 18/18
**final [29]** 9/18 9/21 9/23 18/9 18/16 20/9 20/25 21/9 42/15 52/5 54/3 72/10 72/17 73/12 73/15 73/16 73/19 80/5 82/16 82/17 83/3 85/8 89/25 89/25 90/21 90/24 97/5 97/10 97/22
**finally [1]** 16/17
**financial [2]** 96/2 96/8
**find [9]** 44/2 51/7 53/6 55/4 56/1 62/3 79/3 79/4 98/8
**finding [1]** 69/18
**finds [1]** 102/8
**fine [7]** 5/16 38/23 39/6 46/25 64/3 82/21 88/22
**Fingers [1]** 23/15
**finish [4]** 19/16 19/17 49/12 69/2
**fire [1]** 64/21
**fired [3]** 98/11 98/14 98/20
**firms [1]** 9/10
**FIRP [1]** 14/22
**first [20]** 5/11 5/25 14/25 15/8 19/23 23/22 37/7 41/15 42/25 45/20 45/23 49/7 51/5 60/1 64/20 71/3 71/12 85/17 94/6 101/17
**fiscal [2]** 13/23 13/24
**five [4]** 27/24 29/7 29/8 101/11
**flag [1]** 31/15
**flat [2]** 13/20 14/3
**flat-rate [1]** 13/20
**flaws [1]** 59/25
**floor [1]** 50/4
**Florence [8]** 5/23 9/12 17/8 19/21 26/14 31/7 33/17 33/22
**focus [3]** 55/6 66/1 76/5
**focused [1]** 103/15
**folks [1]** 98/19
**follow [5]** 18/3 22/15 27/10 53/9 59/17
**follow-up [2]** 18/3 22/15
**following [2]** 73/24 91/11
**footnote [7]** 39/4 39/4 60/21 60/21 60/25 100/18 100/18
**forbid [1]** 49/3
**force [1]** 81/18
**foreclose [3]** 71/16 76/21 86/11
**forecloses [1]** 40/21
**foregoing [1]** 109/9
**foreign [3]** 50/6 50/15 51/15
**foresee [2]** 16/1 17/11
**form [6]** 10/8 16/3 18/11 18/12 18/12 70/3
**forma [1]** 10/8
**formal [4]** 7/14 7/16 13/14 13/16
**formally [1]** 107/20
**former [5]** 59/1 63/21 91/1 104/14 104/23
**forth [1]** 78/11
**forward [6]** 1/14 1/20 4/8 4/15 37/12 105/5
**forwarding [2]** 74/9 75/3
**found [2]** 46/22 56/12
**FOUNDATION [2]** 1/14 1/20
**four [3]** 14/21 14/23 37/24
**frame [1]** 24/25
**framing [1]** 108/12
**frankly [3]** 28/18 28/19 36/18
**Friday [2]** 6/8 6/8
**friends [1]** 101/13
**frivolous [1]** 58/20
**front [9]** 18/4 32/8 35/24 38/12 40/16 44/7 54/10 62/11 63/6
**full [7]** 18/24 19/22 26/7 53/6 57/16 103/19 108/15
**fully [2]** 19/24 31/21
**fulsomely [1]** 19/5
**function [5]** 46/22 47/3 47/9 50/7 59/10
**functioning [1]** 106/10
**functions [3]** 28/8 47/5 103/9
**fundamental [6]** 39/2 84/7 86/2 86/7 87/3 102/20
**fundamentally [7]** 38/20 46/16 60/13 66/21 68/19 84/20 106/14
**funded [2]** 13/18 30/6
**funding [12]** 13/7 13/8 13/13 13/14 13/17 30/5 66/25 67/2 67/2 94/23 94/24 95/15
**further [7]** 18/2 41/8 51/24 68/21 69/18 69/18 107/25


## G


**game [1]** 40/1
**garden [1]** 78/14
**garden-variety [1]** 78/14
**gather [2]** 13/2 13/4
**General [16]** 2/12 5/4 43/10 43/15 43/16 48/6 48/9 48/13 48/17 48/17 48/19 55/15 55/17 86/6 87/11 97/15
**generally [3]** 45/10 76/18 80/24
**Georgevich [2]** 2/3 5/1
**gestured [1]** 40/8
**get [50]** 9/4 12/12 15/22 16/6 21/21 22/13 24/5 25/3 30/7 31/19 35/15 35/23 37/20 38/11 38/19 42/2 42/10 43/25 44/7 44/8 44/23 48/1 48/10 48/22 52/18 55/21 61/2 61/21 69/9 70/1 70/8 70/21 75/16 76/3 85/11 88/13 91/10 92/17 93/2 93/15 93/15 94/23 94/24 95/15 97/4 100/4 100/13 100/13 104/6 108/25
**gets [10]** 36/8 37/11 54/8 71/18 74/15 77/15 84/14 88/14 90/6 90/6
**getting [8]** 16/20 25/24 36/12 47/13 67/1 77/22 95/6 100/1
**gist [1]** 26/19
**give [12]** 21/12 31/4 33/25 38/16 40/4 53/13 56/20 56/20 63/11 66/5 68/12 89/17
**given [22]** 9/23 13/11 19/19 25/9 25/19 39/17 40/25 43/18 67/10 72/7 77/8 86/5 87/10 90/10 90/18 90/19 92/11 92/11 92/12 96/6 98/17 107/8
**gives [1]** 29/1
**giving [4]** 63/5 63/7 79/16 97/15
**glad [2]** 103/13 106/24
**go [36]** 10/1 15/9 17/19 18/8 22/6 22/13 24/3 27/25 29/7 30/8 30/13 31/13 31/21 38/4 40/24 45/11 50/13 55/22 57/5 62/1 64/16 64/20 69/1 71/9 73/6 74/11 76/10 76/11 79/3

G

**go... [7]** 84/16 93/14 94/2 95/6 95/21 98/18 105/13
**God [1]** 49/3
**goes [15]** 10/6 17/1 35/22 44/7 48/6 52/15 65/20 73/9 93/19 94/3 98/9 100/18 101/5 103/16 105/8
**going [73]** 6/23 7/11 9/17 10/14 10/17 15/1 15/5 16/6 16/9 16/13 16/15 17/15 17/19 17/21 18/8 19/18 20/10 20/12 22/5 22/22 23/1 25/8 26/12 26/13 29/18 31/3 35/10 35/10 36/4 36/15 38/12 38/14 38/18 38/19 42/10 42/21 43/17 44/10 44/10 44/14 47/16 55/8 59/2 59/8 59/8 66/2 66/19 74/20 77/5 77/12 77/16 78/25 79/3 79/4 79/15 79/19 83/13 84/4 84/21 84/22 87/11 92/17 93/7 93/14 94/22 94/23 101/21 104/5 104/6 104/7 104/8 106/14 108/24
**gone [2]** 61/12 87/15
**Gonzalez [1]** 56/24
**Gonzalez-Julio [1]** 56/24
**good [20]** 4/7 4/10 4/13 4/14 4/16 4/17 4/21 4/21 4/24 4/25 5/2 5/6 6/20 30/25 45/24 63/25 65/3 69/6 71/15 74/21
**got [6]** 12/22 17/19 49/17 53/7 78/5 78/23
**gotten [1]** 78/8
**government [52]** 5/11 5/25 7/2 7/11 28/5 28/11 28/22 29/1 29/15 30/21 30/22 31/16 34/13 35/7 35/14 37/8 38/12 39/15 41/4 41/17 43/9 46/24 49/24 50/7 50/15 50/16 51/2 51/8 54/14 54/15 55/20 59/4 59/16 62/7 63/2 63/2 64/9 64/19 70/8 70/19 71/8 71/10 73/14 73/18 73/23 73/24 101/21 102/2 107/4 107/9 108/7 108/14
**government's [11]** 31/17 36/21 37/10 44/2 45/24 51/16 58/8 58/10 63/15 79/16 80/4
**graft [1]** 87/13
**grafting [1]** 97/17
**grant [2]** 46/12 73/1
**granted [9]** 61/18 67/14 79/21 102/24 103/4 107/2 107/3 108/3 108/15
**granting [1]** 107/20
**grants [1]** 67/2
**grapple [1]** 64/11
**grappled [1]** 64/14
**grave [1]** 103/20
**great [1]** 9/16
**greater [1]** 40/11
**ground [1]** 65/25
**grounds [1]** 45/8
**groups [1]** 30/3
**groups' [1]** 12/3
**guess [8]** 27/17 33/13 33/15 45/9 53/20 83/1 87/16 106/25
**guidance [1]** 63/4

H

**had [34]** 12/5 12/11 12/15 12/16 12/24 13/5 17/8 17/8 18/6 19/15 20/8 21/9 29/17 29/19 29/21 40/11 41/1 44/21 46/8 56/12 56/15 58/9 60/19 66/23 69/11 74/4 87/6 90/25 94/5 107/12 107/19 107/19 107/21 108/8
**hadn't [1]** 101/25
**half [1]** 61/23
**Hamilton [1]** 65/13
**hand [5]** 6/13 33/25 63/2 63/7 63/7
**handful [1]** 11/8
**handling [2]** 49/4 68/13
**hanging [1]** 72/19
**happen [20]** 17/17 20/18 23/23 23/24 28/13 29/2 35/10 35/10 38/18 39/5 39/8 48/5 52/25 54/8 58/20 59/8 93/7 94/2 94/13 104/17
**happened [9]** 24/4 24/7 24/10 25/12 25/21 40/17 99/11 101/25 108/2
**happening [2]** 16/1 99/5
**happens [10]** 15/16 21/2 21/3 21/4 23/19 42/8 47/23 54/7 104/15 106/12
**happy [8]** 5/16 5/24 6/1 6/2 33/25 48/10 50/8 108/5
**hard [2]** 44/11 99/7
**harm [10]** 29/20 32/14 34/14 57/7 58/8 66/1 66/13 67/7 67/10 70/25
**harms [6]** 29/8 31/8 35/21 54/10 66/21 88/15
**has [69]** 10/1 13/10 15/12 17/8 21/10 25/21 29/16 31/4 34/10 37/23 40/25 42/22 43/5 43/15 44/3 44/9 47/25 48/18 49/4 50/5 50/10 50/11 50/11 50/23 56/2 56/5 58/15 64/19 66/11 66/24 67/18 67/19 67/19 71/15 74/13 74/14 74/15 74/21 75/14 77/8 78/8 78/14 88/6 88/25 89/4 89/11 90/1 90/19 91/11 91/14 91/15 91/17 92/9 96/6 98/3 98/5 98/6 99/5 100/15 102/25 103/20 103/24 105/6 106/1 106/10 107/9 107/13 108/2 108/14
**hasn't [1]** 30/22
**have [316]**
**haven't [4]** 18/25 73/3 86/19 87/15
**having [17]** 5/12 5/12 16/23 29/22 39/8 73/19 75/15 89/6 89/12 89/13 90/21 96/16 96/16 96/17 99/6 99/16 101/18
**Hawaii [1]** 56/14
**he [6]** 29/10 37/11 43/10 51/4 55/17 104/8
**head [1]** 99/21
**health [3]** 16/24 17/3 17/5
**hear [16]** 23/10 23/14 35/13 38/10 38/14 39/7 41/24 43/6 44/10 46/4 57/19 60/15 64/19 66/4 66/6 78/16
**heard [12]** 30/4 31/15 31/24 33/24 34/15 35/5 66/11 66/20 68/15 88/5 102/21 103/6
**hearing [8]** 1/10 7/4 19/1 21/9 22/6 31/17 37/12 72/7
**hearings [3]** 19/2 22/4 41/1
**heart [1]** 67/3
**heightened [1]** 22/17
**held [1]** 54/8
**Hello [1]** 4/11
**help [11]** 23/22 25/5 25/14 25/17 25/21 26/10 36/6 65/20 71/10 77/10 77/15
**helpful [8]** 14/8 18/4 26/21 31/5 36/13 88/1 90/22 90/22
**helping [1]** 36/11
**her [9]** 5/22 6/1 6/2 31/10 32/5 33/24 61/15 88/5 104/8
**Herculean [1]** 68/9
**here [56]** 6/21 10/13 11/25 15/16 16/1 17/13 29/5 35/11 38/9 38/24 46/9 50/2 51/9 54/13 54/17 55/17 56/17 57/2 58/7 58/25 59/2 61/3 61/4 61/14 62/22 65/22 67/18 68/6 68/17 69/20 70/7 72/12 75/5 76/13 76/19 77/20 78/4 78/21 79/11 85/21 86/4 86/4 87/5 88/1 88/23 89/13 89/22 90/3 94/1 94/16 96/15 100/24 103/16 104/22 106/11 107/4
**Hi [1]** 4/21
**HIAS [1]** 34/2
**high [1]** 67/5
**highest [1]** 62/9
**highlights [1]** 29/19
**himself [1]** 35/13
**hire [1]** 65/8
**hired [2]** 98/5 98/20
**his [2]** 51/3 104/8
**history [2]** 51/11 51/12
**hit [1]** 104/6
**hold [2]** 52/7 83/11
**holds [2]** 50/4 56/17
**Honor [70]** 4/7 4/17 4/22 4/25 5/9 5/13 5/18 5/20 6/6 6/12 7/6 14/14 14/17 27/11 27/12 27/19 27/23 28/12 29/10 30/15 32/15 33/20 34/10 48/4 50/6 51/7 51/21 52/13 64/8 66/8 68/22 69/6 69/20 70/18 72/6 72/21 73/14 75/11 75/19 77/11 77/24 79/14 80/19 81/9 81/19 82/23 83/16 84/13 84/24 86/3 86/9 87/4 87/19 88/6 88/23 89/24 92/1 92/24 93/5 95/8 97/14 98/12 98/23 99/24 101/3 101/15 107/20 108/14 108/20 108/22
**HONORABLE [1]** 1/10
**hope [3]** 26/23 63/22 79/9
**hopefully [1]** 54/3
**hoping [2]** 11/2 26/19
**hospital [1]** 104/7
**hour [2]** 59/5 59/6
**hours [3]** 23/25 29/24 29/24

**H**

**house [2]** 8/6 9/12
**housed [1]** 15/25
**housekeeping [1]** 43/22
**how [51]** 5/7 8/7 8/23 10/15 10/16 14/23 18/7 18/7 20/9 21/21 27/25 28/7 28/8 33/8 33/9 33/12 34/16 35/5 35/16 38/24 41/7 43/22 44/12 47/16 49/9 54/11 56/4 56/19 57/6 61/2 61/21 64/2 77/10 84/14 87/13 87/18 90/18 90/22 93/8 94/2 95/19 97/16 99/19 101/9 101/23 102/1 103/8 103/10 103/10 106/1 106/16
**however [3]** 14/4 39/20 82/14
**huge [2]** 63/24 87/6
**Huh [1]** 23/8
**Human [1]** 5/24
**Humana [1]** 51/13
**hundreds [6]** 29/24 38/11 49/8 61/7 62/1 62/12
**hypothetical [1]** 64/9
**hypothetically [1]** 39/5

**I**

**I'd [3]** 29/4 38/14 59/12
**I'll [8]** 14/17 21/6 35/17 59/23 75/15 83/18 95/6 106/24
**I'm [44]** 5/16 6/1 6/2 6/22 7/1 15/1 20/17 24/16 32/12 32/20 33/25 36/15 36/17 46/11 48/9 48/11 50/8 50/9 50/10 53/9 56/21 57/22 59/2 62/17 64/19 73/24 75/6 75/11 75/21 81/22 83/14 88/10 92/22 95/23 97/11 98/8 103/13 105/11 105/13 106/11 106/24 108/5 108/10 108/24
**idea [5]** 35/3 39/25 96/1 96/1 98/7
**ideation [1]** 17/2
**identify [2]** 46/1 91/12
**IFP [1]** 10/9
**IFR [6]** 7/15 9/18 14/23 15/3 39/2 63/17
**II [1]** 98/15
**IJ [12]** 16/2 21/7 32/18 38/1 62/15 69/18 78/8 80/16 95/1 95/5 102/14 105/4
**IJ's [1]** 101/19
**IL [1]** 2/5
**ill [1]** 49/5
**imagine [2]** 78/22 85/19
**immediately [1]** 49/16
**immigrant [9]** 1/3 2/3 4/3 5/23 30/15 31/7 33/23 60/7 67/8
**immigration [115]**
**impact [10]** 7/14 14/23 15/2 16/16 60/2 60/5 60/25 61/5 61/6 100/10
**impacted [1]** 17/4
**impacts [4]** 40/22 41/16 62/24 99/25
**impair [2]** 31/9 66/14
**impairment [1]** 29/14
**impede [1]** 45/13
**implemented [2]** 71/21 84/17
**implicate [1]** 77/3
**implicated [1]** 96/15
**implications [1]** 59/22
**implied [1]** 39/22
**implies [1]** 42/20
**importance [2]** 103/1 103/2
**important [5]** 30/10 69/10 70/1 97/13 101/5
**impossible [7]** 32/5 41/11 65/4 65/19 78/18 104/19 106/2
**improve [1]** 70/12
**INA [8]** 40/1 40/3 40/16 42/3 42/13 85/4 86/17 97/20
**inaccurate [1]** 92/25
**inclined [1]** 107/1
**include [7]** 20/3 20/5 27/7 37/18 69/17 79/11 80/17
**includes [2]** 85/5 94/1
**including [9]** 10/5 11/5 24/7 33/7 51/15 77/1 91/13 91/14 94/21
**inconsistency [1]** 107/14
**inconsistent [1]** 58/13
**incorporated [1]** 59/13
**incorrect [2]** 91/19 91/20
**increase [1]** 16/13
**indicated [1]** 29/23
**individual [24]** 8/25 21/9 21/23 21/25 23/19 24/12 25/18 25/20 32/6 32/8 35/21 36/10 36/13 36/23 43/22 58/14 58/21 59/17 59/19 59/19 61/19 92/17 104/22 105/9
**individuals [20]** 8/5 28/1 28/3 32/9 32/10 33/10 33/12 34/21 36/11 39/12 49/3 56/6 57/3 57/3 57/8 58/6 59/16 59/17 64/16 106/8
**indulge [1]** 106/19
**inefficiencies [1]** 99/15
**inexperienced [1]** 98/20
**infirmity [1]** 54/16
**inflicted [4]** 34/15 34/23 35/3 88/15
**inform [2]** 42/9 102/14
**information [7]** 9/17 13/3 21/19 27/6 27/7 69/19 80/17
**infrastructure [1]** 48/14
**initial [2]** 9/25 106/3
**initiating [1]** 19/9
**injunction [1]** 67/20
**injuries [1]** 34/15
**injury [10]** 29/21 34/10 35/16 35/24 36/6 36/7 36/7 36/8 96/2 96/9
**ink [1]** 22/13
**innovation [1]** 48/5
**inquiry [1]** 107/5
**INS [2]** 56/24 85/14
**instance [2]** 11/21 15/7
**instant [1]** 65/6
**instead [2]** 64/10 94/13
**instituted [1]** 90/7
**instituting [1]** 89/25
**insufficient [2]** 64/25 96/7
**intake [1]** 24/4
**intend [1]** 27/7
**intended [1]** 83/5
**intensive [2]** 58/5 61/18
**interconnected [1]** 62/19
**interest [18]** 39/23 40/5 40/10 40/10 40/11 40/25 45/14 77/3 86/25 87/1 87/3 103/14 103/21 103/25 104/11 104/11 106/17 106/17
**interested [3]** 51/23 52/11 54/2
**interesting [3]** 35/19 51/1 51/7
**interests [9]** 41/14 41/15 44/16 84/8 84/9 103/16 106/7 106/8 106/11
**interfere [1]** 66/15
**interferes [3]** 29/16 57/8 66/22
**interim [11]** 9/18 9/21 9/23 18/9 20/9 20/24 54/23 54/25 83/3 89/25 90/21
**interlocutory [1]** 72/18
**internal [2]** 74/17 85/22
**internet [2]** 26/1 56/13
**interpreted [2]** 51/13 59/14
**intertwined [2]** 44/6 44/8
**interview [1]** 78/10
**introduce [1]** 4/20
**introductory [1]** 6/1
**invite [1]** 44/21
**involved [5]** 8/10 8/11 8/24 40/15 40/16
**involves [1]** 9/8
**IRCA [1]** 40/18
**irrational [1]** 31/20
**irreparable [5]** 34/14 66/1 66/13 67/7 70/25
**irreparably [1]** 66/21
**is [579]**
**is that [1]** 83/2
**isn't [5]** 29/11 64/3 78/13 84/5 89/12
**issue [64]** 15/23 19/25 21/19 26/14 36/20 36/21 36/24 37/5 38/2 38/19 48/21 50/2 51/4 51/23 52/12 52/15 52/21 54/18 56/4 57/4 57/25 60/21 60/24 61/4 61/14 63/14 64/8 65/8 71/3 71/18 72/8 73/4 74/14 76/25 77/25 79/13 79/15 79/23 80/15 81/1 81/11 81/11 81/13 82/11 82/17 83/4 83/21 84/3 86/4 86/19 87/16 87/23 88/23 89/6 90/14 91/4 99/21 100/6 100/17 100/21 101/4 103/13 105/17 108/17
**issued [5]** 21/10 21/17 23/23 54/9 60/19
**issues [51]** 16/24 17/6 18/18 18/20 18/21 18/25 19/3 19/8 19/24 22/5 22/8 29/6 42/16 45/2 52/3 54/21 55/7 56/4 62/19 71/1 73/5 74/9 74/12 76/4 78/11 79/7 79/23 88/2 88/3 88/7 88/8 89/5 89/8 89/9 89/11 92/2 93/16 93/18 96/10 96/12 97/9 97/10 98/7 101/25 105/1 107/6 107/10 107/10 107/11 107/13 107/22
**issuing [1]** 90/24

**I**

**it [257]**
**it's [97]** 5/10 8/18 18/4 19/11 25/15 25/16 29/18 30/13 35/20 36/20 36/21 37/3 37/11 37/23 38/7 38/24 39/4 39/5 41/12 41/24 42/2 43/3 43/4 44/5 44/11 44/19 45/23 46/10 48/21 49/1 49/9 49/13 50/9 51/4 52/10 54/12 55/12 55/23 57/7 57/17 57/19 58/10 61/9 61/12 61/15 61/19 63/1 63/1 63/12 65/2 65/13 67/16 67/17 73/16 73/25 74/16 74/17 75/2 75/3 75/12 75/20 77/25 78/2 79/6 79/25 80/1 80/2 80/2 83/17 84/7 85/8 85/14 85/18 86/11 86/12 86/12 86/13 88/2 92/12 93/8 94/18 97/13 101/4 102/15 102/20 102/22 102/23 102/24 103/1 103/9 103/23 104/21 105/19 108/2 108/3 108/5 108/24
**items [1]** 103/16
**its [8]** 47/1 55/20 58/7 65/4 72/3 78/23 85/25 90/24
**itself [8]** 10/7 20/19 29/20 41/2 41/22 75/9 98/9 100/19
**IV [1]** 74/8
**IV.8.E [1]** 74/7
**IV.D [1]** 74/8

**J**

**Jackson [1]** 2/4
**job [2]** 15/20 65/5
**John [25]** 3/3 5/21 6/7 6/13 6/14 6/20 14/21 18/1 27/20 29/18 30/4 31/4 31/8 31/25 33/14 34/3 34/16 35/6 58/3 61/15 66/20 88/11 91/21 92/2 94/5
**John's [1]** 33/3
**joining [1]** 6/20
**judge [35]** 1/11 12/6 12/7 12/16 16/2 16/11 17/21 21/2 21/10 25/4 28/10 32/24 33/18 37/1 37/4 42/9 50/20 50/22 51/2 51/9 55/14 57/18 65/7 65/19 66/17 74/11 74/15 79/19 81/2 81/7 84/1 84/25 89/4 99/18 101/23
**judge's [4]** 25/15 80/5 82/15 85/7
**judges [26]** 14/10 14/13 29/11 39/18 39/24 44/23 48/14 59/2 62/8 63/3 63/21 64/21 64/25 65/9 68/8 74/20 81/17 91/2 98/6 98/11 98/14 99/1 99/6 99/10 99/16 104/14
**judgment [20]** 30/19 46/12 52/5 52/22 68/1 71/6 71/25 72/1 72/2 72/8 72/11 72/17 73/12 73/15 73/16 73/20 93/23 94/11 96/4 106/22
**judicial [1]** 58/13
**Julio [1]** 56/24
**jump [2]** 6/23 11/25
**jumping [3]** 36/16 36/17 39/14
**jurisdiction [6]** 39/15 39/16 39/18 39/19 52/3 76/5
**just [109]** 6/22 7/13 7/13 9/15 11/2 11/25 12/1 12/6 12/19 13/6 13/9 18/11 19/9 20/1 20/4 20/21 20/25 22/25 25/9 28/17 29/17 29/17 29/18 32/1 33/2 33/19 34/3 35/2 35/15 37/2 39/5 39/8 39/15 41/16 42/18 43/4 43/16 43/21 43/23 44/6 48/23 49/6 49/13 52/13 52/14 52/20 52/24 53/14 54/23 55/5 55/16 55/20 55/23 55/24 56/3 56/6 59/12 59/23 60/2 60/6 61/9 62/3 62/17 62/22 63/1 64/14 65/18 66/10 67/3 67/15 68/5 69/1 69/8 72/19 75/20 76/20 78/8 78/24 79/5 79/6 79/25 80/1 84/14 85/11 85/18 85/25 86/7 87/7 89/10 89/13 91/7 92/14 92/21 93/5 93/17 93/24 94/12 94/13 95/5 96/2 96/7 97/13 97/19 98/1 98/4 98/7 102/21 103/3 104/11
**JUSTICE [12]** 2/3 2/11 5/5 62/10 78/25 80/9 80/12 80/22 81/16 82/8 82/20 104/23
**Justice's [1]** 81/5
**justified [1]** 107/8

**K**

**keep [1]** 7/11
**keeps [1]** 70/18
**Kelly [2]** 50/20 51/10
**Kelly's [1]** 51/2
**key [3]** 17/12 47/10 59/25
**kidding [1]** 43/16
**kind [12]** 10/22 11/1 13/15 22/4 22/7 44/11 63/6 81/21 93/10 93/22 95/19 104/2
**know [43]** 8/21 12/11 17/22 19/20 21/2 22/4 26/18 30/18 37/10 40/2 41/3 44/5 45/2 51/22 54/6 57/13 63/23 68/22 71/4 73/9 73/23 75/9 78/21 78/22 78/24 83/12 83/15 85/10 85/21 86/18 86/20 88/21 89/5 89/16 89/16 89/20 92/16 92/16 94/14 96/18 99/17 99/20 108/3
**knowledge [1]** 64/23
**known [2]** 93/18 94/14
**knows [1]** 89/15

**L**

**lack [2]** 30/20 30/24
**laid [1]** 30/13
**language [2]** 71/15 76/25
**languishing [1]** 49/18
**Lapointe [2]** 2/6 4/22
**larger [3]** 62/1 70/7 77/16
**last [13]** 8/9 9/6 12/20 12/24 20/21 64/18 65/12 67/11 67/22 69/11 103/13 105/2 106/19
**late [1]** 6/8
**later [2]** 26/6 65/21
**Laura [3]** 3/3 5/21 6/14
**law [6]** 9/10 51/19 51/20 89/2 94/15 98/14
**lawyer [2]** 38/12 94/15
**lawyers [6]** 10/21 31/22 31/23 36/18 88/19 88/20
**lay [1]** 57/6
**lays [1]** 32/4
**lead [2]** 16/21 47/12
**leading [1]** 99/16
**League [3]** 67/5 67/6 67/6
**leaning [1]** 52/20
**learn [3]** 22/21 24/4 25/11
**least [13]** 8/20 12/7 12/8 12/14 40/8 46/11 51/19 54/6 59/16 63/10 84/5 96/8 102/10
**leave [2]** 94/23 101/20
**leaves [1]** 49/17
**leaving [1]** 66/3
**left [3]** 47/18 72/19 77/14
**legal [8]** 7/21 15/1 15/1 20/4 24/1 24/5 66/16 107/10
**legalization [1]** 40/17
**legislative [2]** 51/11 51/12
**legs [1]** 40/12
**lengthy [1]** 100/5
**less [8]** 15/6 19/12 42/3 45/17 68/14 88/8 92/7 99/16
**lesser [1]** 88/8
**let [9]** 4/9 5/25 11/25 35/12 35/17 45/19 49/14 51/22 91/6
**let's [6]** 21/9 37/18 41/24 47/17 49/7 103/7
**lets [1]** 35/15
**level [6]** 16/15 17/23 20/5 22/17 33/17 34/7
**levels [1]** 62/9
**Lexmark [1]** 40/9
**life [4]** 58/2 62/4 64/5 103/24
**lightning [1]** 35/22
**like [44]** 5/8 5/25 9/10 10/1 11/8 18/7 18/17 18/19 19/22 20/12 22/23 25/3 26/11 26/20 27/14 29/4 31/14 34/24 47/1 49/24 60/14 66/24 67/16 67/20 68/17 70/3 76/1 82/7 85/25 88/12 89/2 89/3 92/18 93/20 93/20 93/21 94/10 95/10 96/6 97/10 99/8 99/22 103/8 108/17
**likelihood [1]** 94/4
**likely [2]** 25/8 84/8
**likewise [1]** 34/20
**limbo [1]** 72/20
**limitation [2]** 80/12 80/16
**limited [4]** 35/25 36/5 40/19 68/4
**Lindsay [3]** 2/14 109/8 109/17
**line [1]** 78/21
**list [4]** 13/1 13/4 18/25 61/25
**listen [3]** 21/18 22/4 27/14
**listening [2]** 22/6 22/7
**literally [2]** 61/7 104/19
**litigants [3]** 38/18 41/7 64/15
**litigate [1]** 64/10
**litigating [1]** 54/18
**litigation [1]** 19/9

L


**little [13]** 16/18 21/12 33/13 36/17 36/18 41/4 49/25 71/4 73/9 73/25 85/16 92/5 103/7
**livelihood [1]** 57/24
**local [1]** 14/23
**log [1]** 91/5
**long [8]** 45/18 66/9 70/10 80/13 90/19 100/4 100/15 100/18
**longer [7]** 14/5 19/19 85/23 86/1 88/16 90/19 95/11
**look [12]** 16/11 17/21 18/7 26/20 37/12 37/20 46/16 61/25 87/15 95/6 95/21 97/13
**looked [2]** 10/1 17/18
**looking [5]** 25/7 75/6 96/24 105/2 105/3
**looks [4]** 19/22 25/3 57/18 78/13
**lose [6]** 13/8 26/16 35/14 45/16 51/3 51/20
**losing [1]** 13/13
**loss [5]** 13/14 13/17 17/9 17/10 29/15
**lost [2]** 22/25 23/6
**lot [29]** 12/3 30/13 44/6 66/2 68/22 73/10 74/18 74/19 85/10 85/13 88/25 89/8 90/7 90/11 90/16 90/17 92/21 93/6 93/16 93/25 94/1 94/12 94/21 94/23 95/14 96/11 97/15 100/11 103/15
**loud [1]** 68/6
**love [3]** 38/9 38/14 57/19
**luxury [1]** 55/1


M


**made [7]** 13/9 13/10 16/12 47/22 55/8 106/9 107/9
**mail [10]** 25/19 26/3 26/3 26/6 26/11 26/16 26/17 56/7 56/13 56/18
**main [2]** 19/3 81/13
**maintains [1]** 71/8
**major [4]** 15/3 15/23 26/14 26/14
**majority [15]** 10/10 11/10 19/20 20/12 31/12 31/18 36/3 37/22 39/11 46/3 47/13 57/12 65/6 80/1 102/25
**make [47]** 18/13 24/8 24/24 26/15 27/5 28/23 34/13 39/11 44/14 47/10 57/21 57/22 58/1 61/8 64/5 65/4 65/15 65/18 66/3 66/6 66/10 67/14 67/22 67/24 70/9 71/16 76/21 77/6 80/7 81/15 81/24 82/9 86/11 90/20 91/8 92/22 93/2 93/16 95/24 101/13 101/20 101/21 105/9 105/19 107/5 107/24 108/5
**makers [1]** 39/10
**makes [7]** 41/10 43/14 47/14 51/8 77/17 78/18 97/2
**making [8]** 30/24 39/6 39/21 39/22 47/9 56/22 76/5 103/23
**makings [1]** 63/1
**malpractice [1]** 88/17
**management [1]** 21/24
**mandatory [1]** 49/11
**manner [3]** 42/25 83/10 108/13
**manners [1]** 12/7
**many [31]** 8/23 15/17 16/1 29/11 30/10 30/12 31/6 31/11 31/11 31/23 33/6 38/24 39/18 39/24 44/1 50/10 54/2 60/10 60/24 64/3 64/5 68/10 77/13 77/20 83/24 87/5 88/24 89/9 97/18 99/6 99/19
**March [2]** 1/6 109/15
**mark [2]** 18/16 18/19
**Mary [2]** 2/3 4/25
**massive [1]** 35/24
**material [2]** 77/22 77/25
**materially [1]** 31/9
**Mathur [5]** 1/16 3/5 4/18 5/20 14/16
**matter [11]** 34/12 47/23 50/14 51/12 78/1 79/20 80/22 82/24 91/13 108/1 109/10
**matters [6]** 11/21 43/22 62/4 77/1 78/3 108/10
**max [1]** 101/11
**may [37]** 6/9 8/22 13/8 15/9 20/21 21/1 21/1 25/12 25/22 27/21 35/16 37/6 45/16 46/10 46/10 48/4 50/16 59/18 60/24 63/24 69/25 69/25 77/14 78/20 80/8 80/21 80/22 81/9 81/10 82/1 82/12 82/25 82/25 83/9 89/20 90/11 94/16
**maybe [21]** 7/3 9/10 11/7 13/11 28/10 34/3 38/20 49/13 54/5 55/21 55/21 65/8 69/14 75/16 78/15 82/19 92/16 94/7 95/6 103/11 104/4
**McNary [1]** 40/15
**me [36]** 5/16 5/25 8/16 11/25 18/4 18/4 20/15 23/10 32/22 36/19 36/20 39/20 44/4 44/11 45/19 46/12 49/14 51/1 51/22 53/10 56/20 72/1 72/16 74/25 79/8 81/15 82/7 83/5 84/7 84/20 87/2 91/6 95/10 95/20 98/18 106/20
**mean [13]** 7/16 13/11 13/16 17/12 55/20 66/13 71/18 74/12 85/19 88/15 88/19 92/18 94/16
**meaningful [6]** 16/6 16/9 17/16 96/21 96/22 104/20
**meanings [1]** 51/16
**means [7]** 13/21 30/21 40/11 42/17 43/5 67/3 67/15
**meant [2]** 83/3 83/3
**measures [1]** 29/20
**meet [6]** 24/3 25/11 26/12 76/23 78/9 94/20
**meets [1]** 17/1
**Mehta's [1]** 66/18
**member [4]** 47/23 59/4 78/12 91/15
**members [8]** 11/4 59/1 63/21 68/9 68/13 94/18 104/14 105/20
**mental [2]** 16/24 17/5
**mention [4]** 12/14 60/9 85/5 98/2
**mentioned [7]** 11/14 61/20 75/25 93/8 93/20 94/5 97/25
**mentioning [1]** 90/12
**merging [1]** 87/19
**merit [2]** 78/15 102/22
**meritorious [4]** 70/21 90/12 93/10 94/7
**merits [13]** 28/20 41/17 54/18 62/11 62/14 62/16 68/3 70/7 70/25 72/12 84/22 84/23 97/7
**mess [1]** 64/8
**met [1]** 73/3
**Michelle [2]** 2/6 4/22
**micromanage [1]** 87/18
**midnight [1]** 108/25
**might [10]** 5/22 16/18 19/8 23/23 30/18 35/13 81/18 83/4 84/23 97/6
**millions [1]** 49/17
**mind [3]** 34/4 45/9 107/15
**minimally [1]** 9/6
**minimum [1]** 8/20
**Mining [1]** 68/2
**minute [1]** 108/19
**minutes [7]** 5/12 5/12 5/14 5/15 66/5 69/2 101/11
**missing [2]** 28/6 92/22
**misspoke [1]** 77/14
**misstated [1]** 28/7
**mistake [3]** 16/12 63/25 64/1
**mistakes [1]** 63/16
**misunderstanding [1]** 8/11
**mitigation [1]** 29/20
**mixing [1]** 99/1
**moment [2]** 41/15 56/21
**Monday [3]** 13/12 28/9 29/3
**monetary [1]** 22/12
**month [2]** 12/16 54/14
**months [1]** 58/12
**moot [2]** 108/2 108/6
**more [49]** 8/19 8/19 10/17 13/6 15/6 17/5 17/5 17/6 18/14 19/5 19/10 19/22 20/1 30/1 30/13 32/7 35/21 41/5 42/17 44/22 45/10 47/9 47/10 47/14 61/18 65/8 65/15 67/3 67/5 68/12 68/12 70/11 73/10 79/6 79/17 94/24 94/25 95/1 95/13 95/22 98/5 99/16 100/3 100/3 100/7 100/20 101/16 103/12 103/23
**MOSS [1]** 1/10
**most [12]** 25/7 35/14 41/11 41/12 44/22 46/16 52/17 54/12 69/12 79/5 100/23 107/10
**mostly [6]** 7/11 76/5 83/18 91/3 91/5 100/15
**motion [19]** 1/10 10/8 10/9 11/21 30/17 44/24 61/16 61/18 72/23 72/25 76/11 105/12 106/20 106/22 107/2 107/3 107/21 107/23 108/15
**motions [4]** 10/6 10/16 16/14 44/23
**move [4]** 31/1 64/24 65/1 93/5

**M**

**moved [2]** 8/22 96/7
**moving [4]** 40/24 46/9 50/6 51/21
**Mr [13]** 3/4 6/5 27/18 35/12 36/16 37/6 37/11 37/13 38/10 66/4 66/6 69/5 108/13
**Mr. [1]** 35/18
**Mr. Becker [1]** 35/18
**Ms [4]** 3/5 6/7 14/16 91/21
**Ms. [22]** 5/11 6/13 6/20 14/21 18/1 27/20 29/18 30/4 31/4 31/8 31/25 33/3 33/14 34/3 34/16 35/6 58/3 61/15 66/20 88/11 92/2 94/5
**Ms. St [1]** 5/11
**Ms. St. John [20]** 6/13 6/20 14/21 18/1 27/20 29/18 30/4 31/4 31/8 31/25 33/14 34/3 34/16 35/6 58/3 61/15 66/20 88/11 92/2 94/5
**Ms. St. John's [1]** 33/3
**much [15]** 15/5 15/6 15/18 18/7 19/22 20/1 27/15 29/5 32/7 50/7 50/8 50/12 74/21 84/19 103/12
**multiple [5]** 12/13 22/8 40/3 42/8 51/14
**must [3]** 42/24 62/22 105/20
**my [29]** 4/9 7/22 8/14 9/4 12/14 20/15 22/5 25/25 26/22 33/13 33/14 33/18 45/9 46/14 58/10 68/17 68/18 80/8 83/1 86/7 95/3 99/20 103/3 103/16 105/2 106/19 107/15 108/24 108/24
**myself [3]** 11/8 49/14 64/20

**N**

**N.W [2]** 1/17 2/7
**naive [1]** 54/5
**name [3]** 4/6 40/18 42/13
**narrative [2]** 20/22 20/23
**narrow [2]** 67/24 103/12
**narrowed [1]** 107/5
**narrowest [1]** 54/12
**NATIONAL [3]** 2/3 13/19 68/2
**nationals [1]** 50/18
**nature [3]** 45/8 74/4 91/7
**navigate [4]** 8/7 28/4 33/8 36/14
**navigating [1]** 39/11
**necessarily [4]** 69/17 70/6 74/1 104/21
**necessary [7]** 11/22 15/10 17/11 19/24 44/7 56/23 98/16
**need [42]** 10/3 10/14 18/16 18/21 19/21 19/23 20/5 21/5 21/11 21/14 21/15 21/25 22/8 22/10 22/12 22/14 23/25 26/5 26/15 29/5 29/6 39/19 45/10 46/12 54/21 55/4 59/5 72/12 73/5 76/3 76/23 78/19 82/1 82/12 88/12 88/12 91/11 93/24 104/17 107/8 107/11 107/24
**needed [3]** 60/17 82/13 100/7
**needing [3]** 15/5 25/7 25/23
**needs [5]** 15/17 23/22 58/4
89/5 97/6
**negotiate [1]** 50/16
**never [8]** 10/23 17/17 17/19 20/12 40/1 43/11 45/1 47/13
**new [12]** 13/23 17/22 28/4 28/16 28/16 35/25 37/23 38/16 49/20 62/13 82/11 94/23
**newest [1]** 49/16
**next [3]** 1/23 24/23 25/5
**nice [1]** 108/23
**night [1]** 108/25
**NIJC [2]** 34/2 66/24
**nineties [1]** 40/12
**Ninth [13]** 10/12 10/23 10/24 11/7 11/11 14/4 16/10 17/25 50/20 56/12 56/24 65/21 67/19
**no [86]** 1/4 7/1 7/20 9/2 9/16 11/10 13/2 13/14 14/5 16/9 17/12 17/18 17/18 19/19 22/11 23/10 23/12 25/19 26/6 27/11 27/12 28/12 30/23 30/24 34/9 37/21 38/10 38/10 38/10 38/13 38/13 38/22 41/17 41/18 42/3 43/5 43/14 48/23 49/1 49/11 50/9 50/23 54/11 56/15 56/18 56/19 57/12 57/13 57/17 57/18 57/18 57/18 58/1 58/4 62/17 63/8 64/4 66/10 66/10 67/18 68/3 68/21 69/14 70/14 75/22 80/21 82/24 83/6 83/8 85/2 85/23 86/1 87/7 87/7 91/20 92/24 95/8 96/2 99/3 101/3 102/6 103/2 103/7 103/19 105/6 105/16
**NOA [1]** 58/2
**nobody [3]** 17/17 57/18 105/6
**nominally [1]** 44/17
**non [2]** 44/15 107/9
**non-detained [1]** 44/15
**non-showing [1]** 107/9
**noncitizen [3]** 53/5 75/25 103/20
**noncitizens [6]** 42/10 45/5 50/14 50/17 60/3 100/10
**noncitizens' [1]** 60/25
**none [2]** 48/22 60/16
**normal [1]** 26/4
**Normally [1]** 96/3
**Northwest [3]** 30/15 66/17 67/8
**not [202]**
**note [1]** 76/8
**notes [2]** 9/17 22/4
**nothing [6]** 41/8 50/2 70/6 91/20 96/2 103/1
**notice [70]** 7/4 15/6 15/11 18/6 18/7 18/9 18/11 18/15 19/23 22/16 24/1 24/13 24/20 25/2 26/6 30/19 36/1 36/22 37/19 37/24 39/13 40/24 41/23 45/10 50/13 50/25 51/23 52/23 53/7 54/1 54/7 54/16 54/17 55/4 56/4 56/11 60/11 60/14 61/1 71/22 72/3 73/7 76/6 76/9 76/16 76/16 77/3 78/6 78/24 79/12 80/3 80/13 80/18 81/7 84/2 84/2 84/6 84/16 84/18 87/17 89/14 89/23 90/19 91/23 91/24 101/22 103/7 103/10 105/10 107/6
**noticed [2]** 49/21 88/13
**notices [2]** 68/10 77/6
**noting [1]** 20/4
**now [31]** 18/15 23/10 23/14 28/9 29/17 32/15 38/9 39/8 44/15 47/24 50/14 54/14 55/6 62/17 63/19 65/2 74/21 75/23 80/23 82/8 84/10 85/14 90/19 93/15 103/10 106/10 107/12 107/24 108/2 108/18 108/24
**NQRP [3]** 13/19 13/25 14/6
**number [24]** 4/2 8/22 9/13 9/13 12/12 13/22 13/23 14/2 30/6 31/15 45/20 49/13 52/21 59/25 59/25 61/25 62/1 63/23 67/9 69/21 74/25 95/4 95/17 99/9
**numbers [7]** 9/3 9/4 14/7 63/24 63/25 91/4 99/5
**numerical [1]** 96/5
**NW [2]** 2/12 2/16

**O**

**O.A [1]** 40/2
**object [1]** 20/22
**objection [1]** 108/12
**obligation [1]** 88/20
**obligations [1]** 34/20
**obtain [3]** 21/15 24/6 24/9
**obtaining [3]** 12/6 17/9 25/13
**obvious [1]** 60/17
**obviously [8]** 18/24 19/5 60/13 60/14 61/24 73/22 92/6 108/14
**occasion [1]** 84/23
**occasionally [2]** 11/20 26/10
**occur [2]** 32/17 91/11
**occurred [1]** 20/5
**occurring [1]** 70/11
**October [1]** 69/11
**off [5]** 19/24 47/17 63/9 74/2 99/20
**office [11]** 1/6 2/11 4/4 23/16 23/22 25/9 64/20 70/20 75/17 91/11 104/23
**Official [3]** 2/15 109/8 109/18
**often [1]** 61/21
**oftentimes [4]** 22/6 25/16 25/17 77/20
**oh [3]** 23/1 78/13 98/3
**Okay [28]** 4/10 4/19 7/7 7/11 8/17 9/8 9/13 9/21 21/6 23/15 27/6 27/13 32/16 34/8 37/16 53/19 53/23 54/19 68/20 68/25 69/3 73/21 80/10 92/21 93/1 101/8 102/18 108/23
**old [1]** 40/7
**once [10]** 30/7 36/2 50/4 53/24 54/8 61/10 64/10 94/2 105/24 106/3
**one [64]** 12/1 12/13 12/14 12/16 13/6 15/3 17/12 18/6 18/21 20/21 22/2 24/9 31/3

**O**

**one... [51]** 32/10 32/14 33/5 36/25 37/21 40/13 42/16 46/14 47/4 51/8 51/25 52/15 54/14 56/20 57/17 57/18 61/22 62/19 63/2 63/7 67/11 67/15 72/22 74/6 74/9 75/5 78/14 78/15 78/20 83/5 83/7 83/19 85/4 86/23 87/9 89/11 90/5 92/3 93/8 95/13 96/14 99/10 101/3 101/16 103/24 104/4 105/11 105/16 106/21 107/12 108/4
**one's [3]** 71/16 76/21 86/11
**ones [2]** 64/22 96/12
**online [1]** 18/14
**only [20]** 11/16 17/10 25/18 34/12 44/19 46/8 46/14 49/20 49/21 63/17 69/12 72/7 78/5 79/2 81/16 94/1 96/24 102/8 103/20 106/11
**open [7]** 13/22 14/1 14/2 14/5 14/9 14/10 14/13
**opening [1]** 31/7
**operations [1]** 106/9
**opinion [4]** 80/8 89/7 89/7 108/25
**opportunity [8]** 19/19 68/15 68/23 71/16 76/21 86/11 89/17 108/8
**opposed [3]** 20/4 89/25 100/16
**opposing [5]** 75/18 103/6 103/17 105/3 108/16
**opposition [2]** 44/24 46/7
**option [1]** 83/12
**oral [3]** 18/20 25/16 65/16
**orally [1]** 21/17
**order [20]** 24/1 42/11 42/15 52/18 57/10 57/13 59/19 61/11 73/25 74/1 76/24 76/24 77/6 85/7 85/8 85/25 91/9 97/4 97/23 105/25
**organization [18]** 7/14 7/15 7/18 8/1 9/22 11/1 13/8 13/10 15/4 17/23 30/1 31/10 33/19 35/21 36/11 40/21 40/23 104/5
**organizational [2]** 93/17 94/20
**organizations [20]** 28/1 29/9 32/11 32/14 32/18 32/23 32/25 35/22 35/24 39/17 39/25 40/4 54/3 60/6 60/7 60/7 60/10 93/20 94/19 96/3
**orientation [1]** 15/21
**other [45]** 15/19 20/8 30/10 39/18 39/24 42/22 45/7 46/13 48/1 48/14 50/16 52/3 52/24 53/21 54/2 54/21 55/6 58/3 59/6 60/10 61/17 63/1 63/7 64/3 65/15 65/21 67/9 68/14 70/25 71/2 71/24 73/7 75/24 76/4 76/4 76/25 80/21 89/9 95/25 96/10 96/10 96/14 97/24 105/11 108/4
**others [3]** 38/22 71/25 107/17
**otherwise [3]** 45/17 100/24 107/7
**ought [2]** 79/1 87/18
**our [98]** 7/20 8/12 10/2 10/10 10/13 10/15 11/5 11/10 11/18 11/18 13/18 14/2 14/7 15/5 15/8 15/13 15/18 15/20 15/23 15/24 15/25 16/1 16/16 16/17 16/25 17/13 17/22 22/11 22/11 23/22 24/12 24/14 25/9 26/4 27/2 27/5 28/7 28/21 29/16 29/23 30/4 30/21 30/23 34/18 34/22 35/6 35/9 35/11 35/22 35/24 37/13 41/13 41/17 42/17 43/3 43/6 45/20 47/2 49/13 49/23 53/6 53/14 54/2 54/10 55/19 56/8 57/5 57/8 58/22 59/4 59/20 60/4 60/6 61/22 61/22 62/21 62/25 63/19 64/3 64/19 65/14 65/17 66/14 66/21 67/9 77/19 82/24 85/10 85/22 87/5 87/20 87/20 88/14 100/25 104/5 104/18 106/20 106/21
**out [28]** 8/12 9/2 9/10 9/17 15/23 18/18 22/24 23/2 23/5 23/8 25/4 30/13 32/4 37/2 40/15 49/6 57/6 65/5 68/6 77/21 77/22 78/10 79/3 83/2 89/10 90/22 92/14 101/20
**outcome [1]** 45/15
**outline [1]** 19/3
**outlined [1]** 58/3
**outside [1]** 8/2
**outsider's [1]** 39/9
**outweigh [1]** 61/5
**over [7]** 7/20 38/22 48/18 56/15 56/18 59/23 61/23
**overall [3]** 14/7 92/18 95/2
**overwhelming [1]** 80/1
**own [3]** 47/1 58/7 65/11

**P**

**p.m [3]** 1/7 69/4 109/2
**P.O [2]** 1/14 1/20
**page [8]** 1/23 18/11 18/12 34/22 45/21 47/8 59/3 104/13
**pages [2]** 31/11 59/3
**paid [4]** 13/21 14/6 30/8 95/6
**painful [1]** 39/7
**panel [3]** 38/21 46/3 91/16
**paper [2]** 35/8 42/18
**papers [7]** 28/19 41/13 43/7 46/1 55/20 61/17 62/21
**paragraph [7]** 31/9 31/13 33/7 33/11 34/1 34/2 105/21
**paragraphs [7]** 7/12 7/23 7/24 31/11 32/1 33/3 41/3
**parent [1]** 49/4
**parse [3]** 8/12 9/2 9/16
**part [25]** 11/18 14/2 14/7 31/19 31/20 45/12 46/23 51/22 55/13 58/16 59/22 59/24 72/2 72/2 74/7 74/8 74/8 75/2 75/20 79/15 98/21 107/2 107/2 108/3 108/5
**part-time [1]** 98/21
**partial [8]** 52/5 52/22 72/8 72/11 72/17 73/12 73/16 73/20
**partially [2]** 52/1 108/2
**participants [1]** 48/14
**participate [1]** 60/11
**particular [14]** 40/19 40/25 60/5 74/23 82/4 82/6 83/11 86/15 86/15 87/8 89/6 101/6 103/1 103/2
**particularly [6]** 10/3 18/13 25/15 56/6 57/3 106/8
**parties [11]** 5/9 41/14 44/16 45/3 54/2 67/16 67/24 68/4 74/17 77/2 77/17
**parts [2]** 49/7 64/4
**party [1]** 91/10
**pass [1]** 10/18
**passed [1]** 15/12
**past [3]** 12/5 12/20 97/7
**pauperis [1]** 10/8
**pause [1]** 51/22
**pay [1]** 22/12
**pending [2]** 105/12 106/20
**Pennsylvania [1]** 2/12
**people [58]** 7/21 8/7 9/13 10/17 10/18 15/17 15/19 15/21 16/5 16/9 16/19 16/21 16/22 17/1 17/4 17/15 17/19 25/25 26/5 26/11 26/15 28/23 29/3 30/12 31/12 31/18 31/21 31/23 32/17 34/6 35/14 35/15 39/11 52/17 54/1 57/23 58/7 61/7 62/1 62/5 63/13 63/20 64/24 67/4 68/14 77/20 77/22 79/5 81/5 85/24 89/17 90/20 94/8 94/25 95/4 95/18 98/20 100/12
**people's [1]** 84/8
**per [6]** 13/22 13/24 59/5 70/13 95/6 95/17
**per-person [1]** 95/17
**perceive [1]** 12/8
**percent [2]** 31/14 63/25
**perceptible [1]** 29/14
**perceptibly [1]** 66/14
**perfect [6]** 28/3 29/24 39/12 56/5 64/3 101/13
**perfecting [1]** 36/1
**perfunctory [1]** 39/3
**perhaps [9]** 19/12 26/23 28/6 33/14 37/10 40/11 44/22 56/7 104/22
**period [7]** 27/3 63/18 74/10 90/20 95/11 103/8 103/19
**permission [2]** 25/13 91/10
**perpetuity [1]** 59/6
**persecution [2]** 63/9 89/3
**person [12]** 15/9 23/2 23/21 25/11 25/11 25/23 92/7 95/6 95/9 95/13 95/17 102/15
**perspective [2]** 20/25 39/9
**persuaded [1]** 89/22
**perverse [1]** 68/7
**petition [18]** 10/7 10/15 16/10 30/7 36/5 36/8 58/12 58/15 58/16 59/20 61/17 67/1 78/25 79/6 79/21 81/12 85/24 93/21
**petitions [6]** 10/4 10/5 16/14 17/20 29/22 59/18
**PFR [7]** 10/3 17/11 32/2 32/3 61/16 64/8 64/8

**P**

**phrase [1]** 53/4
**pick [2]** 33/17 58/6
**picked [2]** 8/24 9/14
**picking [1]** 32/23
**picks [1]** 78/13
**piece [3]** 42/18 84/5 88/16
**pieces [3]** 44/9 49/25 78/4
**pilot [2]** 103/8 103/11
**pivot [1]** 59/23
**place [7]** 8/6 10/6 21/5 54/15 71/8 96/24 97/1
**placement [1]** 91/13
**places [5]** 8/1 10/24 42/3 42/4 42/8
**plaintiff [3]** 64/13 71/24 90/13
**plaintiffs [47]** 1/4 1/13 2/3 4/8 4/12 4/15 4/18 4/23 5/1 5/12 5/21 27/22 28/13 28/14 34/18 54/2 54/10 57/21 58/5 60/4 60/6 61/23 63/12 69/12 73/4 73/13 76/2 76/5 76/9 76/10 76/23 82/10 82/11 85/4 90/2 90/12 93/16 94/16 96/12 96/19 96/20 97/3 97/11 97/18 97/24 98/3 100/15
**plaintiffs' [11]** 4/6 72/23 81/24 81/25 84/25 90/6 91/5 93/6 93/11 100/7 100/9
**plan [1]** 5/7
**play [1]** 77/21
**please [3]** 4/5 6/13 27/21
**plenty [2]** 44/22 44/23
**plus [3]** 7/21 7/22 13/23
**Pmb2026 [2]** 1/17 2/7
**podium [1]** 4/5
**point [52]** 16/8 20/3 24/3 25/7 26/23 26/25 27/1 27/18 30/15 32/22 35/19 36/4 36/25 39/19 43/25 46/9 48/22 51/8 52/4 53/13 55/9 56/1 56/9 57/20 58/11 59/10 59/12 60/18 60/21 67/10 69/20 70/7 70/8 78/3 78/17 79/8 79/22 80/6 81/23 83/1 83/2 86/7 92/20 94/10 94/14 102/3 102/4 103/14 104/10 105/2 106/12 106/19
**points [3]** 55/6 81/13 101/16
**policies [1]** 63/4
**policy [3]** 50/13 63/1 77/3
**political [2]** 48/13 89/3
**population [1]** 61/3
**portion [3]** 73/13 75/20 92/12
**portions [3]** 72/4 74/3 75/14
**Portland [1]** 62/21
**position [27]** 35/17 36/21 36/24 36/25 37/10 37/13 47/2 49/23 58/10 79/16 80/4 80/11 80/20 80/22 81/1 81/5 81/17 81/24 81/25 82/9 82/20 82/23 82/24 83/14 83/19 102/3 106/20
**possibility [3]** 63/10 83/7 83/8
**possible [5]** 17/10 27/5 37/19 79/5 101/7
**possibly [2]** 26/14 68/10
**post [1]** 67/23
**posture [3]** 30/18 62/23 67/14
**potential [4]** 18/20 61/5 61/6 63/9
**potentially [5]** 28/23 38/1 65/8 72/25 95/10
**practical [1]** 20/25
**practice [21]** 10/3 10/6 10/9 10/10 10/12 10/16 11/6 11/10 11/18 11/19 11/23 17/23 17/24 18/22 19/21 21/17 29/22 29/25 32/3 97/7 98/4
**practiced [3]** 10/23 11/5 11/8
**practitioner [2]** 18/5 20/25
**preamble [1]** 74/8
**precedent [4]** 29/12 67/12 76/20 76/25
**precisely [1]** 57/6
**preclude [1]** 36/23
**precluded [1]** 79/12
**preclusion [1]** 39/21
**predict [1]** 38/24
**prefer [4]** 35/23 73/14 73/18 108/16
**preliminary [1]** 30/16
**premise [3]** 12/2 12/4 53/21
**premised [1]** 47/9
**preparation [1]** 9/25
**preparations [1]** 9/21
**prepare [5]** 18/24 22/16 29/21 78/18 78/19
**prepared [4]** 20/10 20/13 20/16 79/9
**preparing [2]** 19/20 24/20
**present [12]** 18/21 19/5 28/9 41/7 45/25 56/2 60/4 84/14 103/25 104/3 104/12 107/21
**presented [4]** 50/10 50/11 58/9 108/7
**presenting [1]** 103/23
**presently [1]** 43/18
**presents [1]** 43/23
**preserved [2]** 81/3 108/15
**preserves [1]** 39/13
**presumably [3]** 61/5 75/2 76/10
**presuming [1]** 47/16
**presumption [3]** 16/8 44/19 82/4
**presumptions [1]** 58/19
**presumptively [2]** 62/15 84/23
**pretermission [1]** 62/9
**pretty [9]** 21/17 22/17 43/7 51/4 84/7 85/17 86/2 104/3 104/9
**prevail [1]** 73/13
**prevailed [1]** 69/16
**previously [2]** 22/17 47/25
**primarily [1]** 10/11
**primary [5]** 11/6 11/19 11/22 16/25 96/12
**prime [1]** 13/20
**principle [1]** 51/2
**principles [3]** 51/18 67/23 83/10
**prior [5]** 22/11 31/16 41/1 66/14 69/10
**pro [31]** 8/2 8/5 8/6 8/7 9/14 15/13 15/20 15/20 15/23 25/1 25/20 28/3 31/13 32/6 32/9 32/12 32/18 32/24 33/7 33/11 33/12 33/18 34/20 39/12 56/6 57/2 57/3 66/24 92/3 92/10 100/12
**probably [10]** 6/10 35/12 44/21 72/11 79/14 81/20 83/17 83/18 89/16 89/16
**problem [9]** 12/8 23/16 37/14 39/1 39/2 52/6 79/11 79/15 102/20
**problematic [1]** 78/6
**problems [1]** 31/24
**procedural [39]** 41/2 43/21 44/17 46/2 55/9 70/24 71/3 71/6 71/9 71/13 71/21 71/24 72/5 72/8 72/15 73/3 73/6 73/6 74/4 74/16 76/12 76/14 76/14 84/4 84/15 85/22 85/25 86/22 87/14 87/21 91/7 92/21 101/4 101/17 103/13 103/17 103/22 104/25 105/7
**procedurally [2]** 52/4 52/11
**procedure [3]** 46/18 46/19 87/9
**procedures [5]** 16/4 86/5 99/7 99/22 100/4
**proceed [5]** 5/17 10/8 47/1 54/11 72/19
**proceeding [5]** 5/13 8/3 41/24 62/16 96/16
**proceedings [16]** 9/1 16/21 31/18 34/21 42/6 42/7 44/17 55/14 55/15 55/16 77/21 94/9 94/25 95/1 109/2 109/10
**process [49]** 8/8 10/6 10/17 10/18 14/2 15/10 19/6 19/23 20/24 22/1 23/18 24/20 25/24 30/7 30/8 33/7 35/22 36/8 36/14 37/3 39/10 42/10 45/2 48/20 54/7 55/17 56/5 56/15 57/14 58/4 59/12 59/15 59/20 59/22 61/17 65/13 65/17 72/3 77/6 83/22 91/22 91/23 91/24 92/22 92/23 97/25 98/1 100/5 104/16
**productivity [1]** 99/17
**program [8]** 13/19 15/1 15/1 15/13 33/11 66/24 103/8 103/11
**programs [6]** 14/22 14/24 14/25 30/10 66/15 66/24
**Project [10]** 5/24 9/12 17/8 19/21 26/14 31/8 33/17 33/23 33/23 67/8
**projections [4]** 7/14 7/17 13/10 13/14
**projects [1]** 9/23
**promise [1]** 101/10
**properly [1]** 73/5
**proposed [2]** 16/4 91/15
**proposes [1]** 65/15
**proposing [1]** 54/11
**protect [2]** 17/2 28/14
**proves [1]** 50/12
**provide [13]** 5/11 8/7 9/3 15/13 15/21 31/10 33/12

**P**

**provide... [6]** 58/15 66/16 66/22 66/23 89/19 104/20
**provided [4]** 9/3 27/7 30/22 58/15
**providers [1]** 66/16
**provides [1]** 8/2
**providing [3]** 7/21 32/25 69/23
**provision [15]** 42/5 42/19 42/23 42/24 43/12 44/3 44/3 46/19 46/19 47/22 49/21 51/17 53/22 58/17 85/4
**provisions [10]** 40/3 44/1 44/6 45/7 46/2 46/22 47/3 50/2 58/14 58/18
**public [1]** 63/8
**publically [1]** 63/19
**purely [1]** 91/7
**purpose [3]** 30/16 40/5 106/22
**purposes [1]** 30/2
**pursue [1]** 16/9
**put [9]** 41/22 46/6 71/8 78/4 80/8 84/1 84/1 91/16 103/18
**puts [2]** 55/24 107/15
**putting [3]** 26/6 44/4 49/6

**Q**

**Qualified [1]** 13/19
**qualify [1]** 73/2
**quality [1]** 31/9
**quantity [1]** 31/9
**question [28]** 12/1 13/6 18/6 19/13 19/15 19/16 20/8 20/14 20/21 32/20 33/13 33/14 33/19 37/6 37/15 45/18 45/24 46/21 48/22 51/25 53/11 53/21 58/9 69/15 76/19 80/6 86/24 107/16
**questions [12]** 5/13 6/1 6/23 7/1 10/20 18/3 31/1 36/16 51/24 68/21 79/8 89/16
**quick [2]** 10/20 35/23
**quicker [2]** 77/6 100/2
**quickly [3]** 39/15 64/24 65/1
**quite [1]** 70/15
**quote [3]** 59/2 61/4 62/22
**quote/unquote [1]** 61/4
**quoted [1]** 43/6

**R**

**race [2]** 61/13 61/13
**RAICES [2]** 29/13 40/3
**raise [31]** 6/13 16/17 18/23 19/4 19/24 37/4 37/9 38/3 38/5 38/5 38/13 38/22 42/24 53/14 53/17 59/12 78/11 79/23 80/3 80/14 81/1 81/6 81/11 82/11 90/14 96/13 98/3 101/18 101/22 101/25 107/7
**raised [13]** 20/15 36/21 37/5 37/23 45/2 64/18 79/17 79/18 80/15 81/6 96/11 98/1 106/24
**raises [2]** 31/24 89/11
**raising [7]** 36/4 36/23 58/14 79/13 83/25 84/2 107/10
**RANDOLPH [1]** 1/10
**rapid [1]** 26/11
**rarely [1]** 102/23
**rate [3]** 13/20 14/3 17/10
**rather [2]** 75/15 107/11
**ratified [1]** 43/15
**rational [1]** 63/11
**rationale [2]** 47/7 50/4
**reach [3]** 25/4 52/4 71/25
**reaching [1]** 23/2
**read [8]** 9/18 42/22 43/12 55/12 55/24 58/23 86/21 90/25
**readily [1]** 29/18
**reading [2]** 55/13 62/22
**real [1]** 16/21
**reality [4]** 16/5 41/9 43/24 61/9
**realize [1]** 8/21
**really [38]** 17/3 34/9 35/4 38/8 43/23 44/18 45/1 45/8 46/8 46/12 49/1 49/23 53/1 54/15 58/8 61/2 65/3 68/7 69/24 70/1 71/18 76/2 76/10 76/12 78/1 89/4 92/15 93/17 93/18 94/3 94/3 97/20 100/6 100/19 102/23 104/21 105/20 106/4
**reason [10]** 17/10 30/22 47/4 56/25 98/15 99/14 99/17 104/25 107/14 107/16
**reasonable [1]** 55/25
**reasoned [2]** 39/6 89/20
**reasons [9]** 52/21 65/23 66/19 70/4 77/7 77/16 83/20 98/16 99/10
**rebut [1]** 92/19
**rebuttable [1]** 58/19
**recatch [1]** 22/7
**receipt [1]** 18/23
**receive [4]** 6/24 7/8 22/2 23/24
**received [4]** 6/23 26/8 60/20 89/20
**receives [1]** 52/9
**receiving [1]** 52/9
**recent [2]** 12/20 41/12
**recently [1]** 43/4
**Recess [1]** 69/4
**recognizes [1]** 100/1
**recollection [1]** 95/3
**record [23]** 4/6 22/20 27/1 32/16 49/6 56/5 57/25 58/1 58/9 58/11 58/15 62/14 74/9 75/3 91/14 93/25 94/1 96/3 103/3 105/5 105/6 105/7 109/10
**recording [1]** 22/3
**recordings [6]** 20/2 21/16 24/7 24/9 25/14 74/23
**records [2]** 24/6 25/13
**recused [1]** 99/8
**redirect [3]** 3/5 6/3 14/19
**redo [1]** 106/15
**redress [1]** 12/8
**reduce [1]** 15/18
**reduced [3]** 99/5 99/12 99/13
**reducing [4]** 76/6 76/8 76/16 77/11
**refer [6]** 29/12 33/3 43/2 58/25 74/25 104/12
**reference [1]** 42/13
**referenced [1]** 65/14
**references [1]** 45/5
**referred [1]** 91/3
**referring [6]** 6/25 7/1 7/5 13/17 78/15 105/20
**refers [4]** 42/8 42/20 42/24 49/2
**reflect [1]** 108/18
**reform [1]** 65/12
**Refugee [3]** 5/24 31/7 33/23
**regard [1]** 35/13
**regarding [1]** 24/6
**regardless [3]** 23/24 28/2 81/7
**regards [2]** 8/4 10/3
**Register [1]** 47/8
**regulated [1]** 77/2
**regulation [7]** 40/22 46/24 50/12 53/4 56/21 75/10 75/21
**regulations [3]** 47/21 48/3 87/2
**regulatory [1]** 62/23
**reject [1]** 68/1
**rejected [1]** 39/25
**rejects [1]** 67/25
**relate [1]** 100/11
**related [4]** 7/12 11/20 62/25 99/22
**relationships [3]** 34/19 34/25 35/1
**relatively [3]** 61/3 89/10 92/12
**relevant [7]** 5/23 35/20 35/20 38/8 38/8 41/12 63/18
**reliance [1]** 106/8
**relied [1]** 7/20
**relief [7]** 30/16 46/12 67/24 68/4 69/23 70/3 93/15
**relies [1]** 26/2
**rely [3]** 26/3 57/21 83/18
**relying [1]** 98/25
**remainder [2]** 52/7 108/6
**remand [8]** 20/7 38/21 52/6 61/24 69/24 69/25 69/25 72/2
**remanded [5]** 11/21 12/12 69/13 70/1 90/13
**remanded or [1]** 69/13
**remands [8]** 12/7 12/13 12/15 12/22 12/24 13/5 17/9 69/18
**remedies [2]** 48/2 58/21
**remedy [3]** 66/1 67/11 72/1
**remember [2]** 12/14 99/21
**remotely [1]** 36/13
**removability [1]** 42/19
**removal [12]** 34/21 42/6 42/10 42/15 55/13 55/15 59/19 60/8 61/11 85/8 97/5 97/10
**remove [2]** 61/19 68/10
**removed [1]** 62/18
**removing [1]** 75/20
**render [1]** 106/1
**renders [1]** 78/23
**reopen [1]** 11/22
**repeat [1]** 60/1
**repeatedly [1]** 102/5
**replace [2]** 13/12 53/4
**reply [6]** 31/6 34/22 44/19 44/20 44/24 45/20
**report [3]** 13/3 25/12 65/11

**R**


**Reporter [4]** 2/14 2/15 109/8 109/18
**reporting [1]** 8/16
**represent [18]** 8/5 11/1 15/16 15/19 22/22 22/22 22/23 23/3 23/19 24/12 24/24 34/20 57/8 58/6 58/7 88/21 94/25 95/1
**representation [12]** 8/13 8/13 8/14 9/11 9/12 15/11 16/15 22/24 23/4 23/20 34/6 100/13
**Representative [1]** 13/19
**represented [9]** 8/15 8/25 9/7 9/9 21/7 34/7 92/8 94/8 100/14
**representing [8]** 21/1 21/3 21/4 21/22 21/24 32/19 95/4 95/13
**request [2]** 21/25 24/8
**requested [1]** 101/7
**require [8]** 25/8 25/13 30/1 42/15 58/5 58/14 65/16 81/10
**required [7]** 17/24 20/6 44/2 81/12 81/13 84/6 97/20
**requirement [7]** 37/9 43/14 82/5 83/6 83/9 85/2 96/21
**requirements [4]** 79/18 83/25 87/14 97/17
**requires [6]** 20/7 29/23 32/7 42/9 96/23 103/1
**requisite [1]** 40/1
**reserve [2]** 18/22 19/3
**resist [1]** 81/17
**resource [3]** 25/9 58/5 61/18
**resources [6]** 29/15 30/10 36/6 65/17 67/4 68/13
**respect [12]** 26/24 38/6 43/25 67/25 72/4 73/1 73/1 73/2 77/22 100/3 100/8 107/6
**respond [2]** 35/17 68/23
**responded [1]** 45/2
**response [2]** 30/21 64/20
**responses [2]** 34/12 89/20
**responsibility [2]** 20/17 48/17
**rest [2]** 55/3 107/15
**restrain [1]** 67/21
**result [15]** 13/7 13/9 15/5 17/16 61/23 65/5 68/14 68/18 70/11 72/10 73/20 81/21 92/11 99/6 100/1
**results [3]** 97/10 97/21 97/22
**retain [1]** 60/25
**retainer [1]** 24/14
**Reuveni [4]** 1/19 4/8 27/18 27/21
**revealed [1]** 107/14
**reversal [2]** 20/7 61/24
**reversals [1]** 12/6
**reverse [1]** 89/1
**reversed [1]** 61/22
**review [44]** 1/7 4/4 10/2 10/4 10/5 10/7 10/16 16/3 16/6 16/9 16/10 16/14 17/14 17/16 17/20 20/11 20/16 24/11 25/13 29/23 30/8 36/5 36/8 42/20 48/18 57/10 57/12 58/12 58/14 58/15 58/16 59/18 59/20 61/17 63/8 65/22 67/1 70/20 78/10 79/2 85/24 91/14 104/20 104/24
**reviewing [4]** 20/1 42/21 74/20 91/5
**revise [1]** 32/2
**rid [1]** 85/11
**right [97]** 4/9 4/13 4/24 5/6 6/5 6/13 6/17 6/23 7/3 12/1 14/16 18/15 18/22 19/4 27/17 29/25 32/15 33/24 40/13 41/14 41/18 41/18 41/21 42/1 42/4 42/5 42/7 42/11 43/1 43/1 43/5 43/19 43/19 43/20 45/14 46/5 46/10 46/20 48/4 48/7 48/21 48/25 52/11 52/21 53/16 54/6 55/9 55/11 55/13 55/22 58/18 58/22 68/20 68/25 69/5 70/5 72/1 72/9 72/24 75/12 75/23 83/21 84/10 84/11 85/23 86/1 86/14 86/14 86/15 86/18 86/21 86/24 86/25 87/1 87/1 87/8 88/18 88/21 90/4 90/9 96/15 96/18 96/22 96/23 101/1 102/5 102/5 102/6 102/6 102/10 102/12 102/15 102/16 102/19 103/14 103/15 106/13
**rights [21]** 1/3 4/3 5/24 26/16 28/15 30/16 31/7 33/22 33/23 39/13 41/15 44/16 45/3 59/15 59/17 67/8 74/17 84/8 105/9 106/11 106/17
**risible [1]** 35/3
**risk [1]** 60/13
**Rm [1]** 2/13
**road [3]** 58/13 67/14 67/24
**robust [3]** 15/6 15/13 27/5
**role [1]** 14/22
**room [2]** 2/16 26/17
**roughly [1]** 74/6
**routinely [1]** 18/22
**RPR [1]** 109/17
**rubber [1]** 42/18
**rule [134]**
**rule's [1]** 13/12
**ruled [2]** 34/10 93/13
**rulemaking [7]** 56/11 59/22 62/25 72/19 77/4 84/6 89/14
**rules [22]** 41/6 41/7 41/9 45/1 48/1 70/24 71/3 71/6 71/7 71/12 71/14 71/24 72/8 73/4 73/6 74/3 75/6 84/15 85/22 86/1 87/21 101/17
**ruling [2]** 72/11 108/17
**running [1]** 74/3


**S**


**said [23]** 10/24 15/24 17/12 30/16 33/5 36/19 37/8 39/14 39/14 39/17 58/18 60/2 67/16 67/17 67/18 67/19 67/19 78/20 88/8 89/21 92/15 92/25 97/14
**sake [1]** 47/17
**same [15]** 12/15 41/5 45/12 52/25 55/8 56/17 57/3 57/7 57/7 81/23 86/23 88/2 88/25 89/9 89/11
**sample [1]** 61/24
**Santos [2]** 43/3 43/4
**satisfy [1]** 47/2
**saw [5]** 28/19 34/12 45/22 63/15 92/25
**say [65]** 10/4 10/25 19/11 19/18 21/9 32/9 33/16 34/15 35/4 36/10 36/15 37/18 38/13 38/21 38/22 38/25 39/5 40/20 41/20 42/15 43/16 44/1 44/11 44/14 44/15 44/25 45/11 46/24 47/1 47/17 49/7 50/9 55/22 64/19 64/23 68/5 73/4 74/8 79/5 83/5 83/25 84/9 84/21 85/14 85/24 86/1 86/25 88/5 88/20 89/20 91/4 91/6 91/9 92/9 95/12 95/25 100/20 101/22 103/6 106/6 106/7 107/1 108/1 108/3 108/5
**saying [12]** 5/14 35/9 44/12 49/20 62/17 64/2 87/18 88/9 88/10 95/9 104/4 104/24
**says [28]** 18/18 31/8 36/25 37/20 41/5 43/9 44/18 53/3 63/8 63/17 63/20 65/22 67/7 78/4 78/5 78/13 85/6 85/21 86/17 87/1 96/24 96/25 97/5 98/21 102/5 105/4 105/4 105/16
**scaffolding [1]** 47/15
**scenario [9]** 21/8 21/9 22/18 22/20 22/21 23/2 24/23 24/23 62/14
**scenarios [1]** 67/5
**schedule [10]** 24/1 25/6 25/7 25/10 71/20 74/5 103/18 104/1 104/20 106/5
**scheduling [1]** 105/25
**Scher [2]** 1/13 4/11
**scope [1]** 107/5
**screening [1]** 24/5
**se [26]** 8/7 9/14 15/14 15/20 15/20 15/23 25/1 25/20 28/3 31/14 32/6 32/9 32/13 32/18 32/24 33/7 33/12 33/18 34/21 39/12 56/6 57/2 57/3 92/3 92/10 100/12
**seat [1]** 40/5
**second [4]** 22/21 22/25 23/1 75/5
**secondary [1]** 96/12
**section [2]** 74/25 85/8
**see [17]** 16/5 16/19 23/17 35/5 35/5 35/6 44/11 49/19 51/15 63/25 65/3 65/7 92/17 94/6 96/4 103/8 103/9
**seek [2]** 42/20 70/3
**seeking [2]** 23/20 36/14
**seem [8]** 16/18 63/24 68/6 83/23 83/24 87/2 104/9 105/7
**seemed [1]** 95/10
**seems [5]** 39/10 43/7 59/10 84/6 98/18
**seen [8]** 16/22 18/25 28/18 28/19 34/16 40/2 58/8 60/22
**seldomly [1]** 103/4
**self [10]** 8/16 9/9 9/11 34/15 34/23 35/3 50/1 50/2 88/15 106/2

**S**


**self-contained [2]** 50/1 50/2
**self-evidently [1]** 106/2
**self-inflicted [4]** 34/15 34/23 35/3 88/15
**self-reporting [1]** 8/16
**self-representation [1]** 9/11
**self-represented [1]** 9/9
**seminal [1]** 68/2
**send [3]** 26/10 53/25 75/17
**sends [1]** 65/23
**sense [10]** 15/3 16/22 16/23 20/9 43/14 43/14 95/24 101/20 103/22 105/19
**sensibly [2]** 46/22 47/3
**separate [4]** 37/25 92/8 99/11 99/13
**series [1]** 19/2
**seriously [1]** 41/4
**serve [4]** 28/16 30/6 63/13 67/4
**served [1]** 25/18
**service [2]** 28/2 66/16
**services [8]** 7/21 15/14 16/17 16/25 26/11 60/7 66/16 66/22
**serving [1]** 107/6
**set [6]** 43/11 47/3 48/19 65/24 78/11 91/9
**sets [3]** 55/17 57/14 82/15
**seven [1]** 42/3
**severability [2]** 46/17 53/11
**several [2]** 42/4 62/19
**shake [1]** 16/20
**shall [2]** 23/17 102/14
**she [20]** 5/23 31/10 31/12 31/14 32/1 32/4 32/4 33/16 33/16 34/4 43/11 48/11 55/17 88/7 88/10 91/23 91/25 92/5 92/15 92/25
**Sherry [3]** 2/14 109/8 109/17
**shift [4]** 12/3 29/22 30/10 67/1
**shifting [1]** 29/25
**shifts [1]** 68/12
**shocking [1]** 62/4
**short [5]** 66/5 69/1 71/15 76/21 86/10
**shortened [1]** 15/4
**shorter [2]** 96/16 96/16
**should [27]** 6/10 10/1 28/21 35/11 35/12 42/10 44/13 50/13 51/16 52/4 52/4 53/2 53/3 60/16 61/20 64/14 65/24 66/5 68/4 69/15 74/8 76/14 78/15 82/3 94/19 103/12 108/15
**show [1]** 29/14
**showing [4]** 107/9 107/9 107/24 108/6
**side [1]** 5/14
**signature [2]** 22/13 24/6
**signatures [1]** 92/17
**significant [8]** 10/14 16/13 16/24 17/15 17/22 69/23 70/9 85/17
**similar [4]** 15/2 29/13 34/14 66/2
**similarity [1]** 67/10
**similarly [1]** 60/10
**simplest [1]** 40/14
**simply [10]** 26/16 30/10 31/2 31/19 38/2 41/7 62/16 87/17 90/14 103/22
**simultaneous [11]** 44/11 44/13 44/15 47/18 48/23 49/10 71/13 71/17 71/20 74/5 103/18
**since [4]** 6/21 13/11 41/16 51/22
**single [9]** 37/18 46/25 50/12 50/24 60/9 64/17 78/12 81/12 102/14
**sir [1]** 70/2
**sit [2]** 21/12 22/3
**sitting [1]** 95/13
**situated [1]** 60/10
**situation [2]** 23/21 103/25
**six [2]** 12/15 18/12
**six-page [1]** 18/12
**size [1]** 61/24
**skill [1]** 17/24
**skin [1]** 40/1
**skipped [1]** 24/16
**slate [1]** 29/11
**slow [1]** 26/4
**small [3]** 61/4 69/21 92/12
**so [191]**
**social [2]** 16/17 16/25
**sole [1]** 60/22
**some [77]** 6/1 6/23 10/24 10/25 11/4 12/5 12/17 13/8 16/3 16/11 20/5 20/9 21/8 25/8 29/14 31/24 35/8 35/9 36/5 38/20 40/7 44/4 44/5 44/9 45/15 52/24 55/7 57/16 58/11 59/15 61/21 63/11 65/7 65/21 68/17 69/9 69/23 71/9 71/15 71/23 72/12 73/13 76/4 76/25 78/14 79/2 79/18 81/17 81/20 82/16 82/24 83/20 86/12 86/13 86/14 87/13 88/14 88/15 89/15 92/12 94/7 94/11 94/24 95/15 96/1 96/4 96/5 96/12 96/13 96/22 96/22 97/3 97/9 98/7 102/22 103/16 103/20
**somebody [10]** 9/10 17/14 21/3 22/21 23/25 24/1 24/3 24/23 25/1 32/12
**someone [6]** 21/1 28/10 28/11 36/8 37/18 83/11
**something [39]** 14/11 19/22 28/6 34/24 35/1 39/2 42/19 42/21 45/1 54/9 56/7 56/14 57/16 61/8 64/13 70/1 71/20 73/15 74/16 76/17 77/7 77/8 78/5 79/11 81/2 83/13 84/5 84/14 84/16 85/14 87/10 89/2 89/3 90/21 92/22 93/14 99/8 102/21 103/6
**sometimes [4]** 11/1 12/13 13/7 70/2
**somewhere [1]** 16/11
**soon [1]** 101/7
**sorry [13]** 24/16 32/20 57/22 63/16 73/24 75/11 75/21 81/22 88/10 97/11 98/8 105/11 105/13
**sort [30]** 7/18 15/15 19/2 26/19 35/8 35/9 37/17 58/7 63/11 64/1 64/5 68/9 72/11 73/19 86/12 86/13 86/14 87/7 87/13 89/13 92/19 93/7 93/8 94/4 95/15 96/2 96/22 96/23 97/3 98/16
**sound [1]** 55/8
**sounds [3]** 5/16 20/12 82/7
**source [1]** 55/8
**space [1]** 60/8
**spans [1]** 41/3
**speak [3]** 35/12 40/4 49/13
**speaking [2]** 24/8 106/11
**specialized [1]** 26/11
**specific [5]** 29/7 46/1 53/22 63/1 93/24
**specifically [8]** 10/3 30/6 33/8 40/4 42/13 51/23 70/20 100/1
**specificity [1]** 22/17
**speculation [5]** 90/7 93/7 94/12 94/12 95/10
**speculative [7]** 35/4 35/7 93/9 93/22 104/4 104/9 104/21
**spend [4]** 29/5 50/8 74/20 84/19
**spending [1]** 30/1
**spends [1]** 41/4
**spent [1]** 50/7
**splits [2]** 99/8 99/9
**spoke [2]** 17/7 108/16
**sponte [1]** 62/11
**spotting [1]** 21/19
**St [6]** 3/3 5/11 5/21 6/7 6/14 91/21
**St. [21]** 6/13 6/20 14/21 18/1 27/20 29/18 30/4 31/4 31/8 31/25 33/3 33/14 34/3 34/16 35/6 58/3 61/15 66/20 88/11 92/2 94/5
**stacked [1]** 16/19
**staff [9]** 8/16 10/2 10/10 10/15 10/21 10/22 11/4 15/5 64/25
**stage [5]** 84/25 93/24 96/4 96/7 106/3
**stake [1]** 57/24
**stakes [1]** 67/5
**stamp [1]** 42/18
**stand [3]** 38/9 38/24 100/25
**standard [4]** 51/3 102/23 103/3 106/18
**standards [1]** 89/1
**standing [27]** 5/23 29/4 29/6 31/1 31/2 34/13 39/14 40/10 40/11 52/2 57/7 67/10 70/25 85/25 88/14 90/6 93/3 93/6 93/23 94/1 94/15 94/17 94/20 95/25 96/8 104/3 106/22
**start [8]** 6/10 7/13 21/6 21/19 29/4 61/17 69/8 70/24
**starting [6]** 4/6 23/18 29/3 41/2 55/11 104/13
**state [3]** 4/5 10/21 81/13
**statement [9]** 19/7 79/7 79/23 82/12 88/2 88/3 88/7 88/8 89/8
**statements [1]** 57/21

## S


**states [5]** 1/1 1/11 5/5 8/9 50/15
**statistic [1]** 31/14
**statistics [1]** 70/16
**statute [20]** 40/19 43/18 43/24 51/14 51/21 55/6 55/24 59/13 67/21 83/21 85/3 85/17 86/16 86/20 96/24 97/14 97/15 102/5 102/9 102/13
**statutes [2]** 59/14 85/13
**statutory [7]** 51/18 59/11 86/4 86/4 86/25 87/7 87/7
**stay [16]** 10/9 27/14 30/20 54/22 55/3 55/3 61/11 61/16 61/18 67/12 67/14 67/15 67/20 71/5 72/23 92/10
**stays [2]** 23/15 95/11
**Ste [1]** 2/4
**steps [4]** 21/5 25/5 37/17 52/11
**stick [1]** 52/10
**sticking [1]** 33/2
**still [7]** 26/3 37/10 49/18 54/9 83/8 95/15 97/10
**stop [1]** 103/19
**streamline [1]** 92/16
**streamlined [1]** 103/24
**streams [1]** 30/5
**Street [2]** 1/17 2/7
**strike [1]** 84/20
**strong [2]** 94/15 108/4
**studied [1]** 86/19
**stuff [1]** 92/18
**stunned [1]** 28/18
**sua [1]** 62/11
**subcontract [1]** 13/18
**subject [1]** 50/14
**submit [6]** 35/8 60/15 62/25 88/7 89/18 101/6
**submitted [10]** 6/22 7/2 26/23 26/24 27/2 27/24 28/11 91/1 105/18 107/17
**subsequent [1]** 74/16
**subset [1]** 36/5
**substantial [3]** 12/8 19/10 19/12
**substantially [1]** 45/13
**substantive [6]** 18/13 44/18 45/8 74/13 86/14 105/9
**substantively [3]** 77/2 86/12 86/13
**success [4]** 12/5 12/17 17/7 17/10
**such [8]** 8/18 55/15 57/10 57/13 69/8 83/10 85/7 102/6
**Suchi [1]** 5/20
**Suchita [2]** 1/16 4/17
**suddenly [1]** 50/14
**sue [1]** 54/6
**suffer [1]** 54/16
**sufficient [5]** 29/21 76/14 77/3 78/12 84/1
**suggestion [1]** 30/23
**suggests [2]** 55/20 97/7
**suicidal [1]** 17/1
**suicidality [1]** 17/6
**suicide [1]** 16/25
**Suite [2]** 1/18 2/8
**summarily [4]** 36/22 38/6 80/14 85/7
**summary [18]** 30/19 38/2 46/11 52/22 68/1 71/6 71/25 72/1 72/2 72/8 73/20 80/1 80/2 93/23 94/11 96/4 97/8 106/22
**Sunday [1]** 108/25
**Supp [1]** 66/18
**supplemental [1]** 107/6
**support [6]** 8/2 10/9 15/14 17/2 22/14 25/5
**supported [1]** 97/19
**suppose [3]** 6/10 20/19 83/12
**supposed [4]** 25/6 54/7 87/13 89/23
**Supreme [6]** 29/12 34/11 40/9 43/3 79/1 87/17
**sure [21]** 4/21 5/20 9/25 20/17 26/15 39/11 48/9 48/11 53/9 66/3 66/6 66/10 80/7 81/15 81/24 82/9 87/24 91/8 92/22 93/2 108/10
**sustained [2]** 63/18 69/13
**swearing [1]** 6/11
**sweeping [1]** 98/4
**sworn [2]** 6/14 35/8
**system [22]** 21/24 26/2 28/5 31/13 31/22 33/9 38/20 39/12 64/16 64/24 74/22 77/19 83/23 87/22 90/7 90/23 90/23 95/12 96/17 99/15 100/1 106/9
**systems [3]** 9/23 90/11 94/22


## T


**table [3]** 2/18 40/5 47/18
**take [33]** 5/14 11/20 13/21 13/24 21/5 26/15 34/5 35/11 43/7 47/15 50/4 50/17 54/4 57/16 66/5 69/1 72/18 75/12 79/1 80/20 81/16 81/17 83/14 100/4 103/17 104/10 104/15 105/6 105/22 105/24 106/3 106/4 106/12
**taken [5]** 14/6 30/17 60/19 69/4 107/18
**takes [9]** 20/1 22/2 22/14 24/17 30/21 37/20 41/3 56/7 105/5
**taking [7]** 22/4 27/4 37/3 63/2 90/1 90/16 102/8
**talk [10]** 15/1 39/15 56/19 70/23 87/13 87/23 88/1 92/5 102/24 104/11
**talked [8]** 56/3 57/6 57/9 57/25 61/15 64/7 87/22 97/1
**talking [18]** 30/20 32/10 32/12 32/14 38/25 56/21 57/23 58/19 62/4 62/5 63/23 75/7 87/12 88/11 88/11 100/2 105/18 105/19
**talks [5]** 42/3 99/18 104/16 104/17 105/21
**targeted [1]** 103/12
**tasks [1]** 68/9
**team [8]** 11/19 15/20 15/24 16/16 16/18 16/25 16/25 17/3
**team's [1]** 15/20
**technical [2]** 91/12 97/9
**technicality [1]** 63/6
**technology [1]** 74/21
**tell [12]** 18/12 28/12 38/10 38/14 38/15 49/9 51/9 51/11 61/3 61/6 75/15 102/2
**telling [10]** 28/13 28/14 30/25 43/21 63/4 63/15 63/17 64/2 81/15 102/3
**tells [2]** 41/17 43/4
**temporary [4]** 67/16 67/19 98/6 98/20
**ten [2]** 37/19 37/20
**tend [1]** 44/21
**tens [2]** 38/25 64/5
**term [3]** 51/13 51/14 51/16
**terms [7]** 13/14 17/23 20/1 28/8 77/22 95/2 97/16
**terrible [1]** 29/2
**terribly [2]** 46/10 78/6
**test [6]** 24/16 47/3 51/9 51/10 51/11 86/10
**testified [2]** 33/15 91/21
**testify [1]** 5/22
**testimony [7]** 5/11 12/2 29/19 33/24 61/15 106/23 107/15
**text [2]** 60/22 97/19
**than [16]** 8/19 8/19 19/10 19/12 26/6 35/21 42/3 42/18 44/22 53/21 59/20 75/15 79/6 88/8 92/7 107/11
**thank [26]** 4/10 5/18 6/4 6/6 6/6 6/16 6/17 6/20 7/9 14/17 17/7 18/1 27/15 27/16 27/19 27/20 32/15 34/8 68/21 69/6 93/1 101/15 108/20 108/22 108/23 109/1
**Thanks [1]** 101/8
**that [846]**
**that's [70]** 4/9 7/6 12/10 14/8 14/14 17/3 17/21 22/24 26/13 26/21 28/24 35/19 36/4 36/6 36/11 37/10 38/10 38/15 39/17 40/13 41/23 44/5 44/8 44/25 45/18 46/14 47/1 47/14 48/20 48/21 52/15 52/17 52/19 54/11 54/23 55/17 56/22 57/19 57/20 59/7 59/20 61/24 63/16 64/3 66/11 66/17 67/7 67/8 67/22 68/16 69/14 71/1 73/9 75/20 76/22 81/22 81/23 81/23 81/25 82/8 82/21 83/1 83/7 88/5 88/22 89/5 89/17 92/11 103/11 104/25
**their [88]** 4/5 8/5 11/19 11/21 11/22 16/11 17/2 17/14 17/21 24/4 24/5 24/6 24/7 25/3 25/5 25/12 25/24 26/6 26/16 28/15 28/15 28/23 29/22 30/5 30/11 32/7 33/1 35/14 35/17 37/19 39/13 39/13 40/22 41/5 42/11 46/1 46/6 46/7 47/10 50/17 50/18 56/19 57/22 59/3 59/19 59/22 59/22 60/3 60/11 60/12 61/8 61/23 61/25 64/2 65/11 66/22 73/3 73/13 74/20 76/11 76/18 78/3 78/17 79/2 81/7 82/2 82/11 83/24 84/8 84/9 88/13 88/20 94/17 94/21 94/22

T


their... [13] 95/12 96/13 96/14 97/4 97/18 98/1 100/11 102/2 103/25 104/24 105/9 105/10 106/9
them [33] 15/2 16/8 16/19 21/4 21/12 25/14 25/21 28/2 35/8 40/5 45/25 46/4 48/11 58/23 60/15 60/20 63/4 63/5 63/23 65/11 66/13 68/12 70/4 70/21 72/23 79/19 81/18 92/3 93/8 96/11 96/14 103/1 103/21
themself [1] 43/23
themselves [4] 4/20 41/7 60/4 75/6
then [78] 5/12 5/13 6/3 9/14 15/24 16/17 18/17 19/3 19/4 19/13 19/16 21/25 22/3 22/15 22/18 24/5 24/19 24/21 25/23 32/18 36/2 36/22 37/8 37/22 37/25 38/3 42/19 42/22 45/10 47/25 48/5 48/5 50/24 52/7 52/8 52/20 54/8 54/13 54/16 56/12 58/17 59/9 61/3 61/12 62/13 63/7 63/8 64/2 64/23 65/5 66/5 66/6 68/12 68/14 70/25 72/1 72/17 73/4 73/7 76/4 78/10 78/11 79/12 80/5 80/14 85/2 89/19 91/14 91/14 91/16 96/12 97/4 98/21 101/16 102/16 103/9 105/24 105/25
theory [3] 47/6 48/13 95/16
there [159]
there's [1] 63/16
therefore [3] 30/2 41/18 104/8
these [38] 8/2 13/1 25/7 30/3 30/24 31/6 32/14 32/18 34/13 38/11 38/13 41/6 41/7 41/9 44/6 45/12 48/10 55/19 59/14 59/17 71/7 77/12 77/20 79/18 88/15 88/19 89/15 90/8 93/22 94/11 94/13 94/16 97/16 98/7 100/11 100/12 103/24 104/13
they [191]
thing [20] 38/5 41/5 43/8 47/7 47/9 47/10 47/15 52/25 57/18 59/13 65/1 74/17 92/8 95/25 99/11 101/4 101/16 102/6 102/7 105/11
things [52] 8/1 8/4 9/9 17/13 18/17 18/22 22/7 23/13 24/15 24/21 28/12 28/13 29/2 33/7 35/9 36/19 42/16 47/11 47/17 48/23 55/9 56/3 58/20 65/1 65/15 65/15 67/15 70/12 70/23 71/2 71/10 72/15 72/22 73/5 73/24 74/13 75/24 76/1 90/5 91/7 91/11 92/15 93/13 93/18 93/19 94/2 94/16 97/11 99/1 101/6 104/17 105/22
think [256]
thinking [2] 68/5 75/1
thinks [2] 84/13 103/17
third [2] 62/18 93/3
thirds [1] 31/21
Thirty [1] 33/5
Thirty-one [1] 33/5
this [255]
those [56] 6/24 7/24 8/8 8/23 9/3 11/13 11/14 12/20 14/23 15/14 15/18 17/2 17/13 24/7 24/14 24/21 26/25 31/23 32/10 40/14 40/14 40/20 41/15 44/16 44/25 47/17 51/10 54/4 56/18 58/22 58/24 59/10 63/24 65/23 69/13 69/16 71/9 73/23 74/12 74/21 74/22 76/8 79/3 86/23 89/19 89/22 90/14 92/11 93/13 94/20 97/9 97/9 102/11 103/21 105/1 107/13
though [11] 13/18 31/5 37/3 38/6 48/22 54/24 73/11 81/16 83/2 86/8 99/21
thought [8] 35/7 39/10 56/22 69/16 70/21 83/4 92/9 100/24
thousands [10] 29/3 38/11 38/25 49/8 57/23 57/23 61/7 62/1 62/12 64/6
threatens [1] 30/5
three [11] 8/4 18/11 22/2 24/9 50/21 59/5 65/21 70/23 83/12 83/18 85/18
three-page [1] 18/11
through [45] 10/17 10/18 15/9 21/18 21/23 27/25 29/7 29/18 30/13 31/3 31/11 31/13 31/22 33/4 40/17 41/14 42/10 45/11 46/2 46/3 50/13 57/5 58/23 59/18 59/19 62/2 62/13 63/3 64/16 66/19 71/9 73/7 74/3 76/11 76/11 84/16 84/17 84/18 87/13 88/1 90/10 98/9 101/5 104/16 104/17
Tigar [1] 50/22
time [50] 5/8 11/11 12/15 13/15 15/7 15/8 20/1 21/12 24/18 24/25 27/4 29/5 30/1 37/1 40/20 42/20 46/25 50/7 50/8 54/1 55/1 55/2 55/2 55/25 63/18 65/12 66/4 68/12 68/22 68/24 73/10 74/18 74/20 75/12 75/16 76/6 76/8 76/16 76/20 77/12 84/17 84/19 86/10 94/6 95/2 95/5 95/11 98/21 103/8 108/20
timeline [1] 105/17
timelines [2] 15/5 25/9
timely [1] 26/8
times [9] 10/25 22/8 36/20 51/14 64/10 88/25 89/8 92/17 97/25
timetables [1] 36/1
timing [1] 77/1
today [3] 6/21 18/6 43/16
together [5] 15/2 43/7 45/12 78/4 103/18
told [4] 31/4 59/16 78/22 79/9
tomorrow [1] 104/6
tonight [1] 104/6
too [4] 29/5 50/12 66/7 84/19
took [2] 68/22 94/7
top [4] 57/24 97/17 99/20 104/13
topic [1] 93/4
topics [3] 6/24 7/1 7/5
torture [2] 62/6 62/7
total [1] 8/10
totally [1] 8/23
touch [2] 70/24 93/2
touched [1] 26/18
touches [1] 50/14
towards [1] 68/13
track [1] 43/23
tracking [2] 8/12 9/5
training [2] 10/2 10/15
transcribed [1] 78/9
transcript [14] 1/10 18/23 19/1 20/9 20/13 20/16 20/19 65/20 74/11 74/12 75/1 78/10 95/7 109/9
transcription [1] 74/22
transcripts [2] 17/18 20/2
translate [2] 25/17 25/20
translated [1] 25/19
transpired [1] 19/1
treat [2] 6/2 37/1
treating [1] 103/7
tree [1] 83/17
trenches [4] 44/16 45/3 86/24 106/7
tried [1] 65/12
tries [1] 70/12
trivial [1] 61/25
truck [1] 104/6
true [8] 30/17 30/18 30/22 31/19 48/20 71/18 98/5 109/9
truly [1] 35/7
truth [1] 30/25
try [11] 9/4 13/2 13/4 13/12 15/20 21/19 23/16 26/15 27/4 38/19 69/2
trying [6] 17/2 25/1 70/8 70/19 83/2 97/18
turn [2] 69/5 108/24
turns [1] 108/4
twice [1] 50/20
two [30] 8/1 11/5 11/13 14/25 23/24 31/21 32/2 34/12 40/14 41/3 42/16 47/11 47/17 49/7 59/5 65/21 67/15 67/17 69/10 70/14 70/15 83/8 83/17 85/17 92/2 92/17 95/14 96/12 99/1 105/1
two-thirds [1] 31/21
Tyler [2] 2/10 5/3
type [7] 13/17 16/6 27/6 27/7 39/20 87/8 88/25
types [4] 44/23 44/25 48/2 92/2
typically [3] 21/11 22/2 25/3


U


U.S [2] 2/11 2/15
U.S.C [9] 42/5 42/14 42/23 55/11 58/16 58/24 67/17 85/9 97/2
ultimately [2] 41/5 97/11
unable [2] 15/16 30/11
unclear [2] 36/20 39/20
under [36] 10/18 13/25 14/5 18/9 19/18 20/9 20/24 34/10

U

**under... [28]** 35/8 35/25 40/1 44/2 46/17 48/24 49/1 49/15 51/20 52/5 55/11 59/25 61/10 61/12 62/6 67/23 72/16 72/17 73/12 73/20 76/19 84/15 89/1 102/12 103/5 103/19 104/1 106/18
**undermining [1]** 30/2
**underreporting [1]** 9/6
**understand [22]** 5/7 7/25 14/8 20/24 25/5 25/14 25/21 40/25 45/19 50/18 52/16 68/20 79/6 81/24 82/1 82/9 95/8 98/24 99/3 105/15 106/2 106/4
**understanding [5]** 12/2 26/22 39/10 43/12 58/10
**understood [23]** 7/23 8/9 8/21 8/23 9/8 9/18 11/13 12/19 13/6 14/9 14/14 33/20 43/8 66/12 67/21 69/15 75/8 86/9 87/4 95/19 107/18 107/19 107/21
**undertaken [1]** 34/19
**undo [1]** 106/15
**unfair [2]** 38/20 68/19
**unfortunate [1]** 28/25
**unfortunately [3]** 9/16 23/6 56/8
**unique [1]** 40/18
**UNITED [4]** 1/1 1/11 5/5 50/15
**unlawful [1]** 46/23
**unless [4]** 31/1 45/1 57/15 105/5
**unquote [1]** 61/4
**unrebutted [4]** 29/2 30/9 30/14 30/17
**unsure [2]** 36/18 36/18
**until [3]** 61/18 93/18 105/5
**unworkable [2]** 106/5 106/7
**unwritten [1]** 63/4
**up [30]** 5/14 8/24 9/15 16/23 16/24 18/3 22/15 27/10 32/8 32/24 33/17 37/11 43/11 46/4 49/24 50/4 53/13 55/17 57/14 62/11 63/6 65/20 68/22 69/2 78/13 82/15 89/4 95/17 99/1 103/14
**upcoming [1]** 13/24
**updated [1]** 9/4
**upon [7]** 18/23 24/11 26/2 35/18 70/12 81/18 86/24
**urgent [2]** 25/8 25/10
**us [20]** 6/7 6/20 8/12 20/23 23/2 25/4 25/13 27/7 43/21 49/9 53/25 54/9 55/4 61/3 63/15 63/17 64/2 65/22 91/22 105/7
**use [4]** 5/8 75/16 85/13 104/19
**used [2]** 65/2 84/9
**useful [1]** 13/16
**uses [2]** 63/14 86/23
**using [2]** 26/10 31/7
**usually [4]** 22/3 24/17 24/18 93/12
**utterly [3]** 64/11 106/5
106/6

V

**vacate [8]** 52/5 52/22 53/2 53/3 53/7 53/21 53/24 72/2
**vacatur [3]** 67/16 67/20 67/25
**variety [1]** 78/14
**various [8]** 29/8 38/18 39/7 41/1 63/3 70/12 75/14 79/17
**vast [14]** 10/10 11/10 19/20 20/11 29/22 31/12 36/3 37/21 39/11 47/13 47/13 47/13 57/12 65/6
**veracity [1]** 107/17
**Vermont [2]** 87/12 87/15
**version [1]** 50/23
**versus [4]** 4/3 28/9 61/13 84/22
**very [26]** 8/23 10/3 15/2 15/22 18/24 26/4 27/15 29/13 32/5 35/25 39/15 40/22 51/18 57/23 58/5 58/5 59/12 68/23 69/21 71/15 74/21 88/1 102/23 105/11 108/24 108/24
**vice [3]** 47/24 48/12 49/15
**video [1]** 4/19
**view [5]** 31/17 47/10 73/11 105/16 108/4
**views [5]** 80/23 81/25 84/14 90/22 103/23
**violated [2]** 47/22 56/15
**violates [1]** 58/17
**virtually [3]** 78/18 86/21 86/23
**virtue [1]** 26/16
**visit [5]** 22/10 22/15 24/1 25/6 25/10
**visits [2]** 25/8 25/8
**vote [1]** 91/17
**Voter's [1]** 67/6
**votes [1]** 105/6
**voting [1]** 99/22
**vs [1]** 1/5

W

**waive [3]** 32/7 36/2 105/10
**waived [4]** 36/12 37/24 38/23 79/23
**waiver [9]** 22/14 24/20 37/8 37/23 38/8 47/12 56/4 58/4 60/24
**walk [3]** 31/3 41/14 46/2
**walked [1]** 46/3
**walks [1]** 31/10
**want [54]** 4/19 5/19 7/13 7/23 16/3 16/9 17/13 17/13 17/20 20/3 21/12 21/13 21/15 22/23 26/7 35/17 46/24 52/14 52/16 54/5 55/2 56/9 56/20 60/10 64/9 66/3 66/6 70/23 70/23 72/16 75/9 78/11 79/21 80/7 80/19 80/20 81/15 81/24 82/9 84/19 85/20 87/23 88/17 89/17 91/8 92/22 93/2 96/11 96/20 100/13 100/13 101/2 102/21 105/13
**wanted [17]** 9/3 12/1 12/19 13/9 16/17 43/10 69/8 73/17 79/8 79/9 92/14 93/3 95/25 98/2 103/11 107/5 107/7
**wants [6]** 21/20 26/22 52/10 54/15 90/13 90/13
**warranting [1]** 102/9
**was [90]** 7/19 8/16 8/19 8/25 11/2 16/12 17/18 17/18 18/13 18/16 18/16 19/18 20/14 20/18 21/17 22/16 23/1 23/18 23/23 24/7 25/15 25/18 28/19 32/12 33/13 33/14 33/18 35/7 37/9 38/2 40/18 45/1 45/1 51/1 51/22 56/11 56/22 59/1 61/20 64/8 69/15 70/13 70/14 71/21 73/10 81/7 81/14 84/1 85/16 85/17 87/16 87/17 87/25 88/8 88/8 88/9 88/10 88/10 88/10 88/10 88/11 91/1 91/5 91/22 91/24 92/2 92/2 92/3 92/25 92/25 93/3 95/3 95/4 95/9 95/9 99/5 99/6 99/6 99/9 99/10 99/12 99/13 99/15 99/16 99/21 99/21 105/2 105/3 107/21 108/7
**Washington [7]** 1/5 1/15 1/18 1/21 2/8 2/13 2/17
**wasn't [5]** 20/18 20/19 82/11 95/4 100/6
**way [49]** 5/17 9/2 9/16 15/4 22/12 22/16 26/8 29/25 32/2 32/6 36/2 39/13 41/22 43/18 44/17 45/15 45/25 46/3 49/25 52/15 52/17 52/18 52/19 54/12 54/12 54/15 55/5 55/16 56/12 59/7 62/15 64/4 65/15 67/21 70/15 70/19 74/7 79/7 82/14 83/17 85/20 87/2 89/23 103/12 106/10 106/15 106/15 107/20 108/4
**ways [3]** 21/8 37/15 45/20
**we [236]**
**we'd [1]** 101/4
**we'll [8]** 15/18 31/19 42/2 54/4 54/10 54/13 54/17 101/6
**website [1]** 88/6
**weed [1]** 70/21
**week [1]** 26/7
**weekend [1]** 108/23
**welcome [2]** 27/14 106/25
**well [34]** 5/7 7/2 7/12 8/2 10/9 17/3 22/15 27/13 30/11 36/16 44/14 45/12 51/25 54/21 59/17 59/18 63/8 64/3 64/8 65/25 66/4 66/14 68/16 72/21 77/24 84/8 88/23 89/2 89/24 90/6 92/13 98/21 101/3 107/18
**well-being [1]** 17/3
**well-established [1]** 89/2
**went [3]** 25/25 46/18 66/9
**were [47]** 8/10 8/11 9/3 9/9 9/14 10/24 10/25 12/19 12/20 13/7 22/5 26/18 27/4 32/24 33/18 37/3 40/7 40/15 48/1 48/2 50/1 52/12 63/17 68/6 69/13 69/16 69/17 73/5 73/6 74/3 78/21 84/2 89/6 94/8 95/4 95/5 95/9 98/10 98/14 98/15 98/16 98/16 99/7 99/8 99/9 100/24 101/17
**weren't [2]** 64/4 100/14

## W

**wet [1]** 22/13
**what [153]**
**what's [2]** 38/8 47/18
**whatever [4]** 50/16 79/21 85/21 99/17
**when [42]** 10/4 15/8 16/19 16/19 16/22 18/16 18/25 19/9 20/16 23/24 32/9 36/12 37/7 37/11 38/11 39/6 42/12 42/15 43/2 46/4 57/22 58/9 61/25 62/4 62/5 62/7 62/8 62/24 65/21 74/21 75/16 78/4 78/12 78/17 90/6 91/21 100/14 101/19 104/10 105/15 105/18 106/10
**where [48]** 6/9 8/24 12/15 12/22 15/22 15/25 22/21 23/2 23/19 30/16 32/17 32/22 32/25 39/5 42/25 44/4 44/9 44/13 44/23 47/22 48/1 50/9 55/2 56/22 57/14 58/18 69/17 69/22 74/10 74/17 74/18 75/9 76/9 77/25 79/18 85/6 90/13 90/13 90/15 90/16 90/17 96/25 97/20 97/20 99/9 99/12 102/12 104/13
**whereas [3]** 47/25 48/13 101/18
**whether [57]** 7/13 13/9 16/11 18/16 18/19 21/13 21/14 33/16 33/19 36/20 40/21 41/21 45/9 45/13 52/9 56/19 68/4 71/1 71/4 71/5 71/15 74/14 76/20 77/1 77/17 77/18 78/1 78/16 79/20 79/20 80/6 82/17 83/4 83/21 86/10 86/18 86/20 86/24 88/11 89/10 91/16 91/17 93/10 93/13 94/21 94/22 96/15 97/6 97/14 100/12 100/17 102/4 102/15 102/22 105/22 107/16 108/1
**which [67]** 10/13 13/20 13/21 15/4 15/19 15/24 16/18 17/16 19/21 19/25 20/22 21/17 22/1 23/2 24/13 24/16 24/17 25/8 29/13 29/20 29/23 33/11 33/12 42/17 42/24 43/21 46/1 46/7 47/12 47/20 49/2 49/11 50/11 51/17 53/2 57/25 58/7 58/13 58/14 59/10 59/21 59/24 65/16 66/20 69/16 73/19 77/19 78/6 78/22 79/9 79/10 80/1 82/1 82/18 82/21 83/5 83/7 84/6 84/15 85/12 85/19 88/14 91/16 95/24 97/1 105/21 107/15
**while [4]** 16/18 49/24 52/8 77/20
**who [48]** 7/21 8/8 10/17 10/22 10/22 11/4 11/8 15/14 15/14 15/21 16/1 16/2 16/22 16/23 17/1 17/13 22/22 23/2 24/23 25/1 25/25 26/11 28/1 28/3 28/12 31/13 31/23 32/10 32/12 32/17 32/18 33/10 34/6 37/18 47/23 49/4 49/4 56/18 65/20 68/8 68/9 78/13 88/19 89/15 89/17 91/14 91/15 104/4
**whole [10]** 43/13 47/5 47/7 47/15 50/5 53/8 55/3 56/7 78/16 78/16
**whom [1]** 34/18
**whose [3]** 11/6 20/17 57/23
**why [29]** 20/6 22/14 28/20 28/20 31/20 35/9 41/23 44/5 51/16 56/25 57/7 60/9 60/14 63/11 64/9 65/3 66/4 68/25 84/5 89/14 89/17 89/22 98/10 98/13 102/7 104/25 106/4 108/1 108/10
**will [88]** 4/9 5/14 10/2 10/18 12/3 14/23 15/7 17/4 17/16 19/19 20/2 20/16 20/17 20/18 20/24 25/3 25/4 28/1 28/9 28/13 28/14 28/23 29/2 29/8 29/25 30/8 30/9 31/4 31/9 32/2 32/4 32/5 32/10 36/3 37/22 38/21 38/22 39/1 39/8 40/24 41/14 46/4 46/18 47/12 49/15 54/4 54/16 57/12 57/13 58/5 58/6 58/9 58/11 59/9 61/3 61/7 62/13 62/17 65/5 66/1 70/3 71/9 71/10 80/8 80/12 81/4 81/16 81/17 81/17 85/14 89/6 89/7 89/7 89/9 90/8 90/14 92/9 93/10 94/2 94/2 95/21 100/1 101/12 104/12 105/16 106/19 107/19 108/18
**willing [1]** 92/10
**willingness [1]** 6/7
**win [4]** 52/16 68/3 69/25 76/24
**window [7]** 15/6 15/12 21/5 26/5 26/12 56/16 79/12
**wins [1]** 12/11
**wise [1]** 39/17
**wishes [1]** 50/16
**withholding [2]** 62/6 90/14
**within [9]** 14/22 21/5 28/4 28/11 32/6 40/3 47/19 72/4 79/2
**without [8]** 9/17 43/13 46/22 47/3 61/2 71/22 80/16 93/17
**witness [11]** 5/19 6/11 27/14 27/15 88/1 88/10 106/23 107/4 107/22 108/7 108/8
**WITNESSES [1]** 3/2
**Women's [1]** 67/6
**won't [4]** 58/22 67/9 77/15 93/18
**word [3]** 53/4 60/24 104/19
**words [2]** 41/12 43/1
**work [25]** 10/22 12/3 14/1 14/9 15/6 15/17 17/11 17/22 25/11 25/23 30/11 31/10 32/7 35/25 45/25 56/1 59/7 60/7 67/4 69/7 89/23 90/23 90/23 95/14 102/1
**working [2]** 59/5 59/7
**works [4]** 5/23 103/10 103/11 104/5
**world [6]** 55/1 78/22 85/19 90/15 90/16 90/17
**worries [1]** 75/22
**worse [1]** 63/9
**worth [3]** 51/9 55/12 100/24
**would [132]**
**wouldn't [9]** 34/4 45/2 55/4 72/14 72/16 73/25 74/1 105/19 106/6
**wrestling [1]** 45/9
**write [1]** 13/3
**writing [1]** 17/24
**written [5]** 25/16 25/18 29/11 43/18 65/18
**wrong [9]** 28/17 28/20 38/10 44/5 63/20 68/19 86/19 95/3 95/23

## Y

**Yankee [2]** 87/12 87/16
**yeah [7]** 33/2 33/6 38/21 40/7 53/12 54/23 85/1
**year [12]** 8/9 9/6 12/20 13/23 13/24 38/17 62/2 64/20 70/13 95/17 95/18 99/19
**years [13]** 7/21 7/22 12/21 12/25 58/12 64/23 65/21 69/10 70/15 70/15 77/20 87/5 95/14
**yes [30]** 5/9 6/12 7/6 7/8 7/18 12/10 12/23 12/24 21/6 27/9 28/22 34/5 37/12 44/9 48/11 48/21 53/7 66/8 69/20 70/2 74/6 75/19 82/10 82/12 82/22 87/19 93/5 98/12 102/19 105/14
**yet [8]** 27/2 78/8 82/20 83/12 83/15 83/19 86/19 101/25
**you [374]**
**you have [1]** 108/17
**You'll [1]** 101/13
**you're [6]** 6/25 7/5 72/19 78/22 83/17 106/25
**your [165]**

## Z

**zone [5]** 39/23 40/5 40/10 40/10 40/11